## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

IN RE: SUBPOENA TO NON-PARTY
LINDSEY O. GRAHAM in his official
capacity as United States Senator,

In the matter of:

SPECIAL PURPOSE GRAND JURY,
FULTON COUNTY SUPERIOR
COURT CASE NO. 2022-EX-000024

CIVIL ACTION NO.
1:22-cv-03027-LMM

## RESPONSE IN OPPOSITION
## TO MATERIAL WITNESS SENATOR LINDSEY O. GRAHAM'S
## EXPEDITED MOTION TO QUASH

Comes now, Fani T. Willis, District Attorney, Atlanta Judicial Circuit, and

makes the following Response to the Expedited Motion to Quash filed by

material witness Senator Lindsey O. Graham ("Movant") by showing and stating

the following.

## STATEMENT OF THE CASE

Pursuant to the requirements of O.C.G.A. § 15-12-100, a January 24, 2022

order was entered convening a Fulton County special purpose grand jury and

authorizing it to investigate "the facts and circumstances relating directly or

indirectly to possible attempts to disrupt the lawful administration of the 2020

elections in the State of Georgia." A central focus of the investigation is former

President Donald Trump's January 2, 2021 telephone call to Georgia Secretary of

State Brad Raffensperger requesting that the Secretary "find 11,780 votes" in the former President's favor.  The special grand jury was sworn on May 2, 2022; it began receiving evidence in June of 2022.

During the course of its investigation, the special purpose grand jury heard from, inter alia, Secretary Raffensperger and his subordinate, Gabriel Sterling. Both of these witnesses had knowledge of telephone calls placed from Movant to Raffensperger in the weeks immediately after the November 3, 2020 election. Both Raffensperger and Sterling have publicly discussed Movant's inquiry to Raffensperger about conducting an audit of Georgia mail-in ballots and the desirability of discarding all mail-in ballots from counties with higher rates of signature disparities.  As Raffensperger told CBS News in November of 2020, "Senator Graham implied for us to audit the envelopes and then throw out the ballots for counties who have the highest frequency error of signatures."[1]  Movant also repeated baseless allegations to Raffensperger of widespread voter fraud in Georgia and elsewhere, allegations that mirrored the

---

[1]     https://www.cbsnews.com/news/georgia-election-brad-raffensperger-lindsey-graham-throw-out-ballots/.

claims being publicly made by then President Trump and persons associated with his campaign.[2]

Movant has publicly characterized his telephone conversations with Raffensperger as part of his personal effort to learn how the Georgia voting process worked; that he was "only acting as a United States senator who is worried about the integrity of the electoral process"; and that he was only exploring a hypothetical when he questioned Raffensperger about whether all the mail-in ballots from certain counties could be thrown out because of signature disparities.[3]

The position Movant takes now is inconsistent with his previous statements. First, just after news of the phone calls broke, Movant made two statements on November 17, 2020 in which he discussed what he had said. Movant disputed Raffensperger's suggestion that he had implied ballots should be thrown out by saying he "talked to him about how you verify signatures. Right now a single person verifies signatures, and I suggested as you go forward, can you change it

---

[2]    https://www.newsweek.com/lindsey-graham-subpoena-georgia-ballots-brad-raffensperger-1722033;
https://www.washingtonpost.com/opinions/2022/07/09/lindsey-graham-georgia-grand-jury/.

[3]    https://www.vox.com/2020/11/18/21571684/lindsey-graham-brad-raffensperger-georgia-ballots.

to make sure that a bipartisan team verifies signatures, and if there's a dispute, come up with an appeal process." When asked why a senator from a different state would make such a call to a Georgia official, Movant replied, "Because the future of the country hangs in the balance."[4]  In a conversation with another reporter, Movant again denied he had suggested that ballots be thrown out, saying, "That wasn't my intent, and that wasn't the purpose of the conversation, to throw out ballots. We're talking about an election we haven't even had yet, which is the Senate races. That was my focus, is how you verify signatures. We've got a new Senate race coming up. Is there anything we can do to make it better."[5]

Additionally, on December 8, 2020, Movant appeared on Fox News and argued that Georgia needed to conduct an audit of the mail-in ballot signatures in the presidential race because "civil war is brewing in Georgia" – essentially the same assertion both Raffensperger and Sterling said that Movant made to them. Further, Movant frequently appeared on Fox News and other outlets to spread election fraud disinformation consistent with unsubstantiated claims being made

---

[4]    https://www.nbcnews.com/politics/2020-election/georgia-secretary-state-raffensperger-says-sen-graham-asked-him-about-n1247968

[5]    https://archive.org/details/CNNW_20201118_010000_Anderson_Cooper_360/start/2400/end/2460

by the Trump campaign.[6]  On Fox Business just days before his telephone call to

Raffensperger: "'Trump has not lost,' [Movant] said before making a direct plea

to the president. 'Do not concede, Mr. President, fight hard.'"[7]

Movant's benign interpretation of his telephone conversations with

Raffensperger and Sterling was **not** consistent with the two Georgia officials'

interpretations that Movant "implied for us to audit the envelopes, and then throw

out the ballots for counties who has the highest frequency error of signatures."[8]

Sterling even granted that while there was definitely some conversation about the

upcoming Senate runoffs, there was "also a secondary conversation, looking

backwards" about whether there should have been more rejections, and whether

that could support a "potential court challenge."[9]  Movant's public

representations about the "hypothetical" nature of his inquiries to Raffensperger

are simply **not** consistent with his statements that Georgia needed to conduct an

---

[6]     https://opoyi.com/usa/republican-senators-back-donald-trumps-allegation-of-election-fraud-301239/; https://www.salon.com/2020/11/09/trump-has-not-lost-lindsey-graham-makes-unsubstantiated-claims-that-dead-people-voted-in-election/.

[7]     https://www.salon.com/2020/11/09/trump-has-not-lost-lindsey-graham-makes-unsubstantiated-claims-that-dead-people-voted-in-election/.

[8]     https://www.vox.com/2020/11/18/21571684/lindsey-graham-brad-raffensperger-georgia-ballots

[9]
     https://archive.org/details/CNNW_20201118_010000_Anderson_Cooper_360/start/2400/end/2460

audit of all mail-in ballot signatures to find disparities or face "civil war."
Movant especially does not confront the fact that he clearly stated he exhorted
Raffensperger to change Georgia's methods of signature verification to a process
which Movant preferred, or that Movant was explicitly attempting to persuade
Raffensperger to do so not because of some hypothetical future legislative act, but
because Movant wanted different processes in place for the Senate runoff
elections. Further, Movant's public statements that he was simply making an
effort to learn how the Georgia voting process worked was **not** consistent with his
public support, encouragement, and abetting of the Trump campaign's efforts to
spread almost identical misinformation about election fraud in Georgia and
elsewhere.

Facially, Movant's actions certainly appear interconnected with former
President Trump's similar efforts to pressure Georgia election officials into
"finding 11,780 votes" and to spread Georgia election fraud disinformation.
Thus, Movant's actions fall within the investigative purview of the special
purpose grand jury to investigate and determine *the facts* of potential
interconnectedness, which should include Movant's sworn testimony (as opposed
to cable news commentary) about the circumstances that spurred his telephone
calls, with whom he consulted prior to the calls, what Movant sought and

obtained by his conversation with the Georgia officials, and whom Movant

consulted after Raffensperger declined his entries.

The District Attorney followed Georgia's Uniform Act to Secure the

Attendance of Witnesses from Without the State, O.C.G.A. § 24-13-90 et seq.,

and secured a Certificate of Material Witness for the testimony of Movant.[10]  A

subpoena was issued for Movant to testify before the grand jury, and he accepted

service.  Movant filed a Notice of Removal to this Court pursuant to 28 U.S.C. §

1446.  *State of Fla. v. Cohen*, 887 F.2d 1451, 1453-1454 (11th Cir. 1989).

Movant subsequently filed an Expedited Motion to Quash the material witness

subpoena for his testimony and Memorandum in Support on July 29, 2022.  (Dkt.

2).  The State's Response has been ordered by noon on August 4, 2022.  (Dkt. 5).

## ARGUMENT

While Movant makes three arguments supportive of his effort to persuade

the Court to quash the subpoena in its entirety, he primarily relies on the privilege

derived from the Speech or Debate Clause of the United States Constitution.

Found in Art. 1, § 6, cl. 1, the provision states in pertinent part that United States

Senators and Representatives,

---

[10]    Movant's concern that the State obtained the Certificate of Material Witness
"*ex parte*" is inapt.  Br. at 3.  There are no "parties" to the grand jury
investigation.  Movant's testimony is being sought as a material witness and the
State followed the statutory procedures to compel his attendance.

> shall in all Cases, except Treason, Felony and Breach of the Peace, be
> privileged from Arrest during their Attendance at the Session of their
> respective Houses, and in going to and returning from the same; and for
> any Speech or Debate in either House, they shall not be questioned in
> any other Place.

The privilege has been interpreted by the United States Supreme Court to protect activities other than speech or debate that fall within the "legitimate legislative sphere," requiring a review "to see whether the activities took place in a session of the House by one of its members in relation to the business before it." *Eastland v. United States Servicemen's Fund*, 421 U. S. 491, 503 (1975). In a seminal case, *Gravel v. United States*, the Court further defined protected activities:

> Insofar as the Clause is construed to reach other matters, they must be
> an integral part of the deliberative and communicative processes by
> which Members participate in committee and house proceedings with
> respect to the consideration and passage or rejection of proposed
> legislation or with respect to other matters which the Constitution
> places within the jurisdiction of either House.

*Gravel v. United States*, 408 U. S. 606, 625 (1972); accord, *Eastland v. USSF*, supra. In other words, courts have extended the Speech or Debate privilege to matters beyond pure speech and debate in either House, but only when necessary to prevent impairment of actual legislative deliberations. *Gravel v. United States*, supra at 625. Notably, the privilege protects only activities which involve references to **actual** legislative acts of the congressional member; a member who is considering how he or she might perform a legislative act in the future or how to vote in the future "is simply not performing a legislative act; a promise to do

8

something is, of course, not the same thing as doing it." *United States v. Renzi*, 686 F. Supp. 2d 956, 974 (Az. 2009).  This principle goes hand in hand with the understanding that the broad construction of the Speech or Debate clause "has always been confined within the limits of **formal**, official proceedings." *Id.* at 978 (emphasis supplied), citing *Bastien v. Office of Sen. Ben Nighthorse Campbell*, 390 F3d 1302, 1314-1315 (10th Cir 2004).  The need for formal legislative procedure includes "the importance of legislative formality of information gathering." *United States v. Renzi*, supra at 978 (emphasis supplied), citing *Gravel v. United States*, supra at 620-621, 625.

Further and as it relates to the matter before the Court, the Speech or Debate privilege is intended to spare a legislator "from having to devote his time and efforts to **defending** himself in court." *United States v. Dowdy*, 479 F2d 213, 221 (4th Cir. 1973) (emphasis supplied).  The privilege secured by the Speech or Debate Clause does not protect members against prosecutions for their *own* benefit but to support the rights of their constituents to have them "execute the functions of their office without fear of prosecutions." *Tenny v. Brandhove*, 341 U. S. 367, 373-374 (1951); accord *Eastland v. USSF, supra at* 503.  The privilege implicates "a right not to be tried." *United States v. Shalhoub*, 855 F3d 1255, 1260 (11th Cir. 2017); accord, *Yeldell v. Cooper Green Hosp*., 956 F2d 10561061 (11th Cir. 1992).  Pertinently, the official seeking Speech or Debate protection "must show that such

immunity is justified for the governmental function at issue." *Bryant v. Jones*, 575

F3d 1281, 1304 (11th Cir. 2009).

## I.   THE SPEECH OR DEBATE PRIVILEGE DOES NOT PROVIDE MOVANT WITH PROTECTION FROM THE MATERIAL *WITNESS* SUBPOENA SEEKING TESTIMONY ABOUT THIRD-PARTY CRIMES.

Movant cannot assert the Speech or Debate privilege to quash the State's

subpoena seeking his testimony as a *witness* before the special purpose grand jury

investigating third-party crimes.  The U. S. Supreme Court expressly held in

*Gravel*, supra, that the privilege does not

> immunize Senator or aide from testifying at trials or grand jury proceedings involving third-party crimes where questions do not require testimony about or impugn a legislative act.

*Id.* at 622; accord *United States v. Dowdy*, supra at 222.

Since the State has already established materiality pursuant to O.C.G.A. §

24-13-90 et seq., a subpoena to secure Movant's sworn testimony with respect to

third-party criminal conduct under valid investigation by the grand jury is proper,

as long as the questions do not implicate any *legislative act* promoted by the

Senator.  *Id.* at 628.  And there are sufficient areas of inquiry for the grand jury

outside any legislative act Movant may have been involved in to make quashal of

the subpoena inappropriate.  The grand jury is entitled to hear Movant's sworn

testimony about, inter alia, the circumstances leading to his telephone calls to

Raffensperger, what Movant sought and obtained from the conversation, and any

coordination either before or after the calls with the Trump campaign's post-election efforts in Georgia.

### A.   Movant's efforts to Distinguish *Gravel* Fall Short

Movant attempts to avoid the plain holding in *Gravel* by making several strawman arguments—none bear scrutiny.  First, Movant claims that his telephone calls to Raffensberger are, *themselves*, "legislative acts."  He improbably claims that, under *Gravel*, this "legislative activity" is protected because his telephone calls to Raffensperger were the exercise of his "duties" as a Senator and "Committee Chair" to investigate voting integrity and irregularities "before voting to certify Joe Biden as President."  Br. at 5, 9, 10, 17.  This is, of course, a meritless assertion.  Personal telephone calls such as the one Movant made may seek "information," but the telephone calls are not themselves "legislative acts."  "The Clause does not, however, bar an inquiry into activities that are casually or incidentally related to legislative affairs, but not a part of the legislative process itself."  *United States v. Jefferson*, 546 F3d 300 310-311 (4th Cir. 2008), citing *United States v. Brewster*, 408 U. S. 501, 512 (1972).

Movant's actions here amount to no more than an individual inquiry—perhaps related to legislative affairs, perhaps not—but certainly not part of any legislative process.  Personal areas of a legislator's interest do not become

legitimate legislative business just because a legislator finds some subjective overlap between the two.

On the face of his claim, Movant demonstrates that his telephone calls to Raffensperger were not any part of a formal Senate investigation, information-gathering process, or legislation.  Instead, Movant argues that his telephone calls were personal attempts to gather information in preparation for his own **future** action—voting to certify the electoral votes.  Even if one accepts that framing, the Speech or Debate privilege does not extend to *informal* "investigations" by an individual Senator to gather information for the purpose of affecting his *future* votes or his *future* efforts to craft proposed legislation.  *United States v. Renzi*, supra at 978, citing *Gravel*, supra at 620-621, 625.  There must be actual pending legislation or a formal Congressional investigation pursuant to passage of legislation.  *Id.*

The substance of Movant's telephone calls as publicly disclosed by Raffensperger and Sterling, in addition to those *made by Movant himself*, demonstrate that Movant's calls were not an attempt to investigate and resolve concerns about Georgia's electoral process for himself and "his constituents."  Br. at 12.  Movant explicitly told reporters that he had tried to persuade Raffensperger to adopt a different method of signature verification, one which Movant *preferred* to the method being used at the time in Georgia. He went further to say that he

wanted to discuss how Raffensperger could make the process "better," explicitly *not* for some future legislative purpose, but to alter either the ongoing recounts or the upcoming Senate runoff elections.  Movant thus, in his *own words*, clarified that he had "cajoled" or "exhorted" an executive branch official to administer his duties in a certain way, precisely the sort of activity which has been found *outside* the sphere of protected legislative activity. *See Gravel*, 408 U.S. at 625.  As the Court succinctly put it:

> No argument is made, nor do we think that it could be successfully contended, the Speech or Debate Clauses reaches conduct, such as was involved in the attempt to influence [the Georgia Secretary of State], that is in no wise related to the due functioning of the legislative process.

*Gravel*, supra at 624.

When combined with the recollections of Raffensperger and Sterling, a reasonable observer may conclude Movant was seeking to cajole Raffensperger into conducting an audit of Georgia mail-in ballot signatures and to discard *all* mail-in votes from those counties with a high proportion of signature disparities— a move that would benefit Movant's political ally.  As Raffensperger publicly said soon after Movant's calls, "It sure looked like he was wanting to go down that road".[11]  In support of Raffensperger's interpretation, Movant reiterated on Fox

---

[11]    https://www.vox.com/2020/11/18/21571684/lindsey-graham-brad-raffensperger-georgia-ballots.

News—weeks **after** his phone call with Raffensperger—that Georgia needed to conduct an audit of mail-in ballots and signature verifications or face "civil war." Once again, *Gravel* provides clarity; there, the Court held that cajoling and exhortations by Members of Congress in an attempt to influence the actions of others "is not protected legislative activity." *Gravel*, supra at 624; accord, *Renzi*, F. Supp. 2d, supra at 973.

Attempts to frame these telephone calls as a part of his "duty" as a Senator and "Committee Chair" to ensure election integrity do not fare any better.  Movant makes no effort at all to identify where this "duty" originates, and clearly most out-of-state Senators did not share Movant's perception of "duty" since calls to Raffensperger were not forthcoming from any other Senator.[12]  To the contrary, Movant's contact with Georgia Secretary of State was far outside the norm, and the unusual activity that mirrored the Trump campaign's own efforts to potentially disrupt the Georgia election certification process is well within the scope of the grand jury's investigation.

_____

[12] Indeed, *Gravel* notes that it is a common practice for Members of Congress to contact officials within the "Executive Branch of the Government and with administrative agencies -- they may cajole, and exhort with respect to the administration of a *federal* statute." 408 U.S. at 625 (emphasis added). There is certainly no indication that calling state-level executives in a state which a Senator does not even represent is in any way "commonplace."

The Constitution provides that it falls to the States to prescribe "the Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl. 1, and the Supreme Court has recognized that "States retain the power to regulate their own elections." *Burdick v. Takushi,* 504 U. S. 428, 433 (1992); accord, *Woods v. Raffensperger*, 501 F. Supp. 3d 1310, 1325 (N.D. Ga. 2020). Further, oversight responsibility of election issues is in the Senate *Rules* Committee, not Movant's Judicial Committee.  Under these circumstances, Movant had no identifiable "duty" as a Senator or Judicial Committee chair to make personal, individual calls to Raffensperger about Georgia's mail-in ballots and signature verifications.[13]  Consequently, Movant's telephone calls, themselves, are **not** privileged "legislative acts" since they are not "an *integral* part of the deliberative and communicative processes" by which Members participate in committee and House proceedings or any other subject within Congress' constitutional jurisdiction.  *Gravel*, supra at 625 (emphasis supplied).

## B.   Inquiry into Third-Party Criminal Conduct is Permitted

Despite *Gravel'*s clear holding to the contrary, Movant asserts to this Court that, "There is no 'third-party criminal conduct' exception to the Clause." Br. at

---

[13]   Considering Georgia's right to regulate of its own elections, Movant's telephone calls to Raffensperger seeking an audit of Georgia's mail-in ballots and signature verifications may appear to be interference as opposed to "duty."

16-17.  Since that is patently untrue on the face of the *Gravel* opinion, it is

unsurprising that Movant's arguments fail to support that assertion.

Movant first argues that *Gravel* found it "incontrovertible" that the Speech

and Debate Clause protects legislative activity taken in preparation for a

committee hearing.  What is actually incontrovertible is that Movant's telephone

calls to Raffensperger were **not** made in preparation for a "committee hearing."

Upon closer examination, it becomes apparent that Movant is alleging his

telephone calls are "legislative acts" made in preparation for a "committee

meeting," i.e., the Senate's vote to certify Joe Biden as President.[14]

The main problem with this argument is Movant's failure to create a nexus

between his personal phone calls to Raffensperger and what he considers the

"committee meeting," i.e., the **Senate's** act of certifying the vote.  In fact,

Movant's argument clearly illustrates that the phone calls to Raffensperger were

undertaken to further his personal, political interest alone.  He directs this Court to

no evidence that he contacted Raffensperger in furtherance of any interest of a

_____

[14]     Again, Movant's own statements make clear that his conversation with
Raffensperger had nothing to do with his vote to certify Georgia's votes. Instead,
Movant clarified that while some had "said the [Georgia] secretary of state took
the law in his own hands" or acted "unlawfully," a "Federal judge said no[,] [and]
I accept the Federal judge."  It was not his conversation with Raffensperger that
led to Movant's action, or even a change in signature verification processes
(which does not seem to have even occurred); it was simply the findings of a
federal judge. *See* Movant's Memorandum, p. 14.

"committee" or in relation to any committee's legislation.[15]  No protection is warranted "unless the information is being gathered as part of, and in connection with, or in aid of a legitimate legislative act."  *United States v. Renzi*, supra at 977.

Movant next argues that *Gravel* does not "sweep as broadly" as to encompass a third-party criminal conduct exception to the Speech or Debate Clause because to do so would interfere with lawmaker's abilities to "focus on their public duties."  Br. at 17.  He cites the 11th Circuit's decision in *In re Hubbard*, 803 F3d 1298 (11th Cir. 2015).  However, *Hubbard* involved a civil action, not a criminal investigation into a third-party's actions.  Further, *Hubbard* involved lawmakers' assertion of the privilege in relation to subpoenas for the production of documents *related to their passage of legislation*.  Since the privilege "protects the legislative process itself," the privilege protected the sought-after documents "whether or not the legislators themselves have been sued."  *Id.* at 1308.  *Hubbard* did not mention *Gravel*, and the *Hubbard* case was completely unrelated to *Gravel*'s exception for a legislator's testimony at trial or grand jury proceedings involving third-party crimes.  The *Hubbard* case is not

---

[15]   The one hearing conducted by Movant concerning the election, to which he points in his brief, called the executives of Facebook and Twitter as witnesses in order to discuss "censorship" of opinions on social media. No serious contention can be mad that this hearing had anything to do with Movant's phone calls to Secretary Raffensperger. *See* Breaking the News: Censorship, Suppression, and the 2020 Election, https://www.judiciary.senate.gov/meetings/breaking-the-news-censorship-suppression-and-the-2020-election.

applicable here.[16]   There is simply no support for his claim that, "There is no 'third-party criminal conduct' exception to the Clause."  Br. at 17.

In objecting to an accurate reading of *Gravel*, Movant next argues that "other courts" including the U. S. Supreme Court, itself, have "refused to read *Gravel* broadly" so as to encompass a third-party criminal conduct exception to the Speech or Debate Clause.  Br. at 18.  None of the cited cases support Movant's claim.  In *United States v. Dowdy*, for example, supra at 225, fn. 20*,* **the lawmaker was the criminal target from the onset**.  His grand jury testimony was for the purpose of asking him about specific statements that he then denied making.  Dowdy was convicted of perjury and other offenses related to his legislative acts and motivations for performing them.  *Id.* at 225. Notwithstanding, the 4th Circuit in *Dowdy* recognized the *Gravel* exception related to grand jury testimony, *even where the lawmaker is the target of the criminal investigation*.  In fact, the court affirmed Dowdy's perjury convictions stemming from his grand jury testimony.  *Id*. at 224 B, 225 fn. 20.  What it ultimately proscribed was any conviction based upon a congressman's

---

[16]     Additionally, Movant's complaints about "inability to focus on public duties" is not the standard for application of the privilege.  The privilege implicates "a right not to be tried," not a right not to be distracted.  *United States v. Shalhoub*, 855 F3d 1255, 1260 (11th Cir. 2017); accord, *Yeldell v. Cooper Green Hosp*., 956 F2d 10561061 (11th Cir. 1992).

preparation for a subcommittee hearing, as that legislative preparation fell

withing the Speech or Debate privilege.  As the 4th Circuit later explained,

> What we found offensive in *Dowdy* was not that the grand jury
> may have considered legislative acts, but that proof of such acts
> was actually presented at trial.

*United States v. Jefferson*, supra at 314.[17]

Here, contrary to Movant's claim, *Dowdy* did not involve a lawmaker's

testimony to a grand jury investigating **a third-party's** criminal acts, and *Dowdy*

did not seek to limit *Gravel*'s privilege exception as to **third-party** criminal acts.

*United States v. Dowdy*, supra at 222.   The *Dowdy* case is simply not applicable

here.

Movant also claims the U. S. Supreme Court, *itself,* has refused to read its

*Gravel* case "broadly" so as to encompass a third-party criminal conduct

exception to the Speech or Debate Clause.  He relies upon *Eastland v. USSF*,

supra at 507-508, for this proposition—a decidedly misplaced reliance.

*Eastland* was a civil case involving the Senate Subcommittee on Internal

Security's investigation into a nonprofit organization, USSF, pursuant to a Senate

resolution to perform such investigation.  In furtherance thereof, the subcommittee

---

[17]   Ultimately, the *Jefferson* court found that pretrial in camera review by the district court was sufficient to protect against the unauthorized use of grand jury material protected by the Speech or Debate privilege as legislation. *Id*. at 314.

served a subpoena duces tecum on USSF's bank to obtain their bank records.  The

lower court enjoined the production of the documents.  The *Eastland* court held

that the Speech or Debate Clause provided complete immunity for the

subcommittee's issuance of the subpoena because it was acting within the Senate's

legislative authority.  It was *USSF* that tried to rely on *Gravel*, not the lawmakers.

USSF cited language in *Gravel* that the *Eastland* court found "unwarranted," since

unlike the subcommittee's proper legislative actions "the quoted language from

*Gravel* referred to actions which were **not** 'essential to legislating.'"  *Eastland*,

supra at 507-508.

So, contrary to Movant's claim, *Eastland* did not seek to limit *Gravel* or

construe it more narrowly, and *Eastland* did not involve *Gravel*'s third-party

criminal conduct exception to the Speech or Debate Clause.  *Eastland* is

completely inapplicable here.  And Movant has again failed to support his claim,

"There is no 'third-party criminal conduct' exception to the Clause."  Br. at 17.

Movant's favored reading of *Gravel* cannot be reconciled with the actual

caselaw.  He is simply wrong to assert that *Gravel*:

> "stands at most for the proposition that a grand jury may question a
> representative if its criminal inquiry 'focuses on the manner and methods'
> by which the representative *illegally* came to his information – e.g., when
> the *allegation is that the Senator stole or received* 'stolen classified
> papers.'"

Br. at 18.  That overly restrictive read of *Gravel* is baseless for several reasons.

First, the "focuses on manner and methods" language upon which Movant relies is

from the 4th Circuit's fn. 20 in *Dowdy*, supra at 225.  However, the language in fn.

20 in *Dowdy* cannot impose limitations on the plain language of the United States

Supreme Court's ruling in *Gravel*, and that Court recognized no such limitations.[18]

It is well settled that the United States Supreme Court's decisions remain binding

precedent until that Court sees fit to reconsider them.  *Hohn v. United States*, 524

U. S. 236, 252-253 (1998); accord, *Meders v. Warden*, 911 F3d 1335, 1351 (11th

Cir. 2019).  So, while the 4th Circuit in fn. 20 indicated its intent to limit its **own**

inquiry to "the manner and methods" by which a criminal defendant lawmaker

obtains certain information, nothing in *Gravel* supports that self-imposed

limitation.[19]  Movant's claim that *Dowdy's* fn. 20 is precedent that should control

this Court application of *Gravel* to his Expedited Motion to Quash is totally

baseless.  Moreover, Movant is not a criminal defendant lawmaker so as to make

*Dowdy*'s fn. 20 applicable.

---

[18]    In fact, the 4th Circuit expressly recognized that exceptions to Speech or
Debate privilege under *Gravel* might be applicable in *Dowdy*, but declined to read
*Gravel* "literally."  *Dowdy*, supra at 225, fn. 20.

[19]    Indeed, the 4th Circuit apparently abandoned its limitation during its
discussion of *Dowdy* in its subsequent *Jefferson* case, supra. at 314.

Second, Movant's entire assertion goes to grand jury inquiries involving **criminal defendant** lawmakers. His assertion makes that clear with its oddly specific contentions that a representative must "illegally" obtain documents and there must be "allegations" that a Senator "stole or received stolen" classified documents. Br. at 18. However, that is not Movant's posture before this Court. Movant's "illegality" assertions do not even address *Gravel*'s Speech or Debate exception for testimony "involving **third-party crimes** where the questions do not require testimony about or impugn a legislative act." *Gravel*, supra at 623 (emphasis added). While *Gravel* does not permit a "freewheeling inquiry into a Senator's investigations and factfinding" that involve the Senator's legislation functions, *Gravel* also does **not** permit the Speech or Debate Clause to preclude a Senator's testimony to a grand jury "when *another's* criminal conduct is involved." Br. at 18. Movant's assertions seem to simply wish away the crux of the matter—*Gravel*'s third-party crimes exception.

Finally, Movant buries in a footnote a novel claim that even if *Gravel* did establish a Speech or Debate exception for **third-party crimes** where the questions do not require testimony about or impugn a legislative act, *Gravel* at 623, that exception would not apply here because the subpoena is a state proceeding and "not a *federal* criminal investigation or prosecution." Br. at 18, fn. 16. Movant claims that a *federal* criminal investigation is the "only time Gravel's

supposed exception could even conceivably apply." *Id.*  There is no merit to this claim.  Movant fails to state *why* the application of *Gravel*'s third-party crime exception to a state's proceedings is so "inconceivable" to him.  And, of course, Movant's assertion begs an answer to the question:  if *Gravel*'s application of the Speech or Debate privilege applies to the State grand jury proceedings—an application which Movant has asserted throughout his Memorandum—why wouldn't *Gravel*'s **exception** to the privilege be equally applicable to the SPGJ State proceedings?  Logically, the answer to that question undercuts Movant's claim.

Before this Court, Movant has not met his burden to show that Speech or Debate immunity "is justified for the governmental function at issue." *Bryant v. Jones*, 575 F3d 1281, 1304 (11th Cir. 2009).   He has not shown that his telephone calls with Raffensperger were either legislative investigations and or related to a legitimate legislative act.  Further, Movant has not shown the Speech or Debate privilege immunizes him from "testifying at trial or grand jury proceedings involving third-party crimes where questions do not require testimony about or impugn a legislative act. *Gravel*, supra at 622.  Indeed, as the 4th Circuit determined in *Jefferson*, supra at 313, there can be sufficient procedural protection to ensure Movant receives any Speech and Debate protections to which he is

legitimately entitled while still requiring his testimony at the grand jury.   Under these circumstances, Movant has failed to establish a basis for quashal.

## II.   SOUVEREIGN IMMUNITY IS NO BAR TO SECURING MOVANT'S COMPLAIANCE WITH A LAWFULLY ISSUED SUBPOENA FOR TESTIMONY IN A GRAND JURY'S CRIMINAL INVESTIGATION.

Absent a waiver, sovereign immunity shields the Federal Government and its agencies from **suit**. *FDIC v. Meyer*, 510 U. S. 471, 475 (1994).  Here, to the extent that sovereign immunity is at all relevant, Movant is not being subject to suit.  So, his material witness testimony with regard to third-party criminal investigation is not precluded by sovereign immunity.  *FDIC v. Meyer*, supra; *Loeffler v. Frank*, 486 U. S. 549, 554 (1988).[20]

Indeed, Movant has no immunity as a *witness* in a criminal case or investigation for which he has been lawfully subpoenaed.  *Gravel*, supra at 615.

> The constitution gives to every man, charged with an offense, the benefit of compulsory process, to secure the attendance of his witnesses.  I do not know of any privilege to exempt members of congress from the service, or the obligations of a **subpoena** in such cases.

---

[20]     Movant's citations to cases that allow the head of an Executive department to prevent his subordinate from giving expert testimony in a civil proceeding are completely inapplicable to Movant's efforts to quash the grand jury subpoena. See, e.g., Br. at 21 citing to *Boron Oil Co. v. Downie*, 873 F2d 67, 70 (1989).

*Id*. (emphasis in original).  Consequently, Movant's sovereign immunity claims

present no basis for granting the Expedited Motion to Quash.

### III. AN "EXCEPTIONAL CIRCUMSTANCES" SHOWING IS NOT APPLICABLE TO A MATERIAL WITNESS SUBPOENA TO APPEAR BEFORE A GRAND JURY CONDUCTING A *CRIMINAL* INVESTIGATION.

Movant asserts that he is a high-ranking government official, and thus, the

State cannot "justify forcing a sitting Senator to testify before a county grand jury"

absent a showing of "exceptional circumstances."  Br. at 23.  Movant's claim is

meritless.  No "exceptional circumstances" need be shown when the State has

served a material witness subpoena to a legislator (rather than an executive branch

official) in a grand jury **criminal** investigation.  Every case replied upon by

Movant for his "exceptional circumstances" argument involved a **civil** proceeding

in which a high-ranking official was subpoenaed to provide agency/departmental

information that a subordinate official could as easily provide.  See, e.g., *In re*

*United States*, 985 F2d 510, 512 (11th Cir. 1993); *In re U. S. Dep't of Educ.*, 25

F.4th 692, 700 (9th Cir. 2022); *United States v. Morgan*, 313 U. S. 409, 422

(1941).  Movant does not cite a single case in which a grand jury's *criminal*

investigation may not secure a material witness warrant for a "high ranking

government official" to provide testimony in furtherance of its criminal

investigation.[21]  "I do not know of any privilege to exempt members of "congress

from the service, or the obligations of a **subpoena** in such cases." *Gravel*, supra at

615.

Additionally, "exceptional circumstances" exist, even if the "high-ranking

official" doctrine should not apply in this scenario. Here, Movant is the individual

with the specific information sought by the grand jury, and the information is

certainly material. The special purpose grand jury was convened to investigate

election interference by, inter alia, former President Trump by personally

telephoning Raffensperger, pressuring him to "find" 11,780 votes, and spreading

disinformation about election fraud in Georgia.  Movant, a close confidant of Mr.

Trump, engaged in conduct that, according to other participants on the pertinent

phone call he made, was similar.  Contrary to Movant's assertion, no one else has

his "unique" knowledge in relation to the calls he made to Raffensperger, or the

motivation, preparation, and/or aftermath of those calls, and Movant's post-

---

[21]     Movant also asserts that in order to secure his testimony, the State is
required to show Movant's (1) "official bad faith"; (2) the information sought
from Movant "is essential to the case"; and (3) the information cannot be
obtained by less obtrusive means.  Movant's assertion in incorrect.  The three-
pronged showing he outlines is expressly directed to obtaining the deposition of
an Executive office cabinet secretary for *discovery* purposes related to the
workings of her department.  This showing is completely irrelevant in relation to
Movant's material witness subpoena to appear before a grand jury conducting a
criminal investigation, where the hurdle of materiality has already been met.

election claims of voter fraud.  The fact that Movant's claims about the content of his telephone calls expressly **contradict** both Raffensperger's and Sterling's claims puts the lie to Movant's assertion that information about the contents of the telephone calls "could easily be obtained from other people on the calls."  Br. at 23.  Further, in its certification of material witness that is in the Court's record, the court below expressly found that Movant "is a necessary and material witness to the Special Purpose Grand Jury investigation" who "questioned Secretary Raffensperger and his staff about reexamining certain absentee ballots case in Georgia in order to explore the possibility of a more favorable outcome for former President Donald Trump."  Such an exhortation, when made to the highest-ranking elections official in the state of Georgia, is unquestionably germane to an investigation concerning possible disruptions to the lawful administration of elections. Under these circumstances, Movant cannot reasonably argue that there is "no need" for his testimony.

Consequently, Movant's exceptional circumstances claims present no basis for granting the Expedited Motion to Quash the material witness subpoena for Movant's testimony before the grand jury.

## <u>CONCLUSION</u>

Movant asserts that his arguments show that "all roads lead to quashal."  Br. at 25.  But not where, as here, all Movant's roads are built on the shifting sands of

erroneous legal arguments, inapplicable legal principles, and citations to caselaw that fail to support any legal point being made.  Indeed, the State submits there's not a *solid* road to be found in Movant's Memorandum.  Rather than fantasizing about roads to quashal, Movant would be better served by consideration of Thomas Jefferson's maxim that "legislators ought not to stand above the law they create but ought generally to be bound by it as are ordinary persons."  *Gravel*, supra at 615.  To that end, the State respectfully requests that this Court deny Movant's Expedited Motion to Quash the SPGJ's material witness subpoena for Movant's testimony.

Respectfully submitted, this 4th day of August 2022.

FANI T. WILLIS
DISTRICT ATTORNEY
ATLANTA JUDICIAL CIRCUIT


By:

By: *s/ F. McDonald Wakeford*
F. McDonald Wakeford
Chief Senior Assistant District Attorney
Atlanta Judicial Circuit
Georgia Bar No. 414898
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
fmcdonald.wakeford@fultoncountyga.gov

<u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel hereby certifies that this pleading complies with the Local Rules of this Court, including Local Rules 5.1.C and 7.1.D (N.D. Ga.) in that it is double-spaced and composed in 14-point Times New Roman font.

This 4th day of August 2022.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify the foregoing was served upon the following by email:

BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com

Dated this 4th day of August, 2022.

*s/ F. McDonald Wakeford*

F. McDonald Wakeford