# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| *In re* Subpoena to Non-Party Lindsey O. Graham in his official capacity as United States Senator,<br><br>in the matter of:<br><br>Special Purpose Grand Jury, Fulton County Superior Court Case No. 2022-EX-000024. | Civil Action No.<br>1:22-cv-03027-LMM |

# REPLY IN SUPPORT OF SENATOR GRAHAM'S EXPEDITED MOTION TO QUASH

## INTRODUCTION

After the 2020 election, Senator Graham had two months before he had to vote to certify the results of the election under the Electoral Count Act. As Senator and Chair of the Judiciary Committee, he also had to examine the issues that arose from that election and determine whether to hold hearings or propose legislation. As part of his legislative investigation, the Senator made phone calls to the Georgia Secretary of State, which helped him decide to vote to certify Joe Biden as President.

Faced with the Senator's investigation, which is objectively "legislative," the District Attorney here wants to question Senator Graham about his *subjective* "motivation[s]" for making the calls. Doc. 9 at 26 ("Opp."). She does not claim to know those motivations—she alleges nothing concrete about them. She instead essentially says that "we don't know what we don't know" and then speculates about how those blanks might be filled in. Our Constitution and laws, however, prevent this speculative inquiry into Senator Graham's motives and legislative activity.

The District Attorney's response rests nearly entirely on the idea that this is "a grand jury's *criminal* investigation" into "third-party *criminal*" conduct, as if the relevant immunities fall away in the face of criminal proceedings. *E.g.*, Opp. 24 (emphasis added). Those constitutional protections, though, are much more solid than that; they were "born primarily of a desire" to "prevent intimidation by the

1

executive and accountability before a possibly hostile judiciary," with criminal allegations being the Clause's "predominate thrust." *United States v. Johnson*, 383 U.S. 169, 181–82 (1966). But no matter here, because the District Attorney makes no criminal allegations (only criminal musings) anyway—and her "special grand jury" is a purely "civil investigat[ive]" body that cannot even indict. *Kenerly v. State*, 715 S.E.2d 688, 690 (Ga. App. 2011). This Court should quash the subpoena.

## ARGUMENT

**I. THE SPEECH OR DEBATE CLAUSE IMMUNIZES SENATOR GRAHAM FROM HAVING TO TESTIFY IN THIS CIVIL CASE.**

As the District Attorney acknowledges, the U.S. Supreme Court interprets the Speech or Debate Clause (U.S. Const. art. I, § 6, cl. 1) broadly, "to protect activities other than speech or debate that fall within the 'legitimate legislative sphere.'" Opp. 8 (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975)). All thus agree that if the subpoena "implicate[s] any *legislative act* promoted by the Senator," this Court should quash the subpoena. Opp. 10.

**1.** The subpoena implicates Senator Graham's legislative acts and must therefore be quashed. The District Attorney wants to question Senator Graham about "the substance of the telephone calls" he made in November 2020, Doc. 2-3 (Willis Petition) ¶ 3, and specifically about "the circumstances leading to his telephone calls," what the Senator "sought and obtained from the conversation," and

2

"any coordination" with President Trump—in short, "the motivation, preparation, and/or aftermath of those calls." Opp. 10, 26. Setting aside for the moment the Senator's *motives* for making the calls, all agree about the calls' *content*: they were about Georgia's "'process'" related to "verify[ing] signatures on absentee ballots." Doc. 2-1 ("Mot.") at 13–14 (quoting Deputy Secretary Sterling); *accord* Opp. 2–3.

The problem for the District Attorney is that this content (election law and absentee ballots) is a thoroughly legislative subject, and so inquiring into Senator Graham's investigations on that subject is prohibited. For one thing, this is a topic "on which legislation may be had," *Eastland*, 421 U.S. at 508—including legislation creating national standards for mail-in voting (as Senator Graham said he wanted) and amending the Electoral Count Act (as would the bipartisan bill Senator Graham co-sponsors). *See* Mot. 9–10, 13–14. For another thing, these subjects are directly related to the Senator's Committee responsibilities, which include determining how best to address challenges that arise from past elections. *See* Mot. 10–11 (collecting examples). And for still another thing, determining the validity of each State's electoral votes, including by understanding and resolving "objections" in the various States, 3 U.S.C. § 15, is a core duty under the Constitution and Electoral Count Act. *See* Mot. 11–12. Far from being "*outside* the sphere of" the legislative process, Opp.

13, therefore, Senator Graham's calls, on their face, fall in the heartland of "legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951).

**2.** As predicted (Mot. 16–20), the District Attorney principally responds by relying on a selective reading of *Gravel v. United States*, 408 U.S. 606 (1972). The District Attorney plucks the following quote from *Gravel*: "the privilege does not 'immunize Senator[s] or aide[s] from testifying at trials or grand jury proceedings involving third-party crimes where the questions do not require testimony about or impugn a legislative act." Opp. 10. Framed the District Attorney's way, Senator Graham's testimony would be permitted if (1) this were a third-party criminal investigation, *and* (2) the questions do not relate to a legislative act.

Neither of the District Attorney's own two prongs is met. *First*, the District Attorney never alleges that anyone committed a crime. And indeed, she instituted not a *criminal* grand jury that could indict, but rather a *civil* "special purpose" investigative body that cannot. *Kenerly*, 715 S.E.2d at 690; *see* Mot. 18 n.16. Under Georgia law, "special purpose grand juries conduct only civil investigations." *Kenerly*, 715 S.E.2d at 692; *see State v. Bartel*, 479 S.E.2d 4, 6 (Ga. App. 1996). This civil investigation thus falls outside of any supposed exception for "grand jury proceedings involving third-party crimes." Opp. 10. Alone, this resolves so many of the District Attorney's key arguments, which rely on her unexplained assumption

that this grand jury is conducting a criminal investigation of a crime committed by former President Trump. That argument fails even on the District Attorney's reading of *Gravel* because this grand jury is civil and she in any event never explains the supposed crime it is investigating. *See Kenerly*, 715 S.E.2d at 692.

*Second*, and in any event, the District Attorney acknowledges that her exception to the Speech or Debate immunity applies only "where questions do not require testimony about . . . a legislative act," Opp. 10 (quoting *Gravel*)—which is to say, everyone agrees that the District Attorney may not inquire into legislative activity. So the Court is back to square one, determining whether this subpoena involves "legislative activity," and *Gravel* has no independent work to do. Nor do the facts of *Gravel* help the District Attorney: If you steal documents, reading them on the floor does not undo the original crime by transforming it into "legislative activity." But nothing of the sort happened here, where the very activity the District Attorney wants to ask about was legislative from the start and, again, she alleges no crime. *See United States v. Dowdy*, 479 F.2d 213, 225 n.20 (4th Cir. 1973).

**3.** On the question all thus at bottom agree matters—whether legislative activity is involved—the District Attorney has few things to say. None persuades.

The District Attorney's main argument is that Senators are immunized only when there is a currently "pending" and "formal" investigation or legislation. Opp.

5

8, 12.  But this atextual "pending"/"formal" exception to immunity is plucked from thin air.  The cases in fact hold that "the applicability of the Speech or Debate Clause's protections does not hinge on the formality of the investigation," *SEC v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 236 (S.D.N.Y. 2015) (collecting cases), or on whether the legislation is pending or "potential," *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 151 (S.D.N.Y. 2017) (collecting cases).  *See Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 518–19 (D.D.C. 2021).  The only case the District Attorney cites on this score *agrees* that "[i]t does not matter" whether the communications are "formal or informal," and that the Speech or Debate immunity does not hinge on whether "legislation is [already] introduced in Congress." *United States v. Renzi*, 686 F. Supp. 2d 956, 960 (D. Ariz. 2010) (making private land deals and bribes not "legislative").  What matters is that the District Attorney wants to question Senator Graham about a legislative act "that has already been performed," which she may not do.  *United States v. Helstoski*, 442 U.S. 477, 490 (1979).

Nor could it be any other way.  "Obtaining information pertinent to potential legislation or investigation is one of the 'things generally done in a session of the [Congress],' *Kilbourn v. Thompson*, [103 U.S. 168, 203 (1880)], concerning matters within the 'legitimate legislative sphere,' *Eastland*, 421 U.S. at 503."  *Miller v.*

6

*Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983). "Without information," whether formally or informally collected, "Congress would be shooting in the dark, unable to legislate 'wisely or effectively.'" *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020). Gathering information "about a subject on which legislation may be had" is thus protected, even if "it takes the searchers up some 'blind alleys' and into nonproductive enterprises"; "[t]o be a valid legislative inquiry there need be no predictable end result." *Eastland*, 421 U.S. at 508–09.

Given how instructive it is, it is understandable, even if surprising, that the District Attorney would assert that "*Eastland* is completely inapplicable here." Opp. 20. But her basis for so saying is that "*Eastland* was a civil case," Opp. 19—a basis that does not hold water given that criminal cases were the "predominant thrust" behind the Clause, *Johnson*, 383 U.S. at 182, and which crumbles anyway given that this, too, is a "civil investigation" and "civil case," *Bartel*, 479 S.E.2d at 7.

What's more, even if there were some sort of "formal" and "pending" exception to constitutional immunity, the District Attorney could not meet it. For there was a formal and pending matter when Senator Graham made the calls: the certification of the 2020 election under the Electoral Count Act. Thus, when the District Attorney says that the Senator "makes no effort at all to identify where this 'duty' originates," Opp. 14, it leaves one scratching one's head. The opening

7

Memorandum thoroughly explains that Senator Graham "was investigating to adequately fulfill his duties under the Electoral Count Act," and that other Senators were doing the same. Mot. 11–12; *see Mazars*, 140 S. Ct. at 2031.

This also dispels the District Attorney's notion that Senator Graham was merely "personal[ly]" interested and that there was no federal subject on which he could use the information he obtained. Opp. 14–17. Not only does this ignore the Electoral Count Act—the District Attorney fails to so much as mention it—but it also misses two other aspects of why the calls were integral to the federal legislative process. *First*, the District Attorney boasts that "it falls to the States to prescribe 'the Times, Places and Manner of holding Elections for Senators and Representatives,'" as if that subject matter were off limits to Congress. Opp. 15. But she leaves out the rest of that clause, which is that "Congress may at any time by Law make or alter such Regulations." Art. I, § 4, cl. 1. *Second*, she minimizes the Senator's role on the Judiciary Committee, insisting that only "the Senate *Rules* Committee" may oversee "election issues." Opp. 15. But this is demonstrably false. *See, e.g.*, Mot. 10–11 (collecting examples of Judiciary Committee hearings about voting integrity and election-law issues, including investigations into and examination of past elections). Nor, in our separation-of-powers system, should a federal court police what the various congressional committees may or may not investigate.

8

In the end, then, even the District Attorney must concede that Senator Graham's "actions . . . perhaps relate[] to legislative affairs." Opp. 11. Of course they do. That, though, gives away the game for the District Attorney. Under the Speech or Debate Clause, all this Court may do is answer whether Senator Graham's phone calls "may fairly be deemed within [his] province" as a Senator. *Tenney*, 341 U.S. at 378. The Court may not permit the District Attorney's inquiry into whether the phone calls were "legislative in fact," for the Speech or Debate Clause "does not simply protect against inquiry into acts which are manifestly legislative," but also "acts which are purportedly or apparently legislative." *Dowdy*, 479 F.2d at 226. Because there is at the very least an interpretation of the phone calls under which they were integral to Senator Graham's legislative factfinding as a U.S. Senator, the District Attorney may not "question[]" Senator Graham about them in this civil investigatory proceeding. U.S. Const. art. I, § 6, cl. 1.

**4.** That leaves the District Attorney with one argument, and it appears to be the argument implicitly driving this whole subpoena: the idea that someone should find out why Senator Graham *really* made the calls—to find out, in short, his "motivation[s]." Opp. 26. This, though, is the kind of inquiry *most* foreclosed by the Speech or Debate Clause. "[I]t simply is 'not consonant with our scheme of government for a court to inquire into the motives of legislators.'" *Bryant v. Jones*,

9

575 F.3d 1281, 1307 (11th Cir. 2009). Legislative immunity is thus a purely objective inquiry; it "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998); *see Scott v. Taylor*, 405 F.3d 1251, 1256 n.7 (11th Cir. 2005). For good reason, too: Especially with a subject that invokes as much "political passion" as the 2020 election, it is easy to "attribute[]" "dishonest or vindictive motives . . . to legislative conduct." *Tenney*, 341 U.S. at 378. But the voters, not courts and not special-purpose grand juries, are "the place for such controversies." *Id.* The District Attorney's thinly veiled suggestion of "an unworthy purpose"—that Senator Graham was acting on behalf of President Trump—thus "does not destroy the privilege." *Id.*; *see Bryant*, 575 F.3d at 1304–07 (party shows protected legislative activity when the activity could be objectively viewed as legislative).

The Clause's immunity turns only on "the question whether, stripped of all considerations of intent and motive, [the representative's] actions were legislative." *Bogan*, 523 U.S. at 55. Because they objectively were here, the Speech or Debate Clause's immunity requires quashal.[1]

---

[1] In keeping with 28 U.S.C. § 1442's guarantee of a federal forum here, *see generally* Doc. 1 (Notice of Removal), given that courts properly make legislative-immunity decisions based on the pleadings, *see* Mot. 13–14, and because this immunity from even appearing—from being "questioned"—is more than just a testimonial privilege, the District Attorney properly does not contest ripeness or removal.

10

## II. SOVEREIGN IMMUNITY CONTINUES TO BAR THE SUBPOENA, BECAUSE THERE IS NO EXCEPTION TO SOVEREIGN IMMUNITY FOR CIVIL GRAND JURY SUBPOENAS.

As explained in Senator Graham's opening Memorandum (pp. 21–22), sovereign immunity also bars the witness subpoena secured by the District Attorney as part of a state investigatory grand jury. Indeed, many cases rely on sovereign immunity "to quash a subpoena of a federal employee." *Moore v. Armour Pharm Co.*, 129 F.R.D. 551, 555 (N.D. Ga. 1990), *aff'd*, 927 F.2d 1194 (11th Cir. 1991).

The Court should follow that well-established line of authority, rejecting the District Attorney's assertion that sovereign immunity simply falls away in the face of a witness subpoena "in a criminal case or investigation." Opp. 24. The District Attorney's argument fails even on its own terms because the purported grand jury here is a civil body, meaning this case does not fall within a purported exception for "a grand jury's criminal investigation" (Opp. 24). *See supra* at pp. 4–5. And in any event, the District Attorney's claimed exception is contrary to both case law and common sense: The violation of immunity is the same no matter the nature of the proceeding because it is the compulsion that offends the immunity. *See Smith v. Cromer*, 159 F.3d 875, 879–81 (4th Cir. 1999) (quashing subpoena issued in connection with state criminal action based on sovereign immunity (collecting cases)); *Louisiana v. Sparks*, 978 F.2d 226, 234–35 (9th Cir. 1992) (same). Nor can

11

the many decisions quashing subpoenas based on sovereign immunity be distinguished on the ground that they involve executive branch officials; sovereign immunity also protects legislative officials—who make up one of the sovereign's coequal branches. *See, e.g.*, *Keener v. Congress of United States*, 467 F.2d 952, 953 (5th Cir. 1972) (sovereign immunity applies to Congress). That leaves the District Attorney relying only on *dicta* from *Gravel*, a case involving an intra-sovereign dispute between two different branches of the federal government that does not even mention sovereign immunity—and therefore lends no support to its abrogation.

### III. THE HIGH-RANKING OFFICIAL DOCTRINE PROHIBITS ENFORCEMENT OF THE CIVIL GRAND JURY SUBPOENA.

In resisting the high-ranking official doctrine, the District Attorney first attempts to sidestep the doctrine and then seeks to satisfy it. Both tactics fail.

*First*, the District Attorney's argument that the high-ranking official doctrine does not apply is both beside the point and wrong. According to the District Attorney, the doctrine does not apply because this case involves "a grand jury criminal investigation," and not "a civil proceeding." Opp. 25. But, again, under binding Georgia law this special purpose grand jury can *only* conduct a civil investigation.[2] *See supra* at pp. 4–5. And in any event, binding precedent holds that

---

[2] The District Attorney also hints that the high-ranking official doctrine does not apply to legislators. Opp. 25. That passing reference does not suffice to preserve

the doctrine *does* apply in criminal cases. *See In re United States (Kessler)*, 985 F.2d 510, 511 (11th Cir. 1993) (ordering quashal of subpoena in criminal case). That is unsurprising: The separation of powers applies to both criminal and civil proceedings, both of which can burden government officials. *See Welch v. United States*, 578 U.S. 120, 134 (2016).

*Second*, the District Attorney has not satisfied the high-ranking official doctrine's "exceptional circumstance" requirement.[3] The District Attorney has made no effort whatsoever to explain how Senator Graham's testimony fits into the grand

---

the argument. *See, e.g.*, *Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012). In any event, the doctrine is based on the separation of powers. *See In re USA*, 624 F.3d 1368, 1372 (11th Cir. 2010). It therefore naturally applies to members of Congress—as confirmed by the decisions cited in Senator Graham's opening Memorandum (p. 22) and as conceded by the District Attorney during the hearing over Representative Hice's motion to quash. Motion to Quash Hearing Tr. pp. 39–43, *In re Subpoena for Attendance or Witness, Fulton County Special Purpose Grand Jury*, No. 1:22-cv-02794-LMM (July 25, 2022).

[3] The District Attorney suggests in a footnote that the high-ranking official doctrine applies only when a party is seeking to depose a government official. Opp. 26 n.21. The District Attorney's proposed limit on the doctrine makes no sense: If anything, testimony before a grand jury or jury—civil or criminal—imposes a larger burden and works a greater offense to the separation of powers than does a deposition. Unsurprisingly, the case law forecloses the District Attorney's argument. *See Kessler*, 985 F.2d at 512 (quashing witness subpoena on the ground that requested information was available from other sources); *McNamee v. Massachusetts*, 2012 WL 1665873, at *1 (D. Mass. 2012) (quashing witness subpoena, because, among other reasons, the party seeking the testimony failed to show that high-ranking official's testimony was "essential (not merely relevant) to the case").

jury's proceedings purportedly relating to former President Trump's alleged misconduct. Opp. 26. She suggests at one point that, according to one participant in a phone call, he "engaged in conduct that . . . was similar" to President Trump's conduct, but she never actually explains how the purported similarity is relevant to her investigation; much less does she demonstrate how *Senator Graham's* testimony as a witness concerning the phone call is "essential (not merely relevant) to the" investigation. *McNamee v. Massachusetts*, 2012 WL 1665873, at *1 (D. Mass. 2012). Nor has the District Attorney explained why she cannot obtain the information she seeks from other sources: Others involved in setting up and participating in or listening to the telephone calls can testify and have testified about them.[4] It is irrelevant that Secretary of State Raffensperger purported to interpret one call differently than Senator Graham[5]; indeed, to allow differing interpretations

---

[4] The lone possible exception is the topic of Senator Graham's "motivation" (Opp. 26) for making the calls. But the District Attorney has not carried her burden of demonstrating that the motivation of Senator Graham—a mere witness—is "essential" to her case. And even if she had satisfied the requirements for bypassing the high-ranking official doctrine (and all other applicable immunities) with respect to Senator Graham's "motivation" (or some other topic) the Court should still quash the subpoena with respect to the other topics covered by the Subpoena and Certificate. *See, e.g.*, *ML Healthcare Servs, LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1306–07 (11th Cir. 2018) (affirming order granting in part motion to quash subpoena).

[5] The District Attorney suggests the same is true of Deputy Secretary Sterling,

to abrogate the doctrine would render it toothless because *any* situation can be perceived differently by different people.

Finally, the District Attorney cannot rely on the Fulton County Superior Court's Certificate of Material Witness to carry her burden of satisfying the exception to the high-ranking official doctrine. That *ex parte* Certificate simply parroted the District Attorney's Petition requesting it, without allowing Senator Graham an opportunity to be heard. To permit a document of that sort to decide this federal immunity would undermine the immunity itself and the removal statute that puts the issue before this Court for decision. The Court should consider the high-ranking official doctrine for itself and quash the subpoena based on it.

## CONCLUSION

For these reasons and those in the opening Memorandum, this Court should quash the *ex parte* Certificate and Subpoena purporting to require Senator Graham's appearance in the Georgia special grand jury proceedings.

---

but he has publicly confirmed that Senator Graham asked "questions about our process." Video Interview of Gabriel Sterling at 1:56, CNN Newsource (Nov. 18, 2020), https://bit.ly/3za979a. Indeed, he says so in the very sources the District Attorney cites. *See* https://bit.ly/3Q4zwes.

| | |
|---|---|
| Date: August 5, 2022 | Respectfully submitted, |
| | /s/ Brian C. Lea |
| DONALD F. MCGAHN II | BRIAN C. LEA |
| *Application for admission pro hac vice pending* | Georgia Bar No. 213529 |
| ROBERT LUTHER III | JONES DAY |
| *Application for admission pro hac vice pending* | 1221 Peachtree Street, N.E., Suite 400 |
| JONES DAY | Atlanta, Georgia 30361 |
| 51 Louisiana Ave., NW | (404) 521-3939 |
| Washington, DC 20001 | blea@jonesday.com |
| (202) 879-3939 | |
| dmcgahn@jonesday.com | E. BART DANIEL |
| rluther@jonesday.com | *Application for admission pro hac vice forthcoming* |
| | MARSHALL T. AUSTIN |
| | *Application for admission pro hac vice forthcoming* |
| | NELSON MULLINS RILEY & SCARBOROUGH LLP |
| | 151 Meeting Street, Suite 600 |
| | Charleston, SC 29401 |
| | (843) 853-5200 |
| | bart.daniel@nelsonmullins.com |
| | matt.austin@nelsonmullins.com |

*Counsel for United States Senator Lindsey Graham*

16

## CERTIFICATE OF COMPLIANCE WITH LR 5.1(B)

I hereby certify that this brief has been prepared with one of the font, point, and style selections approved by the Court in LR 5.1(B)—namely, double-spaced in 14-point Times New Roman font.

Date: August 5, 2022

*/s/ Brian C. Lea*
BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com

*Counsel for United States Senator Lindsey Graham*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2022, I electronically filed the original of this brief with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

Date: August 5, 2022

/s/ *Brian C. Lea*
BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com

*Counsel for United States Senator Lindsey Graham*