# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| *In re* Subpoena to Non-Party Lindsey O. Graham in his official capacity as United States Senator,<br><br>in the matter of:<br><br>Special Purpose Grand Jury, Fulton County Superior Court Case No. 2022-EX-000024. | Case No. 1:22-cv-03027-LMM |

## [PROPOSED] BRIEF OF FORMER FEDERAL PROSECUTORS AS *AMICI CURIAE* IN OPPOSITION TO UNITED STATES SENATOR LINDSEY GRAHAM'S EXPEDITED MOTION TO QUASH

/s/ Mary E. Wells
Mary E. Wells (G.A. Bar No. 747852)
LAW OFFICE OF M.E. WELLS LLC
623 Grant St. SE
Atlanta, GA 30312
Tel: (404) 408-2180
mewells27@comcast.net

Norman Eisen*
Maithreyi Ratakonda*
STATES UNITED DEMOCRACY CENTER
1101 17th Street NW, Suite 250
Washington, DC 20036
Tel: (202) 999-9305
norm@statesuniteddemocracy.org
mai@statesuniteddemocracy.org

*Attorneys for Amici Curiae*

/s/ Joshua Matz
Joshua Matz*
Raymond P. Tolentino*
Jacqueline Sahlberg*
KAPLAN HECKER & FINK LLP
1050 K Street NW, Suite 1040
Washington, DC 20001
Tel: (212) 763-0883
jmatz@kaplanhecker.com
rtolentino@kaplanhecker.com
jsahlberg@kaplanhecker.com

Jonathan L. Williams*
JONATHAN L. WILLIAMS, P.A.
113 South Monroe Street, First Floor
Tallahassee, FL 32301
Tel: (850) 706-0940
jw@jonathanwilliamslaw.com

*\* Pro hac vice application forthcoming*

# TABLE OF CONTENTS

**Page**

INTEREST AND IDENTITY OF AMICI CURIAE .................................................1

INTRODUCTION .................................................................................................2

BACKGROUND ...................................................................................................3

ARGUMENT .........................................................................................................5

THE MOTION TO QUASH THE SUBPOENA IN ITS ENTIRETY BASED ON THE SPEECH OR DEBATE CLAUSE SHOULD BE DENIED ................5

    A.    Legislative Privilege Does Not Apply to Non-Legislative Acts...........6

    B.    Legislative Privilege is a Fact-Intensive, Question-Specific Rule........8

    C.    The Subpoena Seeks Testimony About Non-Legislative Acts...........11

    D.    The Motion to Quash Should be Denied and this Matter Remanded to State Court for Further Proceedings and Factual Development .........17

### INTEREST AND IDENTITY OF AMICI CURIAE[1]

*Amici* are former federal prosecutors Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldaña, William F. Weld, and Shan Wu.

*Amici* collectively have many decades of experience with subpoenas, including to public officials, and with claims of testimonial privileges under the Constitution. They also have substantial personal experience with the structure and process of law enforcement investigations—once again, including in the context of public officials. And they are represented by attorneys who include two former Counsel to the Committee on the Judiciary of the House of Representatives, both of whom have substantial experience with issues under the Speech or Debate Clause and both of whom have published scholarly works on constitutional privileges.

Given their decades of public service, their personal familiarity with the law enforcement and constitutional issues at issue here, and their commitment to the integrity of our democratic system, *Amici* maintain an active interest in the proper resolution of the important questions raised by Senator Graham's pending motion.

---

[1] No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. No person other than *Amici Curiae* or their counsel made a monetary contribution to the preparation or submission of this brief.

# INTRODUCTION

Senator Lindsey O. Graham asks this Court to issue an order categorically precluding a Special Purpose Grand Jury convened in Fulton County from obtaining his testimony about efforts to disrupt the 2020 election in Georgia. He bases that request principally on the Speech or Debate Clause of the United States Constitution. But based on our experience as federal prosecutors, his argument goes much too far. The subpoena reflects a narrowly targeted inquiry for unique evidence that is highly relevant to an ongoing criminal investigation, rather than a fishing expedition or an intrusion on legislative conduct. Although it is possible that certain questions or lines of inquiry suggested by the subpoena may indeed implicate a legislative immunity arising from the Speech or Debate Clause, most such lines of inquiry would not. This is apparent from a review of the subpoena and an analysis of precedent governing the scope and methodology of the Speech or Debate Clause. Because the Senator's motion seeks an order comprehensively precluding the subpoena (rather than more targeted relief)—and because the main legal argument he advances in support of that broad request lacks merit—the motion to quash the subpoena in its entirety should be denied and this matter should be remanded to state court for further proceedings.

## BACKGROUND

The Fulton County District Attorney has convened a Special Purpose Grand Jury to investigate possible attempts to disrupt the lawful administration of the 2020 elections in Georgia. Dkt. 2-2, Ex. 1, at ¶ 1. As part of that targeted investigation, the Superior Court of Fulton County has authorized a subpoena to compel Senator Graham to appear and testify before the grand jury. *See id.* at ¶ 2. It specifically found that he is a "necessary and material witness" to the events at issue. *Id.*

Senator Graham's notice of removal describes the topic of his anticipated testimony as "two alleged phone calls" to Secretary of State Brad Raffensperger and his staff. Dkt. 1 at 5. In Senator Graham's account, these calls were a purely investigative effort in his legislative capacity, and they concerned only "electoral integrity and security as well as investigating possible irregularities before Senator Graham voted to certify the results of the 2020 election." *Id.* at 6. Of course, at the time the calls occurred, Georgia had not yet certified its election results, there was no alleged competing slate of Georgia electors, the Electoral College had not yet met, and no question as to certification was in fact pending before Congress.

Although Senator Graham describes the subpoena as focused on two phone calls, and as redundant of testimony that could be obtained from other participants on those calls, this view is at odds with the subpoena itself and with the factual

findings of the Superior Court. The subpoena states that Senator Graham possesses "unique knowledge" not only concerning "the substance of the telephone calls," but also "the logistics of setting up the telephone calls" and "any communications between himself, others involved in the planning and execution of the telephone calls, the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere." Dkt. 2-2, Ex. 1, at ¶ 4. The subpoena is thus addressed to the calls and to a series of related communications with third parties, as well as to possible broader context and conduct related to the calls. As the subpoena recites, Senator Graham's testimony is also "essential in that it is likely to reveal additional sources of information regarding the subject of this investigation." *Id.*

Moreover, it is a matter of public record that there is a factual dispute among the participants on at least one of the calls in question. Whereas Senator Graham has described that call as one in which he inquired (entirely on his own initiative) into Georgia's election processes, Secretary Raffensperger has described it as one in which Senator Graham appeared to urge him to find a way to throw out substantial numbers of lawful ballots. *See* Amanda Gardner, *Ga. Secretary of State Says Fellow Republicans Are Pressuring Him to Find Ways to Exclude Ballots*, Washington Post,

Nov. 16, 2020.[2] This accords with the subpoena's statement that Senator Graham "questioned Secretary Raffensperger and his staff about reexamining certain absentee ballots cast in Georgia in order to explore the possibility of a more favorable outcome for former President Donald J. Trump." Dkt. 2-2, Ex. 1, at ¶ 3. It also accords with the subpoena's premise that communications between Senator Graham and third parties—as well as an understanding of the Senator's associated public statements—may bear on whether the call was indeed a legislative act.

Ultimately, Senator Graham accepted service and filed a notice of removal. He now asks the Court to quash the subpoena in its entirety. This brief explains why his principal contentions under the Speech or Debate Clause lack merit.

## ARGUMENT

## THE MOTION TO QUASH THE SUBPOENA IN ITS ENTIRETY BASED ON THE SPEECH OR DEBATE CLAUSE SHOULD BE DENIED

Without offering any evidence, or addressing any specific topics or questions, Senator Graham contends that the subpoena must be quashed in its entirety under the Speech or Debate Clause. In making that argument, he asserts that his calls to Georgia officials in the weeks following the election were legislative acts, and that any inquiry into any aspect of his conduct thus offends the Constitution. As we

---

[2] https://www.washingtonpost.com/politics/brad-raffensperger-georgia-vote/2020/11/16/6b6cb2f4-283e-11eb-8fa2-06e7cbb145c0_story.html.

demonstrate below, this argument faces numerous difficulties: it fails to account for important limits on the scope of the legislative privilege created by the Speech or Debate Clause; it fails to adhere to key methodological precepts of Speech or Debate Clause analysis; it fails to recognize that the subpoena seeks testimony about several categories of conduct beyond the scope of the Clause; and it overlooks public factual disputes, as well as factual representations set forth in the subpoena itself. For these reasons, the motion to quash based on legislative privilege cannot be sustained.

### A.   Legislative Privilege Does Not Apply to Non-Legislative Acts

The Speech or Debate Clause provides that "for any Speech or Debate in Either House," Senators and Representatives "shall not be questioned in any other Place." U.S. Const., art. I, § 6, cl. 1. The Clause protects "against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *United States v. Brewster*, 408 U.S. 501, 525 (1972). Thus, a legislator cannot be compelled to testify about matters covered by the privilege. *See Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 418 (D.C. Cir. 1995).

But "[o]ur speech or debate privilege was designed to preserve legislative independence, not supremacy." *Brewster*, 448 U.S. at 508. Therefore, the privilege is limited *solely* to legislative acts "generally done in a session of the House by one of its members in relation to the business before it." *Kilbourn v. Thompson*, 103 U.S.

168, 204 (1881); *see also Gravel v. United States*, 408 U.S. 606, 620-21 (1972) (explaining that legislative acts include committee reports, resolutions, and votes).

This is a significant limitation. As the Supreme Court has emphasized, "legislative acts are not all-encompassing." *Id. at* 625. "Members of the Congress engage in many activities other than the purely legislative activities protected by the Speech or Debate Clause." *Brewster*, 408 U.S. at 501; *accord Doe v. McMillan*, 412 U.S. 306, 313 (1973) ("[E]verything a Member of Congress may regularly do is not a legislative act within the protection of the Speech or Debate Clause."). Put differently, "the Speech or Debate Clause protects conduct that is integral to the legislative process, not a Member's legislative goals." *Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 12 (D.C. Cir. 2006). Consistent with this understanding, the Supreme Court has never "treated the Clause as protecting all conduct relating to the legislative process." *Brewster*, 408 U.S. at 515. Indeed, it has rejected a "sweeping reading" under which "there are few activities in which a legislator engages that he would be unable somehow to 'relate' to the legislative process." *Id.* at 516.

As we discuss at greater length below, the Supreme Court has implemented these principles by recognizing a wide range of non-legislative acts by Members of Congress that may properly be explored through testimonial subpoenas. Such non-legislative acts include several categories of conduct squarely implicated by the

subpoena here at issue: efforts to cajole or influence official behavior by executive officials; public statements and press releases; communications with outside interest groups, political campaigns, and lobbyists; and the arranging of meetings. *See infra* at Part C. "Although these are entirely legitimate activities, they are political in nature rather than legislative." *Brewster*, 408 U.S. at 512. Even if they are otherwise "appropriate," they do not have "the protection afforded by the Speech or Debate Clause." *Id.*; *accord Fowler-Nash v. Dem. Caucus of Pa. House of Rep.*, 469 F.3d 328, 336-37 (3d Cir. 2006) ("[S]imply because a Senator performs certain duties in his official capacity does not make those duties legislative."). Thus, to the extent the subpoena issued by the District Attorney seeks testimony from Senator Graham concerning conduct that ranks as non-legislative, legislative privilege does not apply.

## B.    Legislative Privilege is a Fact-Intensive, Question-Specific Rule

For the reasons just given, the ultimate issue here is whether the subpoena seeks testimony concerning legislative or non-legislative acts. Before addressing that issue, however, we must describe the methodological principles that structure the inquiry. There are three key points, each of which poses a substantial difficulty for Senator Graham, who seeks a broad order quashing the subpoena in its entirety.

The first point concerns the burden of proof. As the Third Circuit has held, "[a] Member seeking to invoke the Clause's protections bears 'the burden of

establishing the applicability of legislative immunity . . . by a preponderance of the evidence.'" *United States v. Menendez*, 831 F.3d 155, 165 (3d Cir. 2016) (citations omitted); *see also Favors v. Cuomo*, No. 11 Civ. 5632, 2015 WL 7075960, at *4 (E.D.N.Y. Feb. 8, 2015). That principle is significant here because Senator Graham relies only on the text of the subpoena itself and a few news reports. *See* Dkt. 2-1 (Motion to Quash) at 13-14. He otherwise offers no evidence to support his argument that all conduct covered by the subpoena is legislative. But the substance and import of his statements on calls with Georgia officials is itself disputed. *See supra* at 4. And there is simply no other evidence before the Court about the circumstances surrounding those calls, the logistics of how they were arranged, the existence or nature of any related communications between himself and third parties (including such non-legislative third parties as journalists or persons associated with a political campaign), or related communications between himself and others suspected to have engaged in efforts to affect Georgia's election results. Given that Senator Graham bears the burden to establish his entitlement to legislative immunity—and given that he asks only for quashal in the entirety—he must affirmatively prove that everything covered by the subpoena is a legislative act. But he makes little effort to do so.

This leads to the second point, which is that context and content sometimes control whether conduct is legislative or non-legislative in nature. In some cases, it

is facially obvious whether an act qualifies as legislative—*e.g.*, casting a vote on the Senate floor (yes) or speeding on the highway (no). In some cases, however, a closer factual analysis must be undertaken, a point that is particularly well explained in *Government of the Virgin Islands v. Lee*, 775 F.2d 514 (3d Cir. 1985), and *United States v. Menendez*, 831 F.3d 155 (3d Cir. 2016). *See also Gravel*, 408 U.S. at 625 ("That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature."). When a Member of Congress speaks to a government official, or takes a meeting, the applicability of legislative privilege is highly fact dependent. *See Menendez*, 831 F.3d at 168. In such cases, courts do not merely accept conclusory assertions from legislators that they had a legislative goal, or that the act was of a kind that might in some cases qualify as legislative. *See id.* at 166-68. Rather, they apply the Speech or Debate Clause only "once it is determined that members are acting within the 'legitimate legislative sphere.'" *Lee*, 775 F.2d at 522 (citation omitted); *accord United States v. Helstoski*, 442 U.S. 477 (1979). Here, Senator Graham fails to provide a fact-specific showing that his conduct was indeed legislative, notwithstanding the fact (explained below) that much of it appears to be non-legislative or partly non-legislative in character.

The third and final methodological point concerns the specificity of legislative privilege analysis. Where a subpoena covers both legislative and non-legislative

acts, it may be enforced as to the non-legislative acts—subject to proper safeguards for privileged topics. *See, e.g.*, *In re Grand Jury Investigation*, <u>587 F.2d 589, 597</u> (3d Cir. 1978); *SEC v. Comm. on Ways & Means*, <u>161 F. Supp. 3d 199, 245-46</u> (S.D.N.Y. 2015); *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, <u>506 F. Supp. 2d 30, 58</u> (D.D.C. 2007). Thus, only when a subpoena seeks exclusively (or overwhelmingly) legislative information is it proper to grant a categorical motion to quash. Here, the subpoena covers at least a meaningful quantum of conduct that is not legislative in character, and so Senator Graham's motion to quash is overbroad.

### C.     The Subpoena Seeks Testimony About Non-Legislative Acts

Senator Graham's motion rests on the premise that every subject about which the subpoena seeks testimony is shielded by legislative privilege. In other words, he would have this Court hold that virtually every aspect of his behavior relating to the 2020 Georgia election was legislative in character—including making calls to Georgia election officials, arranging those calls, communicating with third parties about the planning and execution of those calls, making public statements about his calls and conduct respecting the Georgia election, and communicating with the Trump Campaign and other parties about any efforts to influence the election results.

That categorical claim is at odds with the law of legislative privilege and with the applicable methods of analysis. Here, we will identify four respects in which the subpoena seeks testimony that appears to concern non-legislative conduct.

**1. Cajoling**. It is black letter law that "contacting an executive agency in order to influence its conduct" is not a legislative act. *Jewish War Veterans*, 54 F. Supp. 2d at 54; *see also id.* at 59 (holding that this same principle applies to efforts to sway local officials). As the Supreme Court explained in *Gravel*, Members of Congress "may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity." 408 U.S. at 606. Although Members of Congress may act within their legislative sphere when contacting officials for purely investigative purposes, communications that include efforts to cajole, influence, exhort, or affect official behavior are not protected by legislative privilege. *See United States v. Johnson*, 383 U.S. 169, 172 (1966); *Chastain v. Sundquist,* 833 F.2d 311, 314-15 (D.C. Cir. 1987); *Payne v. District of Columbia*, 859 F. Supp. 2d 125 (D.D.C. 2012); *SEC*, 161 F. Supp. 3d at 245-46.

Here, there is a public factual dispute on this very point. Senator Graham maintains that his calls to Georgia officials were purely investigative and included only requests for information. *See* Mot. at 15. But on these calls, Senator Graham allegedly made targeted points about tossing out substantial numbers of legally cast

ballots. And Secretary Raffensperger understood Senator Graham's statements to this effect as more than inquiries: "It sure looked like he was wanting to go down that road." *See* Amy Gardner, *Ga. secretary of state says fellow Republicans are pressuring him to find ways to exclude ballots*, Washington Post (Nov. 16, 2020). Two other officials who were on this call "told ProPublica that the secretary of state's account was accurate and that they were appalled by Graham's *request*." Jessica Huseman and Mike Spies, *Trump Campaign Officials Started Pressuring Georgia's Secretary of State Long Before the Election*, ProPublica (Nov. 18, 2020) (emphasis added). It is a fact question whether Senator Graham's conduct on these calls included any express or implied cajoling (or requests) of Georgia election officials to carry out their responsibilities in a particular manner. Without a factual finding on that point, which goes to the heart of the Speech or Debate Clause inquiry, there is no basis for concluding that Senator Graham's conduct is privileged. It is therefore proper to investigate this issue to ascertain the applicability (or not) of the legislative privilege that the Senator seeks to invoke. *See Lee*, 775 F.2d 514.

**2. Public Statements**. In *Hutchinson v. Proxmire*, the Supreme Court held that public statements—issued outside official congressional proceedings—are not legislative. *See* 443 U.S. 111, 127-28 (1979). That is true even when such public statements may have "a significant impact on the other Senators" and when they are

issued in furtherance of the "informing function" of Congress. *See id.* at 130-133. Because "[n]ewsletters and press releases" are "primarily means of informing those outside the legislative forum" and "represent the views and will of a single Member," they are "not entitled to the protection of the Speech or Debate Clause." *Id.* at 133.

Here, Senator Graham has issued numerous public statements about his calls with Georgia officials, and in so doing described his course of conduct respecting the election in Georgia. *E.g.*, Gardner, *supra* ("In an interview on Capitol Hill on Monday evening, Graham denied that he had suggested that Raffensperger toss legal ballots, calling that characterization 'ridiculous.'"). These statements are beyond any privilege. Because the subpoena seeks testimony about them, Senator Graham lacks a basis to quash it. *See Jewish War Veterans*, 506 F. Supp. 2d at 58 ("[T]he Members engaged in various [] activities that were political rather than legislative in nature, including media appearances and speeches delivered outside the Congress"); *Texas v. Holder*, No. 12 Civ. 128, 2012 WL 13070060, at *3 (D.D.C. June 5, 2012) ("[V]erifying that a public speech was given, where it was given, and even why it was given are all permissible questions that do not involve legislative activity.").

**3. Connections to Third Parties**. In general, "communications between legislators and constituents, lobbyists, and interest groups are not entitled to protection under a legislative privilege." *Texas*, 2012 WL 13070060, at *2; *accord*

*Bastien v. Off. of Senator Ben Nighthorse Campbell*, <u>390 F.3d 1301, 1316</u> (10th Cir. 2004); *NAACP v. E. Ramapo Cent. Sch. Dist.*, No. 17 Civ. 8943, <u>2018 WL 11260468,</u> at *6 (S.D.N.Y. Apr. 27, 2018); *Lee v. Va. State Bd. of Elections*, No. 3:15 Civ. 357, <u>2015 WL 9461505</u>, at *7 (E.D. Va. Dec. 23, 2015); *ACORN v. Cnty. of Nassau*, No. 5 Civ. 2301, <u>2007 WL 2815810</u>, at *6 (E.D.N.Y. Sept. 25, 2007).[3] Similarly, substantial authority supports the view that when Members of Congress engage in campaign activity—for themselves or others—they are not acting within the scope of their duties as Members, let alone engaging in legislative acts shielded by a constitutional privilege. *See* <u>ECF No. 33</u>, United States' Response to Defendant Mo Brooks's Petition to Certify He Was Acting Within the Scope of his Office or Employment, *Swalwell v. Trump*, 1:21 Civ. 586 at 9-14 (D.D.C. July 27, 2021) (summarizing judicial, executive branch, and legislative authority).[4]

---

[3] Several of these cases address the common law privilege enjoyed by state legislators, which "is similar in scope and object to the immunity enjoyed by federal legislators under the Speech or Debate Clause." *Nat'l Ass'n of Soc. Workers v. Harwood*, <u>69 F.3d 622, 629</u> (1st Cir. 1995). Indeed, the Supreme Court has "acknowledged that the immunities enjoyed by federal and state legislators are essentially coterminous," *Id.*; *see also Larsen v. Senate of Com. of Pa.*, <u>152 F.3d 240, 249</u> (3d Cir. 1998); *Favors v. Cuomo*, <u>285 F.R.D. 187, 208</u> (E.D.N.Y. 2012), though in limited circumstances (most notably including redistricting) state legislators receive less deference, *see, e.g.*, *Bethune-Hill v. Virginia State Bd. of Elections*, <u>114 F. Supp. 3d 323, 336-37</u> (E.D. Va. 2015).

[4] Available at https://www.justsecurity.org/wp-content/uploads/2022/07/january-6-clearinghouse-DOJ-Westfall-Mo-brooks-THE-UNITED-STATES-RESPONSE.pdf.

Here, the subpoena states that Senator Graham possesses unique knowledge concerning "any communications between himself, others involved in the planning and execution of the telephone calls, the Trump Campaign, and other known and unknown individuals" with relevant information. To the extent the subpoena seeks testimony about Senator Graham's communications with interest groups, his own constituents, Trump campaign officials, journalists, or other third parties related to the subject of the District Attorney's investigation, Senator Graham likely lacks any valid claim of legislative privilege (and he has offered no evidence to the contrary).

**4. Arranging Meetings.** "[M]eeting arrangements are only 'casually or incidentally related to legislative affairs' and are not part of the legislative process itself." *U.S. Merit Sys. Prot. Bd. v. McEntee*, No. 07 Civ. 1936, 2007 WL 9780552, at *3 (D. Md. Dec. 13, 2007) (quoting *Brewster*, 408 U.S. at 528). Consistent with this principle, the Speech or Debate Clause does not offer a basis to quash a subpoena seeking testimony about the logistics involved in calls to Georgia officials.

*    *    *    *    *

For all these reasons, Senator Graham's motion to quash the subpoena in its entirety on the basis of the Speech or Debate Clause cannot be sustained. He has not carried his evidentiary burden to affirmatively demonstrate that the subpoena seeks testimony about solely legislative acts. Nor has he demonstrated in a fact-intensive,

question-specific manner that the subpoena is barred by legislative privilege. And a

close study of the subpoena—as measured against precedent—indicates substantial

reason to believe that Senator Graham lacks a valid privilege defense to most of it.

### D.    The Motion to Quash Should be Denied and this Matter Remanded to State Court for Further Proceedings and Factual Development

Senator Graham removed this matter to federal court under the federal officer

removal statute, 28 U.S.C. § 1442(a)(1). To justify removal under that statute, a

federal officer must demonstrate that the legal proceeding at issue is "for any act

under color of such office" and that he has a colorable defense under federal law.

*Florida v. Cohen*, 887 F.2d 1451, 1453-54 (11th Cir. 1989) (per curiam). The "under

color of federal office" requirement must be met by "show[ing] 'a causal connection

between what the officer has done under asserted official authority and the action

against him.'" *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017)

(quoting *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996)).

Invocation of Section 1442(a)(1) can burden federalism. In this case, for

example, Georgia has a powerful interest in enforcing its own criminal laws in its

own courts. *See Willingham v. Morgan*, 395 U.S. 402, 409 n.4 (1969); *see Georgia

v. Waller*, 660 F. Supp. 952, 954 (M.D. Ga. 1987); *Application of Donovan*, 601 F.

Supp. 574, 578 (S.D.N.Y. 1985). That interest is enhanced by Georgia's sovereign

role and responsibility in carrying out presidential elections. *See* U.S. Const. art. II,

§ 1, cl. 2. Put simply, Georgia's interest in enforcing criminal laws is at its zenith in the context of a state investigation into crimes involving the presidential election, because the state's role in such elections is enshrined in and entrusted to it by the Constitution. *See Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) ("A State indisputably has a compelling interest in preserving the integrity of its election process."). So the Court should seek to sustain a balance between competing state and federal interests.

In removing this matter, Senator Graham asked the Court to enter an order "quash[ing] the *ex parte* Certificate and Subpoena purporting to require Senator Graham's appearance in any Georgia special grand jury proceedings." Mot. at 25. As we have demonstrated, the principal contention he offers in support of that broad request is legally deficient: his argument for categorical immunity under the Speech or Debate Clause is objectively meritless as to certain subjects addressed by the subpoena, and raises only further factual and legal disputes as to other subjects. The difficulties in Senator Graham's position are further exacerbated by his decision not to offer any evidence—and by continuing uncertainty about which questions exactly may be posed to Senator Graham in the underlying state grand jury proceedings.

For these reasons, the proper course is the one that the Court has already identified in a recent proceeding involving Congressman Jody Hice. *See Fulton County Special Purpose Grand Jury v. Hice*, No. 22 Civ. 2794 (N.D. Ga. July 25,

2022). Specifically, assuming the Court concludes that Senator Graham's alternative arguments lack merit, the Court should deny the motion to quash without prejudice and then remand: "The record should be more fully developed before the Court can address the applicability of these potential immunities to specific questions." *See id.* at Dkt. 11; *see also id.*, Dkt. 14 (Transcript) at 44 ("It's just we have to step through things in a very careful way to maintain jurisdiction and make sure that the record is good and that we all have full and complete information to make good decisions."). Once the matter is returned to state court, Senator Graham will remain free to again file a notice of removal and seek targeted relief from this Court in the event that any particular questions or lines of inquiry implicate federal defenses. *See id.* at 31 ("[W]hen the Congressman goes to the Grand Jury and is asked a question that then deals with these issues, then you then have to file a motion for me to deal with those particular questions. . . . But you would have to start that by removing those questions basically to me. So then I would get jurisdiction over it again."). And in so doing, Senator Graham (and the District Attorney) may benefit from any legal guidance that the Court offers with respect to the proper applicability of federal law.

## CONCLUSION

*Amici* respectfully submit that the Court should deny the motion to quash based on the Speech or Debate Clause, and should remand this matter to state court.

Dated: August 4, 2022                                                Respectfully submitted,

/s/ Mary E. Wells                                                   /s/ Joshua Matz
Mary E. Wells (G.A. Bar No. 747852)        Joshua Matz*
LAW OFFICE OF M.E. WELLS LLC               Raymond P. Tolentino*
623 Grant St. SE                                                Jacqueline Sahlberg*
Atlanta, GA 30312                                             KAPLAN HECKER & FINK LLP
Tel: (404) 408-2180                                          1050 K Street NW, Suite 1040
mewells27@comcast.net                                 Washington, DC 20001
                                                                          Tel: (212) 763-0883
Norman Eisen*                                               jmatz@kaplanhecker.com
Maithreyi Ratakonda*                                     rtolentino@kaplanhecker.com
STATES UNITED DEMOCRACY CENTER        jsahlberg@kaplanhecker.com
1101 17th Street NW, Suite 250
Washington, DC 20036
Tel: (202) 999-9305                                          *Attorneys for Amici Curiae*
norm@statesuniteddemocracy.org
mai@statesuniteddemocracy.org                    * Pro hac vice application forthcoming

Jonathan L. Williams*
JONATHAN L. WILLIAMS, P.A.
113 South Monroe Street, First Floor
Tallahassee, FL 32301
Tel: (850) 706-0940
jw@jonathanwilliamslaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that this brief has been prepared in Times New Roman, 14-point font, one of the fonts and point selections approved by the Court in LR 5.1(C).

<u>/s/ Mary E. Wells</u>
Mary E. Wells
Georgia Bar No. 747852

*Counsel for Amici Curiae*