# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| *In re* Subpoena to Non-Party Lindsey O. Graham in his official capacity as United States Senator,<br><br>in the matter of:<br><br>Special Purpose Grand Jury, Fulton County Superior Court Case No. 2022-EX-000024. | Civil Action No.<br>1:22-cv-03027-LMM |

# RESPONSE BY SENATOR GRAHAM
# TO FORMER FEDERAL PROSECUTORS' AMICUS BRIEF

In their brief as amici curiae opposing Senator Graham's Motion to Quash, six former prosecutors urge this Court to render the Speech or Debate Clause largely self-negating and to deprive Senator Graham of a statutorily guaranteed federal forum. The Court should reject the invitation.

*First*, Amici wrongly suggest that Senator Graham bears the burden of answering questions about legislative acts to obtain an immunity from questioning about those legislative acts. The burden is irrelevant here because the relevant facts are settled. But even if that were not so, the bizarreness of Amici's approach confirms its error: It makes no sense to require a litigant to lose his immunity in order to gain it. *See Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1353–54 (11th Cir. 2009) ("Just as it is not reasonable to destroy a village in order to save it, neither is it reasonable to violate an Act in order to comply with it.").

*Second*, the Court should decline Amici's suggestion to allow the District Attorney to end run the Speech or Debate Clause's protections by using other lines of inquiry to ask about legislative acts. Senator Graham was constitutionally empowered to do his legislative due diligence as he saw fit as he faced an impending, mandatory choice whether to certify the election in accordance with the Electoral Count Act, in addition to his other legislative duties as a Senator and Chair of the Judiciary Committee. In doing so, it was well within Senator Graham's prerogative

1

to discuss and run down any claims of voting irregularities made by others. And Senator Graham's due diligence paid off, as he co-sponsored legislation to amend the Electoral Count Act and voted to certify President Biden's election:

> Fraud. They say there is 66,000 people in Georgia under 18 voting. How many believe that? I asked: Give me 10. I haven't had one. … I don't buy this. Enough is enough. We got to end it. … Joe Biden and Kamala Harris are lawfully elected and will become President and Vice President of the United States on January the 20th.

167 Cong. Rec. S31 (Jan. 6, 2021). The Clause that protects legislators' right to independently inform themselves should not be a sport for clever attorneys.[1]

*Finally*, Amici are wrong to suggest that the Court should remand outright without a ruling, leaving Senator Graham to assert his constitutional immunity against questioning on a question-by-question basis without a lawyer in the room. That proposal violates the Clause's guarantee of freedom from "be[ing] questioned" and Section 1442's guarantee of a federal forum. This issue is ripe and the Court should rule by quashing this unconstitutional Subpoena.

---

[1] This neutral constitutional principle applies without regard to political party. As noted Senator Graham's opening brief (p. 7), Judge Carl Nichols held that the Speech or Debate Clause required quashal of Steve Bannon's subpoenas to Speaker Pelosi and other members of the House, despite Mr. Bannon's claims that Speaker Pelosi's investigative activities in connection with the January 6 committee were really politically motivated retaliation.

## ARGUMENT

Amici discuss only the Speech or Debate Clause. Doc. 21 at 2. But there are two bases, not mentioned by Amici and barely discussed by the District Attorney, that independently require quashal even apart from the Clause: sovereign immunity and the high-ranking-official doctrine. On the one-third of Senator Graham's arguments that Amici discuss, Amici are wrong anyway that any part of this subpoena may be enforced.

### A. Amici's "Methodological Principles" Are Mistaken.

Amici frame their argument with three related "methodological principles that structure the[ir] [Speech or Debate] inquiry." Amicus Br. 8. Each point, though—and thus Amici's whole framing—is off-base. Amici insist that Senator Graham bears the "burden of proof" (their point one) to come forward with "evidence" and a "fact-specific showing" (point two) in order to obtain "categorical" quashal (point three).[2] *Id.* at 8–11. In reality, though, the issue of burden is irrelevant here because the legally relevant facts are established and compel quashal, although Amici do fundamentally misunderstand the allocation of the burden when it comes to immunity under the Speech or Debate Clause.

---

[2] The issue of categorial quashal is discussed in Part C, *infra*.

**1.** The burden of proof is irrelevant in this case. The leading (and binding) legislative-immunity cases do not talk of burdens or evidence, and they do not so finely parse Speech or Debate immunity. Instead, in keeping with an absolute immunity, they assess legislative immunity from "the pleadings" and the public record. *E.g.*, *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 506 (1975); *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). And they hold that, when—based on those pleadings and public records—the legislator's actions were "purportedly or apparently legislative," they are protected, even from questioning to "determine if they are legislative in fact." *United States v. Dowdy*, 479 F.2d 213, 226 (4th Cir. 1973); *see Tenney*, 341 U.S. at 378. Amici are thus wrong to suggest that Senator Graham had to do more than point to the pleadings themselves.

The D.C. Circuit reaffirmed these principles this week in *Committee on Ways & Means v. U.S. Dep't of Treasury*, 2022 WL 3205891. In that case, former President Trump and affiliated entities challenged a request for the Trump Entities' tax returns by the Chairman of the House Committee on Ways and Means on the ground that they were motivated by a desire to cause the Trump Parties political harm and expose them to criminal liability. *Id.* at *1, *4. The D.C. Circuit rejected that argument on the ground that the analysis ended with recognition that the request

was facially legislative, despite the "deluge" of evidence of improper, non-legislative motive.[3] As a result, considerations of "burden" never came into play.

---

[3] The opinion's language states the governing principles in no uncertain terms:

> The Trump Parties claim that the Chairman's Request is mere pretext for an unconstitutional ulterior motive. In a deluge of citations to statements of individual committee members, statements made during Committee debate, reports published by Representative Neal, statements from the Speaker of the House of Representatives, an op-ed, interview statements, social media posts, and statements of Representatives who are not members of the Committee, the Trump Parties assert that the true purpose behind the Chairman's Request is to expose the Trump Parties' tax returns to the public and to uncover evidence of criminal conduct. However, they are looking for evidence of improper purpose in the wrong place.
> 
> "[I]n determining the legitimacy of a congressional act we do not look to the motives alleged to have prompted it." The Speech or Debate Clause protects against inquiry into the motives behind the regular course of the legislative process. It is not our function to "test[ ] the motives of committee members for this purpose." "Their motives alone would not vitiate an investigation which had been instituted by a House of Congress if that assembly's legislative purpose is being served."
> 
> Where, then, do we look for the purpose of the 2021 Request? For committee subpoenas, we have looked to resolutions from the Committee. Here, where the Chair of the Committee is authorized by statute to request the information on his own without a committee vote, we look to the Chairman's written requests.

*Id.* at *4–*5.

Here, neither the pleadings nor the public record contain any conflict of legally material fact such as might into bring into play the burden of proof or additional evidence. This is, in other words, not a case where a Representative claims he asked a witness about how legislation might improve farmers' yields (legislative), but the witness denies it and says the Representative instead asked for a bribe (not legislative)—with either additional evidence or a burden of proof making the difference. Rather, here, all agree that the two phone calls involved a discussion of election integrity, including mechanisms for ensuring the security of absentee ballots. Because that is a "subject on which legislation could be had," Senator Graham's phone calls about that subject constituted protected "investigation" under the Speech or Debate Clause. *Eastland*, 421 U.S. at 506. This ends the analysis.

This case contrasts sharply with *United States v. Menendez*, 831 F.3d 155 (3d Cir. 2016), a public corruption case in which a senator was a criminal defendant. There, in a run-up to a criminal trial, the prosecution came forward with specific evidence that the senator interceded with federal authorities on behalf of a specific private individual in exchange for payment. *Id.* at 170–72. That is a far cry from this case, involving only a *witness* subpoena seeking to obtain information from Senator Graham based on evidence that—stripped of any considerations of motive—

merely confirms that he was engaged in legislative factfinding without any hint of wrongdoing.

That highlights a key point: The only dispute is not about the facts but instead about the *implications from those facts with respect to Senator Graham's motives*. In particular, the dispute is about whether Secretary Raffensperger is correct in suggesting that, as Senator Graham was asking questions about electoral process, it was "implied" that Senator Graham wanted ballots thrown out. Doc. 9 (Opp. Br.) at 2. That, though, is a question about the *motives behind the legislative activity*: Was Senator Graham's subjective motivation for making the calls legitimate (to gather information to help him vote on certification and craft legislation) or not?

The answer to that question about motive is irrelevant because, as the Supreme Court has explained, "[c]ourts are not the place for such [questions]." *Tenney*, 341 U.S. at 378. The Clause's protections turn only on "the question whether, stripped of all considerations of intent and motive, [the representative's] actions were legislative." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998). In other words, the analysis ignores motive, looking only to the cold, hard facts of the actual activity in question. And here those facts reveal calls to discuss electoral security—an investigation into a "subject on which legislation could be had" that is protected by the Clause. *Eastland*, 421 U.S. at 506.

7

**2.** If the Court thinks burden is relevant, the District Attorney—the party seeking to *rebut* the constitutional immunity—bears the burden. There are two reasons. *First*, the Speech or Debate Clause provides a *jurisdictional* immunity, and under settled law, the party seeking to *establish* jurisdiction bears the burden of proving it exists. *See Rangel v. Boehner*, 785 F.3d 19, 22 (D.C. Cir. 2015); *AAPS v. Schiff*, 518 F. Supp. 3d 505, 517 (D.D.C. 2021); *see also, e.g.*, *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (party invoking jurisdiction has the burden of proving facts establishing it). *Second*, this is the only sensible approach, because to place the burden on the legislator would be to require them to "be questioned" about their legislative activity for the purpose of invoking the Speech or Debate immunity against "be[ing] questioned" about that activity.

Far from contradicting these fundamental principles, *Bryant v. Jones* is completely inapposite. 575 F.3d 1281 (11th Cir. 2009). In that case, the Court asked whether certain staff work—preparation of a budget—fell within the common law legislative privilege. *Id.* at 1307. In doing so, the Court stated that "[o]fficials claiming protection must show that such immunity is justified for the governmental function at issue." *Id.* at 1304. The Court said not a word about burden of *proof*— a word not mentioned in the relevant passage—with respect to facts, but rather made clear that a state official asserting immunity in a Section 1983 case must offer an

*explanation* for why the sort of activity in question should be deemed absolutely immune. The relevant passage makes that clear, but if confirmation is needed it can be found in *Bryant*'s quoting of *Hafer v. Melo*, in which the Supreme Court explained that a party seeking an absolute immunity from suit under Section 1983 must show a historical basis for that immunity. *Id.* (quoting *Hafer*, 502 U.S. at 29). *Bryant* thus imposed no burden—much less one upending traditional rules governing jurisdiction and rendering the Speech or Debate immunity self-negating.

Regardless, the facts establishing Senator Graham's Speech or Debate Clause immunity are clear. There is no dispute that Senator Graham is a Senator, with authority to investigate and vote on any matter on which legislation can be had. There is no dispute that he was Chairman of the Judiciary Committee, which regularly addresses issues relating to elections. There is no dispute that the Constitution and Electoral Count Act required him to decide whether to object to the election of President Biden. And there is no dispute that Senator Graham has co-sponsored a bill to reform the Electoral Count Act and that he voted to certify President Biden's election based on his investigation dispelling concerns of widespread voter fraud. The District Attorney runs from all of this, which shows that Senator Graham's acts were legislative investigation, requiring quashal.

### B. The Subpoena Seeks Testimony Only About Legislative Acts and the Motives for Taking Those Acts.

With the issue properly framed, the subpoena—in light of the pleadings (*i.e.*, the Certificate and Petition)—seeks "question[ing]" of Senator Graham about the legislative acts themselves (the investigative phone calls) and the Senator's motives for taking those legislative acts (whether what Secretary Raffensperger inferred about the reason for Senator Graham's calls was correct). Each is improper, meaning the Court should order quashal. Indeed, even Amici agree that when a subpoena seeks "overwhelmingly[] legislative information," "it [is] proper to grant a categorical motion to quash." Amicus Br. 11. That is at least the case here.

Amici do not think this subpoena seeks "overwhelmingly[] legislative information." They catalogue four buckets of supposedly "non-legislative acts" about which they argue the District Attorney can question Senator Graham. Amicus Br. 12–16. But their arguments miss the mark.

**1.** Amici's efforts to parse Senator Graham's activities into various buckets—some legislative and some political—is fundamentally mistaken. At the time of these phone calls, Senator Graham faced an impending decision whether to vote to object to President Biden's election. As a result, he was tracking various accusations of irregularities being made and running them down—a textbook investigation. Contrary to Amici's insinuation, it matters not whether some of those

communications involved other elected officials or campaign representatives, because like anyone else they can share concerns to be investigated and information relevant to the investigation. And despite being given every opportunity at the hearing, the District Attorney has offered no information concerning non-investigatory communications. It thus appears that the District Attorney's (and Amici's) insinuation of (supposedly improper) non-investigatory (and thus non-legislative) communications rests on nothing more than speculation—speculation that is easily dispelled by the fact that Senator Graham voted to certify President Biden's election.

**2.** Even viewed on their own terms, Amici's "bucket" arguments fail. Two of these buckets—connections to third parties and arranging meetings—fall with the phone calls based on the language of the Certificate supporting the Subpoena.[4] After

---

[4] *See* Doc. 1-2 ("The Witness possesses unique knowledge concerning the substance of the *telephone calls*, the substance surrounding his decision to make the *telephone calls*, the circumstances surrounding his decision to make the *telephone calls,* the logistics of setting up the *telephone calls*, and any communications between himself, others involved in the planning and execution of the *telephone calls*, the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere." (emphasis added)). At the hearing, the District Attorney acknowledged that, in securing the *ex parte* Certificate from Judge McBurney, the District Attorney limited its showing to the telephone calls. As a result, the Subpoena amounts to no more than a fishing expedition to the extent it extends past the phone calls. The Speech or Debate Clause would serve no real purpose if it could always be bypassed through an unsubstantiated reference to non-legislative activity.

all, one way of inquiring into an immunized investigation is to ask who the investigator spoke with, or when or where or how he did so. For precisely that reason, courts have recognized that the Clause immunizes conversations and logistical information concerning legislative activity. *See, e.g.*, *In re Grand Jury Investigation*, 587 F.2d 589, 595 (3d Cir. 1978) (telephone records potentially reflecting calls regarding legislative acts); *Holder*, 2012 WL 13070060, at *2 (Non-legislative activities cannot be used "to reveal [a representative's] subjective motivations."). In other words, a court cannot use logistical information or related conversations to backdoor its way into inquiring into legislative activity.

The same goes for the third bucket, "public statements." While public statements are not themselves legislative activity, they cannot be used as an entryway into probing a legislative investigation. To hold otherwise would be to allow waiver of Speech or Debate Clause immunity, contrary to the clear holding of the Supreme Court. *See United States v. Helstoski*, 442 U.S. 477, 491 (1979). But the Court need not address that issue, because the Subpoena does not even include public statements within its ambit. *See* Doc. 1-2 at 3–4.

Amici fare no better with their final bucket, "cajoling." As an initial matter, despite a line or two of recurring dicta (*see United States v. Johnson*, 383 U.S. 169, 172 (1966)), the Supreme has never actually held that the Speech or Debate Clause

does not cover efforts to convince executive officials to generally enforce or act upon a particular understanding of the law; the Clause should cover such efforts because they can obviate or inform the need for legislative action. In any event, Amici's claim of cajoling fails because it rests entirely on Secretary Raffensperger's speculative assessment of Senator Graham's intent: Again, all agree that the calls concerned electoral process, but Senator Raffensperger has stated he inferred that Senator Graham really meant to cajole him into taking action. As explained above, that does not suffice because motive is irrelevant to application of the Clause.[5]

### C. If the Court Thinks Some of the Subpoena's Topics Not Immune From Questioning, This Court Should Order Partial Quashal.

If this Court thinks any of the Subpoena seeks testimony about unprotected material, it should quash the rest of the Subpoena (or modify it) based on the Court's understanding of the scope of the immunities involved and enforce only the unprotected parts. *See* Amicus Br. 10–11. Moreover, if the Court wants further

---

[5] Senator Graham's case became much easier at the hearing when the District Attorney pivoted to a different theory of cajoling unrelated to the grand jury's inquiry, concerning a purported change of process for the then-upcoming Senate race in Georgia. The statement the District Attorney discussed concerned potential legislative fixes. *See* https://archive.org/details/CNNW_20201118_010000_Anderson_Cooper_360/start/2340/end/2400 ("We've got a Senate race coming up. Is there anything we can do to make it better."). But, more fundamentally, the quality of the process in a Senate election is a matter falling in Senator Graham's legislative bailiwick because the Constitution makes the Senate "the Judge of the Elections, Returns and Qualifications of its own Members." U.S. Const. Art. I, § 5, cl. 1.

factual development, it should order that the development occur in this Court, so that the Court can make a decision in keeping with the federal removal statute.

**1.** The Court should partially quash the Subpoena if it concludes that only some of the matter covered is protected by the relevant immunities. The Rules make quashal or modification mandatory where a subpoena "requires disclosure of privileged or other protected matter" or if it creates an "undue burden." Fed. R. Civ. P. 45(d)(3)(A). In keeping with that language, courts often grant in part motions to quash, an approach approved by the Eleventh Circuit. *See ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1306 (11th Cir. 2018) (affirming order granting in part motion to quash); *see also, e.g.*, *Sky Harbor Atlanta Ne., LLC v. Affiliated FM Ins. Co.*, 2020 WL 759215, at *1 (N.D. Ga. Feb. 4, 2020). This makes sense: A court should not erroneously deny relief simply because the movant believed more relief appropriate—especially not in this case requiring guidance on absolute constitutional immunity from questioning that, once lost, cannot be regained. *See Hubbard*, 803 F.3d at 1308 (governmental immunities should be decided as soon as they can be assessed, without "formal technicalities").

**2.** As explained in Senator Graham's briefs and at the hearing, no further factual development is needed. But if the Court feels otherwise, it should reject Amici's suggestion to remand to state court for record development. Amicus Br.

19–20. The facts can be developed in federal court by requiring the District Attorney to produce more information about what she intends to ask—and the evidentiary basis for those questions. And *only* by allowing full litigation of the constitutional immunities in federal court can the Court keep Congress' promise of a federal forum for federal officials raising federal issues. 28 U.S.C. § 1442. That becomes undeniably apparent when one considers the *nature* of the District Attorney and Amici's proposal for state court litigation, which would relegate Senator Graham to asserting Speech or Debate Clause *immunity* on a question-by-question basis as if it were a common *privilege*, like that between attorney and client, and would require him to do so in a grand jury room with no lawyer present. That approach would violate the constitutional text, which makes clear that the very act of questioning concerning legislative acts violates the Clause. U.S. Const. Art. I, § 6, cl. 1. The Court therefore should follow Section 1442, keeping this matter in this federal Court, which can ensure that Senator Graham does not suffer the unfairness of having his constitutional immunities violated before any court has ruled on them.

## CONCLUSION

This Court should quash the *ex parte* Certificate and Subpoena.

| Date: August 11, 2022 | Respectfully submitted, |
|---|---|
| | /s/ Brian C. Lea |
| DONALD F. MCGAHN II | BRIAN C. LEA |
|   *Admitted pro hac vice* | Georgia Bar No. 213529 |
| ROBERT LUTHER III | JONES DAY |
|   *Admitted pro hac vice* | 1221 Peachtree Street, N.E., |
| JONES DAY | Suite 400 |
| 51 Louisiana Ave., NW | Atlanta, Georgia 30361 |
| Washington, DC 20001 | (404) 521-3939 |
| (202) 879-3939 | blea@jonesday.com |
| dmcgahn@jonesday.com | |
| rluther@jonesday.com | E. BART DANIEL |
| |   *Admitted pro hac vice* |
| | MARSHALL T. AUSTIN |
| |   *Application for admission* |
| |   *pro hac vice forthcoming* |
| | NELSON MULLINS RILEY & |
| |   SCARBOROUGH LLP |
| | 151 Meeting Street, |
| | Suite 600 |
| | Charleston, SC 29401 |
| | (843) 853-5200 |
| | bart.daniel@nelsonmullins.com |
| | matt.austin@nelsonmullins.com |

*Counsel for United States Senator Lindsey Graham*

## CERTIFICATE OF COMPLIANCE WITH LR 5.1(B)

I hereby certify that this brief has been prepared with one of the font, point, and style selections approved by the Court in LR 5.1(B)—namely, double-spaced in 14-point Times New Roman font.

Date: August 11, 2022

*/s/ Brian C. Lea*
BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com

*Counsel for United States Senator Lindsey Graham*

# CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2022, I electronically filed the original of this brief with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

Date: August 11, 2022

*/s/ Brian C. Lea*
BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com

*Counsel for United States Senator Lindsey Graham*