IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE: SUBPOENA TO NON-PARTY
LINDSEY O. GRAHAM in his official
capacity as United States Senator,

In the matter of:

SPECIAL PURPOSE GRAND JURY,
FULTON COUNTY SUPERIOR
COURT CASE NO. 2022-EX-000024

CIVIL ACTION NO.
1:22-cv-03027-LMM

### POST-HEARING REPLY BRIEF
### ON BEHALF OF THE SPECIAL PURPOSE GRAND JURY

At the conclusion of the August 10, 2022 hearing on this matter, the Court directed counsel for Senator Lindsey Graham to file a reply clarifying his position on the applicable burden of proof following invocations of the Speech or Debate Clause. The District Attorney, in her capacity as the legal advisor to the Fulton County Special Purpose Grand Jury, was directed to promptly file any response. Senator Graham having filed his post-hearing brief, the District Attorney now responds.

### ARGUMENT

Binding Eleventh Circuit precedent indicates that in order for the Speech or Debate Clause to shield Senator Graham from having to comply with his subpoena, he must make a showing that legislative immunity actually applies to his actions. Additional federal authority (as well as the nature of the Senator's own arguments)

provides thoughtful analysis as to why this is suitable, and, as a movant seeking to quash his subpoena, the burden appropriately lies with the Senator. Additionally, other lines of inquiry into non-legislative activities are clearly appropriate and require denial of the Senator's motion, and in any case, further factual development should occur, either in Fulton County Superior Court or before this Court.

### A. The Eleventh Circuit has held that invocation of the Clause's protection requires a legislator to make a showing.

As the Court indicated at the hearing on this matter, the Eleventh Circuit has directed that any official seeking the Speech or Debate Clause's protection must show *why* the Clause applies. As stated in *Bryant v. Jones*, 575 F.3d 1281, 1304-05 (2009):

> While the Court has given the Clause broad application, its protections are carefully tailored to its purposes. *See Eastland*, 421 U.S. at 501-02, 95 S. Ct. at 1820-21. **Officials claiming protection "must show that such immunity is justified for the governmental function at issue."** *Hafer v. Melo*, 502 U.S. 21, 28-29, 112 S. Ct. 358, 363, 116 L. Ed. 2d 301 (1991). Accordingly, the privilege enures only to legislators engaging in actions considered "an integral part of the deliberative and communicative processes by which [legislators] participate in . . . proceedings with respect to the consideration and passage or rejection of proposed legislation." *Smith v. Lomax*, 45 F.3d 402, 405 (11th Cir. 1995) (quoting *Gravel*, 408 U.S. at 625, 92 S. Ct. at 2627) (alteration in original). The Clause does not confer absolute immunity "simply for the personal or private benefit of Members of Congress, but to protect the integrity of the legislative process by insuring the independence of individual legislators." *Brewster*, 408 U.S. at 507, 92 S. Ct. at 2535.

(emphasis added). This language is not equivocal. When an official invokes the Clause's protection, he must show why it applies. *Bryant* is also binding precedent because "[a] circuit court's decision binds the district courts sitting within its jurisdiction while a decision by the Supreme Court binds all circuit and district courts." *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004).

Senator Graham simply responds that *Bryant* is inapposite. Reply, p. 8. The Senator argues that, rather than requiring him to meet any burden or make any showing, *Bryant* merely requires that he provide "an *explanation* for why the sort of activity in question should be deemed absolutely immune." Reply, p. 8-9 (emphasis original). The distinction which the Senator attempts to draw is a curious one, since his explanation for why the Clause should apply to his actions implores this Court to credit his characterization of his actions and disregard anyone else's. Even setting aside the fact that "the party seeking to quash a subpoena bears a heavy burden of proof," *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995), these circumstances require the Senator to make a showing capable of persuading this Court that the Clause should apply to quash his subpoena. This is because, at least with regard to the Senator's phone calls to Georgia Secretary of State Brad Raffensperger, the nature of the act does not indicate it is legislative at all.

In many (perhaps most) circumstances, it will be relatively clear whether or not an activity is "legislative." If a Member of Congress votes on a bill, makes a speech on the floor of the Senate in favor of legislation, or issues a subpoena on behalf of a committee, the inquiry will end. *See Eastland v. USSF*, 421 U.S. 491, 506 (1975) ("The Subcommittee was acting under an unambiguous resolution from the Senate authorizing it to make a complete study…That grant of authority is sufficient to show that the investigation upon which the Subcommittee had embarked concerned a subject on which 'legislation could be had.'"). This was the case in *Committee on Ways & Means v. U.S. Dep't of Treasury*, 2022 WL 3205891, cited by the Senator for its holding that the activity in question there was "facially legislative" and dispensing with evidence proffered to demonstrate some improper motive. *Id.* at *4-5. However, the portion of that case cited by the Senator makes clear that the activity in question was a statutorily authorized request by a committee chairman, and had the act been a committee subpoena, the Court would have looked to the committee's resolutions to determine the subpoena's purpose. *Id.* at *5 (cited in Reply at p. 5, fn.3). By contrast, a phone call from a Senator to a state-level official in a neighboring state can never be "facially legislative" and could only be considered legislative in any regard *after* a showing of facts by the Senator. This is precisely what Senator Graham has attempted to do in his pleadings and arguments before this Court; the Senator merely characterizes his

4

own "explanations" as definitive, while any other explanations are irrelevant or mistaken.

The Senator argues that there is "no conflict of legally material fact" regarding his phone calls to Secretary Raffensperger. Reply, p. 6. The District Attorney does not understand this assertion, since these facts are defined by conflict and have been since they first became public knowledge in November of 2020. To say that "neither the pleadings[1] nor the public record" indicate any material factual conflict is bizarre, unless you consider *only* the Senator's pleadings and statements in the public record. In order to find the pleadings bereft of material conflict, one would have to completely discard the Certificate of Material Witness, ignore the public statements of Secretary Raffensperger and Gabriel Sterling,[2] and accept a generous interpretation of Senator Graham's own public statements.[3] This would leave only the Senator's assertions that, as a

---

[1] Senator Graham also argues that Amici are "wrong to suggest that Senator Graham had to do more than point to the pleadings themselves." But Amici suggested no such thing. In their brief, Amici do point to Senator Graham's pleadings, but they simply argue that his pleadings fail to persuade or make a necessary showing of legislative activity. Brief of Amici, p. 10.

[2] These would include, among others, Raffensperger's statements that the Senator suggested discarding ballots improperly for the benefit of former President Donald Trump as well as Sterling's statements that Graham asked about ways that ballots might be discarded to support a possible "court challenge."

[3] At footnote 5 on page 13 of the Reply, the Senator suggests that his statements regarding upcoming Senate runoffs being discussed on the phone calls make his

Senator and Chairman of the Judiciary Committee, his explanation of his actions ends the inquiry.

As pointed out by Amici in their brief, such a conclusory approach is not sufficient or proper. The Third Circuit has appropriately required that legislators demonstrate the applicability of legislative privilege by a preponderance of the evidence. *United States v. Menendez*, 831 F.3d 155, 165 (3d Cir. 2016); *see also United States v. James*, 888 F.3d 42, 45 (3rd Cir. 2018); *Gov't of Virgin Islands v. Lee*, 775 F.2d 514, 524 (3d Cir. 1985). There is no indication that legislative privilege has perished within the Third Circuit as a result. As Amici points out at page 10 of their brief, the Third Circuit has provided a careful and reasoned explanation for this arrangement that is perfectly applicable in these circumstances, at this stage of the proceedings. *See Lee*, 775 F.2d at 523-25. In *Lee*, the Third Circuit reversed a District Court which relied on identical reasoning presented by Senator Graham in this case: "the district court held that, so long as Lee's

---

claims of legislative purpose *more* plausible. It is not plausible that the Senator was suggesting the formulation and passage of possible national legislation to micromanage signature verification standards within the states, to be passed during the six weeks before a January runoff during one of the most politically contentions moments in living memory. What is plausible is that the Senator's statements meant what they said: that he exhorted Raffensperger to change Georgia's methods to those preferred by the Senator. Additionally, Art. I, § 5, cl. 1 of the Constitution only allows Members of Congress to determine whether constitutional requirements such as age and residence have been met by other members. *Powell v. v. McCormack,* 395 U.S. 486, 522 (1969).

6

conversations *purportedly* involved legislative fact-finding, legislative immunity barred any inquiry into whether the conversations *actually* involved legislative fact-finding." *Id.* at 523 (emphasis added). Distinguishing the circumstances in *Lee* from those where acts are unquestionably legislative in form, the Third Circuit observed that

> [h]ere, in contrast, it is Senator Lee's purpose or motive that will determine in part whether the trip was a legislative act at all. Thus, the government here does not seek to inquire into motives for a legislative act, but rather questions whether certain legislative acts were in fact taken, and whether other non-legislative acts were misrepresented as legislative.

*Id.* at 524. In *Lee*, such an inquiry had to take place before the district court charged with trying the case.[4]

Such an inquiry is required in this case. While the Senator decries purported inquiries into his motives, it is his own representations of his motives which he presents as definitive evidence of the legislative nature of his activities. As Amici

---

[4] Dicta in *Mitchell v. Forsyth*, 472 U.S. 511 (1985) indicates that, at least in civil litigation where a legislator is being sued, the plaintiff's complaint is what controls. "[I]n evaluating a claim of immunity under the Speech and Debate Clause, a court must analyze the plaintiff's complaint to determine whether the plaintiff seeks to hold a Congressman liable for protected legislative actions or for other, unprotected conduct." *Id.* at 529. In the circumstances of a subpoena, there will rarely be more than the subpoena itself. However, in this case, there is something similar to a "complaint" in civil matters: the Certificate, which states that Senator Graham engaged in decidedly non-legislative activity on the phone calls and in other activities relevant to the Special Purpose Grand Jury's investigation.

7

points out in their brief, the Senator has failed to demonstrate that those representations either control or are persuasive enough to require total quashal. As a result, his motion should be denied.

### B. The additional lines of inquiry identified by Amici are proper and non-legislative.

Senator Graham argues that the additional lines of inquiry, or "buckets" identified by Amici in their brief are all in some way improper and barred by legislative immunity and privilege. However, his reasoning fails to respond to Amici's arguments or established precedent. Facts regarding the arrangement or preparation of the phone calls are not legislative because the calls cannot be demonstrated to be legislative. Public statements and "cajoling" or "exhorting" statements and activities are not legislative and have been defined as outside the "sphere of legitimate legislative activity" for decades. The Senator's arguments neither answer those presented by Amici nor address longstanding precedent on these issues.

### C. The Court should deny the motion to quash the subpoena in its entirety and remand the case to Superior Court for further factual development, or in the alternative, request further factual development prior to remand.

Senator Graham has repeatedly insisted that total quashal is required in this instance, but in his Reply he nevertheless encourages this Court to pursue partial quashal with directives to the parties if necessary. The District Attorney maintains

that total quashal is not appropriate and asks that this Court deny the Senator's motion and remand to Superior Court for further factual development. After the record is developed below, any issues can be removed and presented to the Court at that time. If the Court finds that the Senator has appropriately modified his request for relief from this Court from total quashal to some form of "partial" quashal, and if the Court determines that it can maintain jurisdiction over this matter while denying the Senator's motion for total quashal, the Court could require that factual development take place in federal court and decide any disputes prior to remand.[5]

## CONCLUSION

In the midst of an ongoing recount for the election of Senator Graham's political ally, he called the official in another state charged with supervising the recount and suggested he change his methods. The official, as well as other participants on the call, indicated that the Senator explored options to discard votes in order to assist the president. To this, Senator Graham responds that the

---

[5] The District Attorney, representing the Special Purpose Grand Jury in these matters, has thus far protected the confidentiality of grand jury proceedings by relying solely on information within the public record. However, if required by order of this court to avoid quashal of the subpoena, the District Attorney stand ready to make relevant grand jury information available to the Court *in camera* if the Court so orders. While we are loath to disclose any grand jury information, such a disclosure is necessary where it is ordered by a court and where it will allow the Special Purpose Grand Jury to continue its investigation and prevent quashal of its subpoenas.

9

other participants on the call must all be mistaken, and he asks this Court to end the inquiry there. Binding Eleventh Circuit precedent as well as persuasive Third Circuit precedent demonstrate that quashal is not appropriate under these facts or at this stage of the proceedings, and as a result, the District Attorney respectfully requests that this Court deny the Senator's motion.

Respectfully submitted, this 12th day of August 2022.

                        FANI T. WILLIS
                        DISTRICT ATTORNEY
                        ATLANTA JUDICIAL CIRCUIT

By:

By: ~~s/ F. McDonald Wakeford~~
F. McDonald Wakeford
Chief Senior Assistant District Attorney
Atlanta Judicial Circuit
Georgia Bar No. 414898
136 Pryor Street SW, Third Floor
Atlanta, Georgia 30303
fmcdonald.wakeford@fultoncountyga.gov

10

CERTIFICATE OF COMPLIANCE

The undersigned counsel hereby certifies that this pleading complies with the Local Rules of this Court, including Local Rules 5.1.C and 7.1.D (N.D. Ga.) in that it is double-spaced and composed in 14-point Times New Roman font.

This 12th day of August 2022.


CERTIFICATE OF SERVICE

I hereby certify the foregoing was served upon the following by email:


BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com


Dated this 12th day of August, 2022.

*s/ F. McDonald Wakeford*

F. McDonald Wakeford