THE FOLLOWING IS THE P.D.F. OF AN OFFICIAL TRANSCRIPT.

OFFICIAL TRANSCRIPTS MAY ONLY BE FILED IN CM/ECF BY THE

OFFICIAL COURT REPORTER AND WILL BE RESTRICTED IN CM/ECF FOR A

PERIOD OF 90 DAYS.  YOU MAY CITE TO A PORTION OF THE ATTACHED

TRANSCRIPT BY THE DOCKET ENTRY NUMBER, REFERENCING PAGE AND

LINE NUMBER, ONLY AFTER THE COURT REPORTER HAS FILED THE

OFFICIAL TRANSCRIPT.  HOWEVER, YOU ARE PROHIBITED FROM

ATTACHING A FULL OR PARTIAL TRANSCRIPT TO ANY DOCUMENT FILED

WITH THE COURT.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


FULTON COUNTY SPECIAL          )
PURPOSE GRAND JURY,            )
                               )
              PLAINTIFF,       )
        VS.                    )
                               )                DOCKET NUMBER
LINDSEY GRAHAM,                )          1:22-CV-3027-LMM
                               )
              DEFENDANT.       )          ATLANTA, GEORGIA
                               )          AUGUST 10, 2022
                               )
_____)


TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:        DONALD WAKEFORD, NATHAN WADE &
                          WILL WOOTEN
                          FULTON COUNTY DISTRICT ATTORNEY'S OFFICE
                          ATLANTA, GEORGIA  30303

FOR THE DEFENDANT:        BRIAN LEA & DONALD MCGAHN
                          JONES DAY
                          ATLANTA, GEORGIA  30361
                          WASHINGTON, DC  20001



(APPEARANCES CONTINUED ON THE NEXT PAGE.)

*MECHANICAL STENOGRAPHY OF PROCEEDINGS*
*AND COMPUTER-AIDED TRANSCRIPT PRODUCED BY*

OFFICIAL COURT REPORTER:  MONTRELL VANN, RPR, RMR, RDR, CRR
                          2160 UNITED STATES COURTHOUSE
                          75 TED TURNER DRIVE, SOUTHWEST
                          ATLANTA, GEORGIA  30303
                          (404)215-1549

APPEARANCES CONTINUED

FOR THE DEFENDANT:                    BART DANIEL
                                      NELSON, MULLINS, ET AL.
                                      CHARLESTON, SOUTH CAROLINA  29401

1        *(IN ATLANTA, FULTON COUNTY, GEORGIA, AUGUST 10, 2022, IN*
2   *OPEN COURT.)*

3              THE COURT:  OKAY.  GOOD AFTERNOON.  YOU MAY BE
4   SEATED.  OKAY.  WE ARE HERE IN CIVIL ACTION 22-CV-3027, IN RE:
5   SUBPOENA TO NON-PARTY LINDSEY O. GRAHAM IN HIS OFFICIAL
6   CAPACITY AS UNITED STATES SENATOR IN THE MATTER OF SPECIAL
7   PURPOSE GRAND JURY FULTON COUNTY SUPERIOR COURT, CASE NUMBER
8   2022EX24.

9      AND STARTING WITH COUNSEL FOR SENATOR GRAHAM, IF YOU COULD
10  INTRODUCE YOURSELVES FOR THE RECORD.

11             MR. LEA:  YOUR HONOR, BRIAN LEA FOR SENATOR LINDSEY
12  GRAHAM WITH JONES DAY.  THIS IS MY COLLEAGUE.

13             MR. MCGAHN:  DON MCGAHN, JONES DAY ON BEHALF OF
14  SENATOR GRAHAM.

15             MR. DANIEL:  BART DANIEL WITH NELSON, MULLINS ON
16  BEHALF OF SENATOR GRAHAM.

17             THE COURT:  OKAY.  GOOD AFTERNOON TO ALL OF YOU.

18             MR. WAKEFORD:  GOOD AFTERNOON, YOUR HONOR.  DONALD
19  WAKEFORD WITH THE FULTON COUNTY DISTRICT ATTORNEY'S OFFICE IN
20  ITS CAPACITY AS A SPECIAL ADVISOR TO THE SPECIAL PURPOSE GRAND
21  JURY.

22             THE COURT:  OKAY.

23             MR. WADE:  JUDGE, NATHAN WADE, SPECIAL PROSECUTOR,
24  FULTON COUNTY DISTRICT ATTORNEY'S OFFICE.

25             MR. WOOTEN:  GOOD AFTERNOON, JUDGE.  WILL WOOTEN,

1    DEPUTY DISTRICT ATTORNEY, FULTON COUNTY DISTRICT ATTORNEY'S

2    OFFICE.

3                THE COURT:  OKAY.  WELL, GOOD AFTERNOON TO ALL OF YOU

4    AS WELL.

5                MR. WAKEFORD:  THANK YOU, JUDGE.

6                THE COURT:  WE ARE HERE ON THE SENATOR'S EXPEDITED

7    MOTION TO QUASH AS IT RELATES TO THE SUBPOENA SENT TO HIM BY

8    THE FULTON COUNTY SUPERIOR COURT.  NOW, BEFORE WE GET DIRECTLY

9    INTO THE ARGUMENTS, THERE'S JUST A FEW KIND OF PRELIMINARY

10   ISSUES I WANTED TO GET ON THE RECORD.  AND WHAT I WANTED TO DO

11   IN TALKING ABOUT THESE ISSUES IS JUST TO MAKE SURE THAT WE'RE

12   ALL ON THE SAME PAGE.  IF SOME OF THE ASSUMPTIONS I'M MAKING

13   NOW ARE INCORRECT, THEN I WANT YOU TO ADDRESS THEM IN YOUR

14   ARGUMENTS.  BUT THERE ARE A FEW THINGS THAT I THINK WE ARE ALL

15   KIND OF ON THE SAME PAGE AND JUST WANTED TO MAKE SURE THAT I

16   HAVE THAT CORRECT.

17       THE FIRST IS THAT IT DOES NOT APPEAR THAT ANYBODY IS IN

18   DISAGREEMENT THAT THIS CASE WAS PROPERLY REMOVED UNDER 28

19   U.S.C. SECTION 1442(A), WHICH IS THE FEDERAL OFFICER REMOVAL

20   PROVISION.  IT SEEMS LIKE THERE'S NO ISSUE AS IT RELATES TO

21   THAT.  THE OTHER ISSUE I JUST WANTED TO MAKE SURE WE'RE CLEAR

22   ABOUT IS THAT IT'S MY UNDERSTANDING THAT IN MOVING TO QUASH THE

23   SUBPOENA, SENATOR GRAHAM HAS THE BURDEN OF PROOF BY A

24   PREPONDERANCE OF THE EVIDENCE TO SHOW THAT THE SPEECH OR DEBATE

25   CLAUSE WOULD MOVE TO QUASH THE SUBPOENA.  IT'S A LITTLE BIT

1    DIFFERENT WITH THE HIGH-RANKING OFFICIAL DOCTRINE, BUT AT LEAST

2    AS IT RELATES TO THE SPEECH AND DEBATE CLAUSE THE BURDEN OF

3    PROOF, IS MY UNDERSTANDING, IS ON THE SENATOR.

4         THE SECOND -- WELL, NOT THE SECOND.  THE THIRD ISSUE I

5    JUST WANTED TO MAKE SURE WE'RE ON THE SAME PAGE WITH IS THAT IF

6    THE MOTION TO QUASH SUBPOENA IS GRANTED, THEN THAT WOULD CLOSE

7    THE CASE AND THAT WOULD BE THE END OF THIS PARTICULAR MATTER.

8    IF I DO NOT QUASH THE SUBPOENA, MY THOUGHT IS TO, AT LEAST IN

9    TERMS OF THE INSTRUCTIONS, IS TO REMAND IT TO SUPERIOR COURT,

10   SIMILAR TO WHAT I DID WITH CONGRESSMAN HICE.  AND IF THERE ARE

11   PARTICULAR QUESTIONS TO WHICH THESE ISSUES RELATED TO THESE

12   IMMUNITIES ARISE, THEN WE'D HAVE TO KIND OF FIGURE OUT, LIKE WE

13   DID WITH CONGRESSMAN HICE, HOW WE'RE GOING TO DEAL WITH THAT.

14   BUT THAT'S THE PROCEDURAL WAY WITH WHAT COMES NEXT EITHER WAY,

15   AND JUST WANTED TO MAKE SURE THAT THERE WASN'T ANY ISSUE ABOUT

16   THAT.

17        WE DO KNOW A LITTLE BIT MORE IN THIS CASE THAN WE DID IN

18   THE LAST ONE I HAD.  WE STILL HAVE THE SPECIAL GRAND JURY THAT

19   HAS THE SAME SCOPE, AND I DON'T THINK THERE'S ANY ISSUE WHAT

20   THE SCOPE OF THIS SPECIAL GRAND JURY IS.  WE HAVE THE ORDERS

21   FROM THE SUPERIOR COURT.  I ALSO HAVE IN THE RECORD THE

22   INFORMATION ABOUT -- I GUESS MORE INFORMATION ABOUT WHAT'S

23   BEING SOUGHT IN THIS SUBPOENA, AND THAT I'M TAKING FROM THE

24   EXHIBIT THAT WAS PROVIDED BY SENATOR GRAHAM THAT DOES PROVIDE

25   SOME INFORMATION IN THE CERTIFICATE OF MATERIAL WITNESS THAT

1  DOES OUTLINE SOME OF THE SUBJECTS THAT IT APPEARS WILL BE

2  DISCUSSED IN FRONT OF THE GRAND JURY IF SENATOR GRAHAM HAS TO

3  APPEAR THERE.  SO I'M USING THAT INFORMATION AS AT LEAST SOME

4  KIND OF OUTLINE AS TO THE SUBJECTS THAT MIGHT BE EXPLORED.  SO

5  THOSE ARE SOME INITIAL THOUGHTS THAT I HAVE.

6      THE PARTIES UNDERSTAND THIS, BUT I'LL JUST MAKE SURE IT'S

7  CLEAR FOR THE RECORD.  THERE ARE THREE CASES THAT ARE PROBABLY

8  THE MOST RELEVANT WE'LL BE TALKING ABOUT AS IT RELATES TO THE

9  SPEECH OR DEBATE CLAUSE.  THEY ARE GRAVEL VS. UNITED STATES AND

10 UNITED STATES VS. BREWSTER WHICH ARE BOTH SUPREME COURT CASES

11 FROM JUNE 29TH, 1972.  THOSE ARE SOME BIG CASES THAT WE'LL BE

12 TALKING ABOUT IN SHORTHAND.  THERE'S ALSO THE EASTLAND VS.

13 UNITED STATES SERVICEMEN'S FUND CASE FROM 1975, SO THAT WILL BE

14 ANOTHER CASE THAT WE'LL BE TALKING IN A LOT OF SHORTHAND ABOUT.

15 OBVIOUSLY THOSE ARE SOME, JUST A FEW OF THE CASES, BUT WE'LL BE

16 TALKING ABOUT THOSE A LOT.

17      I HAVE READ ALL THE PARTIES' FILINGS IN THE CASE AND WILL

18 LIKELY ASK LOTS OF QUESTIONS.  THAT'S JUST THE WAY I HANDLE A

19 HEARING BECAUSE I HAVE TO ULTIMATELY WRITE AN ORDER.  SO IF

20 THERE ARE QUESTIONS, I'M GOING TO ASK THEM.  SO I DO CAUTION

21 EVERYONE NOT TO GET TOO WRAPPED UP IN WHAT THE QUESTIONS ARE.

22 IT'S JUST ME WORKING THROUGH THE PROCESS.  BUT I HAVE READ ALL

23 THE BRIEFS AND DON'T THINK JUST BECAUSE WE DON'T GET TO

24 SOMETHING THAT IT'S NOT IMPORTANT.  IT MAY BE THAT IT JUST WAS

25 SOMETHING THAT I HAD LESS OF A QUESTION ON.

1      BUT, WITH THAT, I'LL GO AHEAD AND HEAR FROM COUNSEL FOR

2  SENATOR GRAHAM AND WE'LL JUST PROCEED.

3          MR. LEA:  THANK YOU, YOUR HONOR.

4          THE COURT:  YOU'RE WELCOME.

5          MR. LEA:  BRIAN LEA ON BEHALF OF SENATOR GRAHAM.  I

6  WANT TO -- JUST TO MAKE SURE WE DON'T LOSE TRACK, I DO DISAGREE

7  WITH THE PRESUMPTION ABOUT THE BURDEN AND ABOUT ONE OF THE

8  PROCEDURAL ISSUES.  AND SO TO GET RIGHT DOWN TO THINGS THAT

9  YOU'RE -- THE COURT'S AWARE, WE ARE MOVING TO QUASH ENTIRELY,

10  OR TO THE EXTENT THE COURT THINKS CORRECT, BUT CERTAINLY WE

11  THINK ENTIRELY BASED ON THREE DOCTRINES, SPEECH OR DEBATE

12  CLAUSE, SOVEREIGN IMMUNITY, AND THE HIGH-RANKING OFFICIAL

13  DOCTRINE.  YOU MENTIONED THE HICE PROCEEDINGS.  THIS PROCEEDING

14  IS NOT THAT FOR THREE REASONS.

15          THE COURT:  WELL, AND I KNOW THAT AND I'M NOT JUST

16  GOING TO DO WHAT I DID IN THE HICE PROCEEDING BECAUSE THAT WAS

17  CONSENTED TO IN A LARGE PART.  SO BUT I DO WANT TO MAKE SURE

18  THAT -- SO I DON'T WANT YOU TO HAVE THE IDEA THAT I'M JUST

19  GOING TO DO WHAT HAPPENED IN THE HICE BECAUSE THEY AGREED TO

20  THAT, SO THAT'S A WHOLE DIFFERENT BALL GAME AND I UNDERSTAND

21  THAT.  BUT I DO WANT TO KNOW WHY YOU DISAGREE WITH THE

22  PROCEDURAL ISSUES.

23          MR. LEA:  OKAY.  SO TAKING IT IN REVERSE.  ONE,

24  YOU'VE IDENTIFIED, FACTUAL RECORD IS DIFFERENT.  TO MAKE SURE

25  THAT IT'S CLEAR, WE SHOULDN'T BE PLAYING WHACK-A-MOLE WITH THE

1    DISTRICT ATTORNEY.  THIS IS THE SCOPE OF THE SUBPOENA.  AS THE

2    SUPREME COURT HAS REPEATEDLY DONE, YOU LOOK THROUGH THE

3    UNDERLYING PAPERS, FIGURE OUT WHAT IS ASKED ABOUT AND THEN RULE

4    WITHOUT THE IDEA THAT SOMEHOW LURKING A BROADER GRAND JURY

5    INVESTIGATION MIGHT VAGUELY REVIVE A SUBPOENA BEYOND WHAT THEY

6    HAVE ACTUALLY ASKED FOR.

7         SECOND, WE DO HAVE A SEPARATE DEFENSE THAT WASN'T

8    ADDRESSED IN HICE, AND I UNDERSTAND --

9         THE COURT:  I THINK MY QUESTION WAS JUST VERY

10   DIFFERENT.  IF, FOR EXAMPLE, I DON'T QUASH THE SUBPOENA -- I'M

11   NOT SAYING THAT I'M NOT -- IF I DON'T QUASH THE SUBPOENA, WHAT

12   IS YOUR OBJECTION TO MY THEN SENDING IT BACK TO FULTON COUNTY

13   SUPERIOR COURT AND THEN POTENTIALLY DEALING WITH A QUESTION BY

14   QUESTION ANALYSIS OF THAT?  WHAT ABOUT THAT PROCESS IS IMPROPER

15   IF I DON'T QUASH THE SUBPOENA?

16        MR. LEA:  IT'S IMPROPER FOR TWO SEPARATE REASONS.

17   ONE, ARE THESE ARE IMMUNITIES.  QUESTION-BY-QUESTION IS A

18   VIOLATION QUESTION-BY-QUESTION OF THAT IMMUNITY BECAUSE IT'S A

19   RIGHT NOT TO BE QUESTIONED TO THE EXTENT OF THE SUBPOENA.

20        THE COURT:  SO IF I DON'T QUASH THE SUBPOENA, YOU

21   DON'T INTEND TO MAKE ANY OBJECTIONS ON VARIOUS QUESTIONS BASED

22   ON IMMUNITIES?

23        MR. LEA:  OH, WE WILL ABSOLUTELY DO THAT IF PRESSED

24   IN THAT POSITION.  MY SUGGESTION IS THAT WE SHOULDN'T BE

25   PRESSED INTO THAT POSITION.  WHAT SHOULD HAPPEN IN LIGHT OF THE

1  FACT THAT THIS IS AN IMMUNITY, IS THAT IT SHOULD BE WORKED OUT

2  BEFOREHAND WHERE THE GOVERNMENT COMES FORWARD, LIKE IN SOME OF

3  THE CASES WE'VE CITED, WITH BUCKETS OF INDIVIDUAL QUESTIONS OR

4  TOPICS.  AND THEN A RULING CAN BE MADE TO FIGURE OUT HOW FAR

5  THAT IMMUNITY EXTENDS.  OBVIOUSLY WE THINK IT EXTENDS TO

6  EVERYTHING COVERED, BUT AT A MINIMUM WE SHOULD HAVE A RULING ON

7  WHAT IS IN AND WHAT IS OUT.  SECOND, IT SHOULD HAPPEN IN THIS

8  COURT.  CONGRESS HAS ENACTED THE REMOVAL STATUTE TO GIVE A

9  FEDERAL FORUM FOR THIS.  SO THE BACK AND FORTH, IF SOME IS

10  NEEDED, TO CLARIFY SHOULD BE WORKED OUT HERE SO THAT YOUR

11  HONOR, THE FEDERAL FORUM, CAN RULE.

12         THE COURT:  AND HOW DO I DO THAT IF I DON'T KNOW WHAT

13  QUESTIONS ARE GOING TO BE ASKED IN THE GRAND JURY PROCEEDING?

14         MR. LEA:  SO THEY WOULD NEED TO COME FORWARD AND SHOW

15  WHAT THEY WANT TO ASK THAT THEY THINK FALLS OUTSIDE OF THE

16  IMMUNITY.  THEY SHOULD COME AND MAKE THAT CASE.  THAT DOES WEED

17  A LITTLE BIT INTO ANOTHER POINT YOU RAISED WHICH IS THE IDEA

18  ABOUT BURDENS, BUT THE POINT IS THAT THE RECORD SHOULD BE MADE

19  HERE SO THAT THE COURT CAN RULE.  AND THEN, IF NECESSARY, AN

20  APPEAL CAN BE TAKEN, OR AT A MINIMUM YOU WOULD HAVE PROVIDED

21  GUIDANCE FOR THE PROCEEDINGS IN THE STATE COURT.  THAT'S WHAT

22  1442 IS ABOUT, IS GIVING THE FEDERAL FORUM FOR A RULING.  AND,

23  AGAIN, IF WE'RE FORCED TO GO AND DO THIS IN REALTIME WHERE

24  THERE'S NO ATTORNEY PRESENT IN A GRAND JURY ROOM ON A

25  QUESTION-BY-QUESTION BASIS, THAT ITSELF IS AN INVASION.  TO

1    TAKE JUST THE SPEECH OR DEBATE CLAUSE --

2          THE COURT:  WELL, ONCE I RULE ON THE MOTION TO QUASH,

3    YOUR -- THE ONLY THING PENDING IN THIS CASE IS THE MOTION TO

4    QUASH.  IF I RULE ON THAT AND DON'T QUASH, THERE'S NOT ANYTHING

5    LEFT IN THE CASE.  WHAT WOULD YOU BE -- I MEAN, PROCEDURALLY

6    WHY WOULD I BE KEEPING A CASE THAT THE ONLY THING IN IT IS THE

7    MOTION TO QUASH THAT HAS BEEN DEALT WITH?  WHY WOULD I NOT

8    REMAND IT OVER TO SUPERIOR COURT TO HAVE IT GO TO A GRAND JURY

9    IF I'M NOT QUASHING THE SUBPOENA?

10          MR. LEA:  THERE STILL WOULD BE PENDING THE SUBPOENA

11   ITSELF AND THEN THE FEDERAL DEFENSES TO BE WORKED OUT.  THERE

12   MIGHT BE A FACTUAL DEVELOPMENT, BUT THAT DOESN'T MEAN THE CASE

13   IS SOMEHOW NO LONGER PENDING.  THERE WOULD STILL BE THE LIVE

14   DISPUTE.  AND THE COURT COULD QUASH WITH INSTRUCTION.  I MEAN,

15   THAT WOULD BE THE EASIEST WAY TO DO THAT, BUT CERTAINLY

16   WHATEVER HAPPENS SHOULD BE WORKED OUT HERE.  AND, AGAIN, NOT IN

17   A GRAND JURY ROOM WITH NO LAWYER PRESENT WHEN THE CLAUSE ITSELF

18   SAYS, "SHALL NOT BE QUESTIONED."  SO IT'S NOT AN IDEA OF THIS

19   IS A PRIVILEGE LIKE ATTORNEY-CLIENT PRIVILEGE OR LIKE THE

20   FIFTH.  THIS IS AN IMMUNITY FROM THE ACTION ITSELF, AND THAT'S

21   TRUE OF SOVEREIGN IMMUNITY.

22          THE COURT:  HOW COULD I QUASH WITH INSTRUCTIONS ABOUT

23   WHAT QUESTIONS COULD BE ANSWERED OR NOT WHEN YOU DIDN'T BRIEF

24   THAT ISSUE?

25          MR. LEA:  SORRY.

1       THE COURT: THAT'S OKAY. YOU'RE SAYING THAT ONE OF

2 THE OPTIONS IS IF I DIDN'T QUASH, THAT I COULD GIVE

3 INSTRUCTIONS ABOUT WHAT SUBJECT MATTERS ARE COVERED AND WHICH

4 ONES AREN'T. BUT YOU DIDN'T REQUEST ME TO DO THAT, SO THAT

5 ISSUE HAS NOT BEEN BRIEFED.

6       MR. LEA: THAT WOULD JUST BE A RULING WITHIN THE

7 SCOPE OF EXACTLY WHAT WE ASKED FOR. IF THE COURT WANTS

8 ADDITIONAL BRIEFING, WE WOULD BE HAPPY TO DO IT, BUT THAT WOULD

9 JUST BE LESSER INCLUDED RELIEF. WE WANT A COMPLETE QUASHAL.

10 THE COURT'S NOT READY TO DO THAT YET, THINKS THERE NEEDS TO BE

11 MORE FACTUAL DEVELOPMENT, UNDER 1442 THAT BELONGS BEFORE THIS

12 COURT WHICH --

13       THE COURT: AND SO YOU WOULDN'T REQUEST ANY

14 ADDITIONAL BRIEFING, YOU WOULD BE COMFORTABLE WITH ME DOING

15 THAT ON THIS RECORD?

16       MR. LEA: WE THINK ON THIS RECORD THE COURT SHOULD

17 QUASH ENTIRELY. IF THE COURT'S CONSIDERING SOME SORT OF LESSER

18 RELIEF, OF COURSE WE'D BE HAPPY TO OFFER ANY BRIEFING THAT IS

19 HELPFUL TO YOUR HONOR, BUT WE CERTAINLY THINK THAT THE RECORD

20 BEFORE IT IS CLEAR THAT AN ABSOLUTE QUASHAL IS WARRANTED.

21       THE COURT: AND I UNDERSTAND THAT, BUT I WANT TO

22 CONSIDER ALL THE ALTERNATIVES. SO THE OTHER QUESTION YOU SAID

23 THAT YOU HAD A DISAGREEMENT WITH IS THAT SENATOR GRAHAM DID NOT

24 HAVE THE BURDEN OF PROOF ON THE SPEECH OR DEBATE CLAUSE

25 DETERMINING SOMETHING IS LEGISLATIVE. THERE'S AN ELEVENTH

1    CIRCUIT CASE.  AND I ACTUALLY DIDN'T GRAB IT BECAUSE I THOUGHT

2    IT WAS PRETTY CLEAR.  BUT WHY IS THE BURDEN OF PROOF NOT ON

3    SENATOR GRAHAM TO SHOW WHETHER SOMETHING IS LEGISLATIVE OR NOT?

4         MR. LEA:  TO TAKE FIRST THE AFFIRMATIVE ARGUMENT,

5    IT'S NOT BECAUSE IT'S A JURISDICTIONAL ISSUE.  AND WE HAVE THE

6    RANGEL V. BOEHNER CASE SAYS THAT AND IS THE PARTY INVOKING

7    JURISDICTION.  HERE, THE PARTY SEEKING THE SUBPOENA, NOT THIS

8    COURT'S JURISDICTION, THE LOWER COURT'S JURISDICTION BECAUSE WE

9    HAVE DERIVATIVE JURISDICTION IN THIS CONTEXT.  SO THE PARTY

10   INVOKING THE JURISDICTION TO QUESTION IS THE DISTRICT ATTORNEY.

11   THEREFORE, THEY HAVE TO MAKE OUT THE CASE THAT THE IMMUNITY

12   DOESN'T APPLY.  SECONDLY, THAT JUST MAKES SENSE.  IT'S AN

13   IMMUNITY.  IF WE HAVE TO COME IN AND ANSWER QUESTIONS TO GET AN

14   IMMUNITY THAT TELLS US WE DON'T HAVE TO ANSWER QUESTIONS, THAT

15   HAS MADE THE IMMUNITY IN LARGE PART SELF-DEFEATING.

16        THE COURT:  DID YOU RESPOND -- THE ARGUMENT WAS

17   RAISED BY THE D.A. THAT THE BURDEN OF PROOF WAS ON THE SENATOR.

18   AND I DIDN'T SEE THAT YOU RESPONDED TO IT IN THE BRIEF.  AND

19   THEN THERE'S THIS BRYANT VS. C.E.O. OF DEKALB COUNTY CASE WHICH

20   IS A 2009, ELEVENTH CIRCUIT CASE.  AND IT STATES THAT OFFICIALS

21   CLAIMING PROTECTION UNDER THESE IMMUNITIES MUST SHOW THAT SUCH

22   IMMUNITY IS JUSTIFIED.  SO IT APPEARS THAT THIS ELEVENTH

23   CIRCUIT CASE -- YOU DIDN'T RESPOND TO IT IN YOUR BRIEF, SO I

24   ASSUME THAT WITH THAT AND THIS ELEVENTH CIRCUIT CITE THERE

25   WASN'T A QUESTION ABOUT IT.  BUT DID YOU WANT TO BRIEF IT IN

1   SOME WAY, OR WHAT CASE DID YOU CITE AGAIN?  I DON'T THINK YOU

2   HAD CITED IT IN YOUR BRIEFS.

3           MR. LEA:  WE DID NOT GET A BURDEN-OF-PROOF ARGUMENT

4   FROM THE GOVERNMENT'S BRIEF.  WE DID SEE BRYANT CITED, BUT ALL

5   BRYANT SAID IS YOU HAVE TO SHOW -- I BELIEVE IS THE WORD.  I

6   MIGHT BE MISQUOTING -- AND CERTAINLY IT IS ON US TO EXPLAIN HOW

7   WHAT WE'RE DOING IS LEGISLATIVE.  IF YOU READ BRYANT, THAT'S

8   NOT A BURDEN-OF-PROOF CASE.  THAT CASE WAS ABOUT COUNTY

9   OFFICIALS.  AND FOR THE REASONS I'VE GIVEN, THE BURDEN SHOULD

10  BE ON THEM AS A MATTER OF FIRST PRINCIPLES.  BRYANT DIDN'T

11  GRAPPLE --

12          THE COURT:  TELL ME THAT CASE AGAIN THAT YOU WERE

13  CITING FOR THE FACT THAT THE BURDEN OF PROOF IS ON THE D.A.'S

14  OFFICE.

15          MR. LEA:  NO.  I SAID IT'S JURISDICTIONAL.  SO --

16          THE COURT:  WELL, THAT'S -- OKAY.

17          MR. LEA:  AND BECAUSE IT'S JURISDICTIONAL, THEY'RE

18  THE PARTY INVOKING JURISDICTION.  THEY HAVE TO PROVE IT.

19  THAT'S RANGEL V. BOEHNER VS. (VERBATIM) THE DISTRICT OF

20  COLUMBIA CIRCUIT.

21          THE COURT:  OKAY.

22          MR. LEA:  AND SO BRYANTS (VERBATIM) DIDN'T GRAPPLE

23  WITH THE BURDEN-OF-PROOF ISSUE AT ALL.  IT JUST SAID IN PASSING

24  THAT YOU HAVE TO SHOW THAT YOU ARE ENTITLED TO THE IMMUNITY.

25  AND WE HAVE DONE THAT HERE.  THE COURT DOESN'T NEED TO GET INTO

1  BURDEN.  AND THE REASON THE COURT DOESN'T IS BECAUSE WE KNOW

2  ALL THE FACTS HERE.  THIS GETS ME INTO THE POINT ABOUT EASTLAND

3  AND THE OTHER CASES.  WE HAVE ONE PHONE CALL, AND THAT PHONE

4  CALL HAS BEEN DESCRIBED BY EVERYBODY.  EVERYBODY ACKNOWLEDGES

5  THAT IT IS ABOUT ELECTORAL PROCESS AND ABOUT VERIFICATION OF

6  ABSENTEE BALLOTS, HOW YOU ENSURE SECURITY.  AND SO THE ONLY

7  DISPUTE IS A DISPUTE BROUGHT ON BY SECRETARY OF STATE

8  RAFFENSPERGER'S STATEMENTS THAT IT WAS, QUOTE, IMPLIED THAT

9  SOMEHOW THESE (VERBATIM) SHOULD BE THROWING OUT BALLOTS.  THAT

10 IS A STATEMENT ABOUT SENATOR GRAHAM'S MOTIVATION FOR THE COLD

11 HARD FACTS OF THE CONVERSATION ABOUT ELECTORAL SECURITY.  AND

12 THE SUPREME COURT HAS MADE CLEAR -- TIME IS, AGAIN, SINCE 1880

13 UP THROUGH EASTLAND AND THROUGH MORE RECENT CASES -- THAT

14 MOTIVE IS IRRELEVANT.  AND SO WHEN YOU STRIP THAT AWAY -- AND

15 I'M LITERALLY GOING TO QUOTE FROM THE BOGAN SCOTT CASE WHERE

16 THE SUPREME COURT SAID THE QUESTION IS WHETHER STRIPPED OF ALL

17 CONSIDERATIONS OF MOTIVE THE ACT CAN FAIRLY MAKE -- CAN FAIRLY

18 BE DESCRIBED AS LEGISLATIVE.  AND SO HERE STRIP AWAY THE

19 MOTIVE, STRIP AWAY THE IMPLICATION THAT SECRETARY OF STATE

20 RAFFENSPERGER CLAIMS TO HAVE PICKED UP, ALL YOU HAVE IS A

21 CONVERSATION ABOUT ELECTORAL PROCESS.

22          THE COURT:  WELL, AND LET ME ASK YOU ABOUT THAT

23 BECAUSE IN YOUR BRIEF WHEN YOU CITE TO THE FACT THAT THE CALL

24 WAS INFORMATIONAL, THAT WHAT IT WAS THAT SENATOR GRAHAM WAS

25 SEEKING INFORMATION FROM RAFFENSPERGER, YOU CITED TO I THINK IT

WAS AN N.B.C. -- LET ME GRAB IT.  LET ME SEE.  I'VE GOT SO MANY

PAPERS HERE.  AN N.B.C. NEWS STORY FOR THAT.  AND THERE WAS A

VIDEO THAT WAS ATTACHED TO IT.  AND IT WAS A INTERVIEW THAT

SENATOR GRAHAM WAS MAKING.  AND IN THAT INTERVIEW YOU CITE TO

THE PART THAT HE WAS COLLECTING INFORMATION, WHICH I AGREE

WITH, AND THEN LATER IN THAT SAME INTERVIEW SENATOR GRAHAM SAID

THAT HE WAS ALSO SUGGESTING TO GEORGIA ELECTION OFFICIALS TO

CHANGE THE PROCESS TO MAKE SURE A BIPARTISAN TEAM VERIFY

SIGNATURES, AND IF THERE IS A DISPUTE, COME UP WITH AN APPEAL

PROCESS.  SO THAT WAS INFORMATION THAT YOU CITED TO.  WHY IS

THAT NOT JUST INFORMATION-GATHERING?  IT SOUNDS LIKE IT'S MORE

IN TERMS OF MAKING SUGGESTIONS TO THE PROCESS.

MR. LEA:  TWO ANSWERS TO THAT.  ONE, IS IT IS

SUGGESTING LEGISLATIVE FIXES THAT CAN GO FORWARD.  AND SO THAT

IS WITHIN THE SCOPE OF THE LEGISLATURE AND ABOUT HOW TO FIX THE

PROBLEM THAT HE PERCEIVED AT THE TIME OF WIDESPREAD PROBLEMS IN

VOTING.  AND SO THAT DOESN'T SOMEHOW TAKE THE INVESTIGATION

OUTSIDE OF THE LEGISLATIVE REALM.  EVEN AMICI'S LEE CASE FROM

THE THIRD CIRCUIT, WHICH HAS BEEN MORE LAX THAN THE D.C.

CIRCUIT AND SOME OF THE OTHERS, HAS ACKNOWLEDGED YOU DON'T

FLYSPECK AND LOOK FOR A PARTICULAR SENTENCE THAT YOU THINK

TAKES A CONVERSATION THAT IS ABOUT LEGISLATIVE PROCESS OUTSIDE

OF THE PROCESS.  AND HERE WE DON'T EVEN HAVE THAT.  WE JUST

HAVE A DISCUSSION OF PROPOSED LEGISLATIVE FIXES, WHICH IS

EXACTLY WHAT A LEGISLATIVE INVESTIGATION IS DESIGNED TO DO.

1          THE COURT:  WELL, WHEN I READ WHAT THE SUBPOENA IS

2   ABOUT -- AND I THINK THERE IS TWO DIFFERENT CATEGORIES, AT

3   LEAST THE WAY I LOOK AT IT, IS THE QUESTIONS THAT SENATOR

4   GRAHAM IS ASKING TO GET INFORMATION ON -- I THOUGHT IT WAS TWO

5   CALLS, BUT YOU SAID ONE CALL.  I DON'T KNOW HOW MANY CALLS

6   THERE REALLY ARE --

7          MR. LEA:  -- I MIGHT HAVE MISSPOKE.  THEY REFERENCE

8   TWO.  THEY DO REFERENCE TWO --

9          THE COURT:  OKAY.  I THOUGHT THERE WERE TWO.  SO THE

10  QUESTIONS HE'S ASKING TO GET INFORMATION, TO ME, FALL IN ONE

11  BUCKET, AND YOU HAVE A STRONGER ARGUMENT AS IT RELATES TO THOSE

12  QUESTIONS.  NOW, THERE IS, TO ME, A SEPARATE BUCKET, AND THE

13  SUBPOENA REFERS TO INFORMATION THAT, TO ME, IS OUTSIDE JUST

14  THOSE INFORMATIONAL-GATHERING QUESTIONS.  AND SO, FOR EXAMPLE,

15  IT'S ASKING ABOUT WHAT PERHAPS SENATOR GRAHAM WAS ASKING

16  SOMEONE TO DO, NOT GATHERING INFORMATION, TELLING THEM TO DO

17  THINGS.  SENATOR GRAHAM WAS ALSO HAVING CONVERSATIONS WITH, AT

18  LEAST WHICH SAID IN THE SUBPOENA, POTENTIALLY WITH THE TRUMP

19  CAMPAIGN ABOUT VARIOUS ISSUES.  AND WHEN I READ THESE CASES, I

20  SEE THAT THE SPEECH OR DEBATE CLAUSE DOES NOT LIMIT QUESTIONS

21  INTO POLITICAL AREAS.  IT JUST DOES WITH LEGISLATIVE.  SO IF I

22  HAVE TO DETERMINE WHETHER VARIOUS PARTS OF THE QUESTIONS THAT

23  ARE BEING ASKED FALL WITHIN THIS POLITICAL OR LEGISLATIVE

24  BUCKET, HOW DO I DO THAT WITHOUT AT LEAST PARSING WHAT THESE

25  TOPICS ARE ABOUT?

1          MR. LEA:  SO TO TAKE THE TWO CATEGORIES YOU'VE RAISED

2    IN REVERSE ORDER, THE TRUMP REFERENCE IN THE SUBPOENA TO THE

3    TRUMP CALLS, THAT WILL RISE AND FALL WITH HOW YOU TREAT THE

4    PHONE CALLS THEMSELVES.  FOR TWO REASONS, ONE THEY'RE TIED UP

5    WHEN THEY -- THEY'RE CLEARLY, IF THAT'S PART OF THE

6    INVESTIGATION, THEY ARE, TOO, BECAUSE THE SUBPOENA ITSELF AND

7    THE CERTIFICATE TIE THEM IN AND THEY MADE CLEAR THAT EVERYTHING

8    IS ABOUT THIS PHONE CALL.  SO IF THE PHONE CALL IS PROTECTED,

9    THAT'S PROTECTED, TOO, JUST AS A MATTER OF FIRST PRINCIPLES.

10   BUT ALSO BECAUSE THE SUPREME COURT HAS MADE CLEAR IN THE

11   HELSTOSKI CASE THAT YOU CAN'T WAIVE SPEECH OR DEBATE

12   PROTECTION, NOT EVEN EXPRESSLY BY AN INDIVIDUAL

13   CONGRESSMAN'S --

14          THE COURT:  WELL, I THINK I'M TALKING ABOUT SOMETHING

15   DIFFERENT.  SO I UNDERSTAND YOUR ARGUMENT THAT I SHOULD THINK

16   THAT THE ENTIRETY OF THE PHONE CALLS HAVE TO DO WITH THIS

17   LEGISLATIVE INVESTIGATION AND PROCESS.  I UNDERSTAND THAT

18   ARGUMENT.  ASSUME FOR A MOMENT THAT I DON'T ENTIRELY ACCEPT

19   THAT ARGUMENT, THAT INSTEAD I WANT TO LOOK AT THE VARIOUS PARTS

20   OF THE TELEPHONE CALL TO SEE IF THEY ARE IN FACT LEGISLATIVE.

21   SO IF I AM LOOKING AT THE DIFFERENT PARTS OF THE TELEPHONE

22   CALL, IT APPEARS THAT THERE ARE VERY DIFFERENT SUBJECT MATTERS

23   THAT WERE CONTAINED WITHIN THIS CALL.  ONE, IS THE

24   INFORMATION-GATHERING, WHICH I THINK IS YOUR STRONGEST AREA,

25   BUT THE OTHER PARTS THEY'RE ASKED ABOUT, FOR EXAMPLE, WHO SET

1   UP THE CALL AND, LIKE, WHAT SENATOR GRAHAM WAS TELLING PEOPLE

2   TO DO, WHAT INSTRUCTIONS HE WAS GETTING FROM THE TRUMP

3   CAMPAIGN, THAT, TO ME, IS A VERY DIFFERENT TYPE OF DISCUSSION

4   THAN THE INFORMATION-GATHERING.  SO, I MEAN, YOU CAN KEEP

5   ARGUING THAT I JUST CONSIDER THE CALL AS A WHOLE, BUT IF I

6   DON'T DO THAT, DO YOU WANT TO ADDRESS THESE SUBSETS OF THE

7   CONVERSATION?

8            MR. LEA:  TWO RE -- YES, I DO, SHORT ANSWER, BUT TWO

9   RESPONSES.  JUST THE LAST NOTE ON THAT, THE THIRD DISTRICT, AS

10  I MENTIONED, HAS BEEN LAX IN TERMS OF APPLYING THE SPEECH OR

11  DEBATE CLAUSE, BUT EVEN HAS ACKNOWLEDGED THAT IF THE

12  PREDOMINANT PURPOSE IS LEGISLATIVE, THEN A PARTICULAR

13  CONVERSATION IS PROTECTED.  THAT'S IN THE AMICI BRIEF ON THEIR

14  SIDE.  I JUST SAY THAT TO CLOSE THE LOOP ON THE CONVERSATION AS

15  A WHOLE.  YES, IF THE COURT IS INCLINED TO THINK IT'S NECESSARY

16  TO PARSE THINGS OUT, IT SHOULD DO THAT.  I DON'T SEE ANYTHING

17  WITHIN THE UNIVERSE OF THE CALL ITSELF THAT WOULD BE

18  NON-LEGISLATIVE FACT-GATHERING UNLESS YOU GET INTO ISSUES OF

19  INTENT ABOUT WAS HE REALLY TRYING TO GO TO ACTION OR WAS HE

20  REALLY FACT-GATHERING.  AND FOR THAT REASON YOU HAVE TO STRIP

21  AWAY THE INTENT.  THE CONVERSATIONS OUTSIDE OF IT, WHICH WAS

22  THE POINT I STARTED WITH AND MAYBE SHOULD HAVE FINISHED WITH,

23  YOU'VE GOT THE PHONE CALL AND THEN YOU'VE GOT ANCILLARY STUFF

24  THAT'S KIND OF REFERRED TO IN PASSING IN THEIR BRIEF.  THAT

25  WILL RISE LARGELY WITH THE PHONE CALL.  IF THE PHONE CALL OR

1   PARTS OF IT ARE INVESTIGATIVE, THEN THE ASSOCIATED OUTSIDE

2   ACTIONS WILL BE INVESTIGATIVE, TOO.  IF THEY'RE NOT, THEN NOT.

3   AND THAT'S ACKNOWLEDGED IN AMICI'S CASES WHICH SAY YOU CAN'T

4   USE EXTERNAL COMMUNICATIONS ABOUT LOGISTICS OR FOLLOW-UP TO

5   BACKDOOR YOUR WAY THROUGH THE SPEECH-OR-DEBATE PRIVILEGE

6   BECAUSE IT IS ABSOLUTE WHERE IT APPLIES.  AND SO I DON'T SEE AN

7   EXHORTATION THERE, BUT IF THE COURT IS INCLINED TO THINK THAT

8   THE PHONE CALL NEEDS TO BE DIVVYED, WE DON'T THINK THAT'S

9   PROPER, BUT IF YOU DO, EVEN THAT WOULD BE HELPFUL TO THE

10  PARTIES TO EXPLAIN WHAT PARTS AND CATEGORIES YOU THINK ARE AND

11  ARE NOT OFF LIMITS.

12         THE COURT:  WELL, GOING BACK TO YOUR ARGUMENT THAT IF

13  SENATOR GRAHAM HAS -- THERE IS NO AFFIDAVIT, BUT IF THERE IS A

14  STATEMENT IN THE BRIEF THAT THE CALLS WERE MADE TO DO

15  FACT-FINDING AND THEN THAT PROTECTS THE ENTIRETY OF ANY

16  POSSIBLE THING THAT WAS SAID ON THE PHONE CALL, THAT IS VERY

17  WORRISOME TO ME AND IT ALSO I THINK FALLS OUTSIDE OF WHAT THE

18  SUPREME COURT HAS STATED IN THESE OTHER CASES BECAUSE UNDER

19  YOUR ARGUMENT SENATOR GRAHAM COULD START A CALL AND FACT-FIND

20  ABOUT THE ELECTION AND THEN THE CALL COULD START GOING

21  SIDEWAYS.  IT COULD BE TALKING ABOUT HIRING HACKERS OR

22  ANYTHING, ANY CRIMINAL CONDUCT COULD HAPPEN ON THIS CALL.  AND

23  THEN BECAUSE THE CALL STARTED AS THIS FACT-FINDING MEASURE,

24  ANYTHING THAT WOULD HAPPEN WOULD BE THEN PROTECTED AGAINST

25  DISCUSSION IN FRONT OF A GRAND JURY.  AND SO I DON'T UNDERSTAND

1   HOW JUST BY SAYING THIS CALL BEGAN AS A FACT-FINDING CALL, THAT

2   THAT WOULD THEN INSULATE ANYTHING THAT HAPPENED IN THE CALL

3   EVEN IF IT WAS NOT THIS DIRECT FACT-FINDING THAT IT STARTED AS.

4   AND THAT SEEMS TO BE WHAT YOU'RE ARGUING TO ME.

5           MR. LEA:  ABSOLUTELY NOT.  WE ARE NOT ARGUING THAT

6   IT'S ABOUT HOW THE CALL STARTS.  WE'RE SAYING, (A), THAT

7   THERE'S NONE OF THAT IN THE RECORD AND -- OTHER THAN

8   IMPLICATIONS ABOUT INTENT WHICH ARE OFF THE RECORD.  BUT, (B),

9   IF THE COURT HAD, IF THEY CAME FORWARD WITH SOME INDICATION

10  THAT THAT'S ACTUALLY WHAT HAPPENED, THE COURT WOULD ULTIMATELY

11  HAVE TO MAKE THE CALL ABOUT WHETHER THOSE PARTS OF THE

12  CONVERSATION WOULD BE PARSED OUT.  WE JUST DON'T HAVE THAT AT

13  ALL HERE OTHER THAN IMPLICATIONS ABOUT INTENT, WHICH EASTLAND

14  AND THE MANY OTHER CASES MAKE --

15          THE COURT:  BUT I THINK THAT WE DO HAVE THAT HERE, AT

16  LEAST IN SOME PART, AND THAT'S PROBABLY WHY WE'RE TALKING

17  CROSSWAYS, IS THAT WE DO HAVE THIS IMPLICATION THAT SENATOR

18  GRAHAM WAS TELLING SECRETARY RAFFENSPERGER TO DO THINGS AND

19  TELLING HIM TO POTENTIALLY RE-EXAMINE BALLOTS, THAT THERE'S

20  SOMETHING IN THE SUBPOENA TO CHANGE THE PROCESS TO MAKE IT MORE

21  FAVORABLE TO PRESIDENT TRUMP.  SO IF THAT IN FACT IS PART OF

22  WHAT HAPPENED IN THIS PHONE CALL, THEN HOW IS THAT LEGISLATIVE?

23  AND I UNDERSTAND YOU SAY THAT THERE'S NO PROOF OF THAT, BUT

24  THAT IS A SUBJECT MATTER THAT THEY INTEND TO ASK THE SENATOR

25  ABOUT.  SO WHY IS THAT LEGISLATIVE?

```
 1           MR. LEA:  THEY HAVE COME FORWARD -- THE CLAUSE IS
 2    ABSOLUTE.  THEY HAVE COME FORWARD WITH NOTHING TO SUGGEST THAT.
 3    AND THE WORD YOUR HONOR USED IS THE KEY POINT, IMPLICATION.
 4    THAT IS ABOUT HOW SECRETARY RAFFENSPERGER READ SENATOR GRAHAM'S
 5    INTENT.  EVERYBODY AGREES THAT IT WAS QUESTION -- PUTTING ASIDE
 6    THE SUBPOENA.  THAT'S THEIR -- THE PETITION, THAT'S THEIR
 7    GLOSS, BUT THE ACTUAL THINGS THAT HAVE BEEN SUBMITTED,
 8    EVERYBODY SAYS, WE TALKED ABOUT ELECTORAL SECURITY.  WE TALKED
 9    ABOUT ELECTORAL PROCESS.  AND THEN SECRETARY OF STATE
10    RAFFENSPERGER SAYS TWO DIFFERENT THINGS.  THEY AMOUNT TO THE
11    SAME THING.  IT SEEMED LIKE HE WANTED ME TO DO SOMETHING ELSE,
12    WITHOUT SAYING HE ASKED ME TO DO SOMETHING ELSE.  AND THEN THE,
13    IN HIS WORDS, IMPLICATION OR HE IMPLIED, I SHOULD DO SOMETHING
14    ELSE, WITHOUT SAYING HE HAS TO DO SOMETHING ELSE.  THAT
15    DOVETAILS RIGHT BACK TO MOTIVE, AND THAT IS EXACTLY WHAT THE
16    SUPREME COURT SAYS NOT TO ADDRESS AT ALL.
17           THE COURT:  WELL, TWO POINTS.  ONE, IS THAT I THOUGHT
18    THAT YOU CITED TO ME A NEWS STORY WHERE SENATOR GRAHAM SAYS
19    THAT HE SUGGESTED TO ELECTIVE OFFICIALS TO DO CERTAIN THINGS,
20    WHICH ALSO SEEMS CONSISTENT WITH SECRETARY RAFFENSPERGER'S
21    ACCOUNT.  SO I'VE GOT THAT IN THE RECORD THAT YOU ALL PROVIDED,
22    SO THERE IS SOMETHING IN THE RECORD WHERE SENATOR GRAHAM DOES
23    SAY THAT HE SUGGESTED CHANGES IN THE WAY THEY WERE DOING THINGS
24    AS PART OF THIS ELECTION PROCESS.  TO ME IT DOESN'T SOUND AT
25    ALL LIKE THIS QUOTE REFERS TO SENATOR GRAHAM TALKING ABOUT
```

1    FUTURE LEGISLATION.  IT TALKS ABOUT WHAT THEY SHOULD DO, WHICH
2    IS NOT A FEDERAL THING.  IT'S WHAT THE STATE IS DOING.  SO
3    THERE IS SOME EVIDENCE IN THE RECORD ABOUT THAT.  IT DOESN'T
4    SEEM LIKE IT'S JUST MADE UP THAT THERE WAS THIS CONVERSATION
5    WHERE SENATOR GRAHAM MADE SOME SORT OF SUGGESTION.

6          MR. LEA:  I BELIEVE THE QUOTE, AND I -- IT'S TOUGH TO
7    SAY.  I DON'T WANT TO GUESS FOR SURE.  BUT THERE'S ONE QUOTE
8    THAT SAYS, HOW WE CAN MAKE IT BETTER.  IT'S A SENATOR SAYING,
9    THAT IS, TALKING ABOUT A LEGISLATIVE FIX.

10         THE COURT:  IT SAYS, YOU CAN MAKE IT BETTER.  WELL,
11   OKAY.  I'LL LOOK AT IT AGAIN LATER.  BUT THE QUOTE I HAVE IS
12   THAT YOU CAN MAKE IT BETTER, TALKING TO THE ELECTION OFFICIAL.

13         MR. LEA:  REGARDLESS, IT SEEMS TO BE THAT HE'S
14   TALKING ABOUT A WAY TO IMPROVE THE ELECTORAL PROCESS THROUGH
15   LEGISLATION.  AND THIS IS NOT A STATE ISSUE.  THE CONSTITUTION
16   GIVES CONGRESS THE RIGHT TO CHANGE STATE ELECTORAL LAWS.  MY
17   FRIENDS DO CITE THE PROVISION THAT DISCUSSES STATE POWER OVER
18   ELECTION, BUT THEY LEAVE OFF THE LAST PART OF THAT SENTENCE,
19   WHICH IS THAT CONGRESS CAN CHANGE THEM AS IT SEES FIT.  SO THIS
20   WAS A LEGISLATIVE ISSUE FOR SENATOR GRAHAM TO INQUIRE ABOUT.
21   I'M NOT SURE OF THE PRECISE WORD IN THE CALL.  YOUR HONOR HAS
22   MADE ME DOUBT MYSELF, BUT I THINK IT'S "WE," HOW WE CAN MAKE IT
23   BETTER.  BUT EITHER WAY, I THINK HE'S REFERRING TO A
24   LEGISLATIVE CHANGE.  IT'S TOUGH TO SAY WITHOUT KNOWING THE
25   PRECISE VIDEO, AND I --

1          THE COURT:  WELL, I'LL LOOK AT IT AGAIN WITH YOUR

2    EXPLANATION AND MINE.  NOW, ANOTHER ISSUE THAT YOU TALK ABOUT

3    IS MOTIVE AND HOW THE COURT CAN'T INQUIRE AS TO MOTIVE.  AND I

4    DO WANT TO ASK YOU ABOUT THAT BECAUSE I THINK IT'S IMPORTANT.

5    AND THE EASTLAND CASE IS KIND OF WHERE YOU GO WITH THAT, AT

6    LEAST AS A STARTING POINT.  AND IN EASTLAND IT TALKS ABOUT --

7    AND I THINK THE QUOTE RIGHT HERE IS, "THAT IT'S CLEAR THAT IN

8    DETERMINING THE LEGITIMACY OF A CONGRESSIONAL ACT, WE DO NOT

9    LOOK AT THE MOTIVES ALLEGED TO HAVE PROMPTED IT."  AND I

10   UNDERSTAND THAT.  TO ME IT'S CLEAR THAT ONCE WE DETERMINE

11   SOMETHING IS LEGISLATIVE, THEN THERE IS NO INQUIRY INTO THE

12   MOTIVES OF THE LEGISLATIVE ACT.

13        NOW, TO ME IT'S POTENTIALLY A DIFFERENT QUESTION ABOUT HOW

14   TO DETERMINE IF SOMETHING IS POLITICAL OR LEGISLATIVE.  SO IN

15   LOOKING AT WHAT TYPE OF ACT SOMETHING IS, THERE'S GOT TO BE

16   SOME EXAMINATION OF WHY IT IS DONE.  BECAUSE IF IT'S DONE FOR

17   POLITICAL REASONS, IT'S DOWN ONE TRACK.  IF IT'S DONE FOR

18   LEGISLATIVE REASONS, IT'S DOWN ANOTHER TRACK.  SO YOU KEEP

19   SAYING THAT IT'S IMPROPER FOR THE COURT TO LOOK AT MOTIVE, BUT

20   HOW CAN I CLASSIFY AN ACT AS POLITICAL OR LEGISLATIVE WITHOUT

21   KNOWING WHY THE ACT WAS DONE?

22          MR. LEA:  VERY EASILY, YOUR HONOR.  PUT ASIDE

23   QUESTIONS AND MOTIVE, LOOK AT WHAT WAS SAID, THE COLD, HARD

24   FACTS OR, IN THIS CASE, WHAT -- HOW IT'S BEEN DESCRIBED BASED

25   ON WHAT'S IN THE RECORD, AND THEN MAKE THE DECISION BASED ON

1 THAT, AND MOTIVE CAN'T CHANGE THE ANALYSIS. IT'S AN OBJECTIVE

2 STANDARD NO DIFFERENT THAN THIS COURT I'M SURE HAS APPLIED IN

3 MANY OTHER CONTEXT (VERBATIM). YOU TAKE THE FACTS, YOU DON'T

4 READ INTO THE INTENT BEHIND THEM, AND INSTEAD YOU DECIDE BASED

5 ON THOSE FACTS WHAT DO YOU HAVE. AND THAT MAKES IT WHERE YOU

6 CAN CLASSIFY IT IF IT'S FAIRLY DESCRIBABLE AS LEGISLATIVE IN

7 THE WORD OF THE DOWDY CASE. AND HERE --

8          THE COURT: I DON'T HAVE FACTS, AND THAT'S WHAT TO ME

9 IS A STUMBLING BLOCK. BECAUSE IF, FOR EXAMPLE, I KNEW THAT

10 SENATOR GRAHAM SAID SOMETHING LIKE, A HUNDRED PERCENT OF THE

11 REASON I MADE THAT CALL WAS BECAUSE I WAS LOOKING AT X, Y AND

12 Z, THEN THOSE WOULD BE SOME FACTS. IF HE SAYS, A HUNDRED

13 PERCENT OF THE REASON WHY I COORDINATED WITH THE TRUMP CAMPAIGN

14 WAS BECAUSE I WAS INVESTIGATING ELECTION IRREGULARITIES AND

15 THERE WASN'T ANYTHING ELSE GOING ON, THAT MIGHT BE FACTS. BUT

16 I DON'T KNOW THE ANSWERS TO THE QUESTIONS. SO IT'S VERY

17 DIFFICULT TO DETERMINE WHAT BUCKET THESE FIT IN WITHOUT FACTS.

18          MR. LEA: IF I MIGHT, YOUR HONOR, I THINK THAT THAT

19 MISCONCEIVES HOW TO LOOK AT FACTS. IT'S NOT FACTS ABOUT

20 MOTIVATION. THAT'S WHAT EASTLAND AND THE OTHER CASES TAKE OFF

21 THE TABLE. IT'S THE UNDERLYING FACTS ABOUT THE COMMUNICATION

22 REGARDLESS OF MOTIVATION. SO IT'S NOT A QUESTION OF WHAT --

23 FACTS RELATED TO WHAT SENATOR GRAHAM SAYS HE DID OR DID NOT

24 MEAN TO DO. IT'S FACTS ABOUT WHAT TOPICS WERE COVERED IN THE

25 MEETING. AND YOU DO HAVE THOSE. THEY HAVE CHOSEN TO PUT THOSE

1   IN THE RECORD.  THEY MATCH UP WITH OURS.  IT'S A CONVERSATION

2   ABOUT HOW TO VERIFY ABSENTEE BALLOTS AND ELECTORAL INTEGRITY.

3   AND THAT'S CLEARLY AN ISSUE -- I DON'T WANT TO BELABOR THE

4   POINT IF THE COURT DOESN'T HAVE A QUESTION ABOUT IT, BUT IT IS

5   CLEARLY AN ISSUE THAT CAN BE COVERED --

6          THE COURT:  WELL, AND I DON'T THINK YA'LL AGREE.

7   THAT'S WHERE I THINK THAT THERE'S A PROBLEM HERE.  BECAUSE I

8   DON'T THINK THEY AGREE THAT IT WAS JUST INFORMATION-GATHERING.

9   I THINK THEY ARE TAKING THE POSITION THAT SENATOR GRAHAM TOLD

10  PEOPLE TO DO THINGS.  AND I ALSO DON'T AGREE THAT THEY READ THE

11  SUBPOENA AS NARROWLY AS YOU DO.  I DON'T THINK THEY'RE JUST

12  ASKING ABOUT WHAT HAPPENED IN TERMS OF WHAT WAS DISCUSSED ON

13  THE PHONE CALL.  IT'S MUCH BROADER THAN THAT.  SO I DON'T THINK

14  THAT THAT IS -- IF YOU BOTH DID AGREE THAT THE ONLY QUESTIONS

15  THAT WERE GOING TO BE ASKED HAD TO DO WITH WHAT THE CALL WAS

16  ABOUT AND IT WAS ALL ABOUT INFORMATION-GATHERING, THERE WOULD

17  BE VERY LITTLE DISPUTE HERE.  BUT THAT'S NOT AT ALL WHAT I SEE

18  THE ISSUE TO BE.  IT'S HOW YOU DEFINE THE ISSUE, BUT I DON'T

19  THINK IT'S HOW IT HAS BEEN OTHERWISE DEFINED.

20          MR. LEA:  I WOULD SAY THAT THEY CERTAINLY DISAGREE OR

21  AT LEAST CAST UNCITED SORT OF STATEMENTS THAT THEY WOULD TAKE A

22  POSITION OBVIOUSLY THAT IT WAS DIFFERENTLY MOTIVATING.  BUT ON

23  THE CORE FACTS ABOUT WHAT WAS DISCUSSED -- AND MY POINT THERE,

24  I UNDERSTAND YOUR HONOR'S POINT THAT THEY DEFINE THE ISSUE

25  DIFFERENTLY.  MY SUBMISSION IS THAT THE SUPREME COURT HAS SAID

1    THAT'S HOW YOU GO ABOUT THE ANALYSIS.  YOU LOOK AT THE

2    OBJECTIVE FEATURES OF THE CONVERSATION OR THE EVENT OR WHATEVER

3    IT WAS AND YOU MAKE THE CALL BASED ON THAT.  I REALLY DO THINK

4    THE SUPREME COURT'S DECISION -- I WOULD COMMIT IT TO YOU THE

5    SUPREME COURT'S DECISION IN BOGAN HARRIS WHERE THEY LITERALLY

6    SAY THE QUESTION IS WHETHER STRIPPED OF ALL CONSIDERATIONS OF

7    MOTIVE, THE ACT CAN BE FAIRLY DESCRIBED AS LEGISLATIVE.  SO ALL

8    OF THAT DISAGREEMENT TO WHICH YOUR HONOR REFERENCES JUST FALLS

9    AWAY BECAUSE WE HAVE A LEGISLATIVE CALL.

10         THE COURT:  WHY DON'T I LOOK AT WHAT THE SUBPOENA IS

11   ASKING HIM TO TALK ABOUT RATHER THAN HOW YOU DESCRIBE THE

12   CONTENTS OF THE CALL?  BECAUSE WHAT IS -- AT LEAST WHAT YOU

13   CITED IN YOUR BRIEF AS KIND OF WHAT I LOOK AT THE SCOPE OF THE

14   SUBPOENA, IS BASICALLY ON THE CERTIFICATE OF MATERIAL WITNESS.

15   AND IT TALKS ABOUT THAT THE SUBSTANCE OF THE TELEPHONE CALLS,

16   WHICH IS WHAT YOU'VE REFERRED TO, BUT IT ALSO TALKS ABOUT THE

17   LOGISTICS OF SETTING UP THE CALL, COMMUNICATIONS BETWEEN

18   HIMSELF AND OTHERS INVOLVED IN THE PLANNING AND EXECUTION OF

19   THE TELEPHONE CALLS, THE TRUMP CAMPAIGN AND OTHER KNOWN AND

20   UNKNOWN INDIVIDUALS TRYING TO INFLUENCE THE ELECTION.  AND SO I

21   DON'T SEE THAT THIS IS ONLY LIMITED TO THE TWO CALLS.  I DON'T

22   SEE THAT ANYWHERE.  I JUST SEE THAT THERE'S A REFERENCE THAT

23   THERE WERE AT LEAST TWO CALLS, BUT I DON'T SEE THAT THIS IS

24   ONLY LIMITED TO THE SUBSTANCE OF THOSE TWO CALLS.

25         MR. LEA:  SO THE ANSWER TO THAT IN TWO PARTS.  THE

```
1    QUESTIONS ABOUT LOGISTICS OR COMMUNICATIONS WHICH IN THE
2    CERTIFICATE ARE THE -- THE FOLLOW-ON COMMUNICATIONS ARE TIED TO
3    THE CALLS, THAT RISES OR FALLS WITH THE CALLS THEMSELVES
4    BECAUSE THAT WOULD BE PART OF THE INVESTIGATION AS WELL.
5    AMICI'S OWN CASES, EVEN ONES THAT ARE BASED ON MORE QUALIFIED
6    DOCTRINES UNLIKE ABSOLUTES, MUTUAL DEBATE, ACKNOWLEDGE THAT YOU
7    CAN'T BACKDOOR YOUR WAY IN BY SAYING THE LEGISLATIVE PART OF
8    THE INVESTIGATION WAS COVERED, BUT WE WANT TO ASK ABOUT WHAT
9    YOU SAID AFTER THE FACT AS YOU DISCUSSED IT WITH OTHERS BECAUSE
10   YOU CAN'T KIND OF BACKDOOR YOUR WAY INTO THE MOTIVE.  SO THAT'S
11   ONE BUCKET, THOSE THINGS THAT ARE SURROUNDING THE CALLS OR
12   COVERED BY THE CALLS.  AND THEN ALL YOU HAVE LEFT IS A BROAD
13   ASSERTION THAT THEY WANT TO ASK IF HE WAS COORDINATING IN SOME
14   WAYS WITH OTHERS, AND THAT'S JUST A FISHING EXPEDITION THAT
15   THEY'VE NEVER INDEPENDENTLY DEFENDED HERE.  AND SO, I MEAN, FOR
16   INSTANCE THERE ARE ADDITIONAL SOURCES OF INFORMATION.  WELL,
17   YOU CAN'T JUST DEFEAT THE SPEECH OR DEBATE CLAUSE BY DIVORCING
18   A REQUEST LIKE THAT FROM ANYTHING.  INSTEAD, YOU LOOK FOR THE
19   CALLS AND WHAT THE MEAT OF IT WAS, AND THAT IS ABOUT THE
20   INFORMATION-GATHERING PROCESS.  YOU DID MENTION GRAVEL AND
21   JOHNSON AND BREWSTER, SO I WANT TO MAKE SURE I ANSWER THE
22   COURT'S QUESTIONS ABOUT THAT.  AND I'LL --
23          THE COURT:  WELL, AND I THINK THAT THOSE CASES, TO
24   ME, STAND FOR THE PROPOSITIONS THAT SOMETHING CAN'T BE JUST
25   LEGISLATIVE BY SOMEONE SAYING THAT THIS IS RELATED TO A
```

1    LEGISLATIVE ACTIVITY, THAT WHEN YOU'RE ASKING PEOPLE TO DO

2    THINGS, THAT THAT IS POTENTIALLY DIFFERENT.  YOU'VE GOT IN

3    BREWSTER THIS -- THEY'RE USING OLD-FASHIONED WORDS, BUT THE

4    CAJOLING AND EXHORTING OF PEOPLE.  AND CERTAINLY I SEE AN

5    ARGUMENT FROM THE D.A.'S OFFICE THAT TRYING TO GET

6    RAFFENSPERGER TO DO THINGS WAS EXHORTING AND CAJOLING, WHICH IS

7    OUTSIDE THE SPEECH AND DEBATE CLAUSE.  I'M LESS IMPRESSED BY

8    THE D.A.'S ARGUMENT THAT THERE IS AN ABSOLUTE EXCEPTION TO

9    THIRD-PARTY CRIMINAL ACTIVITY.  I THINK IT'S MORE NUANCE THAN

10   THAT, BUT I DO THINK THAT YOU GO BACK TO THIS IDEA THAT ONCE

11   SOMETHING IS FOUND TO BE LEGISLATIVE, IT'S A PRETTY EASY

12   ANSWER.  BUT TRYING TO FIGURE OUT IF SOMETHING IS POLITICAL OR

13   LEGISLATIVE, AND IT'S LEGISLATIVE VERSUS RELATING TO

14   LEGISLATIVE, IS A VERY DIFFICULT INQUIRY.  AND IT APPEARS THAT

15   SOME OF THESE SUBJECTS, AT LEAST ON THEIR FACE, TO ME, FIT MORE

16   CLOSELY UNDER THIS POLITICAL REALM.  BUT I DON'T REALLY SEE ANY

17   LAW ABOUT KIND OF WHAT IS POLITICAL VERSUS LEGISLATIVE BECAUSE

18   IT APPEARS THAT JUST BY SAYING, I'M GATHERING INFORMATION, THAT

19   KIND OF ANYTHING CAN KIND OF GO DOWN THAT ROAD.  I MEAN,

20   SOMEONE CAN SAY, I'M GATHERING INFORMATION BECAUSE I WANT TO

21   PASS LEGISLATION ABOUT WEAPONS, SO I TRIED TO SEE IF I COULD

22   BUY A WEAPON ON THE PHONE CALL.  I MEAN, IT CAN GO WAY FAR

23   AFIELD WHEN YOU SAY, I'M JUST GATHERING INFORMATION.  SO THAT'S

24   THE PIECE THAT'S HANGING ME UP MOST ABOUT THESE BREWSTER AND

25   GRAVEL CASES, IS THAT IT APPEARS THAT YOU WANT KIND OF

1   EVERYTHING TO BE SWEPT UNDER THIS IDEA OF LEGISLATION.

2          MR. LEA:  SO, FIRST, TO TAKE THE REFERENCE TO

3   CAJOLING, I ACKNOWLEDGE THAT THAT LANGUAGE IS IN THE SUPREME

4   COURT OPINIONS.  I WANT TO BE CLEAR THAT THAT IS DICTA, THE

5   COURT HAS NEVER ACTUALLY CONFRONTED THAT, AND THAT IS A FAIR

6   PART OF AN INVESTIGATION, IS CALLING AN EXECUTIVE BRANCH

7   OFFICER AND SAYING, CAN YOU FIX THIS?  IF NOT, WE'RE GOING TO

8   NEED LEGISLATION BECAUSE CLEARLY THE OLD LAW IS NOT DOING THE

9   WORK.  THAT SAID, THAT'S NOT WHAT'S HAPPENING HERE.  AND I DO

10  REALIZE I'M DOVETAILING BACK INTO INTENT BEING OFF THE TABLE,

11  BUT ALL THEIR CLAIM ABOUT CAJOLING IS BASED ON AN IMPLICATION

12  IN THE CONVERSATION FROM SECRETARY RAFFENSPERGER, WHICH IS NOT

13  A HARD FACT.

14      I DO WANT TO REFERENCE GRAVEL.  HALF OF THEIR BRIEF GETS

15  IT RIGHT.  HALF OF THEIR BRIEF RECOGNIZES THAT GRAVEL'S NOT

16  REALLY AN EXCEPTION AT ALL BECAUSE YOU CAN'T ASK ABOUT

17  LEGISLATIVE ACTS.  AND SO WE'RE RIGHT BACK TO TALKING WITH YOUR

18  HONOR ABOUT WHAT IS OR IS NOT A LEGISLATIVE ACT.  THE BACK HALF

19  SEEMS TO ASK FOR SOME SORT OF ILL-DEFINED EXCEPTION.  AND THERE

20  IS NO EXCEPTION BECAUSE GRAVEL JUST SAID, GOT A NATIONAL

21  SECURITY CASE, SENATOR CAME BY THE PENTAGON PAPERS IN SOME

22  ILLEGAL FASHION, NOT SAYING HE DID IT, BUT SOMEBODY CLEARLY

23  COMMITTED THE CRIME.  THEY MADE ARRANGEMENTS TO PUBLISH IT.

24  AND THE COURT IS BASICALLY SAYING YOU CAN'T LAUNDER A

25  PRE-EXISTING, INDEPENDENT CRIME THROUGH THE INVESTIGATION

1   PROCESS.  THAT'S NOT WHAT WE HAVE HERE.  HERE WE'RE DEBATING

2   ABOUT WHETHER THIS WAS AN INVESTIGATION AT ALL.  THEY'RE GOING

3   AFTER THE LEGISLATIVE ACT ITSELF.  IT WOULD BE LIKE GOING AFTER

4   THE COMMITTEE SPEECH IN GRAVEL.  SO WHEN YOU UNDERSTAND GRAVEL

5   THAT WAY, IT'S CONSISTENT WITH BREWSTER.

6           THE COURT:  BUT IF WE GO WITH WHAT SECRETARY

7   RAFFENSPERGER INDICATES THE CALL WAS ABOUT, IT FITS VERY NEATLY

8   UNDER GRAVEL IN SOME RESPECTS BECAUSE IT SOUNDS LIKE SENATOR

9   RAFFENSPERGER (VERBATIM) AT LEAST IS STATING THAT HE FELT

10  INTIMIDATED AND THAT THERE WAS SOME ATTEMPT TO GET HIM TO

11  CHANGE OR TO REJECT LEGAL BALLOTS.  SO FROM THAT STANDPOINT

12  THERE IS A PATHWAY AND APPARENTLY SWORN TESTIMONY UNDER OATH

13  THAT BACKS THIS THAT MAKES IT ALMOST EXACTLY LIKE GRAVEL.

14          MR. LEA:  I ASSUME IF THEY HAD THAT, THEY WOULD HAVE

15  COME FORWARD WITH IT.  INSTEAD, ALL THEY HAVE COME FORWARD

16  WAS (VERBATIM) A STATEMENT THAT, WE DISCUSSED ELECTORAL

17  PROCESS.  IT WAS IMPLIED OR IT SEEMED LIKE HE WANTED ME TO TAKE

18  ACTION.  SO WE'RE RIGHT BACK TO SAYING THAT IS ABOUT INTENT,

19  WHICH IS LITERALLY SINCE THE KIMBROUGH -- I'M GOING TO

20  MISPRONOUNCE IT -- BUT FROM 1880 RIGHT THROUGH EASTLAND AND

21  EVEN TO TODAY WHAT IS SUPPOSED TO BE OFF THE TABLE.  AND IT

22  MAKES SENSE BECAUSE THIS IS IMMUNITY.  YOU'RE NOT SUPPOSED TO

23  BE ABLE TO PIERCE IT JUST BY SAYING, I THINK SOMEBODY DID THIS

24  FOR A BAD REASON.  AND SO YOU LOOK AT IT OBJECTIVELY.  THEY

25  HAVE MADE THIS OTHER ARGUMENT -- AND I DON'T WANT TO LEAVE IT

1   ON THE TABLE IF YOUR HONOR HAS QUESTIONS ABOUT IT -- ABOUT THE

2   IDEA THAT YOU WOULD NEED SOME --

3          THE COURT:  WELL, I WANT TO GO BACK TO THIS POLITICAL

4   ISSUE.

5          MR. LEA:  OKAY.

6          THE COURT:  IF SOME OF THESE SUBJECTS ARE NOT

7   POLITICAL, EXPLAIN TO ME WHAT YOU BELIEVE THE SUPREME COURT

8   MEANT BY SAYING POLITICAL ACTIONS ARE NOT SUBJECT TO THIS

9   IMMUNITY BECAUSE I'VE GOT THE STATEMENT THAT POLITICAL ACTIONS

10  AREN'T PROTECTED.  WE'VE GOT QUESTIONS ABOUT COORDINATIONS WITH

11  THE TRUMP CAMPAIGN.  THAT, TO ME, RAISES AT LEAST AN ISSUE AS

12  TO WHETHER THAT IS POLITICAL.  WHY IS THAT NOT POLITICAL?

13         MR. LEA:  TO LOOK AT THE STATEMENT ABOUT

14  COORDINATION, IT'S IN REFERENCE TO THE CALL.  THEY CLAIM THAT

15  SOMEHOW THE INVESTIGATION INVOLVED THEM AS WELL, BUT THAT'S

16  ANOTHER STATEMENT ABOUT INTENT.  YOU CAN'T JUST PIERCE IT BY

17  TACKING ON -- THEY'VE OFFERED NO STATEMENT, NO FACT TO SUPPORT

18  THE IDEA THAT THERE WAS COORDINATION.  AND SO WE'RE RIGHT BACK

19  TO TALKING ABOUT AN INVESTIGATORY TALL (VERBATIM), WHICH

20  THEY'VE THEN APPENDED REFERENCE TO, WE THINK IT MIGHT HAVE BEEN

21  COORDINATED.  IF THAT IS THE SPEECH OR DEBATE CLAUSE, IT IS A

22  PAPER TIRE BECAUSE ANYBODY CAN TACK ON A STATEMENT OF INTENT TO

23  THE END OF A PETITION, AN EX PARTE PETITION FOR A SUBPOENA TO

24  TRY TO GET IT.

25        I DID MISS ONE POINT IN THE CRIMINAL DISCUSSION.  YOU

MENTIONED THE SCOPE OF A POTENTIAL CRIMINAL EXCEPTION. WE

DON'T THINK GRAVEL CREATES IT. I DO WANT TO HIGHLIGHT AGAIN --

I WAS SURPRISED BY THEIR RESPONSE. THEY WENT FULL SCALE ON

THIS IDEA THAT THERE'S A FORMAL CRIMINAL EXCEPTION

CROSS-CUTTING ALL THESE DOCTRINES. THEY'VE GOT A CIVIL GRAND

JURY UNDER GEORGIA LAW. THEY CHOSE THAT OPTION PRESUMABLY

BECAUSE IT BRINGS THEM SOME BENEFITS. IT HAS A LONGER

DURATION. PRESUMABLY THERE'S SOME OTHER PROCEDURAL FEATURES

THEY THINK BENEFICIAL. BUT HAVING CHOSEN TO DO THAT, THEY

CAN'T THEN INVOKE AN ACROSS-THE-BOARD, CUTTING, CRIMINAL

EXCEPTION TO A BUNCH OF IMMUNITIES. AND SO EVEN IF THE COURT

WERE INCLINED TO DEBATE WHETHER THERE IS SOME SORT OF CRIMINAL

EXCEPTION THAT WOULD ALLOW PEERING INTO LEGISLATIVE ACTS, THIS

ISN'T EVEN THAT CASE. AND SO THAT'S VERY EASY TO SOLVE. THE

KENERLY CASE FROM THE GEORGIA COURT OF APPEALS HAS BEEN VERY,

VERY CLEAR ON THAT. AND FEDERAL COURTS HAVE DEFERRED TO STATE

COURTS ON THE MEANING OF STATE STATUTES SINCE WELL BEFORE

EERIE (PHONETIC). AND SO --

              THE COURT: WELL, AND I'M KIND OF BACK TO I DON'T

KNOW THAT I AGREE THAT THERE'S THIS HARD CORE, CRIMINAL

EXCEPTION, BUT I DO THINK WHETHER SOMETHING IS CRIMINAL

CERTAINLY INFORMS ON WHETHER IT IS LEGISLATIVE OR NOT. I DON'T

THINK THERE CAN BE AN ARGUMENT THAT SOMETHING THAT IS CRIMINAL

IS LEGISLATIVE, ESPECIALLY WHEN YOU GO BACK TO THE FACTS OF THE

BREWSTER CASE. SO IF THERE IS AN ALLEGATION THAT -- AND I

1  DON'T KNOW -- IT'S, AGAIN, WE GO BACK TO I DON'T KNOW WHAT THE

2  ANSWERS TO ALL THESE QUESTIONS ARE, BUT IF THERE ARE

3  CONVERSATIONS WHERE PEOPLE ARE DOING CRIMINAL THINGS AND THAT'S

4  PART OF WHAT'S HAPPENING, I MEAN, WHY WOULD THAT BE A PART OF

5  THE LEGISLATIVE PROTECTION?

6          MR. LEA:  TWO ANSWERS.  ONE, IS THE SUPREME COURT HAS

7  ANSWERED THAT.  THEY HAVE ACKNOWLEDGED THAT THIS BROAD AND

8  ABSOLUTE AND IN THEIR MIND INDISPENSABLE PRIVILEGE -- IMMUNITY,

9  I SHOULD SAY, WILL LET SOME BAD THINGS HAPPEN, INCLUDING

10 CRIMES.  IT WILL LET PEOPLE OFF THE HOOK.  THEY REFER TO

11 SENATORS, OR PARLIAMENTARIANS IN THE OLD DAYS, DESTROYING

12 PEOPLE THROUGH THE IMMUNITY.  AND THEY HAVE CHOSEN TO STRIKE

13 THE BALANCE THAT WAY.  BREWSTER IS IN NO WAYS INCONSISTENT WITH

14 THAT.  YOU DON'T JUST GET TO PIERCE IT AND SAY, YEAH, IT WAS

15 LEGISLATIVE ACTIVITY FORMALLY, BUT IT WAS PART OF A CRIME.

16 INSTEAD, WHAT BREWSTER SAID --

17         THE COURT:  NO.  IT'S DIFFERENT.  IT'S NOT THAT IT'S

18 LEGISLATIVE ACTIVITY, BUT THE QUESTION IS, IS IT LEGISLATIVE

19 ACTIVITY.  AND SO IF SOMETHING IS CRIMINAL, HOW CAN THAT BE

20 LEGISLATIVE ACTIVITY?

21         MR. LEA:  BECAUSE YOU LOOK AT THE OBJECTIVE FACTS.

22 AND HERE THE ONLY OBJECTIVE FACTS THEY POINTED TO ARE QUESTIONS

23 ABOUT ELECTORAL PROCESS.  YOU DON'T IMPLY (VERBATIM) ABOUT

24 MOTIVE.  BREWSTER IS DIFFERENT BECAUSE THERE THE COURT SAID A

25 PROMISE TO DO A LEGISLATIVE ACT IN THE FUTURE IN EXCHANGE FOR

MONEY IS AN INDEPENDENT CRIME IRRESPECTIVE OF WHAT HAPPENS

LATER WITH A LEGISLATION BEING PASSED.  AND THEY SAID THAT IS

ENTIRELY OUTSIDE.  GRAVEL THEN TOOK THAT A STEP FURTHER AND

SAID YOU CAN'T ALSO MUG SOMEBODY TO STEAL DOCUMENTS AND THEN

READ THEM ON THE FLOOR OF THE SENATE AND EXPECT TO NOT GET

PROSECUTED.  AND SO THOSE ARE CASES ACKNOWLEDGING THAT IF YOU

HAVE A CLEARLY -- A LEGISLATIVE ACT UNDER THE TEST, UNDER THE

OBJECTIVE TEST, YOU CAN'T INQUIRE INTO THAT, BUT YOU CAN'T TAKE

A CRIME OUTSIDE, READ IT INTO THE RECORD AND THEN GET

NOT (VERBATIM) PROSECUTED FOR THE CRIME.  THIS CASE JUST ISN'T

THAT BECAUSE EVERYTHING WE'RE TALKING, AT LEAST AS FAR AS THEY

HAD COME FORWARD AND IS REFLECTED IN THEIR PETITION, IS TIED UP

IN THIS PHONE CALL.  AND IF YOU LOOK AT THAT OBJECTIVELY,

THAT'S LEGISLATIVE ACTIVITY.  AND SO THAT'S REALLY WHERE WE

SEEM TO COME DOWN TO, IS ABOUT THE OBJECTIVE NATURE OF THE

ANALYSIS.  AND HERE BOTH SIDES HAVE PUT FORWARD INDICATIONS OF

WHAT EXACTLY THAT WAS.  AND IT WAS A QUESTION ABOUT ELECTORAL

PROCESS.

AND JOHNSON -- LAST POINT ON THIS, YOUR HONOR.  JOHNSON

SHOULD BE READ ALONGSIDE BREWSTER BECAUSE IT KIND OF MAKES THIS

POINT CLEAR.  BREWSTER CAME ALONG LATER, SAID YOU CAN'T HAVE A

BRIBE AND THEN LATER SAY IT WAS LEGISLATIVE BECAUSE I VOTED FOR

AN ACT LATER.  AND THEY SAID, WELL, THE CRIME STANDS ON ITS OWN

AND OUTSIDE THE LEGISLATIVE PROCESS.  JOHNSON WAS A LITTLE

DIFFERENT BECAUSE THEY TRIED TO PROVE THE EQUIVALENT TO A

BRIBE, BUT THEN THEY USED A BUNCH OF EVIDENCE SAYING INFER FROM

THIS LEGISLATIVE ACTIVITY, IN THAT CASE A SPEECH, THAT HE WAS

DOING THIS FOR THESE UNTOWARD REASONS.  AND THE DIFFERENCE IS

THE COURT SAID, WELL, NO, THAT'S NOT INDEPENDENT IN ANY WAY.

YOU'RE CHALLENGING THE LEGISLATIVE ACT AS A CRIME.  SO THE

DETERMINATION OF WHETHER IT'S A LEGISLATIVE ACT IS OBJECTIVE

AND IT PRECEDES THE ANALYSIS OF WHETHER THE CRIME APPLIES OR

NOT.  YOU CAN'T CUT THROUGH IT WITH A CRIMINAL EXCEPTION.  I

DON'T WANT TO -- WE HAVE OTHER IMMUNITIES.  I'M HAPPY TO

ADDRESS THOSE OR TO ANSWER QUESTIONS.

THE COURT:  NO.  BEFORE WE GET OFF THAT, A COUPLE

MORE QUESTIONS.  AND, AGAIN, I DON'T WANT YOU TO FEEL LIKE

YOU'RE BEING ATTACKED, BUT I WANT TO MAKE SURE THAT I

UNDERSTAND ALL YOUR ARGUMENTS --

MR. LEA:  CERTAINLY.

THE COURT:  -- BECAUSE THIS IS CERTAINLY COMPLICATED.

SO YOU'RE HERE WITH THE ASSUMPTION THAT THE ONLY REAL TOPICS OF

CONVERSATION ARE THE TWO PHONE CALLS.  NOW, AGAIN, I'M NOT SURE

THAT THAT IS ACCURATE BECAUSE THERE IS CERTAINLY THE ARGUMENT

THAT THESE CATEGORIES ARE MUCH BROADER THAN THAT.  BUT LET'S

SAY, FOR EXAMPLE, THAT THE SUBPOENA IS NOT AS NARROW AS YOU

THINK AND THERE ARE OTHER TOPICS THAT MIGHT BE CALLED UPON TO

BE ADDRESSED SUCH AS JUST, FOR EXAMPLE, THERE'S A LOT IN THE

RECORD ABOUT PRESS INTERVIEWS AND THINGS THAT WERE SAID TO THE

MEDIA.  WHY WOULD QUESTIONS ABOUT WHAT WAS THE BASIS OF YOUR

1    STATEMENT IN THE PRESS, WHY DID YOU SAY THAT, LIKE, WHY IS THAT

2    LEGISLATIVE?

3         MR. LEA:  DIRECT ANSWER IS THAT PRESS STATEMENTS, WE

4    HAVE TO SAY UNDER HELSTOSKI, ARE NOT.  WE KNOW THAT BECAUSE

5    THEY'RE KIND OF OUTSIDE PUBLIC STATEMENTS, AND THE COURT HAS

6    SAID THAT.  THAT SAID, THERE CAN BE NO WAIVER OF SPEECH OR

7    DEBATE CLAUSE AND YOU CAN'T USE THEM TO THEN BACKDOOR INTO

8    TALKING ABOUT THE LEGISLATIVE ACTIVITY.  AND SO THAT'S WHAT

9    THEY WOULD BE TRYING TO DO HERE.  THEY DON'T HAVE AN

10   INDEPENDENT INTEREST IN SOME SORT OF PRESS STATEMENT.  THEY'RE

11   TRYING TO USE IT TO PIERCE THE LEGISLATIVE ACTIVITY, AND THAT

12   VIOLATES THE HARD CORE ABSOLUTE IMMUNITY THAT THE CONSTITUTION

13   GUARANTEES.  SECOND, TO THE OTHER STATEMENTS YOU'VE REFERENCED,

14   THEY HAVE TIED EVERYTHING TO THE PHONE CALLS.

15        THE COURT:  WHERE HAVE THEY DONE THAT?  BECAUSE I

16   DON'T SEE THAT THEY HAVE ONLY TIED IT TO THE PHONE CALLS.  I

17   SEE, WHEN I'M LOOKING AT THE SCOPE, I SEE WHAT IS IN THE

18   CERTIFICATE OF MATERIAL WITNESS.  AND I DON'T SEE THAT BEING

19   TIED JUST TO THE PHONE CALLS.

20        MR. LEA:  I WANT TO GET THE WORDING RIGHT, BUT IT'S

21   ALL THEMATICALLY TIED TO THE PHONE CALLS, UNIQUE KNOWLEDGE

22   CONCERNING THE SUBSTANCE, CIRCUMSTANCES SURROUNDING THE

23   DECISION TO MAKE -- WELL, THAT'S LEGISLATIVE MOTIVE --

24   LOGISTICS OF SETTING THEM UP.  THEY CITE ONE UNPUBLISHED

25   DISTRICT COURT CASE THAT SAYS THAT'S OFF THE RECORD, BUT THERE

1  ARE OTHER CASES --

2         THE COURT:  BUT THE TRUMP CAMPAIGN IS A MUCH BIGGER

3  BUCKET OF INFORMATION.  SO IT APPEARS THAT THEY'RE GOING TO BE

4  ASKING ABOUT DIRECT COMMUNICATIONS BETWEEN SENATOR GRAHAM AND

5  THE TRUMP CAMPAIGN APPARENTLY ABOUT EFFORTS TO DISRUPT THE

6  LAWFUL ADMINISTRATION OF 2020 ELECTIONS IN GEORGIA.  SO ADDRESS

7  THAT BUCKET.

8         MR. LEA:  THEY HAVE TIED THAT IN THE SAME LIST THAT'S

9  TALKING ABOUT THE PLANNING AND EXECUTION OF THE PHONE CALLS.

10 WE -- AND THEY DIDN'T MENTION THIS AT ALL IN THEIR BRIEFS.  WE

11 SHOULDN'T BE PLAYING WHACK-A-MOLE WITH THE DISTRICT ATTORNEY.

12 I WOULD, AGAIN, DOVETAILING BACK TO YOUR HONOR'S POINT ABOUT

13 THE BURDEN, THEY'VE NOT EVEN COME FORWARD WITH ANYTHING

14 SUGGESTING THAT THIS -- WHAT THIS WOULD HAVE CONSISTED OF OR

15 WHAT THEY HAVE.  AND SURELY, SURELY A CONSTITUTIONAL IMMUNITY

16 CAN'T BE PIERCED WITH A SIMPLE ASSERTION IN A CERTIFICATE OR A

17 PETITION.  IT WOULD BE MEANINGLESS IF YOU COULD ALWAYS JUST

18 THROW IN SOME BROAD FISHING EXPEDITION SUBJECT AND THEN SAY NOW

19 THE IMMUNITY DOESN'T APPLY BECAUSE WE'RE ASKING ABOUT A

20 NON-LEGISLATIVE THING.

21        THE COURT:  WELL, AND I THINK THAT THAT IS NOT

22 NECESSARILY WHAT'S HAPPENING HERE BECAUSE WE HAVE A SUPERIOR

23 COURT JUDGE THAT HAS SAID THAT SENATOR GRAHAM HAS KNOWLEDGE OR

24 AT LEAST SHOULD BE CALLED IN TO ADDRESS CERTAIN TOPICS.  SO IF

25 THERE ISN'T A SPEECH OR DEBATE CLAUSE IMMUNITY TO TALKING ABOUT

1   CONVERSATIONS WITH THE TRUMP ADMINISTRATION CONCERNING ATTEMPTS

2   TO DISRUPT THE LAWFUL ADMINISTRATION OF '22 ELECTIONS IN

3   GEORGIA, IF THERE IS NOT ONE OF THESE IMMUNITIES, WHY IS IT MY

4   ROLE TO SAY THAT WHAT THE SUPERIOR COURT JUDGE HAS DETERMINED

5   AS KIND OF THE SCOPE, IF IT'S NOT ONE OF THESE THINGS, I MEAN,

6   WHY SHOULD I JUST SAY THAT'S JUST NOT SOMETHING THAT THEY GET

7   TO DO?

8         MR. LEA:  THE FIRST ANSWER I UNDERSTAND THAT YOU'VE

9   EXPRESSED SOME SKEPTICISM ABOUT, THAT IT'S TIED TO THE PHONE

10  CALLS.  THE SECOND ANSWER IS THAT YOU CAN'T JUST APPEND

11  SOMETHING ON AND CUT THROUGH THE IMMUNITY ITSELF AND MAKE HIM

12  GO SIT FOR QUESTIONING.  AND THE THIRD ANSWER IS --

13        THE COURT:  WELL, AND BACK TO THAT, WHY WOULD THIS BE

14  LEGISLATIVE?  WHY WOULD COMMUNICATIONS WITH THE TRUMP

15  ADMINISTRATION ABOUT ATTEMPTS TO DISRUPT THE LAWFUL -- EXCUSE

16  ME -- TRUMP CAMPAIGN, WHY WOULD THAT BE LEGISLATIVE?

17        MR. LEA:  IF YOU JUST SAID THAT IN THE ABSTRACT WITH

18  NO FACTS, IT DOESN'T SOUND LEGISLATIVE, BUT YOU WOULD NEED --

19  THEY HAVE COME FORWARD WITH NOTHING TO SUGGEST THAT IT'S

20  INDEPENDENT OF ANYTHING BUT THE PHONE CALLS.  AND THEY HAVEN'T

21  EVEN COME FORWARD WITH ANY FACTS SUGGESTING IT HAPPENED AT ALL.

22  AND SO TO MAKE A SENATOR SIT FOR A FISHING EXPEDITION WOULD BE

23  IMPROPER AND INCONSISTENT WITH THE IMMUNITY.  I'D ADD THAT THAT

24  CERTIFICATE WAS EX PARTE AND DONE WITHOUT ANY SORT OF KNOWLEDGE

25  OR LITIGATION.  AND SO CERTAINLY THE COURT SHOULDN'T RELY ON

1    THAT TO DETERMINE THE SCOPE OF A MOTION TO QUASH.  BUT AT THE

2    END OF THE DAY THEY'VE TIED IT ALL TO THE PHONE CALLS BASED ON

3    THE WORDING AND THE WAY THEY'VE LISTED THE TOPICS HERE AND

4    DIDN'T BREAK IT OUT SEPARATELY BEYOND A NON-CITED ALLEGATION IN

5    THEIR OPPOSITION.  AND SO THAT IS A NEW POSITION THEY'RE USING

6    TO TRY TO SHORE UP A SUBPOENA THAT IS SERIOUSLY FLAWED UNDER

7    THE IMMUNITIES WE'VE CITED.  TO TAKE THE REST OF THEM, AGAIN,

8    FOR INSTANCE, ANTICIPATED TESTIMONY TO REVIEW ADDITIONAL

9    SOURCES, THE IMMUNITY WOULD BE MEANINGLESS IF YOU COULD JUST

10   CALL SOMEBODY IN, A SENATOR, TO SAY, WELL, WE WANT TO ASK HIM

11   ABOUT OTHER SOURCES OF INFORMATION.  BUT TO THE EXTENT THE

12   COURT HAS CONCERNS, THEY'RE ANSWERED BY THE BURDEN QUESTION I

13   STARTED WITH, WHICH IS THAT THEY'VE SHOWN NOTHING, OTHER THAN

14   KIND OF UNCITED ALLEGATIONS, TO SUPPORT THE FACT THAT ANY OF

15   THIS EXISTS AND THAT IT'S INDEPENDENT OF THE IMMUNITIES, WHICH

16   DOES BRING ME TO THE SECOND IMMUNITY WHICH EXISTS INDEPENDENT

17   OF ALL THIS, AND THAT'S SOVEREIGN IMMUNITY.

18        THE COURT'S FAMILIAR WITH THE IDEA.  YOU KNOW, IT OFFENDS

19   A SOVEREIGN TO HAUL IT OR ITS AGENTS BEFORE ANOTHER SOVEREIGN'S

20   COURTS.  WE HAVE CITED TONS AND TONS OF CASES APPLYING THIS IN

21   THE CONTEXT OF STATE COURT SUBPOENAS.  THEY HAVE COME FORWARD

22   WITH REALLY ONLY TWO RESPONSES, SAY IT DOESN'T APPLY TO A

23   CRIMINAL LAW CASE.  WELL, AGAIN, WE'RE NOT IN A CRIMINAL LAW

24   CASE.  WE'RE TALKING ABOUT A CIVIL GRAND JURY THAT THEY CHOSE

25   TO USE, THAT'S KENERLY.  AND WE KNOW THAT'S WRONG BECAUSE IN

THE SPARKS CASE WE CITED, IN THE CROMER CASE WE CITED, COURTS

WERE APPLYING THIS WHERE FEDERAL OFFICIALS WERE SUBPOENAED IN

CONNECTION WITH STATE COURT PROSECUTION.  AND THEN THERE'S A

MATTER OF FIRST PRINCIPLES.  SOVEREIGN IMMUNITY IS ALL ABOUT

THE COMPULSION.  IT'S IRRELEVANT WHAT SORT OF PROCEEDING WE'RE

TALKING ABOUT.  AND SO IF THEIR ONLY ARGUMENT OR THEIR PRIMARY

ARGUMENT FOR CUTTING THROUGH THE DOCTRINE IS THAT THERE'S A

CRIMINAL EXCEPTION, WELL, THEN THAT FAILS AND SOVEREIGN

IMMUNITY LIKEWISE INVOLVES A BLANKET QUASH WITHOUT ANY

REFERENCE TO THE SUBJECT BECAUSE IT'S ABOUT OFFENDING THE

SOVEREIGN WITH THE QUESTIONING AT ALL.

     I WOULD ALSO ADD THAT THE DISTRICT ATTORNEY SAID IT

DOESN'T APPLY TO THE LEGISLATURE AS WRONG.  WE'VE CITED THE

CASE SHOWING THE SOVEREIGN IMMUNITY APPLIES TO THE LEGISLATURE.

IT'S ALSO ILLOGICAL.  THE LEGISLATURE IS PART OF THE SOVEREIGN

AS WELL.  THERE'S NO REASON IT WOULD APPLY TO EXECUTIVE BRANCH

OFFICIALS AND NOT THE LEGISLATIVE BRANCH.  SO THAT'S AN

INDEPENDENT BASIS FOR COMPLETE QUASHAL.  I'M HAPPY TO ANSWER

ANY QUESTIONS ABOUT THAT.  IF NOT, I'LL DISCUSS THE

HIGH-HANKING OFFICIAL DOCTRINE.

          THE COURT:  YOU CAN MOVE TO THE HIGH-RANKING OFFICIAL

DOCTRINE.

          MR. LEA:  IT'S EXACTLY WHAT IT SOUNDS LIKE.  I KNOW

THE COURT'S FAMILIAR FROM THE HICE PROCEEDING BECAUSE YOU'VE

DISCUSSED IT.  BUT THE GIST IS THAT YOU CANNOT COMPEL THE

1   TESTIMONY OF A HIGH-RANKING OFFICIAL UNLESS YOU HAVE

2   EXTRAORDINARY CIRCUMSTANCES AS DEFINED BY THE CASE LAW.  AND

3   THAT LAST PART IS IMPORTANT FOR A REASON I'LL GET TO IN A

4   MINUTE.  FIRST OF ALL, AGAIN, WE HAVE ANOTHER ARGUMENT.  THEIR

5   LEAD ARGUMENT IN EVERY SITUATION IS THAT IT DOESN'T APPLY TO

6   CRIMINAL CASES.  (A), AGAIN, NOT A CRIMINAL CASE.  WE HAVE

7   BINDING PRECEDENT SAYING THAT.  TWO, PRECEDENT IN THE ELEVENTH

8   CIRCUIT, KESSLER, SAYS IT DOES IN FACT APPLY TO CRIMINAL CASES.

9   AND THEN A THIRD IS A MATTER OF FIRST PRINCIPLES.  THE ELEVENTH

10  CIRCUIT HAS TOLD US IT'S ABOUT SEPARATION OF POWERS, WHICH

11  APPLY OF COURSE IN CRIMINAL CASES, AND OF COURSE A CRIMINAL

12  CASE CAN BURDEN A HIGH-RANKING OFFICIAL.

13          THE COURT:  THE WAY I LOOK AT THE HIGH-RANKING

14  OFFICIAL DOCTRINE, AND I WANTED YOU TO ADDRESS THIS, IS THAT,

15  FOR EXAMPLE, IF THEY WANTED TO DEPOSE SENATOR GRAHAM ABOUT HOW

16  THE MAILROOM WORKED.  WELL, THERE'S OBVIOUSLY PEOPLE LOWER DOWN

17  THAT COULD TALK ABOUT THAT.  HE DOESN'T NEED TO BE BOTHERED.

18  IT'S KIND OF SET UP FOR THOSE KIND OF SCENARIOS.

19      NOW, WHERE YOU HAVE SOMEONE WITH FIRST-HAND KNOWLEDGE

20  ABOUT SOMETHING DISPUTED AND THEY'RE THE PERSON -- THERE'S ONLY

21  A FEW PEOPLE ON THIS PHONE CALL AND PEOPLE HAVE VERY

22  DIFFERENT -- ON THESE TWO PHONE CALLS AND THEY HAVE, ACCORDING

23  TO YOU HERE TODAY, HAVE VERY DIFFERENT RECOLLECTIONS OF WHAT IS

24  ACTUALLY SAID.  AND I HAVE A HARD TIME BELIEVING THAT NO ONE

25  THINKS THAT THIS ISN'T IMPORTANT.  SO WHEN WE LOOK AT THESE

1  DIFFERENT FACTORS, THIS DOESN'T, TO ME, FIT NEATLY INTO THE

2  CIRCUMSTANCES IN WHICH THIS HAS BEEN USED IN THE PAST.  IN THE

3  PAST YOU'VE HAD SOMEONE WITH VERY, VERY CURSORY KNOWLEDGE OF

4  SOMETHING.  YOU HAVE OTHER PEOPLE IN THEIR OFFICE THAT KNOW THE

5  ANSWERS TO THE QUESTIONS.  AND SO A STAFF OR A LOWER LEVEL

6  EXECUTIVE HAS BEEN THE ONE THAT HAS HAD TO ANSWER THE

7  QUESTIONS.  BUT THIS FACTUAL SCENARIO SEEMS VERY DIFFERENT THAN

8  THAT.  SO WHY DOES THIS FIT WITHIN THOSE FACTORS?

9          MR. LEA:  FIRST, TO GIVE YOU THE PRECEDENT,

10 RECOGNIZING THAT IT DOES APPLY WHERE THE OFFICIAL HAD FIRSTHAND

11 KNOWLEDGE, MCNAMEE OUT OF THE DISTRICT OF MASSACHUSETTS WHICH

12 IS CITED IN THE BRIEFS, AND MORIAH OUT OF THE SOUTHERN DISTRICT

13 OF NEW YORK WHICH IS CITED IN THE BRIEFS, TO THE MORE

14 FUNDAMENTAL POINT FOR THE COURT.  AGAIN, THE ELEVENTH CIRCUIT

15 IN RE: U.S.A. HAS TOLD US THAT IT'S ABOUT SEPARATION OF POWERS.

16 AND SO, THEREFORE, YOU RESPECT THE OFFICER UNLESS YOU CAN

17 SATISFY THE TWO TESTS AS HAS BEEN DEFINED.  AND THERE'S NO

18 EXCEPTION TO THAT FOR THIS PERSON HAD FIRSTHAND KNOWLEDGE.  IN

19 FACT IT WOULD DEFEAT THE DOCTRINE IF YOU COULD SAY, WELL, THERE

20 WERE DIFFERING PERSPECTIVES BECAUSE THAT COULD BE TRUE IN ANY

21 SITUATION.  TWO PEOPLE CAN READ A DOCUMENT DIFFERENT.  THEY CAN

22 FEEL THE DIFFERENT WAY ABOUT A PHONE CALL.  THAT'S ALWAYS THE

23 POSSIBLE (VERBATIM) THAT SOMEBODY'S PERSPECTIVE WILL DIFFER.

24 AND THE COURTS HAVE NEVER SUGGESTED THAT THAT'S HOW THE

25 DOCTRINE TURNS.

1    NOW, TO -- YOUR HONOR RAISED NATURALLY THE FOLLOW-ON POINT

2  ABOUT ASSUMING IT APPLIES, HOW DOES IT APPLY.  AND THE COURT'S

3  CLEARLY FAMILIAR WITH THE TWO-PART TEST.  FIRST, AND THEY HAVE

4  THE BURDEN AS THE PARTY SEEKING TO COMPEL, AND THAT'S IN

5  KESSLER, YOU HAVE TO SHOW THAT WHAT YOU'RE SEEKING IS ESSENTIAL

6  TO YOUR CASE.  THERE HAS BEEN NO EXPLANATION OF THAT HERE AT

7  ALL.  THERE'S A BROAD REFERENCE TO WHAT THEIR INVESTIGATION IS

8  DOING.  THERE'S A REFERENCE FOR THIS PHONE CALL.  THERE'S NO

9  INDICATION ABOUT HOW THEY THINK IT FITS IN.

10    AND THEN, SECOND, YOU HAVE TO SHOW THAT YOU CAN'T GET THE

11  INFORMATION ANYWHERE ELSE.  AND HERE WE KNOW FOR A FACT THAT

12  THERE WERE OTHER PEOPLE ON THE PHONE CALLS.  AND NOT ONLY THAT,

13  THEY'VE COME FORWARD WITH NO INDICATION ABOUT WHAT OTHER

14  INVESTIGATION THEY'VE DONE.  AND SO IT BOILS ALL DOWN TO YOUR

15  HONOR'S POINT ABOUT, WELL, DIFFERING PERSPECTIVES SOMEHOW

16  DEFEAT THE DOCTRINE.  AND THE ANSWER IS, NO, THE CASE LAW HAS

17  NEVER SUGGESTED THAT AND THAT WOULD RENDER THE DOCTRINE

18  SELF-DEFEATING.  AND SO FOR THAT REASON AS WELL THEY CERTAINLY

19  HAVEN'T CARRIED THEIR DOCTRINE -- THEY'RE BURDEN UNDER THE

20  HIGH-RANKING OFFICIAL DOCTRINE AND CERTAINLY NOT AS A DEVELOPED

21  SUBPOENA.

22    THE COURT:  SO UNDER THIS ARGUMENT A SENATOR COULD

23  NEVER BE REQUIRED TO ANSWER QUESTIONS ABOUT PHONE CALLS THAT

24  HAD PEOPLE ON THE CALL THAT WEREN'T SENATORS OR --

25    MR. LEA:  IT WOULD TAKE A VERY, VERY SPECIFIC CASE IF

1  IT'S POSSIBLE AT ALL, BUT THAT'S EXACTLY HOW THE DOCTRINE'S

2  DESIGNED TO OPERATE.  AND THEY CERTAINLY HAVE COME FORWARD WITH

3  NOTHING TO SHOW THAT THIS IS THAT EXTRAORDINARY CASE WHEN

4  THEY'VE ALREADY INTERVIEWED TWO OTHER PEOPLE, PRESUMABLY HAVE

5  ACCESS TO MORE.  THEY SORT OF VAGUELY REFERENCE OTHER

6  INVESTIGATIONS THEY'VE CONDUCTED.  AND IF THERE'S SOMETHING

7  MORE THAT THEY NEED, IT'S INCUMBENT UPON THEM TO EXPLAIN WHY

8  AND EXPLAIN WHY SENATOR GRAHAM IS RELEVANT.  BUT TO JUST SAY

9  BLANKETLY THAT, WELL, HIS PERSPECTIVE MIGHT DIFFER, WOULD MAKE,

10  AGAIN, THE DOCTRINE NOT WORTH ITS SALT, FRANKLY.

11          THE COURT:  OKAY.  WELL, AND I GUESS WE HAVE THAT

12  ARGUMENT AND THE OTHER ARGUMENT THAT SENATORS DON'T HAVE TO

13  ANSWER QUESTIONS WHERE OTHER PEOPLE MAY HAVE INFORMATION

14  PERIOD.

15          MR. LEA:  RIGHT.  I CONSIDER THOSE -- I MEAN, IF THE

16  OTHER PEOPLE HAVE THE INFORMATION, THEY NEED TO COME AND SHOW

17  WHAT'S MISSING FROM THE INFORMATION.  AND THEY JUST HAVEN'T

18  DONE THAT.  SO TO YOUR QUESTION, WOULD IT INEVITABLY BE MET?

19  YES, IT'S DESIGNED TO BE ROBUST.  IT'S USUALLY MET.  BUT MY

20  POINT WAS THAT IF THERE'S A CASE TO BE MADE FOR WHY IT'S NOT

21  MET HERE, TO SAY THAT THERE'S JUST A CRIMINAL EXCEPTION AND

22  THEN NOT EXPLAIN YOURSELF FURTHER DOESN'T CARRY THE BURDEN.

23  AND SO IF YOUR HONOR HAS CONCERNS THAT IT MIGHT BE TOO

24  ABSOLUTE, I'M SAYING IT WOULD BE ON THEM TO SHOW AN EXCEPTION

25  BY SHOWING WHAT THEY'VE INVESTIGATED AND WHY SPECIFICALLY THEY

1   NEED SENATOR GRAHAM'S TAKE ON IT.

2          THE COURT:  NOW, ANOTHER QUESTION THAT'S KIND OF

3   DIFFERENT IS THAT THERE WAS THE AMICUS BRIEF FILED IN THE CASE.

4   AND I GAVE YOU AN OPPORTUNITY TO FILE A RESPONSE TO IT.  IN

5   TERMS OF TIMING FOR ALL THIS, I JUST DON'T WANT TO WAIT FOR

6   SOMETHING THAT'S NOT COMING.  I DIDN'T KNOW IF YOU WERE GOING

7   TO FILE A RESPONSE OR NOT.  IT DOES HAVE SOME ARGUMENTS WE'VE

8   BEEN TALKING ABOUT TODAY, BUT DID YOU WANT TO HAVE THE TIME TO

9   FILE THE RESPONSE TO THAT, OR WHAT WAS YOUR FEELING ON THAT?

10          MR. LEA:  OUR CURRENT PLAN IS TO DO SO UNLESS THE

11   COURT TELLS US IT'S NOT HELPFUL FOR SOME REASON.  BUT CERTAINLY

12   WE THINK THOSE ARGUMENTS ARE WRONG AND UNHELPFUL HERE, AND

13   WOULD LIKE THE CHANCE TO EXPLAIN WHY.

14          THE COURT:  THAT'S TOTALLY FINE.  I JUST DIDN'T WANT

15   TO WAIT FOR SOMETHING THAT WASN'T HAPPENING.

16          MR. LEA:  UNDERSTOOD.

17          THE COURT:  BUT I DIDN'T WANT TO ISSUE AN ORDER IF

18   YOU WERE GOING TO RESPOND.  SO I THINK IT WOULD BE HELPFUL.  I

19   THINK SOME OF THOSE ARGUMENTS WERE PROBABLY MADE IN A BETTER

20   WAY THAN SOME OF THE D.A.'S ARGUMENTS.  AND THEY DO REFERENCE

21   SOME OF THE ISSUES AND THE QUESTIONS I'VE ASKED TODAY, SO I

22   THINK IT WOULD BE HELPFUL FOR YOU TO RESPOND TO THAT.

23          MR. LEA:  ABSOLUTELY.  WE'RE HERE TO HELP.  THANK

24   YOU.

25          THE COURT:  OKAY.

1      MR. LEA:  IF THERE ARE NO MORE QUESTIONS, I WILL

2  YIELD THE PODIUM --

3      THE COURT:  I THINK I ASKED YOU ENOUGH QUESTIONS,

4  DIDN'T I?

5      MR. LEA:  THANK YOU, YOUR HONOR.

6      THE COURT:  DON'T WANT ANYMORE, I DON'T THINK.  AND I

7  APPRECIATE YOU ANSWERING THEM.  I KNOW IT'S KIND OF ROUGH AND I

8  DON'T WANT YOU TO FEEL LIKE I WAS ATTACKING YOU, BUT THAT'S HOW

9  I PROCESS INFORMATION.  AND I APOLOGIZE THAT YOU'RE THE ONE

10 THAT HAD TO BE THE BRUNT OF THAT, SO --

11     MR. LEA:  WE'RE ALWAYS HAPPY TO HELP THE COURT.

12 THANK YOU.

13     THE COURT:  THANK YOU.

14   OKAY.  LET ME HEAR FROM SOMEONE FROM THE D.A.'S OFFICE.

15     MR. WAKEFORD:  YES, YOUR HONOR.

16     THE COURT:  AND I THINK AS A GOOD STARTING POINT,

17 THERE WAS A LOT OF DISCUSSION ABOUT WHAT IT IS THAT YOU WANT TO

18 ASK ABOUT AND HOW BROAD THIS IS.  AND I DON'T KNOW REALLY THE

19 ANSWER TO THAT QUESTION.  WE'VE GOT THE TWO PHONE CALLS AND I

20 KNOW THAT YOU WANT TO ASK ABOUT THOSE.  CERTAINLY THERE'S THESE

21 OTHER CATEGORIES AND THE CERTIFICATE OF MATERIAL WITNESS, BUT I

22 DON'T KNOW IF THOSE ARE JUST TIED TO THE PHONE CALLS OR THEY'RE

23 BROADER.  I THINK IT WOULD BE HELPFUL TO AT LEAST GIVE SOME

24 GUIDANCE ON THAT.  AND I'M ALSO -- THERE'S A LOT OF FACTS

25 MISSING FROM THE RECORD.  THE SENATOR GRAHAM SIDE SAYS IT'S THE

1   D.A.'S. OFFICE, IT'S THEIR REQUIREMENT TO PROVIDE THOSE SO THAT

2   I CAN ANSWER THESE QUESTIONS.  I ASSUME YOU'RE GOING TO SAY

3   IT'S THEIR OBLIGATION TO PROVIDE THOSE.  SO MAKE SURE YOU TALK

4   ABOUT THAT, BUT I'M VERY CURIOUS AS TO HOW BROAD THIS IS, IS IT

5   JUST THE TWO PHONE CALLS, IS IT A BUNCH OF OTHER THINGS.  WHAT

6   ARE WE TALKING ABOUT HERE?

7          MR. WAKEFORD:  YES, YOUR HONOR.  SO OBVIOUSLY WE ARE

8   TALKING ABOUT THE PHONE CALLS.  AND I THINK THERE'S AN OBVIOUS

9   REASON FOR THAT, WHICH IS THE PHONE CALLS WERE THE FACTS

10  PRESENTED IN THE PETITION FOR A CERTIFICATE, AND THEN IN THE

11  CERTIFICATE THAT WAS ISSUED BY THE FULTON COUNTY SUPERIOR COURT

12  TO INITIATE THIS ENTIRE PROCESS.  THAT CERTIFICATE -- THAT

13  PROCESS REQUIRES US TO SHOW THAT WE HAVE A WITNESS WHO IS

14  NECESSARY AND MATERIAL TO THE INVESTIGATION.  THE MOST OBVIOUS

15  AND SUCCINCT WAY TO MAKE THAT CASE TO THE COURT WAS TO SAY

16  THERE ARE THESE PHONE CALLS TO AN OFFICIAL WHO IS IN THE MIDDLE

17  OF THE EVENTS THAT ARE WITHIN THE INVESTIGATION THIS SPECIAL

18  PURPOSE GRAND JURY IS PURSUING.  THIS PERSON MADE THESE CALLS

19  AND THERE ARE PUBLIC STATEMENTS FROM THE PARTICIPANTS ON THE

20  CALL THAT THIS WAS THE INTENT THEY UNDERSTOOD FROM HIM.  THAT

21  WAS THE EASIEST MOST SUCCINCT WAY TO MAKE A CASE FOR

22  MATERIALITY AND NECESSITY.  SO WHAT I DON'T WANT THE COURT TO

23  UNDERSTAND -- AND THAT IS NOT THE ENTIRE UNIVERSE OF FACTS THAT

24  THE SENATOR COULD BE SUBJECTED TO QUESTIONING ABOUT.  THE ORDER

25  IMPANELING THE SPECIAL PURPOSE GRAND JURY SAYS ANY FACTS AND

1   CIRCUMSTANCES DIRECTLY OR INDIRECTLY RELATED TO THE SUBJECT OF

2   THIS INVESTIGATION.  AND THAT TRACKS THE LANGUAGE OF THE

3   STATUTE.  SO WHILE THE PHONE CALLS ARE OF COURSE A VERY

4   PUBLICLY-KNOWN EVENT, THAT IS A VERY OBVIOUSLY PERTINENT MATTER

5   THAT WE -- THAT THE SENATOR WOULD HAVE TO BE QUESTIONED ABOUT

6   BECAUSE IT'S MATERIAL AND NECESSARY TO THIS INVESTIGATION.

7   THERE ARE ALSO PUBLIC STATEMENTS BY THE SENATOR.  THE SENATOR

8   IS A NATIONALLY-RECOGNIZED LEGISLATOR.  HE APPEARS ON

9   TELEVISION.  HE APPEARS ON -- HE APPEARS IN PRINT.  HE APPEARS

10  ON THE INTERNET GIVING STATEMENTS ABOUT MATTERS VERY PUBLICLY.

11  SO STATEMENTS THAT THE SENATOR MAKES PUBLICLY WOULD NOT BE

12  COVERED BY ANY SORT OF LEGISLATIVE PROTECTION, BUT WOULD STILL

13  BE RELEVANT TO THE SPECIAL PURPOSE GRAND JURY'S INQUIRIES.  AND

14  THEN OF COURSE THERE ARE THE ANCILLARY MATTERS -- THE OTHER

15  MATTERS THAT ARE ALLUDED TO WITHIN THE CERTIFICATION THAT STATE

16  THAT ANY CONVERSATIONS THAT THE SENATOR HAD CONCERNING THE

17  EVENTS RELEVANT TO THE SPECIAL PURPOSE GRAND JURY WITH THE

18  TRUMP CAMPAIGN, WITH OTHER OUTSIDE PARTIES, WITH -- AND

19  POSSIBLE COORDINATION WITH THOSE PARTIES IS SUBJECT TO

20  QUESTIONING.  SO I -- THE CERTIFICATE PROVIDES US WITH A POINT,

21  AN EVENT THAT IS VERY WELL UNDERSTOOD AND VERY PUBLIC THAT IS

22  OBVIOUSLY MATERIAL, BUT IT IS NOT THE ONLY THING THAT WE INTEND

23  TO QUESTION THE -- THAT THE SPECIAL PURPOSE GRAND JURY COULD

24  QUESTION THE SENATOR ABOUT.

25      WITH REGARD TO THE FACTS, I APOLOGIZE IF THERE ARE -- IF

1   THERE IS ADDITIONAL FACTS, ADDITIONAL BRIEFING THAT IS

2   REQUIRED, WE HAD ABOUT 72 HOURS TO FILE OUR RESPONSE IN THIS

3   CASE.  AND SO TO THE EXTENT THAT THERE ARE DEFICIENCIES,

4   FACTUALLY THAT FALLS ON ME.  I AM HAPPY TO PROVIDE ANY

5   ADDITIONAL BRIEFING THAT THIS COURT ASKS FOR OR REQUIRES,

6   PARTICULARLY IF THE -- IF THE SENATOR IS GOING TO BE PROVIDING

7   ADDITIONAL BRIEFING, THAT'S SOMETHING THAT WE STAND READY TO

8   DO.

9        THE COURT:  WELL, I GUESS IN LOOKING AT THESE ISSUES,

10  ONE PATH OF ANALYZING THIS IS THAT TO THE EXTENT THAT SENATOR

11  GRAHAM WAS GATHERING INFORMATION AND QUESTIONING PEOPLE TO GET

12  FACTUAL INFORMATION, THAT'S THE STRONGEST ARGUMENT THEY HAVE

13  THAT THE QUESTIONS BEING ASKED WOULD BE PROTECTED BY THE SPEECH

14  OR DEBATE CLAUSE.  SO IF THE QUESTION WAS, WHEN YOU HAD THESE

15  TWO CALLS, WHAT DID PEOPLE TELL YOU ABOUT WHETHER THERE WERE

16  PROBLEMS IN GEORGIA, AND THINGS LIKE THAT.  THAT'S THE

17  STRONGEST ARGUMENT THEY HAVE.

18      NOW, IT'S IMPORTANT TO UNDERSTAND WHAT BEYOND THAT MAY BE

19  HAPPENING AT THE GRAND JURY BECAUSE THERE ARE TWO WAYS OF DOING

20  THIS.  ONE, IS A TOTAL QUASHAL BECAUSE EVERYTHING IS

21  ENCOMPASSING THIS LEGISLATIVE FACT-GATHERING, WHICH, AGAIN, I'M

22  NOT SAYING IS PROTECTED, BUT IT'S THE STRONGEST THING.  THE

23  OTHER IS WHAT ELSE IS GOING ON.  IF IT'S REASONS FOR PUBLIC

24  STATEMENTS, IF IT'S MORE OF THESE TELLING PEOPLE TO DO

25  THINGS -- BUT I DON'T KNOW WHAT IT IS THAT YOU KNOW ABOUT THAT

1  OR WANT TO ASK ABOUT THAT.  SO I'M LEFT WITH KIND OF THIS

2  AMORPHOUS IDEA THAT THERE MAY BE ADDITIONAL SUBJECTS OR

3  KNOWLEDGE THAT YOU HAVE.  AND IT'S DIFFICULT TO KNOW KIND OF

4  CONCRETELY WHAT BEYOND JUST CALLING THE SECRETARY TWICE AND

5  SAYING, WHAT'S GOING ON IN GEORGIA, WHAT'S HAPPENING HERE.  AND

6  IT'S A LITTLE DICEY BECAUSE IT IS A GRAND JURY, BUT HOW CAN YOU

7  ADDRESS THAT ISSUE?  BECAUSE THAT'S THE PROBLEM THAT WE HAVE

8  WITH THIS RECORD.

9          MR. WAKEFORD:  THAT'S -- THAT IS EXACTLY THE PROBLEM,

10  AS YOUR HONOR POINTS OUT, IT IS A GRAND JURY.  AND SO THERE HAS

11  BEEN AN ATTEMPT MADE AT EVERY STAGE, INCLUDING WITH CONGRESSMAN

12  HICE, TO PROVIDE YOUR HONOR ARGUMENTS THAT DO NOT GO INTO

13  INFORMATION THAT HAS BEEN GATHERED BY THE SPECIAL PURPOSE GRAND

14  JURY, BUT INSTEAD TO RELY ON INFORMATION THAT IS ALREADY IN THE

15  PUBLIC SPHERE.  AND IN THIS SCENARIO WHERE THEY ARE ASKING FOR

16  TOTAL QUASHAL, WE BELIEVE THAT THE INFORMATION THAT IS ALREADY

17  IN THE PUBLIC SPHERE MAKES CLEAR THAT TOTAL QUASHAL IS NOT

18  APPROPRIATE, AND, THAT IS, BECAUSE OF THE STATEMENTS OF THE

19  SENATOR HIMSELF WHICH WE CITE IN OUR BRIEF WHERE HE IS ASKED ON

20  NOVEMBER 17TH, 2020 BY A REPORTER, DID YOU -- DID YOU ASK THE

21  SECRETARY OF STATE TO THROW OUT VOTES?  AND SENATOR GRAHAM

22  SAID, "NO.  THAT'S RIDICULOUS.  I TALKED ABOUT HOW YOU VERIFY

23  SIGNATURES.  RIGHT NOW A SINGLE PERSON VERIFIES SIGNATURES.

24  AND I SUGGESTED, AS YOU GO FORWARD CAN YOU CHANGE IT TO MAKE

25  SURE THAT A BIPARTISAN TEAM VERIFIES SIGNATURES, AND IF THERE'S

1   A DISPUTE, COME UP WITH AN APPEAL PROCESS?"

2        THAT IS ASKING THE SECRETARY OF STATE TO CHANGE A PROCESS

3   THAT IS ALREADY ONGOING TO REFLECT THE SENATOR'S PREFERRED

4   PROCESS.  THAT IS AN EXHORTATION EXACTLY LIKE THE SUPREME COURT

5   PRECEDENTS TALK ABOUT.  THAT RIGHT THERE INDICATES THAT THIS

6   CONVERSATION BY THE SENATOR'S OWN RECORDS, LEAVE ASIDE WHAT

7   SECRETARY RAFFENSPERGER OR ANY OTHER PARTICIPANT HAS SAID, THAT

8   ALONE DEMONSTRATES THAT THIS CONVERSATION WAS NOT ENTIRELY

9   ABOUT LEGISLATIVE ACTS.  IT CAN'T BE.  THAT IS IMPORTUNING,

10  EXHORTING, PERSUADING, WHATEVER WORD THE SUPREME COURT WOULD

11  LIKE TO USE, THAT'S WHAT THAT IS.  WHEN ASKED WHY IN ANOTHER

12  QUESTION, A SECOND QUESTION, WHICH WE ALSO ALLUDE TO IN OUR

13  BRIEF, THE SENATOR AGAIN SHIFTS FOCUS ABOUT WHAT THE

14  CONVERSATION WAS ACTUALLY ABOUT AND ACTUALLY SAYS, MY FOCUS WAS

15  ACTUALLY THE UPCOMING JANUARY 5TH SENATE RUN-OFF.  AND I WANTED

16  TO KNOW -- AND I'LL FIND THAT QUOTATION IN JUST A MINUTE, YOUR

17  HONOR, THAT JUST SORT OF TALKED ABOUT DOING BETTER.  AND HE

18  SAID, "I WANT TO TALK ABOUT HOW YOU VERIFY SIGNATURES, AND, AS

19  WE GO FORWARD, CAN WE DO BETTER?" CLEARLY TALKING ABOUT THE

20  JANUARY 5TH RUN-OFFS WHICH WERE THE FOCUS.

21        THE COURT:  WHY DO WE KNOW THAT?  BECAUSE THEY SAY

22  THAT HAS TO DO WITH THEM TRYING TO PASS NATIONAL LEGISLATION TO

23  CHANGE ELECTIONS, SO THAT WOULD BE LEGISLATIVE.  AND IT KIND OF

24  GOES BACK TO THIS IDEA IF THERE'S A QUESTION OF FACT AS TO WHAT

25  THE MEANING OF THE STATEMENT IS, HOW DO I ANALYZE THE BURDENS

1　AS IT RELATES TO INTERPRETING THESE STATEMENTS?

2　　　　　MR. WAKEFORD:  WELL, LET ME STATE UNEQUIVOCALLY THAT

3　THE BURDEN IS ON THE SENATOR.  THE SENATOR IS ASSERTING -- IS

4　ASSERTING THE IMMUNITY, THE PRIVILEGE.  AND THE CASE LAW SAYS

5　BY A PREPONDERANCE THE SENATOR HAS TO SHOW THAT THIS WAS A

6　LEGISLATIVE ACT AS OPPOSED TO A POLITICAL OR PERSONAL ACT.  AND

7　SO WHEN YOU HAVE A SITUATION LIKE THIS WHERE THERE IS A DISPUTE

8　AND MULTIPLE PARTICIPANTS ON A TELEPHONE CALL, FOR EXAMPLE,

9　JUST THE MERE FACT THAT EVERYBODY SEEMS TO HAVE AN

10　UNDERSTANDING OF HOW THE CONVERSATION WENT EXCEPT FOR THE

11　SENATOR WOULD INDICATE THAT THERE IS A DISPUTE THERE THAT DOES

12　NOT -- THIS SITUATION IS NOT RIPE FOR THE APPLICATION OF TOTAL

13　QUASHAL AND LEGISLATIVE IMMUNITY BECAUSE HE CAN'T SHOW BY A

14　PREPONDERANCE THAT THIS IS THE ONLY THING THAT THIS

15　CONVERSATION WAS ABOUT.

16　　　ADDITIONALLY, I FOUND THAT CLARIFICATION, BY THE WAY.

17　AND, AGAIN, THE SENATOR'S OWN WORDS MAKE CLEAR THAT THIS IS NOT

18　A LEGISLATIVE ACT.  WHEN ASKED AGAIN ABOUT THE POSSIBILITY THAT

19　HE IMPLIED SOMETHING IMPROPER, HE SAID, "THAT WASN'T MY INTENT

20　AND THAT WASN'T THE PURPOSE OF THE CONVERSATION, TO THROW OUT

21　BALLOTS.  WE'RE TALKING ABOUT AN ELECTION WE HAVEN'T EVEN HAD

22　YET, WHICH IS THE SENATE RACES.  THAT WAS MY FOCUS, IS HOW YOU

23　VERIFY SIGNATURES.  WE'VE GOT A NEW SENATE RACE COMING UP.  IS

24　THERE ANYTHING WE CAN DO TO MAKE IT BETTER?"

25　　　WHEN HE'S TALKING ABOUT THE SIGNATURE VERIFICATION

1   PROCESS, THAT'S NOT ABOUT PASSING FUTURE LEGISLATION,

2   PARTICULARLY WHEN HE'S MAKING OTHER COMMENTS ABOUT --

3            THE COURT:  WHY ISN'T IT FUTURE LEGISLATION AS IT

4   RELATES TO THAT SENATE RACE, THAT MAYBE THEY WERE GOING TO TRY

5   TO PASS SOMETHING RIGHT THEN SO THAT IT WOULD AFFECT THE SENATE

6   RACE?

7            MR. WAKEFORD:  BECAUSE THERE IS NO INDICATION THAT --

8   I MEAN, THE ONLY THING THAT SUGGESTS THAT THAT COULD BE ABOUT

9   FUTURE LEGISLATION IS HIS ARGUMENTS TO THIS COURT NOW.  EVERY

10  OTHER STATEMENT HE MADE WAS ABOUT THE ONGOING, UNFOLDING

11  ELECTIONS TAKING PLACE.  AND ALSO THE STATEMENTS BY THE OTHER

12  PARTICIPANTS ON THE CALL INDICATE THAT THE SENATOR WAS TRYING

13  TO GET THEM TO PURSUE DIFFERENT ACTIVITIES THAN THEY WERE

14  PURSUING.  SO IF YOU LEAVE ASIDE EVERYTHING EXCEPT WHAT THE

15  SENATOR -- HOW THE SENATOR CHARACTERIZES THE CONVERSATION, THEN

16  THAT COULD BE ABOUT LEGISLATION.  WE DON'T KNOW WHAT

17  LEGISLATION.  THERE'S NO INDICATION THERE WAS EVER ANY

18  LEGISLATION OR THAT THE SENATOR WOULD EVER CONSIDER IT, BUT

19  IT'S POSSIBLE.  BUT WE DON'T HAVE TO LEAVE THAT STUFF ASIDE

20  BECAUSE IT'S ALL IN THE PUBLIC SPHERE.  WE HAVE THE STATEMENTS

21  BY SECRETARY RAFFENSPERGER AND MR. STERLING AND WE HAVE THE

22  STATEMENTS BY THE SENATOR HIMSELF THAT THE FUTURE OF THE

23  COUNTRY HANGS IN THE BALANCE.  AND I DON'T -- HE'S NOT TALKING

24  ABOUT FUTURE LEGISLATION.  IT'S A SUGGESTION THAT UTTERLY

25  REMOVES THESE STATEMENTS FROM CONTEXT TO SAY THAT IT COULD BE

1    ABOUT HE'S GOING TO PASS A BILL.  HE MAKES ONE STATEMENT ABOUT

2    SHOULD THERE BE NATIONAL STANDARDS WHEN ACTUAL NATIONAL VOTING

3    REGISTRATION -- LEGISLATION WAS PROPOSED IN THE PAST YEAR --

4    AND THIS IS NOT IN OUR BRIEF AND I APOLOGIZE, BUT I CAN PROVIDE

5    SOURCES IF YOUR HONOR LIKES -- THE SENATOR REFERRED TO IT

6    REPEATEDLY AS THE FEDERALIZATION OF ELECTIONS AND THAT THAT'S

7    THE PROPER PROVINCE OF THE STATES AND THAT HE WOULD NEVER EVER

8    PUT UP WITH THE FEDERALIZATION OF ELECTION STANDARDS AND THAT'S

9    COMPLETELY IMPROPER.  AGAINST ALL OF THOSE STATEMENTS, IN

10   ADDITION TO THE CONTEXT THAT THESE STATEMENTS WERE GIVEN IN THE

11   MOMENT, WE HAVE ONE, I DON'T KNOW, MAYBE THERE SHOULD BE

12   NATIONAL STANDARDS.  AND THEY HANG THEIR ENTIRE ARGUMENT TO

13   THIS COURT ON THAT.  OTHERWISE, IT IS SIMPLY COMING FORWARD NOW

14   AND SAYING, WELL, IT COULD HAVE BEEN ABOUT LEGISLATION.  I

15   CERTAINLY CARE ABOUT ELECTIONS AND SO THAT'S ENOUGH.  AND

16   THAT'S NOT LEGISLATIVE IMMUNITY OR PRIVILEGE.  THAT'S

17   LEGISLATIVE FIAT TO BE ABLE TO COME TO THIS COURT AND SAY, I

18   HAD A CONVERSATION -- EVERYBODY ELSE RECALLS IT ONE WAY, BUT I

19   RECALL IT THIS WAY, THAT'S IT.  AND THEN WHAT IS THE PURPOSE OF

20   THE INQUIRY?  BECAUSE AT THAT POINT A SENATOR CAN COME FORWARD

21   AND SAY, YEAH, THERE'S MULTIPLE INTERPRETATIONS, BUT MINE IS

22   THIS.  AND SO THE COURT'S JOB IS DONE.  WE HAVE ALL WE NEED.

23   AND THAT'S NOT HOW THIS WORKS, ESPECIALLY WHEN IT'S THE SENATOR

24   WHO HAS THE BURDEN.  I ALSO WANT TO ADDRESS ONE OTHER STATEMENT

25   WHICH WAS MADE BY THE SENATOR'S COUNSEL, WHICH IS THAT YOU --

1 THEY SAY REPEATEDLY, WE GOT TO STRIP -- WE GOT TO STRIP THIS

2 ACT OF ALL CONTEXT, OF ALL MOTIVATION AND EVERYTHING ELSE AND

3 JUST LOOK AT WHAT IT IS.  THE CASES THAT GAVE US THAT SORT OF

4 FRAMEWORK WERE CASES THAT SAY, WHAT ACTUALLY IS THE ACT?  AND

5 IT'S VERY OFTEN GIVING A SPEECH ON THE FLOOR AS IN I -- I MIX

6 THE CASES UP, BUT I BELIEVE IT WAS EITHER BREWSTER OR JOHNSON,

7 AS MY LEARNED COLLEAGUE POINTED OUT, WHERE THERE WAS A SPEECH

8 THAT WAS GIVEN AND A PROSECUTION WHICH TRIED TO SAY THIS SPEECH

9 WAS GIVEN FOR AN IMPROPER PURPOSE.  AND THEY SAID, WELL, WAIT A

10 MINUTE.  JUST LOOK AT WHAT THE ACT WAS.  IT WAS A SPEECH IN THE

11 LEGISLATURE.  THAT'S UNQUESTIONABLY A LEGISLATIVE ACT.  THAT

12 ENDS THE INQUIRY.  WELL, LET'S -- LET'S -- YOU KNOW, WE'RE NOT

13 TALKING ABOUT A VOTE HERE.  WE'RE NOT TALKING ABOUT A COMMITTEE

14 HEARING.  WE'RE TALKING ABOUT A PHONE CALL FROM A SENATOR IN

15 SOUTH CAROLINA TO A GEORGIA STATE-LEVEL OFFICIAL.  THAT'S IT.

16 HOW IS THAT A LEGISLATIVE ACT?

17      THE ONLY WAY WE GET THERE IS THAT THE SENATOR COMES

18 FORWARD AND STARTS TALKING ABOUT HIS MOTIVATIONS ABOUT THE ACT

19 AND STARTS SAYING THAT THIS COURT SHOULD DISREGARD THE PUBLIC

20 STATEMENTS OF THE OTHER PARTICIPANTS ON THE PHONE CALL ABOUT

21 WHAT ACTUALLY TOOK PLACE AND INSTEAD TAKE ONLY HIS STATEMENTS

22 AND WHAT HE MEANT BY THEM.  THE ONLY WAY THEY'D GET WHERE THEY

23 NEED TO GO IS TO BRING IN MOTIVATION BECAUSE, OTHERWISE, IT'S A

24 PHONE CALL FROM A FOREIGN SENATOR TO A STATE-LEVEL OFFICIAL

25 ABOUT A MATTER THAT IS NOT AT ALL WITHIN THE SENATOR'S AMBIT,

1    WITHIN THE SENATOR'S POWER, IN AN ONGOING RECOUNT, WHICH IS

2    WHAT WAS HAPPENING WHEN THE CALL WAS MADE.  THAT'S AT THE MOST

3    BASIC LEVEL WHAT THE ACT WAS. IF YOU DON'T EVEN BRING IN ANY

4    STATEMENTS ABOUT MOTIVATION, THEN IT LOOKS AS IF THIS IS A CALL

5    THAT IS A CONTACT TO THE -- A COMMUNICATION BETWEEN A

6    LEGISLATOR AND AN EXECUTIVE BRANCH OFFICIAL.  GRANTED, THE

7    CASES USUALLY CONTEMPLATE A COMMUNICATION BETWEEN A MEMBER OF

8    CONGRESS AND A FEDERAL EXECUTIVE OFFICIAL.  THAT IS A STATE

9    LEVEL OFFICIAL.  SO WE'RE NOW EVEN FURTHER REMOVED FROM -- AND

10   IT'S A CONVERSATION WHERE THE LEGISLATOR IS HAVING -- IS

11   TALKING TO AN EXECUTIVE BRANCH OFFICIAL ABOUT MATTERS THAT THE

12   EXECUTIVE BRANCH OFFICIAL CONTROLS.  THERE'S NOTHING

13   LEGISLATIVE ABOUT THAT.  YOU HAVE TO TAKE THE SENATOR --

14           THE COURT:  WHAT ABOUT THE ARGUMENT, THOUGH, THAT

15   BECAUSE SENATOR GRAHAM EVENTUALLY HAD TO VOTE TO CERTIFY THE

16   ELECTION, HE HAD TO, ON HIS OWN, GATHER INFORMATION ABOUT

17   IRREGULARITIES AND TRY TO FIND OUT IF HE IN FACT SHOULD DO THAT

18   VOTE, AND THAT'S ALL HE WAS DOING, IS JUST ASKING QUESTIONS?

19           MR. WAKEFORD:  THAT WOULD -- IF HIS DUTIES UNDER THE

20   ELECTORAL COUNT ACT WERE ENOUGH, THEN TOTAL QUASHAL WOULD HAVE

21   TO BE APPROPRIATE.  THE PROBLEM IS HIS OWN STATEMENTS MAKE

22   CLEAR THAT'S NOT WHAT HE WAS DOING WHERE HE WAS ASKING THEM TO

23   CHANGE THEIR PROCESSES TO ONE THAT HE PREFERRED.  ADDITIONALLY,

24   THE SENATOR'S ACTIONS UNDER THE ELECTORAL COUNT ACT, HE GAVE

25   HIS REASONS FOR WHY HE VOTED TO CERTIFY THE ELECTION -- THE

1    ELECTORS FROM GEORGIA.  IT DIDN'T HAVE ANYTHING TO DO WITH HIS

2    CONVERSATION WITH THE SECRETARY.

3         THE COURT:  WELL, THAT, TO ME, IS GETTING INTO THE

4    PRETTY CLEAR STATEMENTS IN THE CASES WHERE WE DON'T REALLY GET

5    INTO AT ALL WHY VOTES WERE MADE, AND THAT IS SOMETHING THAT WE

6    CAN'T REALLY INQUIRE INTO AS TO WHY THE DECISION WAS MADE.

7    THAT'S THE CLEAR ISSUE HERE, IS THAT WE CAN'T ASK ABOUT WHY HE

8    CERTIFIED THE ELECTION OR WHAT HIS MOTIVATIONS WERE FOR THE

9    ACTUAL LEGISLATIVE ACT THAT HE TOOK.

10        MR. WAKEFORD:  BUT TO THE -- I UNDERSTAND, YOUR

11   HONOR.  YOU'RE RIGHT.  HE COULDN'T BE QUESTIONED BY THE GRAND

12   JURY ABOUT HIS ACTIONS ON THE FLOOR OF THE SENATE, BUT TO THE

13   EXTENT THAT HE'S OFFERING THEM HERE AS PART OF AN ARGUMENT FOR

14   WHY HE DID THINGS, IT'S SORT OF, WELL, I DID IT BECAUSE THIS

15   WAS MY REASON, BUT ALSO THE D.A. CAN'T QUESTION -- CAN'T

16   QUESTION MY STATEMENTS ABOUT WHY I DID THAT.  BUT LEAVING THAT

17   ASIDE, HE STILL HAS A PROBLEM WITH THE STATEMENTS THAT HE

18   HIMSELF MADE ABOUT THE FOCUS OF THE CONVERSATION WAS THE

19   UPCOMING JANUARY 6 SENATE RUN-OFFS AND HOW I WANTED THEM TO

20   MAKE THEIR PROCESSES BETTER FOR THAT.  IF THAT WAS THE FOCUS OF

21   HIS CONVERSATION, THE CONVERSATION BY HIS OWN WORDS HAS NOTHING

22   TO DO WITH ANY RESPONSIBILITY UNDER THE ELECTORAL COUNT ACT

23   BECAUSE THE SENATORIAL RUN-OFF ELECTION HAS NOTHING TO DO WITH

24   THE ELECTORAL COUNT ACT.  AND BY HIS OWN WORDS, AGAIN, WE HAVE

25   AN INDICATION THAT TOTAL QUASHAL IS NOT APPROPRIATE HERE

1    BECAUSE THIS CONVERSATION WAS NOT ABOUT LEGISLATIVE PURPOSES,

2    AT LEAST NOT SOLELY, BECAUSE HE HIMSELF IS SAYING AS MUCH.

3         SO, ADDITIONALLY, THE MANNER AND METHOD OF COUNTING

4    ABSENTEE VOTES AND WHAT HE'S SUGGESTING, I DON'T SEE HOW HIS

5    ACTIONS UNDER THE ELECTORAL COUNT ACT ARE IMPLICATED BY

6    SUGGESTING THAT CHANGES BE MADE TO THAT.  SO -- I'M SORRY.  IS

7    THERE -- WITH REGARD TO THE ELECTORAL COUNT ACT, HE CAN COME

8    FORWARD AND SAY, WELL, EVENTUALLY I HAD TO CERTIFY, BUT THAT

9    SHOULD NOT REMOVE EVERY CONVERSATION THAT THE SENATOR HAD ABOUT

10   THE ELECTION EVER FROM THE POSSIBILITY OF QUESTIONING BEFORE A

11   LAWFULLY IMPANELED GRAND JURY.

12        THE COURT:  IF YOU WERE TO HAVE QUESTIONED HIM IN A

13   GRAND JURY ABOUT THIS, WHAT ARE YOUR THOUGHTS ON HOW TO STEP

14   THROUGH THESE QUESTIONS THAT ARE KIND OF -- IT'S YOUR OPINION

15   THAT THEY HAVE TO PUT FORTH THE RECORD TO -- AND THE FACTS TO

16   SUPPORT ALL OF THIS.  I COULD SEE A SCENARIO WHERE A QUESTION

17   TO SENATOR GRAHAM, FOR EXAMPLE OF, "WHAT DID YOU TALK ABOUT ON

18   THAT CALL?" THAT MIGHT BE A BROAD QUESTION THAT WOULD IMPLICATE

19   POTENTIALLY SPEECH AND DEBATE CLAUSE ISSUES.  BUT MORE NARROW

20   QUESTIONS, LIKE, DID YOU TELL RAFFENSPERGER TO DO ANYTHING

21   OR -- THAT'S KIND OF A DIFFERENT WAY OF GETTING AT INFORMATION

22   THAT IS NOT SUBJECT TO THE SPEECH OR DEBATE CLAUSE.  HAVE YOU

23   THOUGHT ABOUT HOW THIS IS ACTUALLY GOING TO WORK IF THERE ISN'T

24   A COMPLETE QUASHAL, BUT INSTEAD KIND OF THIS AMBIGUOUS

25   SOME-THINGS-ARE-IN-AND-SOME-THINGS-ARE-OUT PIECE OF IT AND HOW

1  YOU'RE GOING TO TIGHTEN QUESTIONS TO MAKE SURE THAT THEY DON'T

2  IMPLICATE SOME OF THESE BIGGER ISSUES?

3          MR. WAKEFORD:  YES, WE HAVE.  BUT BEFORE I MOVE --

4  ANSWER YOUR QUESTION, I FORGOT ONE VERY IMPORTANT THING ABOUT

5  YOUR PRIOR QUESTION REGARDING THE ELECTORAL COUNT ACT.  ALSO,

6  ANY -- THERE ARE STATEMENTS BY PARTICIPANTS ON THAT CALL THAT

7  SENATOR GRAHAM ASKED ABOUT THE ELIMINATION OF ABSENTEE VOTES

8  BY -- BECAUSE OF ERROR RATE AND THROWING OUT ENTIRE

9  GEOGRAPHICAL POPULATIONS WORTH OF VOTES IN AREAS WITH CERTAIN

10  ERROR RATES, AND ALSO HOW THAT MAY AFFECT POSSIBLE LITIGATION

11  ON BEHALF OF THE TRUMP CAMPAIGN.  NONE OF THOSE THINGS HAVE TO

12  DO WITH HIS DUTIES UNDER THE ELECTORAL COUNT ACT.

13          THE COURT:  NOW, A PROBLEM I HAVE WITH KIND OF BOTH

14  SIDES HERE IS THAT THERE'S A LOT THAT'S NOT IN THE RECORD.

15  THERE ARE A LOT OF STATEMENTS WHERE I'M HEARING THAT SENATOR

16  GRAHAM DIDN'T SAY THINGS AND HE DIDN'T BELIEVE THINGS, AND I'M

17  HEARING THAT OTHER PEOPLE SAID OR BELIEVE DIFFERENT THINGS, AND

18  I'VE GOT WHAT THE SUBPOENA MAY BE ABOUT OR HOW BROAD IT IS OR

19  NOT, BUT THERE'S NO EVIDENCE OR REALLY ANYTHING THAT IS IN THE

20  ACTUAL RECORD OF THE BRIEFS THAT DEFINES THINGS LIKE THAT THAT

21  THERE IS INFORMATION THAT HE WAS TELLING PEOPLE TO THROW OUT

22  BALLOTS.  I MEAN, THAT'S A VERY IMPORTANT FACT, BUT IT'S NOT

23  ANYWHERE.  AND IT'S ON BOTH SIDES.  HOW AM I SUPPOSED TO RULE

24  IN YOUR FAVOR WITHOUT ANY OF THIS IN THE RECORD?

25          MR. WAKEFORD:  WELL, SOME OF IT IS IN THE RECORD.  TO

1    GO BACK TO THE CERTIFICATE, THAT'S WHERE THESE ALLEGATIONS ARE

2    FIRST RAISED, IS THAT THESE -- THAT THE SENATOR MADE CERTAIN

3    STATEMENTS THAT WERE ON BEHALF OF OR AT LEAST POLITICALLY

4    MOTIVATED RATHER THAN LEGISLATIVE AND MOTIVATED AND RELATED TO

5    THE SPECIAL PURPOSE GRAND JURY'S INQUIRY.  THERE'S ALSO THE

6    STATEMENTS THAT WE REFERENCED IN THE PUBLIC SPHERE BY SECRETARY

7    RAFFENSPERGER AND MR. STERLING WHICH ARE NOT PART OF THE

8    SPECIAL PURPOSE GRAND JURY'S INVESTIGATIVE PROCESS, BUT ARE

9    ALREADY IN THE PUBLIC SPHERE.  BUT YOUR QUESTION GETS TO THE

10   AWKWARDNESS OF THIS POSITION, WHICH I TALKED A LITTLE BIT ABOUT

11   WHEN WE WERE HERE FOR CONGRESSMAN HICE AND WE CONFRONT YET

12   AGAIN.  AND IT ACTUALLY GOES TO THE QUESTION YOU JUST ASKED ME

13   ABOUT, HAVE WE THOUGHT ABOUT HOW WE'RE GOING TO HANDLE THIS

14   PROCESS.  WE ARE CONDUCTING A SECRET GRAND JURY INVESTIGATION

15   WHERE CONFIDENTIALITY IS IMPORTANT.  AND SO PLACING IN THE

16   PUBLIC SPHERE TO THE COURT ALL OF THE ANTICIPATED QUESTIONS WE

17   THINK WE'RE GOING TO GO INTO IS NOT SOMETHING THAT IS

18   NECESSARILY IN THE INTEREST OF THE SPECIAL PURPOSE GRAND JURY

19   WHICH WE ARE -- WHICH WE MUST PROTECT.  HOWEVER, WE ALSO

20   UNDERSTAND THE COURT'S POSITION THAT YOU HAVE TO MAKE A RULING.

21   THE WAY THIS USED TO WORK IS THAT THERE HAD TO BE A FINDING OF

22   CONTEMPT AT THE STATE COURT LEVEL BEFORE REMOVAL WAS PROPER.

23   AND IN THAT SCENARIO QUESTIONS HAVE ALREADY BEEN ASKED,

24   ARGUMENTS HAVE ALREADY BEEN RAISED AND THERE'S ALREADY A MUCH

25   FULLER RECORD WHEN IT GETS TO THE COURT THAT WE DON'T -- THAT

1   YOU WOULDN'T NECESSARILY RUN INTO THESE PROBLEMS.  NOW THAT THE

2   MERE ISSUANCE OF A SUBPOENA ALLOWS FOR REMOVAL, WE'RE HERE IN

3   THIS AWKWARD PLACE WHERE IT'S QUESTIONS ABOUT WHAT QUESTIONS

4   MAY BE ASKED.  AND CERTAINLY THE PROCESS THAT WE WOULD BE

5   WILLING TO UNDERGO WITH THE SENATOR IS WHEN THIS CASE IS

6   REMANDED, WHICH WE HOPE IT IS, BACK TO SUPERIOR COURT, WE

7   ENGAGE IN A CONVERSATION ABOUT WHAT AREAS WE CAN EXPECT THERE

8   TO BE NO ARGUMENT ABOUT, WHAT AREAS THERE COULD BE ARGUMENT

9   ABOUT, AND WHAT AREAS ARE UNQUESTIONABLY, YOU KNOW, THAT WE

10  CAN'T GO INTO BECAUSE OF THE LEGISLATIVE PRIVILEGE.  THAT WILL

11  GUIDE THE QUESTIONING IN THE SPECIAL PURPOSE GRAND JURY.  AND I

12  UNDERSTAND WHAT --

13          THE COURT:  WELL, WHY DIDN'T THAT ALREADY HAPPEN?

14  BECAUSE IT LOOKS LIKE JUST WHAT HAPPENED IS A SUBPOENA WENT OUT

15  AND THERE WASN'T ANY ATTEMPT TO DO THIS AT THE OUTSET, SO THERE

16  MIGHT HAVE BEEN SOME KIND OF COMPROMISE OR UNDERSTANDING

17  REACHED, OR THAT THEY WOULDN'T HAVE TO JUST RESORT TO THE

18  MOTION TO QUASH, THERE COULD HAVE BEEN A LITTLE BIT MORE OF A

19  CONCRETE PROCESS.

20          MR. WAKEFORD:  I HAVE AN ANSWER TO THAT QUESTION, BUT

21  I WANT TO CLARIFY SOMETHING WITH MY COLLEAGUE REAL QUICK.

22          THE COURT:  OKAY.

23          MR. WAKEFORD:  THANK YOU.

24      I APPRECIATE THE INDULGENCE, YOUR HONOR.

25          THE COURT:  SURE.

1          MR. WAKEFORD:  THE SIMPLEST ANSWER IS BECAUSE IN

2    ORDER TO BRING IN AN OUT-OF-STATE WITNESS, WE HAVE TO GO

3    THROUGH THIS PROCESS THAT IS SET BY THE UNIFORM ACT TO SECURE

4    WITNESSES FROM OUT OF STATE.  WE HAVE TO FILE THE PETITION AND

5    GET THE CERTIFICATE.  THAT IS CHARACTERIZED BY THE MOVANT, BY

6    THE SENATOR AS AN EX PARTE ACT, BUT THAT'S HOW THE STATUTE

7    WORKS.  THAT'S THE STATUTE WE HAVE TO COMPLY WITH IN ORDER TO

8    ENSURE THAT THE SENATOR CAN APPEAR.  AS SOON AS THAT WAS DONE,

9    IN FACT BEFORE THE CERTIFICATE -- THE INITIAL CERTIFICATE WHICH

10   WAS ISSUED HAD EVEN BEEN PRESENTED IN A FOREIGN COURT, THERE

11   WAS A MOTION TO QUASH AND A REMOVAL ACTION FILED IN SOUTH

12   CAROLINA.  THERE WAS THEN ONE FILED IN THE DISTRICT OF

13   COLUMBIA.  SO THE MERE -- THE VERY FIRST STAGE OF THE PROCESS,

14   WHICH WAS US TRYING TO BEGIN THE LABOR-INTENSIVE PROCESS OF

15   SECURING AN OUT-OF-STATE WITNESS, WAS MET WITH IMMEDIATE

16   MOTIONS FOR REMOVAL AND QUASHAL.  SO THAT PROCESS COULDN'T

17   BEGIN BECAUSE WE WERE ALREADY IN AN ANTAGONIST POSTURE BECAUSE

18   THE SENATOR MOVED TO QUASH INSTANTLY AS SOON AS WE INITIATED

19   THIS.  SO WE ARE STILL WILLING TO GO THROUGH THAT PROCESS.  IN

20   FACT I THINK IT WILL BE NECESSARY AS WE FOUND WHEN WE WERE HERE

21   ABOUT CONGRESSMAN HICE.  THERE IS I BELIEVE A SMALLER UNIVERSE

22   OF FACTS THAT IS BEING ARGUED NOW THAN IN CONGRESSMAN HICE'S

23   CASE, BUT IT'S THE SAME PROCESS.  IT'S GOING TO BE ESSENTIAL

24   AND IT'S ONE THAT WE ARE WILLING TO MOVE FORWARD AND DO.  BUT

25   WHAT WE'VE BEEN ASKED TO DO, WHAT WE'VE HAD TO DO HERE IS COME

1   BEFORE THIS COURT AFTER ATTEMPTS WERE MADE IN TWO OTHER COURTS

2   AND SAY, PLEASE DO NOT QUASH THE SYSTEM IN ITS ENTIRETY.  AND

3   SO THAT IS THE ARGUMENT THAT WE ARE PRESENTING TO YOU NOW.

4           THE COURT:  OKAY.  WHY DON'T YOU MOVE TO THE

5   SOVEREIGN IMMUNITY ISSUE.

6           MR. WAKEFORD:  WELL, LET ME ADDRESS ONE THING.  THERE

7   IS THE REPEATED ASSERTION THAT OUR INVESTIGATION IS CIVIL AND

8   NOT CRIMINAL.  THAT IS BASED ON A SINGLE LINE OF DICTA FROM A

9   GEORGIA COURT OF APPEALS CASE CALLED KENERLY THAT SAYS SPECIAL

10  PURPOSE GRAND JURY CAN ONLY CONDUCT CIVIL INVESTIGATIONS.  THE

11  PROBLEM IN ADDITION TO BEING DICTA THAT HAS NEVER BEEN

12  AFFIRMED -- NEVER BEEN CONSIDERED, AFFIRMED OR ENDORSED BY THE

13  GEORGIA SUPREME COURT, IS THAT IT'S FLATLY WRONG.  KENERLY IS

14  INTERPRETING A DIFFERENT COURT OF APPEALS CASE THAT HAD A

15  DIFFERENT HOLDING AND MISCHARACTERIZING IT.  AND I THINK

16  REVIEWING KENERLY -- THIS WAS FIRST RAISED IN THEIR REPLY BRIEF

17  WHICH IS WHY WE HAVEN'T BRIEFED THIS ISSUE.  BUT KENERLY WAS

18  PURPORTING TO INTERPRET A CASE CALLED BARTEL.  BARTEL DOES NOT

19  SAY THAT SPECIAL PURPOSE GRAND JURIES ARE ONLY CIVIL.  BARTEL

20  SAYS IN THAT CASE IT WAS CLEARLY A CIVIL INVESTIGATION AND IT

21  ACTUALLY COULD HAVE BEEN A CIVIL GRAND JURY IMPANELED UNDER

22  EITHER THE REGULAR GRAND JURY STATUTE OR THE SPECIAL PURPOSE

23  GRAND JURY STATUTE.  IT DOESN'T MATTER.  THAT'S WHAT THE BARTEL

24  CASE SAID.  AND SOMEHOW THE KENERLY CASE GOT FROM THAT, WELL,

25  SPECIAL PURPOSE GRAND JURY CAN ONLY CONDUCT CIVIL

1  INVESTIGATIONS.  THAT -- THERE IS ABSOLUTELY NO BASIS FOR THAT

2  STATEMENT.  BUT EVEN LEAVING THAT ASIDE, THE DICTA IN KENERLY,

3  THERE IS THE STATUTE THAT THIS SPECIAL PURPOSE GRAND JURY'S

4  IMPANELED UNDER WHICH IS 15-12-100 WHICH STATES THAT IT CAN BE

5  CONVENED TO INVESTIGATE ANY VIOLATION OF THE LAWS OF THIS

6  STATE.  THERE IS 15-12-102 WHICH SAYS, SPECIAL PURPOSE GRAND

7  JURIES, TO THE EXTENT THAT WE DON'T SAY EXPLICITLY THEY ARE

8  DIFFERENT, ARE JUST LIKE REGULAR GRAND JURIES, WHICH ARE

9  OBVIOUSLY -- CAN BE IMPANELED TO CONDUCT CRIMINAL

10  INVESTIGATIONS.

11      THERE IS THE LETTER REQUESTING THE SPECIAL PURPOSE GRAND

12  JURY FROM THE DISTRICT ATTORNEY, A CRIMINAL INVESTIGATIVE

13  OFFICER, SAYING WE WANT TO INVESTIGATE FACTS AND CIRCUMSTANCES

14  RELATED TO POSSIBLE CRIMINAL DISRUPTIONS TO THE ADMINISTRATION

15  OF GEORGIA ELECTIONS.  AND THERE'S THE IMPANELING ORDER WHICH

16  MAKES EXPLICIT REFERENCE TO THAT LANGUAGE AND SAYS THAT THE

17  SPECIAL PURPOSE GRAND JURY WILL BE EMPOWERED TO INVESTIGATE ANY

18  VIOLATIONS OF THE LAWS OF THE STATE OF GEORGIA.  SO IF WE LEAVE

19  ASIDE ALL OF THAT, WELL, YOU WOULD HAVE TO LEAVE ASIDE EVERY

20  SINGLE ONE OF THOSE FACTS FOR IT TO HOLD THAT THIS GRAND JURY

21  IS SOMEHOW CIVIL.  THE MERE FACT THAT THE GRAND JURY CANNOT

22  RETURN AN INDICTMENT DOES NOT RENDER IT CIVIL.  THIS IS A

23  CRIMINAL INVESTIGATION AND HAS BEEN FROM THE START.  SO THAT

24  ELIMINATES ONE PART OF THEIR ARGUMENT THAT SOVEREIGN IMMUNITY

25  APPLIES HERE BECAUSE THIS IS A CRIMINAL CASE.

1      ADDITIONALLY, ALL OF THE CASES WHICH THEY CITE THAT

2   INVOLVE THE INVOCATION OF SOVEREIGN IMMUNITY IN CRIMINAL CASES

3   ARE STRANGE CASES THAT INVOLVE THE TOUHY DOCTRINE WHERE A

4   FEDERAL EXECUTIVE BRANCH OFFICIAL HAS NOT BEEN GIVEN CLEARANCE

5   BY HIS OR HER ORGANIZATION TO APPEAR UNDER THEIR REGULATIONS TO

6   APPEAR UNDER SUBPOENA.  AND THOSE CASES SIMPLY SAY THAT YOU

7   CAN'T -- YOU CAN'T FORCE A FEDERAL OFFICIAL TO TESTIFY WITHOUT

8   COMPLYING WITH TOUHY REGULATIONS, WHICH HAS ABSOLUTELY NO

9   APPLICATION TO THE CURRENT SITUATION.  THERE IS NO INDICATION

10  THAT THE UNITED STATES SENATE HAS DIRECTED SENATOR GRAHAM NOT

11  TO APPEAR AND NOT TO COMPLY WITH THIS SUBPOENA AND HE'S NOT A

12  PARTY TO ANY KIND OF CIVIL LITIGATION.  HE IS NOT BEING SUED.

13  AND SOVEREIGN IMMUNITY IS JUST FLATLY NOT APPLICABLE TO THIS

14  CASE.

15      THE COURT:  OKAY.  AND THE LAST ARGUMENT WOULD BE THE

16  HIGH-HANKING EXECUTIVE DOCTRINE.

17      MR. WAKEFORD:  HIGH-RANKING OFFICIAL DOCTRINE.

18      THE COURT:  YES, OFFICIAL DOCTRINE.  THAT'S RIGHT.

19      MR. WAKEFORD:  EXECUTIVE IS A GOOD POINT BECAUSE WE

20  STILL MAINTAIN THAT IT'S REALLY DESIGNED TO APPLY TO EXECUTIVE

21  BRANCH OFFICIALS.  THE YOHO (PHONETIC) CASE FROM THE SOUTHERN

22  DISTRICT OF FLORIDA, I BELIEVE, AND IT IS AN ELEVENTH CIRCUIT

23  DISTRICT COURT CASE, LAYS THIS OUT PRETTY PERSUASIVELY THAT

24  THIS -- THE CONCERNS THAT ANIMATE THE HIGH-RANKING OFFICIAL

25  DOCTRINE ALL HAVE TO DO WITH PEOPLE BEING THE PERSON AT THE TOP

1    OF THE PYRAMID IN A VERY COMPLICATED FEDERAL, BUREAUCRATIC

2    ATMOSPHERE.  HOWEVER, EVEN ASSUMING THAT IT CAN APPLY TO

3    MEMBERS OF CONGRESS, WE HAVE MADE A DEMONSTRATION OF -- AND WE

4    GOT INTO THIS LAST TIME WHEN I WAS HERE -- YOU KNOW, THE

5    QUESTION OF APPLICABILITY TO MEMBERS OF CONGRESS IS ONE THING.

6    WE STILL MAINTAIN IT'S NOT APPROPRIATE AND THAT SPEECH AND

7    DEBATE CLAUSE AMPLY COVERS THIS SITUATION IN ADDITION TO

8    CONGRESS'S OWN RULES ABOUT AUTHORIZING TESTIMONY, WHICH WE'VE

9    HEARD NOTHING ABOUT FROM THE SENATOR.  BUT LEAVING ALL THAT

10   ASIDE, THERE ARE EXTRAORDINARY CIRCUMSTANCES IN THIS CASE.

11   THE -- THIS IS ONE AREA WHERE THE CERTIFICATE IS PARTICULARLY

12   HELPFUL BECAUSE IT LAYS OUT THE MATERIALITY AND NECESSITY OF

13   THE SENATOR TO PROVIDE HIS -- THE BASIS FOR HIS -- WHAT HE DID

14   EXACTLY, WHAT HE DID AND THE REASONS FOR THEM.  AND IN A

15   SITUATION WHERE WE HAVE A DISPUTE AS TO EXACTLY WHAT HE DID,

16   HE'S THE ONLY PERSON WHO CAN TELL US THAT BECAUSE WE'VE GOTTEN

17   DISPUTED OTHER VERSIONS OF WHAT HAPPENED ON THAT CALL.

18        I FIND IT PARTICULARLY STRANGE THAT IT IS AN ARGUMENT

19   UNDER THE HIGH-RANKING OFFICIAL DOCTRINE FROM THE SENATOR THAT

20   OTHER PEOPLE HAVE ALREADY GIVEN INFORMATION, SO WE SHOULDN'T

21   HAVE TO ASK THEM.  WELL, THEY'VE GIVEN INFORMATION THAT HE

22   DISPUTES VEHEMENTLY.  AND HE SHOULD ANSWER.  HE SHOULD COME AND

23   ANSWER QUESTIONS ABOUT WHY THEIR RECOLLECTION IS INCORRECT.

24   BUT SOMEHOW THAT CUTS AGAINST HIS -- THE APPLICABILITY -- OR IT

25   CUTS FOR THE APPLICABILITY OF A DOCTRINE THAT WOULD REMOVE THE

POSSIBILITY OF SUBPOENAING HIM?  I DON'T FOLLOW.  SO IT IS

ESSENTIAL THAT THE SENATOR BE THE ONE TO PROVIDE THE

INFORMATION ABOUT WHAT HE DID ON THE CALL.  WE HAVE NO

INDICATION THAT ANYBODY FROM HIS OFFICE WAS ON THE CALL OR

COULD PROVIDE INFORMATION ABOUT IT.  EVEN IF WE COULD, THERE

ARE -- ASKING THE SECRETARY OF STATE TO TAKE PARTICULAR ACTIONS

IS NOT A LEGISLATIVE ACT.  WE WANT TO KNOW WHY HE DID THAT.

WE -- ASKING THE SECRETARY OF STATE TO CHANGE THINGS FOR A

RUN-OFF ELECTION IS NOT A LEGISLATIVE ACT.  WE WANT TO KNOW WHY

HE DID THAT.

          THE COURT:  WHY DO YOU NEED SENATOR GRAHAM?  BECAUSE

IT SOUNDS LIKE YOU ALREADY HAVE A LOT OF INFORMATION ABOUT

THESE SUBJECTS.  AND WE DO HAVE AN INVESTIGATIVE GRAND JURY

THAT'S JUST GATHERING INFORMATION.  IT APPEARS, AT LEAST WHAT

I'M HEARING TODAY, WHAT SENATOR GRAHAM WOULD SAY WOULD MAYBE

EVEN CUT AGAINST THAT BECAUSE YOU'VE GOT PEOPLE THAT ARE

ALREADY SAYING ALL THIS BAD STUFF HAPPENED.  BUT WHY DO YOU

NEED HIM?  BECAUSE ONE OF THE FACTORS IS BASICALLY THAT -- THE

EXACT WORDS ARE -- I'VE LOST MY SPEECH AND DEBATE CLAUSE.

THERE IT IS.  HIGH-RANKING OFFICIAL DOCTRINE NOTES.  THAT HE IS

NECESSARY.  AND SO WE'RE DOING AN INVESTIGATION ON WHICH ALL

THESE OTHER PEOPLE HAVE ALREADY TALKED ABOUT, WHY DO YOU NEED

HIM?

          MR. WAKEFORD:  BECAUSE THERE'S, ONE, A DISPUTE AS TO

WHAT ACTUALLY HAPPENED ON THE PHONE CALL ORIGINATED BY THE

1  SENATOR HIMSELF.  THERE IS A VERSION THAT HAS BEEN OFFERED BY

2  OTHER PARTICIPANTS ON THE CALL WHICH HE DISPUTES PUBLICLY.  AND

3  SO IN ORDER TO NAIL DOWN WHAT HAPPENED, WHICH IS WHAT THE

4  SPECIAL PURPOSE GRAND JURY HAS BEEN ASKED TO DO, WE NEED TO

5  TALK TO THE SENATOR AND WORK OUT WHETHER THERE ARE

6  DISCREPANCIES WITHIN THE ACCOUNTS OF THE --

7        THE COURT:  AND IS THAT A POSSIBILITY THAT THE

8  SENATOR HIMSELF IS SUBJECT TO POTENTIAL CRIMINAL ACTION?

9  BECAUSE THE ONLY REASON THAT IT'S IMPORTANT FOR HIM TO SAY THAT

10 IN FACT HE WAS NOT INTIMIDATING ANYONE, IS FOR THAT PIECE.

11 OTHERWISE, ALL YOU SAY THAT HE POTENTIALLY KNOWS ABOUT IS HIS

12 EFFORTS IN TRYING TO INFLUENCE THE ELECTION.

13        MR. WAKEFORD:  WELL, BUT TO THE EXTENT THAT THOSE

14 EFFORTS ARE CONNECTED TO OTHER ACTIVITIES THAT HAVE COME BEFORE

15 THE SPECIAL PURPOSE GRAND JURY, THERE IS THE QUESTION OF

16 COORDINATION -- THE CERTIFICATE ACTUALLY LAYS OUT THAT WE ARE

17 ASKING ABOUT WHAT WERE YOUR ACTIVITIES BEFORE THE CALL, WHAT

18 WERE YOUR ACTIVITIES AFTER THE CALL, WHAT CONNECTIONS ARE THERE

19 BETWEEN YOUR ACTIONS AND THE ACTIONS OF OTHERS THAT REVOLVED

20 AROUND THE ADMINISTRATION OF THE ELECTIONS IN GEORGIA IN 2020?

21 THERE WERE OTHER PHONE CALLS TO OTHER PUBLIC OFFICIALS IN

22 GEORGIA.  THAT'S A MATTER OF PUBLIC RECORD.  THERE WERE

23 OTHER -- THE FEDERAL OFFICIALS WHO CAME TO GEORGIA.  THERE WAS

24 A -- THERE WERE A NUMBER OF PIECES OF INVOLVEMENT BY PEOPLE

25 WITHIN THE FEDERAL GOVERNMENT IN GEORGIA.  AND SENATOR GRAHAM,

AS SOMEONE WHO'S CONNECTED PROFESSIONALLY AND POLITICALLY TO
THOSE INDIVIDUALS, CAN PROVIDE INFORMATION ABOUT THE EXTENT TO
WHICH HIS CALL WAS COORDINATED WITH THOSE OTHER ACTIVITIES.
IT'S NOT NECESSARILY EVEN TO SHOW THAT THE CALL ITSELF WAS A
CRIMINAL ACT WHICH WOULD SUBJECT THE SENATOR TO AN INDICTMENT.
IT'S TO SHOW THE EXTENT TO WHICH THERE IS A COORDINATION AMONG
THE PARTIES TO SEEK TO EFFECT THE ADMINISTRATION OF ELECTIONS
IN GEORGIA.

THE COURT: OKAY. NOW, IN TERMS OF YOUR PREFERRED
COURSE OF ACTION, I'VE HEARD FROM MR. LEA AS TO HIS, HE WOULD
WANT THE COURT, IF THE COURT DID NOT QUASH -- OBVIOUSLY HE
WANTS THE COURT TO QUASH THE SUBPOENA.

MR. WAKEFORD: RIGHT.

THE COURT: SECOND CHOICE, IF I DON'T DO THAT, HE
WANTS ME TO PROVIDE KIND OF BROAD-BRUSH GUIDELINES AS TO WHAT
IS AND ISN'T ACCEPTABLE TO BE ASKED DURING ANY GRAND JURY
TESTIMONY. IS THAT WHAT YOU WANT OR DO YOU WANT TO BRIEF THAT
OR DO YOU WANT TO JUST REMAND IT BACK TO SUPERIOR COURT AND
KIND OF GO FROM THERE? WHAT IS IT THAT YOU ARE REQUESTING?

MR. WAKEFORD: WHEN WE HAD THIS QUESTION COME UP
BEFORE AND TOTAL QUASHAL WAS THE REQUEST, THE COURT INDICATED
THAT -- I UNDERSTAND THAT NOW THERE IS A REQUEST FROM THE
SENATOR THAT THERE BE -- IF TOTAL QUASHAL IS NOT GIVEN IN THIS
INSTANCE, THAT THERE BE GUIDELINES GIVEN. IT WAS NOT MY
UNDERSTANDING THAT THAT WAS A POSSIBILITY JURISDICTIONALLY

1  BECAUSE THE REMEDY THAT HAS BEEN REQUESTED IS TOTAL QUASHAL.

2  IF TOTAL QUASHAL IS NOT GIVEN, THEN THE COURT HAS DECIDED AND

3  THE CASE IS REMANDED.  SO I WOULD SAY THAT THE DISTRICT

4  ATTORNEY'S POSITION IS THAT WE PROCEED -- IF TOTAL QUASHAL IS

5  NOT PROVIDED BY THIS COURT, THE CASE IS REMANDED AND THAT THE

6  PARTIES NEGOTIATE THE SCOPE OF QUESTIONING OF SENATOR GRAHAM.

7  IF THERE ARE ISSUES THAT COME UP AND HAVE TO BE LITIGATED

8  FURTHER AT THAT POINT, THEN THEY COME BACK BEFORE THE COURT

9  WITH A MUCH FULLER RECORD AND THE COURT CAN MORE ABLY DETERMINE

10 WHETHER CERTAIN ISSUES FALL INSIDE OR OUTSIDE OF THE PRIVILEGE.

11 AT THAT POINT HAVING GOTTEN CLOSER TO THE ACTUAL ASKING OF

12 QUESTIONS OR PERHAPS EVEN HAVING ASKED QUESTIONS WHICH -- TO

13 WHICH THE PRIVILEGE IS INVOKED.  I JUST DON'T THINK THAT

14 FURTHER BRIEFING AT THIS STAGE IS GOING TO PROVIDE THE

15 ASSURANCE THAT WE NEED THAT THE FACTUAL ISSUES ARE FULLY

16 FLESHED OUT.  SO I THINK -- IT'S BEEN CHARACTERIZED BY OPPOSING

17 COUNSEL AS WHACK-A-MOLE.  I WOULD SAY MORE THAT IT'S GOING BACK

18 AND GOING THROUGH THIS PROCESS, AND IF THERE ARE FURTHER ISSUES

19 WITH THE INVOCATION OF THE PRIVILEGE, ASSUMING THEY CAN NO

20 LONGER SAY THAT EVERY SINGLE STATEMENT THAT THE SENATOR EVER

21 MADE HAD TO DO WITH HIS LEGISLATIVE ACTIVITIES, THAT THERE WILL

22 BE MORE DEFINED FACTUAL CIRCUMSTANCES FOR THIS COURT TO

23 CONSIDER FOR ANY FURTHER DISPUTES.

24          THE COURT:  OKAY.  THANK YOU.

25          MR. WAKEFORD:  YOU'RE WELCOME.  ARE THERE ANY OTHER

1    QUESTIONS TO WHICH I CAN HELP THE COURT?

2            THE COURT:  YOU KNOW I'VE ASKED THEM, SO, NO, I WOULD

3    HAVE ASKED THEM.  SO THANK YOU.

4            MR. WAKEFORD:  THANK YOU, YOUR HONOR.  I DO STAND

5    READY, HOWEVER, IF THE COURT REQUESTS FURTHER BRIEFING, FURTHER

6    FACTS, FURTHER ANYTHING, TO PROVIDE IT.  I'M NOT MAKING

7    EXCUSES.  THE FACT THAT WE HAD A TIGHT WINDOW TO BRIEF, THIS IS

8    AN EXPEDITED MOTION, WE TOTALLY UNDERSTAND.  BUT TO THE EXTENT

9    THAT THERE ARE FACTUAL DEFICIENCIES WHICH THE COURT WOULD LIKE

10   TO FLESH OUT, THAT IS ENTIRELY MY RESPONSIBILITY.  AND I STAND

11   READY TO GIVE THE COURT ANYTHING IT ASKS FOR.

12           THE COURT:  OKAY.  THANK YOU.

13           MR. WAKEFORD:  THANK YOU VERY MUCH.

14           THE COURT:  OKAY.  MR. LEA.

15           MR. LEA:  THANK YOU.  SO TO SORT OF START FROM THE

16   BACK AND WORK UP, FIRST, IS JUST THE PROCEDURAL QUESTION ABOUT

17   PARTIAL QUASHAL.  RULE 45(D) MAKES CLEAR THAT YOU CAN MODIFY OR

18   QUASH A SUBPOENA TO THE EXTENT IT REACHES PRIVILEGE OR, IN THIS

19   CASE, IMMUNE INFORMATION.  WE'VE CITED ONE OF THEM IN OUR

20   BRIEFS.  IT'S THE M.L. HEALTHCARE CASE, BUT THERE ARE MANY

21   OTHERS.  COURTS PARTIALLY QUASH SUBPOENAS ALL THE TIME.  THE

22   IDEA THAT YOU COULDN'T PARTIALLY QUASH BECAUSE YOU'RE WITH US

23   PART OF THE WAY BUT NOT ALL OF THE WAY IS INCORRECT.  AND THEN,

24   SECOND -- AND WE'D BE HAPPY TO PROVIDE THOSE IF HELPFUL TO THE

25   COURT.  SECOND, THIS IDEA THAT THAT SHOULD HAPPEN IN STATE

1  COURT, WE'VE HEARD NO REASON WHY.  SECTION 1442 SAYS WE GET A

2  FEDERAL FORUM FOR THIS.  THEY SAY THEY WANT TO FIRM IT UP.

3  THERE'S NO REASON TO FIRM IT UP IN STATE COURT AS A (VERBATIM)

4  FEDERAL COURT UNLESS THEY'RE GOING TO TRY TO MAKE HIM GO IN AND

5  ANSWER QUESTIONS IN REALTIME WITHOUT AN ATTORNEY PRESENT, WHICH

6  VIOLATES THE IMMUNITY IN AND OF ITSELF.  SO THAT'S JUST THE

7  PROCEDURAL POINTS THAT WERE RAISED.

8      LOOKING TO THE HIGH-RANKING OFFICIAL DOCTRINE, THEY SAY

9  THAT THERE'S A REAL DISPUTE ABOUT THE PHONE CALLS.  THERE'S

10 NOT, AT LEAST NOT ONE THAT THEY'VE COME FORWARD WITH.  ALL THAT

11 THEY HAVE SHOWN US IS A DISPUTE IN TERMS OF SECRETARY

12 RAFFENSPERGER SAYING WHEN WHAT HE TOOK THE IMPLICATION OF THE

13 CALL TO BE, WHAT WAS, IN HIS WORDS, IMPLIED.  THERE'S NO REASON

14 TO ASK SENATOR GRAHAM ABOUT AN IMPLICATION THAT SECRETARY

15 RAFFENSPERGER'S --

16      THE COURT:  ISN'T THERE SENATOR GRAHAM HAS MADE

17 STATEMENTS ABOUT THE CALL PUBLICLY THAT SEEM TO HAVE DIFFERENT

18 INTERPRETATIONS?

19      MR. LEA:  I DON'T THINK HE HAS.  I THINK HE'S BEEN

20 CONSISTENT THAT HE WAS COVERING VOTING AND DIFFERENT FORMS OF

21 CHECKING ABSENTEE BALLOTS AND WHAT THAT MEANT AND HOW HE AS A

22 LEGISLATOR COULD IMPROVE THE PROCESS.  THE COURT HAS LED ME

23 INTO THE SPEECH AND DEBATE DOCTRINE WITH THAT QUESTION, THOUGH.

24 I WOULD JUST SAY A FEW THINGS.  ONE, HE'S A SENATOR.  WE KNOW

25 THAT ELECTION INTEGRITY IS WELL WITHIN HIS DOMAIN.  HE'S

1   CHAIRMAN OF THE JUDICIARY COMMITTEE AT THE TIME.  WE KNOW NOT

2   ONLY DOES HE HAVE AN ONGOING INTEREST IN IT, HE'S CHAIRED

3   HEARINGS ON ELECTION INTEGRITY AND VOTING RIGHTS BEFORE.  BUT

4   WE KNOW THAT IT WAS WITHIN THEIR JURISDICTION BECAUSE OTHER

5   PEOPLE ON THAT COMMITTEE HAVE AS WELL.  SECOND, WE HAVE THE

6   CONSTITUTION, WHICH, AS I MENTIONED EARLIER, GIVES THE RIGHT

7   FOR CONGRESS TO STEP IN AND CHANGE STATE VOTING REGULATIONS.

8   WE ALSO HAVE THE ELECTORAL COUNT ACT WHICH MADE IT INCUMBENT ON

9   HIM TO ULTIMATELY DECIDE WHETHER TO OBJECT OR TO CERTIFY JOE

10  BIDEN AS PRESIDENT.  HE ULTIMATELY VOTED TO CERTIFY.  I HEARD

11  MY FRIEND SAY, WELL, HE ENDED UP DEFERRING TO FEDERAL JUDGES.

12      I WOULD REFER THE COURT TO THE EASTLAND CASE FROM THE U.S.

13  SUPREME COURT WHERE THEY SAID THAT THE NATURE OF INVESTIGATION

14  IS SOMETIMES IT LEADS YOU UP ONE ALLEY AND YOU DECIDE THAT'S

15  NOT THE WAY TO GO AND YOU BASE IT ON SOMETHING ELSE.  NOT ONLY

16  THAT, HE HAS PROPOSED AND CO-SPONSORED LEGISLATION TO CHANGE

17  THE ELECTORAL COUNT ACT BASED ON HIS EXPERIENCE HERE, SO ALL OF

18  THIS WITHIN HIS LEGISLATIVE DOMAIN.  BASICALLY A SENATOR GETS

19  TO DO HIS JOB.  HE GETS TO ASK WHAT HE NEEDS TO ASK TO DO HIS

20  JOB -- OH, AND, IN ADDITION, SENATE ELECTIONS.  I'VE HEARD THEM

21  NOW PIVOT HEAVILY TO THIS IDEA THAT IT WAS ABOUT SENATE

22  ELECTIONS.  NOT ONLY WAS THAT LOOKING FORWARD TO LEGISLATION,

23  BUT IT WAS ALSO SOMETHING THAT IS ENTRUSTED.  SENATORS GET TO

24  DECIDE ON SEATING THEIR OWN MEMBERS JUST LIKE BOTH HOUSES DO.

25  I DON'T HAVE THE CITE HANDY BECAUSE THAT WAS A NEW ARGUMENT

1 HERE.  BUT THAT WAS SOMETHING ELSE THAT FALLS WITHIN HIS

2 DOMAIN.  AND SO THE BOTTOM LINE IS THE SENATOR HAS TO DECIDE

3 HOW TO DO HIS JOB.  YOU CAN'T SECOND-GUESS THE WORDING OF

4 QUESTIONS OR WHO HE CHOSE TO ASK QUESTIONS TO BECAUSE THAT

5 WOULD RENDER THE SPEECH OR DEBATE CLAUSE TOOTHLESS.  YOU WOULD

6 HAVE TO VIOLATE IT TO USE IT ESSENTIALLY.  YOU WOULD HAVE TO GO

7 IN AND ASK QUESTIONS.  THEY WOULD HAVE FREE REIGN AND THEN YOU

8 WOULD RENDER THE PHRASE, "SHALL NOT BE QUESTIONED," ESSENTIALLY

9 OF NO MEANING.  MY FRIEND DID MENTION BRIEFLY THIS IDEA OF

10 SOVEREIGN IMMUNITY SAYING IT WASN'T A CIVIL GRAND JURY.  YOU

11 KNOW, IT'S NOT DICTA IN KENERLY.  IT'S ESSENTIAL TO THEIR

12 HOLDING.  ONE -- I GET THE CASES BACKWARDS SOMETIMES.

13          THE COURT:  I DON'T EVEN THINK THERE WAS SUCH THING

14 AS A CIVIL GRAND JURY --

15          MR. LEA:  GEORGIA HAS --

16          THE COURT:  -- AND THE COURT OF APPEALS DECISIONS ARE

17 NOT BINDING IN ANY WAY ON THIS COURT.

18          MR. LEA:  TECHNICALLY UNDER EERIE COURT OF APPEALS

19 DECISIONS ARE UNLESS THE COURT HAS A DEFINITE AND FIRM

20 CONVICTION THAT THE SUPREME COURT WOULD DISAGREE.  AND SO

21 COURTS REGULARLY LOOK TO STATE COURT OF APPEALS DECISIONS IN

22 DECIDING WHAT STATE LAW MEANS.  THAT'S THE BEST SOURCE.  AND

23 THEY'VE DONE IT TWICE.  AND SO IF IT'S NOT CRIMINAL, AS THE

24 CASE HAS MADE CLEAR, AND MY FRIEND'S SAYING IT'S NOT CIVIL,

25 WELL, WHAT IS IT?  THE SAFEST COURSE IS TO DEFER TO GEORGIA AND

```
1   HOW THEY'VE DEFINED THEIR OWN PROCEEDINGS.  MY FRIEND
2   REFERENCED -- IT WAS TOUGH TO KEEP TRACK OF IT ALL,
3   BUT REFERENCES TO THIS JUDGE TREATING IT AS CRIMINAL.  YOU
4   CAN'T DO ALCHEMY.  IF THE LAW MAKES IT CIVIL, A JUDGE SAYING
5   IT'S CRIMINAL DOESN'T MAKE IT CRIMINAL IN CONNECTION WITH THIS
6   GRAND JURY.  AND THEN MY FRIEND REFERENCES THE IDEA THAT THE
7   SOVEREIGN IMMUNITY CASES ARE ALL ABOUT THIS TOUHY DOCTRINE AND
8   FEDERAL REGULATIONS.  THE LOUISIANA SPARKS CASE FROM THE FIFTH
9   CIRCUIT IS VERY, VERY CLEAR THAT THAT GETS THE ANALYSIS
10  BACKWARDS.  EVERY CASE YOU'LL FIND ON SOVEREIGN IMMUNITY THAT
11  DISCUSSES IT IN ANY DEPTH WILL SAY SOVEREIGN IMMUNITY EXISTS
12  UNLESS WAIVED.  THERE IS NO WAIVER.  MY FRIEND HASN'T POINTED
13  TO ANY WAIVER FROM THE SENATE, MUCH LESS THE SENATOR.  AND,
14  THEREFORE, SOVEREIGN IMMUNITY APPLIES HERE.  SO AT THE END OF
15  THE DAY WE WOULD URGE THE COURT TO FOLLOW THESE DOCTRINES AND
16  THESE IMMUNITIES WHICH ALLOW A SITTING SENATOR TO DO HIS JOB
17  FREE OF INTERFERENCE FROM A STATE PROSECUTOR.  THAT'S WHAT THEY
18  WERE DESIGNED TO DO, AND WHICH WE WOULD URGE THAT COURSE ON THE
19  COURT AND WE WOULD URGE THE COURT TO GRANT THE MOTION.
20            THE COURT:  OKAY.  THANK YOU.
21            MR. LEA:  THANK YOU.
22            THE COURT:  YES, SIR.
23            MR. WAKEFORD:  MAY I ADDRESS TWO POINTS VERY QUICKLY?
24            THE COURT:  YES, BUT JUST MAKE SURE YOU COME TO THE
25  MICROPHONE BECAUSE ACOUSTICS ARE BAD, SO I WANT TO MAKE SURE I
```

1  HEAR YOU.

2        MR. WAKEFORD:  AND INCREDIBLY BRIEF, YOUR HONOR.

3  I'VE ALREADY MADE THE ARGUMENT REGARDING KENERLY.  EVEN A BRIEF

4  READ OF KENERLY WE'LL SEE THAT IT MISSTATES THE WITHHOLDING OF

5  ANOTHER CASE IN COMING TO THIS CONCLUSION, AND THAT ONE

6  STATEMENT CANNOT UNDO THE LANGUAGE OF THE STATUTES AND THE

7  STATUTES WHICH ACTUALLY CREATE SPECIAL PURPOSE GRAND JURIES AND

8  SAY THAT THEY CAN BE CRIMINAL.  I DO WANT TO CLARIFY FOR YOUR

9  HONOR THAT CIVIL GRAND JURIES DO EXIST UNDER GEORGIA LAW, AND

10  THAT WAS PART OF THE CONFUSION IN THE CASE THAT THE KENERLY

11  CASE WAS REFERRING TO BECAUSE THE GEORGIA GRAND JURY STATUTE

12  CAN ALLOW CIVIL GRAND JURIES TO SIT AND INVESTIGATE LOCAL

13  COUNTY OFFICES, INSPECT THE JAIL, INSPECT THE DISTRICT

14  ATTORNEY'S OFFICE, THINGS LIKE THAT WHERE THEY'RE NOT SEEKING

15  TO FIND EVIDENCE OF CRIMINAL ACTIVITY, BUT SIMPLY DOING

16  BASICALLY GOOD GOVERNANCE INVESTIGATIONS ON BEHALF OF THE

17  PEOPLE OF WHATEVER COUNTY THAT IMPANELS THE GRAND JURY.  SO I

18  WOULD STILL SAY THAT A SIMPLE READ WILL INDICATE THAT KENERLY

19  IS WRONGLY DECIDED.

20        SECONDLY, I JUST WANTED TO MENTION THAT THE SENATOR'S

21  CO-SPONSORING CHANGES TO THE ELECTORAL COUNT ACT AND HOW THIS

22  CONVERSATION IS PART OF THAT, THE PROPOSED LEGISLATION TO

23  CHANGE THE ELECTORAL COUNT ACT HAS ABSOLUTELY NOTHING TO DO

24  WITH THE SIGNATURE VERIFICATION PROCESS IN A STATE IN WHICH THE

25  SENATOR DOES NOT LIVE OR ANY CONVERSATION THAT THE SENATOR HAD

```
 1   ABOUT THAT.  THE PROPOSED LEGISLATION WHICH HE HAS CO-SPONSORED
 2   IS ALL ABOUT WHAT HAPPENS ON THE DAY THAT THE SENATE CONVENES
 3   TO HAVE THE VICE PRESIDENT OPEN THE ELECTORAL VOTES FROM EACH
 4   STATE, HOW OBJECTIONS ARE HEARD, HOW THEY ARE COUNTED, AND WHAT
 5   GOES ON IN A -- AS A PARLIAMENTARY MATTER WITHIN THE SENATE.
 6   IT HAS ABSOLUTELY NOTHING TO DO WITH THE TOPICS BROACHED IN THE
 7   CONVERSATION SUGGESTED BY ANYONE WHO IS ACTUALLY ON THE CALL.
 8   SO THE CALL HAS SIMPLY NOTHING TO DO WITH THAT LEGISLATION
 9   WHICH THE SENATOR CO-SPONSORS, AND THAT'S ALL I HAVE.  THANK
10   YOU.
11           THE COURT:  THANK YOU.
12           MR. LEA:  IF I MIGHT VERY BRIEFLY HAVE ONE MORE WORD
13   ABOUT THAT VERY QUICKLY.
14           THE COURT:  YES, JUST THAT.
15           MR. LEA:  YEAH, JUST THAT ONE POINT, YOUR HONOR.  THE
16   SHORT ANSWER IS THAT EASTLAND MAKES VERY CLEAR THAT YOU DON'T
17   LOOK TO THE END RESULT OF AN INVESTIGATION.  YOU HAVE TO ALLOW
18   FOR BLIND ALLEYS.  AND IT'S SETTING UP A FALSE DICHOTOMY
19   BETWEEN THIS IDEA THAT HE'S ASKING THESE POLITICAL THINGS, BUT
20   IT'S ALSO RELEVANT TO HIS INVESTIGATION.  THE ANALYSIS IS
21   OBJECTIVE.  YOU JUST LOOK AT WAS IT INVESTIGATING.  YOU DON'T
22   LOOK AT THE END RESULT AND YOU DON'T LOOK AT INTENT.  AND,
23   AGAIN, THAT'S EASTLAND.
24           THE COURT:  OKAY.
25           MR. LEA:  THANK YOU.
```

1          THE COURT:  THANK YOU.

2      NOW, IN TERMS OF NEXT STEPS, THE SENATOR GRAHAM TEAM IS

3  GOING TO GET ME A RESPONSE TO THE AMICUS BRIEF.  ONE ISSUE I DO

4  WANT YOU TO BRIEF AS PART OF THAT IS THIS ISSUE OF WHO HAS THE

5  BURDEN TO PROVE THAT THIS IS LEGISLATIVE OR NOT LEGISLATIVE.

6  SO THERE IS ONE POSITION FROM THE D.A.'S OFFICE, IS THAT IT'S

7  THE SENATOR'S BURDEN TO PROVE BY A PREPONDERANCE OF THE

8  EVIDENCE THAT IT'S LEGISLATIVE.  IT APPEARS THAT SENATOR GRAHAM

9  IS SAYING THAT IT IS THE D.A.'S OFFICE TO PROVE THAT IT IS NOT

10  LEGISLATIVE.  THAT POSITION IS NOT CLEAR IN THE BRIEFING, AND I

11  THINK IT'S IMPORTANT.  SO IN YOUR BRIEF THAT YOU SUBMIT ON THAT

12  AND MAKE SURE THAT THAT ISSUE IS ADDRESSED.  AND IF, THEN, THE

13  D.A.'S OFFICE WANTS TO RESPOND TO THAT ARGUMENT, SO WE'RE ON A

14  FAST TIMETABLE HERE.  SO THAT BRIEF HAS TO BE WITH ME BY NOON

15  TOMORROW FROM THE SENATOR'S OFFICE.  IF YOU WANT TO RESPOND TO

16  THAT, LET MY COURTROOM DEPUTY KNOW AND I WILL GIVE YOU UNTIL

17  9:00 ON FRIDAY TO RESPOND TO THAT ARGUMENT ABOUT THE BURDEN OF

18  PROOF ISSUE BECAUSE I THINK THAT'S ULTIMATELY SOMETHING THAT IS

19  RELATIVELY IMPORTANT HERE.  AND I WANT TO SEE ADDITIONAL

20  BRIEFING ON THAT.  OTHERWISE, I THINK I HAVE WHAT I NEED.  IF

21  THAT CHANGES AS MY ORDER IS BEING DRAFTED, I WILL LET YOU KNOW.

22  I WOULD LOVE TO TELL YOU THAT I WILL GET THE ORDER OUT ON

23  FRIDAY.  I DON'T KNOW IF THAT'S TRUE.  IT DEPENDS ON WHAT IS

24  KICKED UP BY ALL OF THIS OTHER STUFF.  I THINK THAT PROBABLY

25  MONDAY IS MOST LIKELY WHEN YOU'LL GET IT, BUT I'M GOING TO TRY

1  TO GET IT ON FRIDAY.  WE'LL JUST SEE WHETHER THIS CHANGES

2  ANYTHING.

3      YES, SIR.

4          MR. WAKEFORD:  DID YOU SAY 9 A.M. FRIDAY WOULD BE ANY

5  RESPONSE FROM OUR OFFICE?

6          THE COURT:  YES.

7          MR. WAKEFORD:  OKAY.  WELL, WE WOULD INTEND TO

8  RESPOND.

9          THE COURT:  OKAY.  YEAH, JUST LET ME KNOW IF YOU'RE

10 GOING TO RESPOND.  BUT I THINK THE BURDEN OF PROOF ISSUE IS

11 IMPORTANT AND I DON'T KNOW THAT IT'S BEEN FULLY ADDRESSED.  AND

12 IT MAY BE SOMETHING THAT ULTIMATELY HAS A GREAT DEAL OF IMPACT

13 ON THE DECISION.  I'M NOT SURE.  EVEN THOUGH Y'ALL WON'T DO

14 THIS, DON'T READ TOO MUCH INTO THE QUESTIONS BECAUSE I'M TRYING

15 TO FIGURE THIS ALL OUT.  AND SOMETIMES IT'S DEVIL'S ADVOCATE,

16 SOMETIMES IT'S TESTING ABOUT WHAT I'M THINKING ABOUT WRITING.

17 I WANTED TO HEAR FROM YOU AND KIND OF GO INTO THE WEEDS WITH

18 ALL OF THAT.  I KNOW IT'S MORE FUN JUST TO GIVE YOUR ARGUMENTS,

19 BUT IT'S LESS HELPFUL AND ME REALLY UNDERSTANDING THEM.  SO YOU

20 BOTH WERE VERY PATIENT AS I ASKED ALL THESE QUESTIONS, AND I DO

21 APPRECIATE THAT.  IT'S NOT EASY TO DO THAT, AND I UNDERSTAND

22 THAT.  I TAKE ALL OF THIS VERY SERIOUSLY AND WANT TO GET A GOOD

23 ORDER OUT, SO I'M GOING TO MAKE SURE THAT I DO THAT, AND THEN

24 WE'LL JUST GO FROM THERE.  IF I NEED ANYTHING ELSE FROM YOU, I

25 WILL LET YOU KNOW.  SO, WITH THAT, I APPRECIATE IT AND WE ARE

1    ADJOURNED.

2                    (PROCEEDINGS ADJOURNED.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E


UNITED STATES OF AMERICA

NORTHERN DISTRICT OF GEORGIA

 I, MONTRELL VANN, RPR, RMR, RDR, CRR, OFFICIAL COURT REPORTER FOR THE UNITED STATES DISTRICT COURT, FOR THE NORTHERN DISTRICT OF GEORGIA, DO HEREBY CERTIFY THAT THE FOREGOING 80 PAGES CONSTITUTE A TRUE TRANSCRIPT OF PROCEEDINGS HAD BEFORE THE SAID COURT, HELD IN THE CITY OF ATLANTA, GEORGIA, IN THE MATTER THEREIN STATED.

 IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS, THE 11TH DAY OF AUGUST 2022.


        /S/ MONTRELL VANN
        MONTRELL VANN, RPR, RMR, RDR, CRR
        OFFICIAL COURT REPORTER
        UNITED STATES DISTRICT COURT