# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

*In re* Subpoena to Non-Party Lindsey
O. Graham in his official capacity as
United States Senator,

Case No. 1:22-cv-03027-LMM

in the matter of:

Special Purpose Grand Jury, Fulton
County Superior Court Case No.
2022-EX-000024.

## MEMORANDUM OF LAW IN SUPPORT OF SENATOR LINDSEY O. GRAHAM'S EMERGENCY MOTION TO STAY ORDER AND ENJOIN SELECT GRAND JURY PROCEEDINGS PENDING APPEAL

## **INTRODUCTION**

United States Senator Lindsey Graham is currently scheduled to be "questioned" on August 23—less than a week away—by a state-court body about what he claims was his protected "Speech or Debate," despite the Constitution's command that Senators "shall not be questioned" regarding "any Speech or Debate." U.S. Const. art. I, § 6, cl. 1.  Because a "Speech or Debate Clause violation [will] occur[ ] automatically" the moment Senator Graham is questioned, Senator Graham will be irreparably harmed if this questioning goes forward as planned.  *United States v. Swindall*, 971 F.2d 1531, 1549 (11th Cir. 1992).  And the District Attorney has not responded to Senator Graham's request to postpone his appearance before the grand jury pending the outcome of his statutorily guaranteed appeal, which Senator Graham offered to expedite and which was created to protect federal immunities like those belonging to Senator Graham.  (Exhibit 1, Decl. of Brian C. Lea).

Because the District Attorney apparently would deny Senator Graham his statutorily guaranteed right to be heard in the federal appellate court, this Motion is necessary.  As noted, Senator Graham will suffer irreparable harm if forced to appear before his appeal concludes.  And Senator Graham has a strong likelihood of succeeding in his appeal, which presents at the very least  a "substantial case on the

merits." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981).[1]  Senator Graham, therefore, is entitled to a stay of grand jury proceedings pending appeal:  "A district court . . . properly stays [proceedings] pending appeal of a denial of immunity." *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1252 (11th Cir. 2004).

This Court should grant this Motion, which, given the case's importance and urgency, is being filed on an emergency basis.  That way, the Eleventh Circuit can consider the important issues involved before Senator Graham is scheduled to testify—and thus before the constitutional immunities are lost.

## BACKGROUND

This Court well knows the background of this expedited case.  *See* Doc. 27 (Order on Motion to Quash) at 2–3 (hereinafter, "Op.").  The District Attorney subpoenaed Senator Graham to testify on August 23, and Senator Graham moved to quash that subpoena and related process.  In his Expedited Motion to Quash, Senator Graham asked the Court to quash for three independently sufficient reasons: the Speech or Debate Clause, sovereign immunity, and the lack of extraordinary circumstances justifying testimony from a high-ranking official.

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding all decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

On August 15, the Court issued an Order (1) denying without prejudice Senator Graham's Motion to Quash and (2) remanding to the state court for the record to be "more fully developed before the Court can address the applicability of the Speech or Debate Clause to specific questions or lines of inquiry." Op. 22. In that opinion, the Court left open the most important question presented: whether the calls investigating Georgia's absentee-ballot process were themselves "legislative" and thus protected. Instead, the Court held that: (1) the state court had to "prob[e] into the facts and circumstances of [the] alleged legislative acts," including by examining Senator Graham's "motives" for making the calls, to determine whether the calls were "in fact" legislative, Op. 13–14 & n.5; and (2) regardless whether "inquiry related to those two calls [was] shielded by the Speech or Debate Clause," the District Attorney could ask about *other* topics (such as Senator Graham's interactions with "the Trump Campaign and its post-election efforts in Georgia"), Op. 7–11. The Court also held that (3) it would not consider partial quashal both because it supposedly did not have a "timely motion" to do so and because it needed more record development before doing so, Op. 22 n.9; and (4) sovereign immunity did not protect Senator Graham, Op. 16–17.[2]

---

[2] The Court also rejected Senator Graham's arguments on the high-ranking-official doctrine, but Senator Graham focuses here on his constitutional immunities.

## **ARGUMENT**

This Court should temporarily prevent any questioning of Senator Graham until Senator Graham's appeal is resolved.

The most straightforward way to do this is to stay this Court's Order. When, as here, "a remand order is reviewable" on appeal, the district court "has jurisdiction to issue a stay [even when it] has already sent a certified copy of its remand Order to [the] state court." *Maui Land & Pineapple Co. v. Occidental Chem. Corp.*, 24 F. Supp. 2d 1083, 1085 (D. Haw. 1998); *see, e.g.*, *Cong. of Racial Equal. v. Town of Clinton*, 346 F.2d 911, 914 (5th Cir. 1964) (Because "the orders of remand in these civil rights cases are appealable," a "stay order" can "remain in effect until a decision by this Court on the merits of the appeal."); *Manier v. Medtech Prods., Inc.*, 29 F. Supp. 3d 1284, 1287 (S.D. Cal. 2014) (collecting cases); *cf. Capitol City Bank & Tr. v. McAfee 3 Architects, Inc.*, 2016 WL 10906481, at *5 (N.D. Ga. Oct. 12, 2016) (May, J.) (reconsidering remand order after an appeal). To hold otherwise would be to "render the statutory right to appeal [the] remand order hollow." *Anderson v. Wilco Life Ins. Co.*, 2019 WL 3225837, at *2 (S.D. Ga. July 17, 2019). Thus, because the remand order here is appealable, *see* 28 U.S.C. § 1447(d); *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1538 (2021); *Quackenbush v.*

*Allstate Ins. Co.*, 517 U.S. 706, 711–12 (1996); *Helstoski v. Meanor*, 442 U.S. 500, 505 (1979), this Court may stay it.

Though it should be unnecessary upon entry of a stay, this Court should also enjoin the grand jury from acting on the subpoena while the case is on appeal. A "court of the United States" may "grant an injunction to stay proceedings in a State court [when] expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction." 28 U.S.C. § 2283. Congress has expressly authorized halting state proceedings in removed cases. *See Mitchum v. Foster*, 407 U.S. 225, 234–38 & n.12 (1972); *see also* 17A Fed. Prac. & Proc. Juris. § 4224 (3d ed., Westlaw Apr. 2022 update). And regardless, pausing the state-court proceedings as to Senator Graham is "necessary in aid of [the federal courts'] jurisdiction." 28 U.S.C. § 2283; *Peterson v. BMI Refractories*, 124 F.3d 1386, 1395 (11th Cir. 1997). Otherwise, Senator Graham's federal case will be effectively mooted the moment he has to testify. At that point, he will have suffered the injury he is seeking to avoid: being "questioned" about his legislative activity outside of the Senate. The injunction is thus necessary "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 295 (1970); *see, e.g.*, *McNeill v. New York City Hous.*

*Auth.*, 719 F. Supp. 233, 256 (S.D.N.Y. 1989) ("Unless [state-court] proceedings are stayed long enough to adjudicate plaintiffs' alleged [federal] right . . ., plaintiffs will be [injured] before this case can be decided" by the federal court.).

Both of these short-term remedies—a stay of the Court's Order and an injunction staying the grand-jury proceedings as to Senator Graham—turn on the same familiar four factors:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018); *see Nken v. Holder*, 556 U.S. 418, 434 (2009); *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1354–55 (11th Cir. 1983); *see also  Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1101 n.13 (11th Cir. 2004) (injunctions "to preserve the status quo and prevent allegedly irreparable injury until the court ha[s] the opportunity to decide" the case follow "the traditional requirements of an injunction").

Under that standard, "[t]he first two factors … are the most critical." *Nken*, 556 U.S. at 434.  And the strength needed for the first factor, likelihood of success, ebbs and flows depending on the other three.  When, as here, the case involves "a serious legal question" and "the balance of the equities weighs heavily in favor of

granting the stay," then "the movant need only present a substantial case on the merits." *Ruiz*, 650 F.2d at 565; *see, e.g.*, *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370 (11th Cir. 2022).

Even though this Court disagrees with Senator Graham's arguments on the merits, the Court should recognize that this case is a serious one presenting (at the very least) substantial questions, and that—given that Senator Graham's testimony is less than a week away and that the grand jury can continue on all other topics and other witnesses while this appeal proceeds—the equities weigh strongly in favor of a stay to give the appellate courts the chance to review this Court's Order. That is all that is required under binding precedent. *Ruiz*, 650 F.2d at 565.

## A. Senator Graham Has A High Likelihood Of Prevailing On Appeal, And At Least Presents A Substantial Case On The Merits.

With respect, this Court's Speech or Debate holdings—(1) that further factfinding into Senator Graham's motives is necessary to determine whether the calls were legislative "in fact"; (2) that, regardless whether the calls were legislative acts, the District Attorney could question Senator Graham on other matters; and (3) that the Court could not partially quash the subpoena—were mistaken. So was its sovereign-immunity holding. The Eleventh Circuit is highly likely to reverse or vacate at least one of these holdings—at the least, there remains a "substantial case

on the merits." *League of Women Voters*, 32 F.4th at 1370.  The first factor thus weighs in favor of a stay.  *See id.*

**1.  *The calls and the motive behind them.*  No** questioning is permitted on the calls or the motive behind them.  They are classic protected activity—"acts that occur in the regular course of the legislative process and [] the motivation for those acts."  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 508 (1975).

Factfinding, formal and informal, "is a necessary concomitant of legislative conduct and thus [is] within the ambit of the privilege."  *Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 517–19 (D.D.C. 2021), *aff'd sub nom. Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff*, 23 F.4th 1028 (D.C. Cir. 2022); *see* Reply Br. 5–7 (collecting authorities).  This Court thus rightly "assume[d]" (without deciding) "that Senator Graham's individual, investigative inquiries into topics that arguably fall within his legislative province—such as gathering information to inform himself before voting to certify the results of the 2020 presidential election— would constitute protected legislative activity for the purposes of the Speech or Debate Clause."  Op. 14 n.6.[3]

---

[3] For good reason:  All the facts (as opposed to musings)—including that Senator Graham had a *certain and formal vote* coming on a *date certain* (under the Electoral Count Act), the outcome of which was informed by this investigation, as Senator Graham confirmed in his floor speech during the vote, 167 Cong. Rec. S31 (daily ed. Jan. 6, 2021); and that Senator Graham served as Chair of the Judiciary

But this Court erred when it went on to hold that, because Secretary of State Raffensperger "suggested that Senator Graham was seeking to influence Secretary Raffensperger's actions" (rather than legitimately investigate matters within his legislative purview), there must be further "probing" into the Senator's "motives" to determine whether the "calls to Georgia election officials *in fact* constitute legitimate legislative activity." Op. 13–15 & n.5 (emphasis added). Supreme Court precedent squarely forecloses this "probing" into "motives," even to determine whether a purportedly legislative act was "actually [] legislative." *Id.* The Supreme Court's "cases make clear that in determining the legitimacy of a congressional act we do not look to the motives alleged to have prompted it." *Eastland*, 421 U.S. at 508. Courts may "not go beyond the narrow confines of determining that a [legislator's] inquiry may fairly be deemed within [his] province," *Tenney v. Brandhove*, 341 U.S. 367, 378 (1951)—which this Court suggested these calls were, *see* Op. 14 n.6. The Clause's immunity turns only on "the question whether, stripped of all considerations of intent and motive, [the representative's] actions were legislative." *Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998). Far from "stripp[ing]"

---

Committee, which reviews election-related issues from past elections—point to this being legislative.

considerations of motives from the Speech or Debate question, this Court injected them expressly into it. *Id.*

The Eleventh Circuit has been similarly forceful in condemning probing into motives, even to determine whether an action was *really* legislative: "it simply is 'not consonant with our scheme of government for a court to inquire into the motives of legislators.'" *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009); *see, e.g.*, *Scott v. Taylor*, 405 F.3d 1251, 1256 n.7 (11th Cir. 2005). Other circuits agree. Whereas this Court ordered inquiry into whether apparently legislative acts are legislative "in fact," Op. 13, other courts hold that the Speech or Debate Clause "forbids inquiry into acts which are purportedly or apparently legislative, even to determine if they are legislative in fact," *United States v. Dowdy*, 479 F.2d 213, 226 (4th Cir. 1973); *accord, e.g.*, *McSurely v. McClellan*, 753 F.2d 88, 106 (D.C. Cir. 1985). Indeed, just last week, the D.C. Circuit held, in the context of an allegedly pretextual investigation, that the Clause "protects against inquiry into the motives behind the regular course of the legislative process," even to determine whether the investigation was *actually* legislative. *Comm. on Ways & Means, U.S. House of Representatives v. U.S. Dep't of Treasury*, 2022 WL 3205891, at *4–6 (D.C. Cir. 2022). In light of this precedent holding that motive is utterly irrelevant to analyzing

Speech or Debate Clause immunity, Senator Graham has a strong likelihood of success and certainly presents "substantial" questions. *Ruiz*, 650 F.2d at 565.

The cases cited by this Court in support of considering Secretary Raffensperger's perception of Senator Graham's motive—including the two Third Circuit decisions on which the Court primarily relied—do not and cannot change that. *See United States v. Menendez*, 831 F.3d 155, 166–67 (3d Cir. 2016); *Gov't of Virgin Islands v. Lee*, 775 F.2d 514 (3d Cir. 1985). For one thing, those cases are inapposite. In both cases, the prosecution there came forward with *specific evidence* sufficient to obtain a criminal indictment (rather than musings from one person in a civil case) that the representatives were not engaged in any legislative activity. *Menendez*, 831 F.3d at 170–72; *Lee*, 775 F.2d at 524–25. That is a far cry from this case, which involves a civil witness subpoena that seeks information from Senator Graham related to *unambiguously* and *factually* legislative activity (an investigation for a *certainly impending* vote) for which the only "evidence" of a non-legislative purpose is one person's *speculation* about motives. The prosecutor's specific evidence in *Menendez* was enough for probable cause to criminally indict; the District Attorney's "evidence" here is not even enough for her to say more than that someone offered a "suggestion" about what the Senator might have "implied." Doc. 9 at 2–3. In short, this case, unlike *Menendez* and *Lee*, does not involve conflicting

11

evidence concerning the nature of the activity in question—either legislative or not at all (e.g., a bribe)—that led the Court to consider the lawmaker's motive.

But, in any event, the Third Circuit decisions are doubly wrong.  First, they "look to the motives alleged to have prompted [a legislator's action]" in "determining the legitimacy of a congressional act," which is precisely what the Supreme Court's cases prohibit.  *See, e.g.*, *Eastland*, 421 U.S. at 508.  *Second*, they invert the burden.  The burden must fall on the party seeking to pierce the constitutional (and jurisdictional) immunity, not on the Senator invoking it.  *See Rangel v. Boehner*, 785 F.3d 19, 22 (D.C. Cir. 2015); *AAPS v. Schiff*, 518 F. Supp. 3d at 517; *see also, e.g.*, *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (party invoking jurisdiction has the burden of proving facts establishing it). Placing the burden on the legislator instead would allow a local prosecutor to demand questioning of a legislator based only on her speculations into his supposedly bad motives, and then would force the legislator to prove that he, in fact, had good motives for his legislative activity.  *Contra Tenney*, 341 U.S. at 378 (prohibiting this speculative inquiry).  It would thus require the legislator to "be questioned" about his legislative activity for the purpose of invoking the Speech or Debate immunity against "be[ing] questioned" about that activity.  U.S. Const. art.

I, § 6, cl. 1.  An immunity should not be self-defeating, and the Eleventh Circuit likely would reject a rule that makes it so.[4]

At bottom of this first issue, the appeal has a high likelihood of succeeding because "probing" into "motives" is off limits under the Speech or Debate Clause. Op. 13–14 & n.5.  Because these calls "occur[red] in the regular course of the legislative process," the Clause prohibits inquiry into them—and into "the motivation for those acts." *Eastland*, 421 U.S. at 508.

**2.** ***Questioning about activities other than the calls*.**  This Court also held that, even if "any inquiry related to those two calls was [] shielded by the Speech or Debate Clause," the District Attorney could still question Senator Graham about matters unrelated to the calls. Op. 11; *see id.* at 5–11.  As an initial matter, this does not change the calculus for a stay:  A likelihood of reversing on one ground, such as the one above, is enough to justify a stay.  *See Richardson v. Texas Sec'y of State*, 978 F.3d 220, 228 (5th Cir. 2020) ([F]or stays pending appeal, because the [Defendant-Appellant] is likely to succeed on one ground, we need not address the

---

[4] *Bryant*, 575 F.3d 1281, holds nothing to the contrary.  It says nothing about *proof*, and nothing on being questioned to avoid being questioned; only that the official asserting immunity had to explain why he is entitled to it—as Senator Graham has here.  This Court thus correctly did not assert that the Eleventh Circuit has held the burden of proof falls on the claimant—it does no such thing—even as this Court was wrong to conclude that *Bryant* "suggests" as much.

others.").  But this holding on "[other] areas of potential testimony," too, is subject to "substantial" argument on appeal, and indeed will likely be reversed by the Eleventh Circuit.  *League of Women Voters*, 32 F.4th at 1370.

First, it is important to set the record straight:  Senator Graham never said that the District Attorney was asking *only* about the substance of the calls and the logistics behind them.  *Contra* Op. 7 (claiming that this was "one of the essential premises of Senator Graham's arguments").  Rather, Senator Graham argued in relevant part that the subpoena and accompanying certificate made clear that questioning about the "other" communications (such as communications with the Trump campaign) were simply backdoor ways to question Senator Graham about his motives behind the calls, so that the other topics should rise and fall with the calls themselves.  *See, e.g.*, Doc. 23 (Senator Graham's Response to Amici) at 11–13.  The District Attorney admitted as much—that she sought information about Senator Graham's contacts with President Trump, for example, *so as to ascertain* "the motivation, preparation, and/or aftermath of those calls."  Doc. 9 (Opp. Br.) at 26.

A group of Amici, it is true, offered some hypothetical buckets of questions that, in the abstract, were arguably not legislative.  This Court offered some "hypothetical lines of questions" of its own, including "(1) [Senator Graham's] potential communications and coordination with the Trump Campaign and its post-

14

election efforts in Georgia; (2) his knowledge of other groups or individuals involved with efforts to influence the results of Georgia's 2020 election; and (3) his public statements following the 2020 election."  Op. 9, 22 & n.9.

There are, however, many problems with this "buckets" approach. *See, e.g.*, Doc. 23 at 11–13.  As explained, none of these buckets may be used to question Senator Graham about his motives for his legislative activity, for even facially non-legislative activity cannot be used "to reveal [a representative's] subjective motivations" for taking legislative action. *Texas v. Holder*, 2012 WL 13070060, at *2 (D.D.C. June 5, 2012).  Yet the District Attorney did not hide that she wants to use these questions for precisely that purpose: to learn Senator Graham's "motivation [for making] those calls."  Doc. 9 (Opp. Br.) at 26.  For another thing, some of the hypothetical lines of questions this Court offered, such as about Senator Graham's "public statements," are not encompassed within the subpoena, making them impermissible.  *See* Docs. 2-2, 2-3, & 2-4.  And for still another thing, the District Attorney offered no evidence (far less extraordinary circumstances) for testimony unrelated or tangentially related to the calls or the motives behind them.[5]

---

[5] For this reason, if all that is left to this subpoena is, say, questioning about Senator Graham's "public comments," there is no way the District Attorney could satisfy her burden under the high-ranking-official doctrine.

To the contrary, all she offered in securing the *ex parte* Certificate from Judge McBurney—as counsel conceded at the hearing—is information about the telephone calls.  She has thus failed her burden to secure testimony on other subjects, as she has not proved that those other subjects were not part and parcel of Senator Graham's legislative activity (e.g., learning of irregularities and then running them down before voting to certify Joe Biden as President).  To the extent the District Attorney now seeks questioning beyond the calls and the motive behind them, this is nothing more than a fishing expedition.  The Speech or Debate Clause would serve no real purpose if it could be bypassed through an unsubstantiated reference (brought up first by an amicus brief) to non-legislative activity.

**3.  *Partial quashal.***  The Eleventh Circuit would likely reverse even if it agrees with this Court that there may be permissible lines of inquiry under the current subpoena because partial quashal would be required by both Rule and binding precedent.  *See, e.g.*, Fed. R. Civ. P. 45(d)(3)(A); *ML Healthcare Servcs. v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1305 (11th Cir. 2018).

The whole reason this Court held otherwise is because it thought that "Senator Graham's only request in removing the subpoena to this Court was to quash the subpoena in its entirety."  Op. 22.  That, though, and with respect, is demonstrably untrue.  Of course Senator Graham argued (and will continue to argue) that complete

16

quashal is proper for all the reasons explained.  But that does not somehow make it proper for a court to deny him partial relief to which the Court thinks him entitled, any more than someone's asking for a loaf of bread makes it impossible for him to receive half a loaf.  That reasoning would not hold up in other legal contexts:  As examples, (1) courts award partial summary judgment when litigants seek complete summary judgment, *Lamonte v. City of Hampton, Georgia*, 576 F. Supp. 3d 1314, 1331 (N.D. Ga. 2021); *Trebor Indus., Inc. v. JL Gory, LLC*, 2010 WL 11549686, at *7 n.13 (S.D. Fla. Dec. 30, 2010); and (2) courts award narrow injunctions when litigants seek broad ones, *Winmark Corp. v. Brenoby Sports, Inc.*, 32 F. Supp. 3d 1206, 1210–11 (S.D. Fla. 2014).  No surprise then that courts routinely grant partial quashal even when the movant expressly asks for full quashal.[6]  And this is why Senator Graham's counsel at the hearing called partial quashal "lesser included relief."  Doc. 26 (Hearing Tr.) at 11:1–9; *see also, e.g., id.* at 71:15–23 ("Rule 45(d)

---

[6] *See, e.g.*, *ML Healthcare*, 881 F.3d at 1305; *Hall v. City of Atlanta*, 2021 WL 8998470, at *4 (N.D. Ga. Apr. 12, 2021); *Sky Harbor Atlanta v. Affiliated FM Insurance Co.*, 2020 WL 759215 (N.D. Ga. 2020); *Fountain v. Hyundai Motor Co.*, 2016 WL 11745626, at *4 (N.D. Ga. Apr. 21, 2016); *Stern v. Shelley*, No. 3:09-CV-00082-JTC, 2009 WL 9156145 (N.D. Ga. Aug. 31, 2009); *Ghandi v. Police Dep't of City of Detroit*, 74 F.R.D. 115, 117 (E.D. Mich. 1977) ("[T]he Court is not limited to the remedy of quashing the subpoena, but may so modify it as to remove its objectionable features.").

makes clear that you can modify or quash a subpoena" for any "immune information."). It was always necessarily included in the Motion.

Nor did Senator Graham leave it to *implication* that partial quashal would be appropriate. In a section of his brief responding to Amici Former Prosecutors, he expressly argued that "If the Court Thinks Some of the Subpoena's Topics Not Immune From Questioning, This Court Should Order Partial Quashal." Doc. 23 (Senator Graham's Response to Amici) at 13; *see id.* at 13–15. This Court entirely discounted this argument because, the Court said, "Senator Graham requested [this relief] for the first time" during "the hearing and in his supplemental brief." Op. 22 n.9. But again, and again with respect, that is not true—both because requesting the greater relief (complete quashal) necessarily includes the lesser, and because the Senator had *already* expressly argued that, "even if [the District Attorney] had satisfied the requirements for bypassing the high-ranking official doctrine (and all other applicable immunities) with respect to . . . some [] topic," "the Court should still quash the subpoena with respect to the other topics" that are protected. Doc. 18 (Reply Br.) at 14 n.4. That is an explicit request for partial quashal.

Neither is it true that Senator Graham is asking for quashal of "hypothetical lines of questioning." Op. 22 n.9. He is asking for quashal of the *core* of the questioning *actually* sought by the subpoena: to quote the Certificate, questioning

18

"concerning the substance of the telephone calls, the circumstances surrounding his decision to make the telephone calls, the logistics of setting up the telephone calls, and any communications between himself, others involved in the planning and execution of the telephone calls, the Trump Campaign, and other known and unknown individuals."  Doc. 1-2.  If any non-hypothetical line of questioning remains within the scope of the Certificate, this Court should have followed Fed. R. Civ. P. 45(d)(3)(A) and "modif[ied] [the] subpoena" to prevent questioning on "privileged or other protected matter."  Because the Eleventh Circuit is likely to so hold, this factor favors a stay of the grand-jury proceedings.

4.  ***Sovereign immunity.***  Senator Graham's high likelihood of success with his "substantial" sovereign-immunity argument independently supports a stay. Many cases—ignored by the District Attorney and by this Court—rely on sovereign immunity "to quash a subpoena of a federal employee."  *Moore v. Armour Pharm Co.*, 129 F.R.D. 551, 555 (N.D. Ga. 1990), *aff'd*, 927 F.2d 1194 (11th Cir. 1991) (collecting cases).  These cases hold that "[t]he doctrine of sovereign immunity precludes [a] state court—and [a] federal court which gained limited jurisdiction upon removal—from exercising jurisdiction to compel [a federal official] to testify." *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989); *see, e.g.*, *Houston Bus. Journal, Inc. v. Office of the Comptroller of the Currency*, 86 F.3d 1208, 1211 (D.C.

Cir. 1996); *West Coast Grp. Enterp. v. Darst*, 561 F. Supp. 3d 1180, 1184 (N.D. Fla. 2021). On their own, these cases establish a "substantial" case on the merits sufficient to postpone the grand jury proceedings with respect to Senator Graham pending appeal. *Ruiz*, 650 F.2d at 565.

In response, this Court asserted only that Senator Graham had not cited "analogous" authority—without explaining why the cases he did cite were not analogous. The Court did not mention (far less engage with) the cited cases quashing witness subpoenas based on sovereign immunity.[7] Op. 16. And among them were cases applying sovereign immunity to quash subpoenas *in the context of state criminal proceedings*, which is what the District Attorney claims is at issue here.[8] *See Smith v. Cromer*, 159 F.3d 875, 879–81 (4th Cir. 1999); *Louisiana v. Sparks*, 978 F.2d 226, 234–35 (9th Cir. 1992). Plus, and at any rate, the silence this Court saw in the cases helps *Senator Graham*, because the District Attorney has the burden of showing that she can drag a United States Senator into state court to testify. *See*

---

[7] The Court engaged with *Keener v. Congress*, 467 F.2d 952 (5th Cir. 1972), but that was no cornerstone of Senator Graham's argument. Op. 16–17. Rather, Senator Graham cited it only to counter the District Attorney's seeming assertion that sovereign immunity applies exclusively to the Executive Branch. Doc. 9 at 24.

[8] Under controlling Georgia law, this special grand jury is actually a "civil investigat[ive]" body. *Kenerly v. State*, 715 S.E.2d 688, 690 (Ga. App. 2011). But because this Court did not rely on the District Attorney's criminal-versus-civil distinction, Senator Graham will not discuss it further.

*Lawrence v. United States*, 597 F. App'x 599, 602 (11th Cir. 2015) (party seeking to pierce sovereign immunity "bears the burden of establishing a waiver of sovereign immunity"); *see also, e.g.*, *Boyd v. United States*, 2012 WL 6728994, at *3 (N.D. Ga. Dec. 27, 2012) (same).  Senator Graham is thus likely to prevail on this issue and has at minimum presented a substantial question.

*     *     *

Senator Graham is likely to prevail on all of these issues.  Given the serious issues and equities involved, all it takes is a "substantial case" on one to justify temporary relief barring the Senator Graham's appearance before the grand jury pending the outcome of his appeal.  *Ruiz*, 650 F.2d at 565.  Senator Graham has certainly shown at least that much, meaning this Court should grant this Motion.

### B.     Senator Graham Will Be Irreparably Harmed Absent a Stay.

There can be no disputing that Senator Graham will suffer irreparable harm absent a stay—which, along with the likelihood of success on the merits, is the "most critical" factor in the analysis whether to grant a stay.  *Hand*, 888 F.3d at 1207.  "When a member is improperly questioned [under the Speech or Debate Clause], the violation occurs automatically."  *Swindall*, 971 F.2d at 1549.  The same is true of sovereign immunity:  It "protects government officials not only from having to stand trial, but from having to bear the burdens attendant to litigation, including pretrial

discovery." *Blinco*, 366 F.3d at 1252.  So if the questioning goes forward as planned—in less than a week—and if Senator Graham is correct on the merits, Senator Graham's constitutional immunity will be violated twice over, all without even the chance for appellate-court review.  There is no remedying those violations, either; again, "the very act of questioning" is the constitutional harm.  *Swindall*, 971 F.2d at 1549; *cf., e.g.*, *Hollingsworth v. Perry*, 558 U.S. 183, 195–96 (2010) (per curiam) (court needed to stay trial that would be broadcast, perhaps impermissibly, because after the trial "[i]t would be difficult—if not impossible—to reverse the harm from those broadcasts").  The only way to avoid the harm, then, is by appeal to the Eleventh Circuit—and complete resolution of the appeal *before* the questioning takes place.  *See Helstoski*, 442 U.S. at 506–08.

Understandably given this straightforward analysis, courts routinely grant stays pending appeal in Speech or Debate and sovereign-immunity appeals, holding that the potential loss of these constitutional immunities "constitute[s] the type of harm that is sufficient to satisfy the 'irreparable harm' prong of the stay analysis." *E.g.*, *Jewish War Veterans of U.S., Inc. v. Gates*, 522 F. Supp. 2d 73, 81 (D.D.C. 2007) (granting stay in relevant part, even as the district court disagreed with representatives on the merits); *see also, e.g.*, *In re Search of Elec. Commc'ns in the Acct. of chakafattah gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d

516, 522 (3d Cir. 2015) (noting the Court of Appeals granted a stay pending appeal in a case involving immunities provided by the Speech or Debate Clause); *United States v. Rayburn House Off. Bldg., Room 2113, Washington, D.C. 20515*, 497 F.3d 654, 658 (D.C. Cir. 2007) (same).  And the Eleventh Circuit has held that district courts "properly stay[] [cases] pending appeal of a denial of immunity." *Blinco*, 366 F.3d at 1252; *see, e.g.*, *Corey Airport Servs., Inc. v. City of Atlanta*, 2008 WL 11363876, at *2 (N.D. Ga. Nov. 24, 2008).

This reasoning also aligns with the broader principle that infringement of constitutional rights or immunities "unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see, e.g.*, *Cate v. Oldham*, 707 F.2d 1176, 1188–89 (11th Cir. 1983).  Just as in these cases, the Court should grant a stay pending appeal (or enjoin the grand jury from questioning Senator Graham) due to the irreparable harm Senator Graham will suffer if he is forced to testify in contravention of the immunities raised in his Expedited Motion to Quash.

### C.    Issuing a Stay Will Not Substantially Injure the Other Parties.

Much unlike Senator Graham, the Special Purpose Grand Jury will not suffer any injury if the Court grants a stay pending appeal.  Senator Graham has removed only the Subpoena directing *him* to testify, and so the Special Purpose Grand Jury will not otherwise be prevented from continuing its investigation.  Indeed, the

23

Special Purpose Grand Jury has continued its investigation after Senator Graham removed his Subpoena to federal court. *See* (Exhibit 2, Special Purpose Grand Jury Docket). Nor will that civil body be prevented from hearing from Senator Graham if the Eleventh Circuit happens to affirm: Senator Graham will seek to expedite the appeal and the grand jury will have plenty of time to hear from Senator Graham on the topics, if any, that the Eleventh Circuit permits. Therefore, staying this matter pending appeal will not injure the Special Purpose Grand Jury.

### D. Granting a Stay Is in the Public Interest.

The public interest will be served by granting the stay in these circumstances. "[T]he Speech or Debate Clause . . . serves as a vital check upon the Executive and Judicial Branches to respect the independence of the Legislative Branch, not merely for the benefit of the Members of Congress, but, more importantly, for the right of the people to be fully and fearlessly represented by their elected Senators and Congressmen." *United States v. Myers*, 635 F.2d 932, 935–36 (2d Cir. 1980); *see also Jewish War Veterans of U.S.*, 522 F. Supp. 2d at 83 (finding the public interest was best served by granting a stay with respect to production of documents allegedly protected from disclosure by the Speech or Debate Clause). Likewise, "[s]overeign immunity exists because it is in the public interest to protect the exercise of certain governmental functions." *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir.

2000).  Through his appeal, Senator Graham seeks to vindicate these constitutional immunities, not only for his sake, but also for the separation of powers and federalism—and for the People—more generally.  His appeal will help ensure that his constituents can be fully represented in Congress by allowing him to fully investigate issues on which legislation may be had without fear of reprisal.  *See Swindall*, 971 F.2d at 1544 ("[T]he central role of the Speech or Debate Clause [is] to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary." (quoting *Gravel v. United States*, 408 U.S. 606, 617 (1972)).  Indeed, the public is entitled to have its elected representatives in Congress perform their duties without interference or annoyance from outside parties, including the District Attorney and the Special Purpose Grand Jury.  Therefore, maintaining the status quo pending appeal is in the public interest.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Senator Graham's motion to stay this Court's remand order pending appeal and to enjoin the grand jury from questioning Senator Graham pending appeal.

Date: August 17, 2022

DONALD F. MCGAHN II
  *Admitted pro hac vice*
ROBERT LUTHER III
  *Admitted pro hac vice*
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
dmcgahn@jonesday.com
rluther@jonesday.com

Respectfully submitted,

*/s/ Brian C. Lea*
_____
BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com

E. BART DANIEL
  *Admitted pro hac vice*
MARSHALL T. AUSTIN
  *Application for admission
  pro hac vice pending*
NELSON MULLINS RILEY &
  SCARBOROUGH LLP
151 Meeting Street,
Suite 600
Charleston, SC 29401
(843) 853-5200
bart.daniel@nelsonmullins.com
matt.austin@nelsonmullins.com

*Counsel for United States Senator Lindsey Graham*

## <u>CERTIFICATE OF COMPLIANCE WITH LR 5.1(B)</u>

I hereby certify that this brief has been prepared with one of the font, point, and style selections approved by the Court in LR 5.1(B)—namely, double-spaced in 14-point Times New Roman font.

Date: August 17, 2022

/s/ Brian C. Lea
BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com

*Counsel for United States Senator Lindsey Graham*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

Date: August 17, 2022

*/s/ Brian C. Lea*
BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com

*Counsel for United States Senator Lindsey Graham*

28