# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF GEORGIA
**2211 UNITED STATES COURTHOUSE**
**75 TED TURNER DRIVE, SW**
**ATLANTA, GEORGIA 30303-3361**

KEVIN P. WEIMER
**DISTRICT COURT EXECUTIVE**
 AND **CLERK OF COURT**

DOCKETING SECTION
**404-215-1655**

August 18, 2022

Clerk's Office
U.S. Court of Appeals
Eleventh Circuit
56 Forsyth Street, NW
Atlanta, GA 30303

**U.S.D.C. No.: 1:22-cv-3027-LMM**
**U.S.C.A. No.: 00-00000-00**
**In re:       Fulton County Special Purpose Grand Jury v. Lindsey Graham**

Enclosed are documents regarding an appeal in this matter.   Please acknowledge receipt on the enclosed copy of this letter.

| | |
|---|---|
| **X** | **Certified copies of the Notice of Appeal, Clerk's Judgment, Order and Docket Sheet appealed enclosed.** |
| _____ | This is not the first notice of appeal. Other notices were filed on: . |
| _____ | There is no transcript. |
| **X** | **The court reporter is Montrell Vann.** |
| _____ | There is sealed material as described below: . |
| _____ | Other: . |
| **X** | **Fees paid electronically on 8/17/22. (Receipt# AGANDC-12004815)** |
| _____ | Appellant has been   leave to proceed *in forma pauperis*. |
| _____ | This is a bankruptcy appeal.   The Bankruptcy Judge is . |
| _____ | The Magistrate Judge is . |
| **X** | **The District Judge is Leigh Martin May.** |
| _____ | This is a **DEATH PENALTY** appeal. |

Sincerely,

Kevin P. Weimer
District Court Executive
and Clerk of Court

By:  /s/P. McClam
Deputy Clerk

63

# U.S. District Court
# Northern District of Georgia (Atlanta)
# CIVIL DOCKET FOR CASE #: <u>1:22–cv–03027–LMM</u>

| | |
|---|---|
| Fulton County Special Purpose Grand Jury v. Graham | Date Filed: 07/29/2022 |
| Assigned to: Judge Leigh Martin May | Date Terminated: 08/15/2022 |
| Case in other court:  Fulton County Superior Court, | Jury Demand: None |
| 2022–EX–000024 | Nature of Suit: 890 Other Statutory |
| Cause: FRCP 45(b) Motion to quash or modify subpoena | Actions |
| | Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **Fulton County Special Purpose Grand Jury** | represented by | **Fani T. Willis** <br> Fulton County District Attorney's Office <br> 136 Pryor Street <br> Atlanta, GA 30303 <br> 404–612–8904 <br> Email: <u>fani.willisda@fultoncountyga.gov</u> <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* |
| | | **Francis McDonald Wakeford , IV** <br> Fulton County District Attorney's Office <br> 3rd Floor <br> 136 Pryor Street, SW <br> Atlanta, GA 30303 <br> 404–613–4670 <br> Email: <u>fmcdonald.wakeford@fultoncountyga.gov</u> <br> *ATTORNEY TO BE NOTICED* |

V.

**Defendant**

| | | |
|---|---|---|
| **Lindsey Graham** <br> *in his official capacity as United States Senator* | represented by | **Brian C. Lea** <br> Jones Day – Atlanta <br> 1221 Peachtree Street, N.E. <br> Suite 400 <br> Atlanta, GA 30361 <br> 404–581–8528 <br> Fax: 404–581–8521 <br> Email: <u>blea@jonesday.com</u> <br> *LEAD ATTORNEY* <br> *ATTORNEY TO BE NOTICED* |
| | | **Donald F. McGahn , II** <br> Jones Day–D.C. <br> 51 Louisiana Avenue, N.W. <br> Washington, DC 20001–2113 |

1

202–253–1645
Email: dmcgahn@jonesday.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Edward Bart Daniel**
Nelson Mullins Riley &
Scarborough–Charleston
P.O. Box 1806
151 Meeting Street
Suite 600
Charleston, SC 29401
843–534–4802
Email: bart.daniel@nelsonmullins.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert Luther , III**
Jones Day–D.C.
51 Louisiana Avenue, N.W.
Washington, DC 20001–2113
202–879–3785
Email: rluther@jonesday.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Donald B. Ayer**                    represented by    **Jacqueline K. Sahlberg**
Kaplan Hecker & Fink LLP
1050 K Street NW
Suite 1040
Washington, DC 20001
212–763–0883
Email: jsahlberg@kaplanhecker.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Lentine Williams**
Jonathan L. Williams, P.A.
113 South Monroe Street
Tallahassee, FL 32301
850–706–0940
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua Adam Matz**
Kaplan Hecker & Fink LLP
1050 K Street NW

Suite 1040
Washington, DC 20001
212–763–0883
Email: jmatz@kaplanhecker.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maithreyi Ratakonda**
States United Democracy Center
800 Dean Street
Apt. 3
Brooklyn, NY 11238
914–357–1638
Email: mai@statesuniteddemocracy.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Norman Larry Eisen**
Norman Eisen PLLC
2022 Columbia Road NW
# 214
Washington, DC 20009–1309
202–753–9667
Email: nleisen@normaneisenllc.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Raymond P. Tolentino**
Kaplan Hecker & Fink LLP
1050 K Street NW
Suite 1040
Washington, DC 20001
212–763–0883
Fax: 212–564–0883
Email: rtolentino@kaplanhecker.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mary Elizabeth Wells**
Law Office of M. Elizabeth Wells
623 Grant St., SE
Atlanta, GA 30312
404–408–2180
Email: mewells27@comcast.net
*ATTORNEY TO BE NOTICED*

**Amicus**

**John Farmer**                    represented by    **Jacqueline K. Sahlberg**
                                                     (See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Lentine Williams**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua Adam Matz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maithreyi Ratakonda**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Norman Larry Eisen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Raymond P. Tolentino**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mary Elizabeth Wells**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Renato Mariotti**                    represented by   **Jacqueline K. Sahlberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Lentine Williams**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua Adam Matz**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maithreyi Ratakonda**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Norman Larry Eisen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Raymond P. Tolentino**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mary Elizabeth Wells**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**William F. Weld**                    represented by    **Jacqueline K. Sahlberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Lentine Williams**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua Adam Matz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maithreyi Ratakonda**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Norman Larry Eisen**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Raymond P. Tolentino**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mary Elizabeth Wells**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**Shan Wu**                          represented by   **Jacqueline K. Sahlberg**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Lentine Williams**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joshua Adam Matz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Maithreyi Ratakonda**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Norman Larry Eisen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Raymond P. Tolentino**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mary Elizabeth Wells**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **Sarah R. Saldana** | represented by | **Jacqueline K. Sahlberg** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Jonathan Lentine Williams** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Joshua Adam Matz** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Maithreyi Ratakonda** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Norman Larry Eisen** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Raymond P. Tolentino** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Mary Elizabeth Wells** |
| | | (See above for address) |
| | | *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/29/2022 | 1 | | NOTICE OF REMOVAL (Filing fee $ 402 receipt number AGANDC−11962101) filed by Lindsey Graham. (Attachments: # 1 Exhibit 1 Notice of Removal − Subpoena, # 2 Exhibit 2 Notice of Removal − Certificate, # 3 Exhibit 3 Notice of Removal − Petition, # 4 Exhibit 4 Notice of Removal − Fulton County Superior Court Docket, # 5 Civil Cover Sheet)(kxm) Please visit our website at http://www.gand.uscourts.gov/commonly−used−forms to |

| | | | |
|---|---|---|---|
| | | | obtain Pretrial Instructions and Pretrial Associated Forms which includes the Consent To Proceed Before U.S. Magistrate form. (Entered: 08/01/2022) |
| 07/29/2022 | 2 | | Expedited MOTION to Quash with Brief In Support by Lindsey Graham. (Attachments: # 1 Brief, # 2 Exhibit 1 Motion to Quash – Certificate, # 3 Exhibit 2 Motion to Quash – Petition, # 4 Exhibit 3 Motion to Quash – Subpoena)(kxm) (Entered: 08/01/2022) |
| 07/29/2022 | 3 | | MOTION to Expedite Proceedings with Brief In Support by Lindsey Graham. (Attachments: # 1 Brief, # 2 Exhibit 1 Motion to Expedite Proceedings – Subpoena)(kxm) (Entered: 08/01/2022) |
| 07/29/2022 | 4 | | Certificate of Interested Persons and Corporate Disclosure Statement by Lindsey Graham. (kxm) (Entered: 08/01/2022) |
| 08/01/2022 | 5 | | ORDER granting 3 Motion to Expedite Proceedings. The Office of the Fulton County District Attorney is hereby ORDERED to respond to Senator Grahams Expedited Motion to Quash, Dkt. 2 , by noon on Thursday, August 4, 2022. Any reply shall be filed by noon on Friday, August 5, 2022. Signed by Judge Leigh Martin May on 8/1/2022. (kxm) Modified on 8/1/2022 (kxm). (Entered: 08/01/2022) |
| 08/01/2022 | | | Set/Reset Deadlines as to 2 MOTION to Quash. Motion Hearing set for 8/10/2022 at 02:00 PM in ATLA Courtroom 2107 before Judge Leigh Martin May. (kxm) (Entered: 08/01/2022) |
| 08/01/2022 | 6 | | APPLICATION for Admission of Donald F. McGahn II Pro Hac Vice (Application fee $ 150, receipt number AGANDC–11966075).by Lindsey Graham. (Lea, Brian) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/01/2022) |
| 08/01/2022 | 7 | | APPLICATION for Admission of Robert Luther III Pro Hac Vice (Application fee $ 150, receipt number AGANDC–11966076).by Lindsey Graham. (Lea, Brian) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/01/2022) |
| 08/04/2022 | 8 | | MOTION for Leave to File Brief as Amici Curiae *with Proposed Brief* by Donald B. Ayer, John Farmer, Renato Mariotti, William F. Weld, Shan Wu, Sarah R. Saldana. (Attachments: # 1 Proposed Brief of Former Federal Prosecutors as Amici Curiae in Opposition to Motion to Quash)(Wells, Mary) (Entered: 08/04/2022) |
| 08/04/2022 | 9 | | RESPONSE in Opposition re 2 MOTION to Quash filed by Fulton County Special Purpose Grand Jury. (Wakeford, Francis) (Entered: 08/04/2022) |
| 08/04/2022 | 10 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Appearance by Francis McDonald Wakeford, IV on behalf of Fulton County Special Purpose Grand Jury (Wakeford, Francis) (Entered: 08/04/2022) |
| 08/04/2022 | <u>11</u> | | APPLICATION for Admission of Joshua Matz Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11975005).by Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldana, William F. Weld, Shan Wu. (Wells, Mary) <span style="color:red">Documents for this entry are not available for viewing outside the courthouse.</span> (Entered: 08/04/2022) |
| 08/04/2022 | <u>12</u> | | APPLICATION for Admission of Raymond P. Tolentino Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11975041).by Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldana, William F. Weld, Shan Wu. (Wells, Mary) <span style="color:red">Documents for this entry are not available for viewing outside the courthouse.</span> (Entered: 08/04/2022) |
| 08/04/2022 | <u>13</u> | | APPLICATION for Admission of Jacqueline Sahlberg Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11975049).by Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldana, William F. Weld, Shan Wu. (Wells, Mary) <span style="color:red">Documents for this entry are not available for viewing outside the courthouse.</span> (Entered: 08/04/2022) |
| 08/04/2022 | <u>14</u> | | APPLICATION for Admission of Norman Larry Eisen Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11975060).by Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldana, William F. Weld, Shan Wu. (Wells, Mary) <span style="color:red">Documents for this entry are not available for viewing outside the courthouse.</span> (Entered: 08/04/2022) |
| 08/04/2022 | <u>15</u> | | APPLICATION for Admission of Maithreyi Ratakonda Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11975070).by Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldana, William F. Weld, Shan Wu. (Wells, Mary) <span style="color:red">Documents for this entry are not available for viewing outside the courthouse.</span> (Entered: 08/04/2022) |
| 08/04/2022 | <u>16</u> | | APPLICATION for Admission of Jonathan Lentine Williams Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11975086).by Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldana, William F. Weld, Shan Wu. (Wells, Mary) <span style="color:red">Documents for this entry are not available for viewing outside the courthouse.</span> (Entered: 08/04/2022) |
| 08/05/2022 | <u>17</u> | | ORDER: This matter is before the Court on a Motion for Leave to File Brief as Amici Curiae <u>8</u> . Any opposition to the motion SHALL be filed by 5:00 p.m. on Monday, August 8, 2022. Signed by Judge Leigh Martin May on 8/5/2022. (bnp) (Entered: 08/05/2022) |
| 08/05/2022 | <u>18</u> | | REPLY to Response to Motion re <u>2</u> MOTION to Quash filed by Lindsey Graham. (Lea, Brian) (Entered: 08/05/2022) |

| | | | |
|---|---|---|---|
| 08/05/2022 | <u>19</u> | | APPLICATION for Admission of Edward Bart Daniel Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11978387).by Lindsey Graham. (Lea, Brian) <span style="color:red">Documents for this entry are not available for viewing outside the courthouse.</span> (Entered: 08/05/2022) |
| 08/08/2022 | | | Submission of <u>2</u> MOTION to Quash, to District Judge Leigh Martin May. (tas) (Entered: 08/08/2022) |
| 08/09/2022 | | | APPROVAL by Clerks Office re: <u>7</u> APPLICATION for Admission of Robert Luther III Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11966076). Attorney Robert Luther, III added appearing on behalf of Lindsey Graham (cdg) (Entered: 08/09/2022) |
| 08/09/2022 | | | APPROVAL by Clerks Office re: <u>11</u> APPLICATION for Admission of Joshua Matz Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11975005). Attorney Joshua Matz added appearing on behalf of Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldana, William F. Weld, Shan Wu (cdg) (Entered: 08/09/2022) |
| 08/09/2022 | | | APPROVAL by Clerks Office re: <u>16</u> APPLICATION for Admission of Jonathan Lentine Williams Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11975086). Attorney Jonathan Lentine Williams added appearing on behalf of Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldana, William F. Weld, Shan Wu (cdg) (Entered: 08/09/2022) |
| 08/09/2022 | | | APPROVAL by Clerks Office re: <u>6</u> APPLICATION for Admission of Donald F. McGahn II Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11966075). Attorney Donald F. McGahn, II added appearing on behalf of Lindsey Graham (cdg) (Entered: 08/09/2022) |
| 08/09/2022 | | | ORAL ORDER granting <u>7</u> Application for Admission of Robert Luther III Pro Hac Vice. Ruled on by Judge Leigh Martin May on 8/9/2022. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(bnp) (Entered: 08/09/2022) |
| 08/09/2022 | | | ORAL ORDER granting <u>11</u> Application for Admission of Joshua Matz Pro Hac Vice. Ruled on by Judge Leigh Martin May on 8/9/2022. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(bnp) (Entered: 08/09/2022) |
| 08/09/2022 | | | ORAL ORDER granting <u>16</u> Application for Admission of Jonathan Lentine Williams Pro Hac Vice. Ruled on by Judge |

| | | | |
|---|---|---|---|
| | | | Leigh Martin May on 8/9/2022. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(bnp) (Entered: 08/09/2022) |
| 08/09/2022 | | | ORAL ORDER granting 6 Application for Admission of Donald F. McGahn II Pro Hac Vice. Ruled on by Judge Leigh Martin May on 8/9/2022. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(bnp) (Entered: 08/09/2022) |
| 08/09/2022 | | | APPROVAL by Clerks Office re: 12 APPLICATION for Admission of Raymond P. Tolentino Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11975041). Attorney Raymond P. Tolentino added appearing on behalf of Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldana, William F. Weld, Shan Wu (cdg) (Entered: 08/09/2022) |
| 08/09/2022 | | | APPROVAL by Clerks Office re: 15 APPLICATION for Admission of Maithreyi Ratakonda Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11975070).. Attorney Maithreyi Ratakonda added appearing on behalf of Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldana, William F. Weld, Shan Wu (cdg) (Entered: 08/09/2022) |
| 08/09/2022 | | | APPROVAL by Clerks Office re: 14 APPLICATION for Admission of Norman Larry Eisen Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11975060).. Attorney Norman Larry Eisen added appearing on behalf of Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldana, William F. Weld, Shan Wu (cdg) (Entered: 08/09/2022) |
| 08/09/2022 | | | ORAL ORDER granting 12 Application for Admission of Raymond P. Tolentino Pro Hac Vice. Ruled on by Judge Leigh Martin May on 8/9/2022. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(bnp) (Entered: 08/09/2022) |
| 08/09/2022 | | | APPROVAL by Clerks Office re: 13 APPLICATION for Admission of Jacqueline Sahlberg Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11975049).. Attorney Jacqueline Sahlberg added appearing on behalf of Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldana, William F. Weld, Shan Wu (cdg) (Entered: 08/09/2022) |
| 08/09/2022 | | | |

| Date | No. | | Description |
|---|---|---|---|
| | | | ORAL ORDER granting 15 Application for Admission of Maithreyi Ratakonda Pro Hac Vice. Ruled on by Judge Leigh Martin May on 8/9/2022. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(bnp) (Entered: 08/09/2022) |
| 08/09/2022 | | | ORAL ORDER granting 14 Application for Admission of Norman Larry Eisen Pro Hac Vice. Ruled on by Judge Leigh Martin May on 8/9/2022. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(bnp) (Entered: 08/09/2022) |
| 08/09/2022 | | | ORAL ORDER granting 13 Application for Admission of Jacqueline Sahlberg Pro Hac Vice. Ruled on by Judge Leigh Martin May on 8/9/2022. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(bnp) (Entered: 08/09/2022) |
| 08/09/2022 | 20 | | ORDER granting 8 Motion for Leave to File Brief as Amici Curiae in Opposition to United States Senator Lindsey Graham's Expedited Motion to Quash. The Clerk is DIRECTED to docket Movants' Brief as of the date of this Order. If Senator Graham intends to file a response to this brief, it should be filed by noon on Thursday, August 11, 2022. Signed by Judge Leigh Martin May on 8/9/2022. (kxm) (Entered: 08/09/2022) |
| 08/09/2022 | | | APPROVAL by Clerks Office re: 19 APPLICATION for Admission of Edward Bart Daniel Pro Hac Vice (Application fee $ 150, receipt number AGANDC–11978387).. Attorney Edward Bart Daniel added appearing on behalf of Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldana, William F. Weld, Shan Wu (cdg) (Entered: 08/09/2022) |
| 08/09/2022 | 21 | | Amicus Curiae Brief in Opposition re 2 MOTION to Quash filed by Donald B. Ayer, John Farmer, Renato Mariotti, Sarah R. Saldana, William F. Weld, Shan Wu. (kxm) Modified on 8/10/2022 (bnp). (Entered: 08/09/2022) |
| 08/10/2022 | | | ORAL ORDER granting 19 Application for Admission of Edward Bart Daniel Pro Hac Vice. Ruled on by Judge Leigh Martin May on 8/10/2022. If the applicant does not have CM/ECF access in the Northern District of Georgia already, they must request access at http://pacer.gov. If they have electronically filed in this district in a previous case, please omit this step.(bnp) (Entered: 08/10/2022) |
| 08/10/2022 | 22 | | |

| | | | |
|---|---|---|---|
| | | | Minute Entry for proceedings held before Judge Leigh Martin May: Motion Hearing held on 8/10/2022. Oral argument was held on Senator Graham's Expedited Motion to Quash 2 . The motion was taken under advisement. A written order will follow. Counsel for Senator Graham shall respond to the amicus brief and the burden of proof issues by noon on Thursday, August 11th. If Fulton County intends to respond, it shall do so by 9:00 AM on Friday, August 12th. (Court Reporter Montrell Vann)(bnp) (Entered: 08/11/2022) |
| 08/11/2022 | 23 | | REPLY BRIEF re 2 MOTION to Quash filed by Lindsey Graham. (Lea, Brian) (Entered: 08/11/2022) |
| 08/12/2022 | 24 | | REPLY BRIEF re 2 MOTION to Quash *and Post−Hearing Response* filed by Fulton County Special Purpose Grand Jury. (Wakeford, Francis) (Entered: 08/12/2022) |
| 08/12/2022 | 25 | | APPLICATION for Admission of Marshall T. Austin Pro Hac Vice (Application fee $ 150, receipt number AGANDC−11992324).by Lindsey Graham. (Lea, Brian) Documents for this entry are not available for viewing outside the courthouse. (Entered: 08/12/2022) |
| 08/12/2022 | 26 | | TRANSCRIPT of Proceedings held on 8/10/2022, before Judge Leigh Martin May. Court Reporter Montrell Vann. Transcript can be purchased through the Court Reporter at Montrell_Vann@gand.uscourts.gov. Redaction Request due 9/2/2022. Redacted Transcript Deadline set for 9/12/2022. Release of Transcript Restriction set for 11/10/2022. (mv) (Additional attachment(s) added on 8/15/2022: # 1 Notice of Filing) (anc). (Entered: 08/12/2022) |
| 08/15/2022 | 27 | | ORDER denying without prejudice 2 Expedited Motion to Quash. Because the record must be more fully developed before the Court can address the applicability of the Speech or Debate Clause to specific questions or lines of inquiry, and because Senator Grahams only request in removing the subpoena to this Court was to quash the subpoena in its entirety, the Case is REMANDED to the Superior Court of Fulton County for further proceedings. Signed by Judge Leigh Martin May on 8/15/2022. (kxm) (Entered: 08/15/2022) |
| 08/15/2022 | 28 | | Certified Copy re 27 Order on Expedited Motion to Quash and Remand Case to Superior Court of Fulton County sent via certified mail receipt number 91 7199 9991 7032 5717 9696 to Superior Court of Fulton County (kxm) (Entered: 08/15/2022) |
| 08/15/2022 | | | Civil Case Terminated. (kxm) (Entered: 08/15/2022) |
| 08/17/2022 | 29 | | Emergency MOTION to Stay *Order and Enjoin Select Grand Jury Proceedings Pending Appeal* with Brief In Support by Lindsey Graham. (Attachments: # 1 Brief Memorandum of Law In Support, # 2 Exhibit 1 − Decl. of Brian C. Lea, # 3 |

| 08/17/2022 | | | Exhibit 2 – Special Purpose Grand Jury Docket)(Lea, Brian) (Entered: 08/17/2022) |
|---|---|---|---|
| 08/17/2022 | 30 | | Emergency MOTION for Hearing *on Senator Graham's Emergency Motion to Stay Order and Enjoin Select Grand Jury Proceedings Pending Appeal* with Brief In Support by Lindsey Graham. (Attachments: # 1 Memorandum of Law In Support, # 2 Exhibit 1 – Decl. of Brian C. Lea)(Lea, Brian) (Entered: 08/17/2022) |
| 08/17/2022 | 31 | | ORDER: The Office of the Fulton County District Attorney is hereby ORDERED to respond to Senator Graham's 29 Emergency Motion by 9:00 AM on Friday, August 19, 2022. Signed by Judge Leigh Martin May on 8/17/2022. (bnp) (Entered: 08/17/2022) |
| 08/17/2022 | 32 | | NOTICE OF APPEAL as to 27 Order on Motion to Quash, by Lindsey Graham. Filing fee $ 505, receipt number AGANDC–12004815. Transcript Order Form due on 8/31/2022 (Attachments: # 1 Exhibit 1 – Notice of Appeal)(Lea, Brian) (Entered: 08/17/2022) |
| 08/18/2022 | 33 | | USCA Appeal Transmission Letter to USCA– 11th Circuit re: 32 Notice of Appeal filed by Lindsey Graham. (pjm) (Entered: 08/18/2022) |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: SUBPOENA TO NON-PARTY LINDSEY O. GRAHAM in his official capacity as United States Senator, | : : : | CIVIL ACTION NO. 1:22-cv-03027-LMM |
| In the matter of: | : : | |
| SPECIAL PURPOSE GRAND JURY, FULTON COUNTY SUPERIOR COURT CASE NO. 2022-EX-000024. | : : : : : | |

## **ORDER**

This case comes before the Court on Senator Lindsey Graham's Expedited Motion to Quash [2]. After due consideration, and with the benefit of a hearing, the Court **DENIES** the Motion. In sum, the Court finds that there are considerable areas of potential grand jury inquiry falling outside the Speech or Debate Clause's protections. Additionally, sovereign immunity fails to shield Senator Graham from testifying before the Special Purpose Grand Jury. Finally, though Senator Graham argues that he is exempt from testifying as a high-ranking government official, the Court finds that the District Attorney has shown extraordinary circumstances and a special need for Senator Graham's testimony on issues relating to alleged attempts to influence or disrupt the lawful administration of Georgia's 2022 elections.

## I.    BACKGROUND[1]

The matters presently before the Court relate to a subpoena issued to United States Senator Lindsey Graham from the Fulton County Superior Court and its requirement to testify before a special purpose grand jury. On January 20, 2022, the Fulton County District Attorney requested that the Superior Court of Fulton County impanel a special purpose grand jury pursuant to O.C.G.A. § 15-12-100 *et seq.* "for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia." Dkt. No. [1-2] at 10. On January 24, 2022, the Superior Court of Fulton County entered an order granting the District Attorney's request and authorizing the convening and impaneling of the Special Purpose Grand Jury pursuant to O.C.G.A. § 15-12-100 *et seq.* Id. at 7–8. The order expressly authorized the Special Purpose Grand Jury "to investigate any and all facts and circumstances relating directly or indirectly to alleged violations of the law of the State of Georgia, as set forth in the request of the District Attorney referenced herein above." Id. at 7.

During this investigation, Senator Graham was identified as a witness, and his appearance before the grand jury was requested. To this end, the District Attorney obtained a Certificate of Material Witness pursuant to the Uniform Act to Secure the Attendance of Witnesses from Without the State, O.C.G.A. § 24-13-

---

[1] The facts discussed in this section are taken from the parties' briefs and exhibits and, unless otherwise noted, are largely undisputed.

90 *et seq.*, from the Superior Court of Fulton County. See id. at 2–5. Following initial litigation in federal court in South Carolina related to this Certificate,[2] the parties agreed that Senator Graham would instead accept service of a subpoena in Georgia. The subpoena was issued on July 26, 2022, see Dkt. No. [1-1] at 2, and Senator Graham accepted service of it the following day, July 27. Dkt. No. [1] at 2. The subpoena requires Senator Graham to appear as a witness before the Special Purpose Grand Jury on August 23, 2022. Dkt. No. [1-1] at 2.

On July 29, 2022, Senator Graham removed the subpoena to this Court pursuant to 28 U.S.C. § 1442 and filed his Expedited Motion to Quash. Dkt. Nos. [1, 2]. In his Expedited Motion to Quash, Senator Graham argues that the subpoena should be quashed in its entirety. See Dkt. Nos. [2, 2-1]. The Fulton County District Attorney's Office opposes Senator Graham's request. See Dkt. No. [9].

## II.   DISCUSSION

Senator Graham asserts three grounds for quashing the subpoena. First, he argues that the Speech or Debate Clause of the U.S. Constitution completely shields his testimony. Dkt. No. [2-1] at 6–21. Second, he argues that the doctrine of sovereign immunity protects him from testifying. Id. at 21–22. And finally,

---

[2] Senator Graham indicates in his briefing that a separate Certificate of Material Witness was obtained and directed to the Superior Court of the District of Columbia, see Dkt. No. [2-1] at 5 & n.4, but the Court refers only to the Certificate directed to South Carolina because that is the only Certificate Senator Graham has placed in the record.

Senator Graham maintains that the subpoena should be quashed because he is a high-ranking government official. Id. at 22–26. The Court addresses each argument in turn.

### a. The Speech or Debate Clause

The Constitution's Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. "The purpose of the Clause is to insure that the legislative function the Constitution allocates to Congress may be performed independently[,]" as well as to reinforce the constitutional structure of the separation of powers. See Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 502 (1975). Accordingly, "the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." United States v. Brewster, 408 U.S. 501, 525 (1972). To this end, the Clause, where applicable, protects members of Congress "against civil as well as criminal actions, and against actions brought by private individuals as well as those initiated by the Executive Branch." Eastland, 421 U.S. at 502–03; see also United States v. Swindall, 971 F.2d 1531, 1544 (11th Cir. 1992) ("The Speech or Debate Clause 'at the very least protects [a member of Congress] from criminal or civil liability and from questioning elsewhere than in Congress.'" (quoting Gravel v. United States, 408 U.S. 606, 615 (1972))).

The Speech or Debate Clause has been read "broadly to effectuate its purposes." Eastland, 421 U.S. at 501–02. Still, "the Clause has not been extended beyond the legislative sphere." Gravel, 408 U.S. at 624–25. As a result, the central issue in most cases is "whether the activity the legislator wishes to shield from scrutiny is truly a legislative activity or is instead 'casually or incidentally related to legislative affairs but not part of the process itself.'" Swindall, 971 F.2d at 1544 (quoting Brewster, 408 U.S. at 512). In determining which activities "beyond pure speech and debate in either House" constitute protected legislative activity under the Speech or Debate Clause, courts consider whether the activities at issue are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." Gravel, 408 U.S. at 625; see also Eastland, 421 U.S. at 504–05.

Here, Senator Graham argues that the subpoena must be quashed in its entirety under the Speech or Debate Clause because it seeks to compel testimony about his legislative acts. See Dkt. No. [2-1] at 4–17. In support of this position, Senator Graham argues that the District Attorney seeks to question him only about the substance and logistics of two phone calls he allegedly made to Georgia Secretary of State Brad Raffensperger in the weeks following the November 2020 election. See id. Senator Graham maintains that these two phone calls constitute protected legislative activity because they were investigatory, information-

gathering exercises that were "legislative" in three ways: (1) the conversations allegedly concerned topics "on which legislation could be had" such as national standards for mail-in-voting; (2) Senator Graham was the then-Chair of the Senate Judiciary Committee and his inquiries (through these calls) into voting integrity and election law were within the province of that committee and his position within it; and (3) as a Senator, he was also tasked with certifying the 2020 presidential election, and these calls were therefore part of his investigation process before certifying the election results. Id. at 10–16. Stated succinctly, Senator Graham's argument is that he is shielded from testifying before the grand jury because (1) he will be asked about these calls and (2) these calls were protected legislative factfinding inquiries related to issues that fall within his legislative province. Id.[3]

---

[3] As an initial matter, the parties disagree as to whether Senator Graham bears the burden of demonstrating that he is entitled to immunity under the Speech or Debate Clause. Binding Eleventh Circuit law suggests that the burden rests with Senator Graham. Bryant v. Jones, 575 F.3d 1281, 1304 (11th Cir. 2009) ("While the Court has given the [Speech or Debate] Clause broad application, its protections are carefully tailored to its purposes. Officials claiming protection must show that such immunity is justified for the governmental function at issue." (quotation marks and citation omitted)). This view of the burden appears to align with other, non-binding authority. See, e.g., United States v. Menendez, 831 F.3d 155, 165 (3d Cir. 2016) ("A Member seeking to invoke the Clause's protections bears the burden of establishing the applicability of legislative immunity by a preponderance of the evidence." (alterations adopted) (quotation marks omitted)); Lange v. Houston Cnty., 499 F. Supp. 3d 1258, 1278 (M.D. Ga. 2020) ("The burden to establish legislative immunity is on the party asserting it."). However, even if the burden is the District Attorney's, that burden has been met because, as discussed below, the District Attorney has showed, at minimum, that there are topics of inquiry on which Senator Graham could be questioned that would clearly fall outside of the Speech or Debate Clause's protections.

As a starting point, one of the essential premises of Senator Graham's arguments is that the District Attorney seeks to *only* question him about the two phone calls he made to Georgia election officials following the November 2020 election. See Dkt. No. [2-1] at 4–17. In this way, Senator Graham tethers his argument to a selective reading of the Certificate of Material Witness that was issued by the Fulton County Superior Court, and in doing so, he suggests that its references to the two calls he made to Georgia Secretary of State Raffensperger are the only areas on which he will (or could) be questioned. Id.

However, both the District Attorney's request to impanel the grand jury and the Superior Court's order granting that request make clear that the grand jury's purpose is broader. It has been impaneled to "investigat[e] the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia." Dkt. No. [1-2] at 10; id. at 7. Indeed, as the District Attorney argues in her Response, the grand jury "is entitled to hear [Senator Graham's] sworn testimony about, inter alia, . . . any coordination either before or after the calls with the Trump campaign's post-election efforts in Georgia." Dkt. No. [9] at 10–11. Further, as the District Attorney emphasized during the August 10 hearing, the Certificate does not represent an exhaustive list of the topics or areas of testimony that the grand jury may seek from Senator Graham. Instead, the District Attorney explained that, while the Certificate itself refers to the simplest and most publicly-known ways that Senator Graham's testimony is material to the grand jury's

investigation, there are other areas of relevant inquiry on which Senator Graham has knowledge and may be questioned, including his public statements after the election, as well as conversations or interactions he had with the Trump Campaign or other third parties that are relevant to the grand jury's investigation into attempts to disrupt the lawful administration of Georgia's 2020 elections.

Additionally, even if the Court were to look exclusively to the Certificate itself, it too states that Senator Graham possesses knowledge about matters that are material to the grand jury's investigation that are outside of the two phone calls. In pertinent part, the Certificate states that Senator Graham is a material and necessary witness to the grand jury's investigation and that he "possesses unique knowledge concerning . . . the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere" and that Senator Graham's testimony "is likely to reveal additional sources of information regarding the subject of [the Special Purpose Grand Jury] investigation." Dkt. No. [1-2] at 3–4. Thus, the Certificate itself indicates that Senator Graham's relevance to the grand jury's investigation—and thus the areas on which he could be asked to testify—extends beyond issues related to the two phone calls he made to Secretary Raffensperger.

The fact that Senator Graham may be questioned on topics outside the two phone calls—including (1) his potential communications and coordination with the Trump Campaign and its post-election efforts in Georgia; (2) his knowledge

of other groups or individuals involved with efforts to influence the results of Georgia's 2020 election; and (3) his public statements following the 2020 election—is of great significance to the issue presently before the Court.

The Speech or Debate Clause does not "prohibit inquiry into activities that are casually or incidentally related to legislative affairs[,]" see Brewster, 408 U.S. at 528, but instead offers protection only "against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." Id. at 525. The Supreme Court has expressly rejected a sweeping interpretation of the Speech or Debate Clause that would include conduct that is merely "related" to the legislative process:

> In no case has this Court ever treated the Clause as protecting all conduct relating to the legislative process. In every case thus for before this Court, the Speech or Debate Clause has been limited to an act which was clearly a part of the legislative process—the due functioning of that process. We would not think it sound or wise, simply out of an abundance of caution to doubly insure legislative independence, to extend the privilege beyond its intended scope, its literal language, and its history, to include all things in any way related to the legislative process. Given such a sweeping reading, we have no doubt that there are few activities in which a legislator engages that he would be unable somehow to 'relate' to the legislative process.

Brewster, 408 U.S. at 516. To this end, the Supreme Court has recognized that there are any number of activities a member of Congress might engage in that unquestionably fall outside the scope of protected legislative activity because they are, in fact, "political in nature rather than legislative":

> It is well known, of course, that Members of the Congress engage in many activities other than the purely legislative activities protected by the Speech or Debate Clause. These include a wide range of legitimate

9

> 'errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress. The range of these related activities has grown over the years. They are performed in part because they have come to be expected by constituents, and because they are a means of developing continuing support for future elections. Although these are entirely legitimate activities, they are political in nature rather than legislative, in the sense that term has been used by the Court in prior cases. But it has never been seriously contended that these political matters, however appropriate, have the protection afforded by the Speech or Debate Clause.

Id. at 512; see also Gravel, 408 U.S. at 625 ("That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature. Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity.").

Thus, as illustrated by the Supreme Court's analysis, the Speech or Debate Clause will not shield actions that are "political in nature rather than legislative" (or otherwise not fundamentally "legislative in nature"). These actions may include, among other things, (1) statements and speeches given outside of Congress regarding the 2020 election, (2) efforts to "cajole" or "exhort" state election officials to change their election practices or alter election results, and (3) coordination with the Trump Campaign (or other third parties) regarding post-election efforts in Georgia. And so, even if the Court were to accept that Senator Graham's two calls to Georgia election officials were comprised entirely

of legislative factfinding—and that any inquiry related to those two calls was therefore shielded by the Speech or Debate Clause—there would still be significant areas of potential testimony related to the grand jury's investigation on which Senator Graham could be questioned that would in no way fall within the Clause's protections. Stated another way, the mere possibility that some lines of inquiry could implicate Senator Graham's immunity under the Speech or Debate Clause does not justify quashing the subpoena in its entirety because there are considerable areas of inquiry which are clearly not legislative in nature. Senator Graham's Motion would therefore fail on this basis alone.

But even if the Court were to accept Senator Graham's preferred framing of the issues—that is, that his testimony before the grand jury will be limited to questions regarding his two calls to Georgia election officials—his request to quash the subpoena on this basis in its entirety would still fail. Here, Senator Graham's central argument is that his purpose in making the calls—indeed, the whole point of the calls—was to investigate issues related to voting and election law (including mail-in voting and reforms to the Electoral Count Act) and to gather information relevant to his duty to eventually certify the results of the 2020 presidential election. See Dkt. No. [2-1] at 10–16. To this end, Senator Graham dismisses as irrelevant the fact that individuals on the calls have publicly suggested that Senator Graham was not simply engaged in legislative factfinding but was instead suggesting or implying that Georgia election officials change their

processes or otherwise potentially alter the state's results.[4] See id. at 16–17; see also Dkt. No. [23] at 8.

Specifically, Senator Graham suggests that to credit others' characterizations or descriptions of his calls would be to improperly consider the motives for his legislative activities. See Dkt. Nos. [2-1] at 16–17; [23] at 8. But in making this argument, Senator Graham fundamentally misconstrues the nature of the Court's required inquiry. To begin, the specific activity at issue involves a Senator from South Carolina making personal phone calls to state-level election officials in Georgia concerning Georgia's election processes and the results of the state's 2020 election. On its face, such conduct is not a "manifestly legislative act." See Gov't of the Virgin Islands v. Lee, 775 F.2d 514, 522 (3d Cir. 1985) (collecting Supreme Court decisions involving decidedly "legislative" activities, including introducing proposed legislation, delivering a speech in Congress, and subpoenaing records for a congressional committee hearing). Moreover, and contrary to Senator Graham's assertions that there exists no "conflict of legally material fact" as to the purpose and substance of the calls, see Dkt. No. [23] at 7, there has been public disagreement and dispute among the calls' participants as to the nature and meaning of Senator Graham's statements and inquiries therein. In fact, it has been suggested that Senator Graham was seeking to influence

---

[4] Taking others' comments aside, the District Attorney notes in her Response that Senator Graham himself appears to have indicated in news interviews that he made suggestions as to how Georgia officials might change their signature-verification process. See Dkt. No. [9] at 3–4, 12–13.

Secretary Raffensperger's actions. Under these circumstances, and as the record presently exists, the Court cannot simply accept Senator Graham's conclusory characterizations of these calls and reject others'—indeed, such an approach has been expressly rejected by other courts facing the same issue. See Lee, 775 F.2d at 522 ("Although [the legislator] maintains that his meetings and conversations were official in nature, and did involve information gathering, such assertions cannot preclude a court of competent jurisdiction from determining whether [his] conversations were, in fact, legislative in nature so as to trigger the immunity."); see also Menendez, 831 F.3d at 166–68.

Instead, the record must be more developed so that the Court may determine in the first instance whether the entirety of Senator Graham's calls to Georgia election officials in fact constitute legitimate legislative activity. Menendez, 831 F.3d at 167 ("[W]e consider a legislator's purpose and motive to the extent they bear on whether 'certain legislative acts were in fact taken' or whether 'non-legislative acts [are being] misrepresented as legislative' in order to invoke the Speech or Debate privilege improperly."); see also id. at 168 ("Courts may dig down to discern if [the purported legislative activity] should be deemed legislative or non-legislative."). And so, it is only once the acts are determined to actually be legislative that all inquiry must cease and any motivations for such actions become irrelevant. Id. at 167 ("Only after we conclude that an act is in fact

legislative must we refrain from inquiring into a legislator's purpose or motive.").[5]

Furthermore, and even assuming for the sake of argument that these calls contained some protected legislative activity,[6] the grand jury would not necessarily be precluded from *all* inquiries about the calls unless every aspect of the calls was determined to fall within the sphere of legitimate legislative activity. Such inquiry can be made without infringing on the Speech or Debate Clause's complete prohibition on legislative questioning with carefully framed questions. For example, asking Senator Graham whether he directed the Georgia Secretary of State to take certain actions would be permissible and not violate the Speech or Debate Clause. That would be outside the information gathering that Senator Graham claims was legislative.

---

[5] In other words, courts are not precluded from probing into the facts and circumstances of alleged legislative acts to determine *what* these acts actually are—that is, legislative or non-legislative—but courts *are* precluded from probing into motivations for such acts once it has been determined that they are, in fact, legislative.

[6] The Court here assumes that Senator Graham's individual, investigative inquiries into topics that arguably fall within his legislative province—such as gathering information to inform himself before voting to certify the results of the 2020 presidential election—would constitute protected legislative activity for the purposes of the Speech or Debate Clause. But that is not a settled issue of law, and the Court takes no broader position on that issue at this time. Compare, e.g., Bastien v. Off. of Senator Ben Nighthorse Campbell, 390 F.3d 1301, 1315 (10th Cir. 2004), cert. denied, 546 U.S. 926 (2005) ("No Supreme Court opinion indicates that Speech or Debate Clause immunity extends to informal information gathering by individual members of Congress.") with Lee, 775 F.3d at 521 ("[F]act-finding occupies a position of sufficient importance in the legislative process to justify the protection afforded by legislative immunity.").

This approach is consistent with the Supreme Court's analysis in United States v. Helstoski, 442 U.S. 477, 488 n.7 (1979). In Helstoski, the majority addressed Justice Stevens's concern that legislators may be able to insert references to past legislative acts into evidence and thereby render broad swaths of that evidence inadmissible under the Speech or Debate Clause:

> Mr. Justice STEVENS suggests that our holding is broader than the Speech or Debate Clause requires. In his view, 'it is illogical to adopt rules of evidence that will allow a Member of Congress effectively to immunize himself from conviction [for bribery] simply by inserting references to past legislative acts in all communications, thus rendering all such evidence inadmissible.' *Post*, at 2444. Nothing in our opinion, by any conceivable reading, prohibits excising references to legislative acts, so that the remainder of the evidence would be admissible. This is a familiar process in the admission of documentary evidence. Of course, a Member can use the Speech or Debate Clause as a shield against prosecution by the Executive Branch, but only for utterances within the scope of legislative acts as defined in our holdings. That is the clear purpose of the Clause.

Helstoski, 442 U.S. at 488 n.7. Here, Senator Graham advances a position that appears to track closely to Justice Stevens's concern—that is, he attempts to label everything contained within the disputed phone calls as legislative activity and thereby completely shield them from further inquiry. The Court is unpersuaded by such an attempt. And so, to the extent some of Senator Graham's statements on the calls may clearly fall outside the Speech or Debate Clause's protections— for example, if Senator Graham in fact "cajoled" or "exhorted" Georgia election officials to take certain actions in administering Georgia's election and voting processes—such statements could presumably be inquired into even if other

statements or lines of inquiry on the calls are protected as legitimate legislative activity. <u>See</u> <u>id.</u>

Accordingly, and for the reasons discussed above, Senator Graham's request to quash the subpoena in its entirety under the Speech or Debate Clause must be denied at this time.

### b. Sovereign Immunity

Senator Graham also briefly argues that sovereign immunity applies to completely shield him from complying with the grand jury subpoena. Dkt. No. [2-1] at 21–22. In an argument spanning just over two paragraphs, Senator Graham suggests that the doctrine of sovereign immunity sweeps so broadly as to fully preclude enforcement of the subpoena simply because he is a United States Senator. <u>Id</u>. If the Court were to accept Senator Graham's sovereign immunity argument, it would mean that U.S. Senators would not be required to testify before state grand juries no matter the circumstances. The law would give them complete immunity based solely on their status as federal officials.

The Court finds no support in controlling law for Senator Graham's suggestion that the doctrine of sovereign immunity applies to him in this case. Senator Graham has not cited any authority—controlling or persuasive—that deals with an analogous situation, and the Court has found none. At most, this Court is bound by the former Fifth Circuit's holding in <u>Keener v. Congress of</u>

16

United States, 467 F.2d 952, 952 (5th Cir. 1972),[7] wherein the Fifth Circuit

affirmed, *inter alia*, that sovereign immunity protected Congress *itself* from suit

by a pro se litigant who was distressed by Congress's abandonment of the gold

standard in 1934 and therefore sought a writ of mandamus to compel Congress

"to return to some 'uniform method of valuation' for United States currency." Id.

Keener does not suggest that sovereign immunity broadly applies to protect

individual members of Congress from testifying before state grand jury

investigations. The Court finds Senator Graham's argument on this issue

unpersuasive and unavailing.

### c. High-Ranking Officials and Extraordinary Circumstances

Last, Senator Graham argues that the grand jury subpoena should be

quashed because he is a high-ranking government official. Dkt. No. [2-1] at 22–

26.

Under Eleventh Circuit law, a party seeking to depose a high-ranking

government official or otherwise call that individual as a witness must show

"extraordinary circumstances" or a "special need" for doing so. See In re United

States (Kessler), 985 F.2d 510, 512 (11th Cir. 1993); In re United States (Jackson),

624 F.3d 1368, 1372 (11th Cir. 2010). The rationale for this rule is that high-

---

[7] Decisions of the former Fifth Circuit handed down on or before September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

ranking government officials "have greater duties and time constraints than other witnesses," and, if allowed to be freely called in as witnesses, their time would likely be monopolized by preparing for and testifying in lawsuits. In re United States (Kessler), 985 F.2d at 512. For this reason, courts applying this rule consider whether the official being called to testify has personal knowledge or experience relevant to material issues in the suit, as well as whether such information is available from other witnesses such as lower-level officials. See id. at 512–13 (noting that "testimony was available from alternate witnesses" and that because the high-ranking official in question was not employed at the FDA during the relevant time period, he "could not have been responsible for selectively prosecuting the defendants"); see also Fair Fight Action, Inc. v. Raffensperger, 333 F.R.D. 689, 693 (N.D. Ga. 2019) ("The exceptional circumstances requirement is considered met when high-ranking officials have direct personal factual information pertaining to material issues in an action and the information to be gained is not available from any other sources such as lower-level officials." (quotation marks omitted)). Though the Eleventh Circuit has so far only applied the rule to high-ranking officials in federal agencies, other courts have extended it to members of Congress. See In re United States (Kessler), 985 F.2d at 512–13 (Food and Drug Administration Commissioner); In re United States (Jackson), 624 F.3d at 1369, 1377 (Environmental Protection Agency Administrator); but see Moriah v. Bank of China Ltd., 72 F. Supp. 3d 437,

440–41 (S.D.N.Y. 2014) (quashing subpoena where record indicated that former congressman lacked knowledge of relevant issues).

Senator Graham argues that the District Attorney cannot satisfy the "extraordinary circumstances" standard in this case and therefore cannot justify calling Senator Graham to testify before the grand jury. Dkt. No. [2-1] at 22–26. To this end, Senator Graham argues that the information about the substance and logistics of his calls with Georgia election officials could easily be obtained from other individuals present on the call, including those who have already testified (or who will soon testify) before the grand jury. Id. at 23–24. As to materiality, Senator Graham argues that the District Attorney has failed to demonstrate that Senator Graham's testimony is essential to the grand jury's investigation. Id.[8] In response, the District Attorney argues that the high-ranking official doctrine does not apply in this case but that, even if it does, the "exceptional circumstances" standard has been met. Dkt. No. [9] at 25–27.

---

[8] Senator Graham attempts to import the standard from a Ninth Circuit case involving a request to quash a subpoena that was issued to former Secretary of Education DeVos. Dkt. No. [2-1] at 24 (quoting In re U.S. Dep't of Educ., 25 F.4th 692 (9th Cir. 2022)). In that case, the Ninth Circuit was tasked with deciding what a party would have to demonstrate in order to show that "extraordinary circumstances sufficient to justify the taking of a cabinet secretary's deposition exist . . . ." In re U.S. Dep't of Educ., 25 F.4th at 702. Among the requirements articulated by the Ninth Circuit and cited by Senator Graham is "a showing of agency bad faith[.]" Id.; see also Dkt. No. [2-1] at 24–25. Because the circumstances of this Ninth Circuit decision are significantly and materially distinguishable from the present case, the Court declines to adopt this standard and will instead rely, as it must, on Eleventh Circuit precedent, as well as decisions applying Eleventh Circuit law.

The Court agrees with the District Attorney that, even assuming the high-ranking official doctrine applies to Senator Graham under these circumstances, the District Attorney has nevertheless satisfied the "extraordinary circumstances" standard. First, Senator Graham has unique personal knowledge about the substance and circumstances of the phone calls with Georgia election officials, as well as the logistics of setting them up and his actions afterward. And though other Georgia election officials were allegedly present on these calls and have made public statements about the substance of those conversations, Senator Graham has largely (and indeed publicly) disputed their characterizations of the nature of the calls and what was said and implied. Accordingly, Senator Graham's potential testimony on these issues—in addition to his knowledge about topics outside of the calls such as his alleged coordination with the Trump Campaign before and after the calls are unique to Senator Graham, and Senator Graham has not suggested that anyone else from his office can speak to these issues or has unique personal knowledge of them.

The issues that Senator Graham has direct knowledge of are also highly material to those that are within the investigative purview of the grand jury. As noted above, the grand jury was convened for the purpose of "investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia." Dkt. No. [1-2] at 10; see also id. at 7 ("The special purpose grand jury shall be authorized to investigate any and all facts and circumstances relating directly or

indirectly to alleged violations of the laws of the State of Georgia, as set forth in the request of the District Attorney referenced herein above."). And here, Senator Graham has direct personal knowledge of conversations with Georgia election officials which have been the subject of public dispute as to the nature of his inquiries and requests, including any implicit or overt suggestions to discard ballots or otherwise alter the election results. Moreover, in her Petition to secure a Certificate of Material Witness from the Fulton County Superior Court, the District Attorney described Senator Graham as a "necessary and material witness in [the Special Purpose Grand Jury] investigation[]" not only because of his personal knowledge of the phone calls with Georgia election officials, but also because he possesses "unique knowledge" concerning "the Trump Campaign[] and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere." Dkt. No. [1-3] at 3. Based on the record presently before the Court, and similar to the Superior Court of Fulton County, the Court finds that the District Attorney has demonstrated that Senator Graham possesses unique personal knowledge of issues that are highly material to the Special Purpose Grand Jury's investigation. Accordingly, the Court finds that the District Attorney has carried her burden as to the "high-ranking official" doctrine.

## III.   CONCLUSION

In accordance with the foregoing, Senator Lindsey Graham's Expedited Motion to Quash [2] is **DENIED without prejudice**. Because the record must

be more fully developed before the Court can address the applicability of the Speech or Debate Clause to specific questions or lines of inquiry, and because Senator Graham's only request in removing the subpoena to this Court was to quash the subpoena in its entirety, the Case is **REMANDED** to the Superior Court of Fulton County for further proceedings.[9]

 

       **IT IS SO ORDERED** this 15th day of August, 2022.

**Leigh Martin May**
**United States District Judge**

---

[9] During the hearing and in his supplemental brief, Senator Graham requested for the first time that, if the Court declines to quash the subpoena in its entirety, the Court should enter an order potentially modifying the subpoena or prescribing areas of inquiry that are barred. There are two problems with Senator Graham's late request. First, this is not the relief requested in Senator Graham's Motion. Instead, Senator Graham unequivocally moved to quash the subpoena in its entirety. Federal Rule of Civil Procedure 45(3)(A) speaks only of "quash[ing] or modify[ing] a subpoena "on timely motion[,]" and here Senator Graham's only request in his Motion is to completely quash the subpoena, not to modify it. See Dkt. Nos. [2, 2-1]. Second, the Court also declines Senator Graham's request because these topics have not been fully briefed by either party. Without a more thoroughly developed record, the Court would be ruling on hypothetical lines of questioning as well as hypothetical applications of various immunity doctrines to those potential questions that neither party has fully addressed. The Court will not engage in such a process.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| *In re* Subpoena to Non-Party Lindsey O. Graham in his official capacity as United States Senator,<br><br>In the matter of:<br><br>Special Purpose Grand Jury, Fulton County Superior Court Case No. 2022-EX-000024. | Case No. 1:22-cv-03027-LMM |

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that United States Senator Lindsey Graham, Defendant-Appellant, hereby appeals to the United States Court of Appeals for the Eleventh Circuit from the district court's Order denying Senator Graham's expedited motion to quash and ordering remand to the Superior Court of Fulton County entered on August 15, 2022 (Doc. 27) (attached hereto as Exhibit 1). *See* Fed. R. App. P. 4(a)(1).

Date: August 17, 2022                    Respectfully submitted,

                                         /s/ Brian C. Lea

DONALD F. MCGAHN II                      BRIAN C. LEA
  *Admitted pro hac vice*                Georgia Bar No. 213529
ROBERT LUTHER III                        JONES DAY
  *Admitted pro hac vice*                1221 Peachtree Street, N.E.,
JONES DAY                                Suite 400
51 Louisiana Ave., NW                    Atlanta, Georgia 30361
Washington, DC 20001                     (404) 521-3939
(202) 879-3939                           blea@jonesday.com
dmcgahn@jonesday.com
rluther@jonesday.com                     E. BART DANIEL
                                           *Admitted pro hac vice*
                                         MARSHALL T. AUSTIN
                                           *Application for admission*
                                           *pro hac vice pending*
                                         NELSON MULLINS RILEY &
                                           SCARBOROUGH LLP
                                         151 Meeting Street,
                                         Suite 600
                                         Charleston, SC 29401
                                         (843) 853-5200
                                         bart.daniel@nelsonmullins.com
                                         matt.austin@nelsonmullins.com

*Counsel for United States Senator Lindsey Graham*

2

# **CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

Date: August 17, 2022

/s/ Brian C. Lea
_____

BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com

*Counsel for United States Senator Lindsey Graham*

39

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE: SUBPOENA TO NON-PARTY   :
LINDSEY O. GRAHAM in his official   :
capacity as United States Senator,   :     CIVIL ACTION NO.
                                     :     1:22-cv-03027-LMM
In the matter of:                    :
                                     :
SPECIAL PURPOSE GRAND JURY,   :
FULTON COUNTY SUPERIOR        :
COURT CASE NO. 2022-EX-       :
000024.                       :
                              :

## **ORDER**

This case comes before the Court on Senator Lindsey Graham's Expedited

Motion to Quash [2]. After due consideration, and with the benefit of a hearing,

the Court **DENIES** the Motion. In sum, the Court finds that there are

considerable areas of potential grand jury inquiry falling outside the Speech or

Debate Clause's protections. Additionally, sovereign immunity fails to shield

Senator Graham from testifying before the Special Purpose Grand Jury. Finally,

though Senator Graham argues that he is exempt from testifying as a high-

ranking government official, the Court finds that the District Attorney has shown

extraordinary circumstances and a special need for Senator Graham's testimony

on issues relating to alleged attempts to influence or disrupt the lawful

administration of Georgia's 2022 elections.

## I.    BACKGROUND[1]

The matters presently before the Court relate to a subpoena issued to United States Senator Lindsey Graham from the Fulton County Superior Court and its requirement to testify before a special purpose grand jury. On January 20, 2022, the Fulton County District Attorney requested that the Superior Court of Fulton County impanel a special purpose grand jury pursuant to O.C.G.A. § 15-12-100 *et seq.* "for the purpose of investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia." Dkt. No. [1-2] at 10. On January 24, 2022, the Superior Court of Fulton County entered an order granting the District Attorney's request and authorizing the convening and impaneling of the Special Purpose Grand Jury pursuant to O.C.G.A. § 15-12-100 *et seq.* Id. at 7–8. The order expressly authorized the Special Purpose Grand Jury "to investigate any and all facts and circumstances relating directly or indirectly to alleged violations of the law of the State of Georgia, as set forth in the request of the District Attorney referenced herein above." Id. at 7.

During this investigation, Senator Graham was identified as a witness, and his appearance before the grand jury was requested. To this end, the District Attorney obtained a Certificate of Material Witness pursuant to the Uniform Act to Secure the Attendance of Witnesses from Without the State, O.C.G.A. § 24-13-

---

[1] The facts discussed in this section are taken from the parties' briefs and exhibits and, unless otherwise noted, are largely undisputed.

90 *et seq.*, from the Superior Court of Fulton County. See id. at 2–5. Following initial litigation in federal court in South Carolina related to this Certificate,[2] the parties agreed that Senator Graham would instead accept service of a subpoena in Georgia. The subpoena was issued on July 26, 2022, see Dkt. No. [1-1] at 2, and Senator Graham accepted service of it the following day, July 27. Dkt. No. [1] at 2. The subpoena requires Senator Graham to appear as a witness before the Special Purpose Grand Jury on August 23, 2022. Dkt. No. [1-1] at 2.

On July 29, 2022, Senator Graham removed the subpoena to this Court pursuant to 28 U.S.C. § 1442 and filed his Expedited Motion to Quash. Dkt. Nos. [1, 2]. In his Expedited Motion to Quash, Senator Graham argues that the subpoena should be quashed in its entirety. See Dkt. Nos. [2, 2-1]. The Fulton County District Attorney's Office opposes Senator Graham's request. See Dkt. No. [9].

## II.    DISCUSSION

Senator Graham asserts three grounds for quashing the subpoena. First, he argues that the Speech or Debate Clause of the U.S. Constitution completely shields his testimony. Dkt. No. [2-1] at 6–21. Second, he argues that the doctrine of sovereign immunity protects him from testifying. Id. at 21–22. And finally,

---

[2] Senator Graham indicates in his briefing that a separate Certificate of Material Witness was obtained and directed to the Superior Court of the District of Columbia, see Dkt. No. [2-1] at 5 & n.4, but the Court refers only to the Certificate directed to South Carolina because that is the only Certificate Senator Graham has placed in the record.

Senator Graham maintains that the subpoena should be quashed because he is a high-ranking government official. Id. at 22–26. The Court addresses each argument in turn.

### a. The Speech or Debate Clause

The Constitution's Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. "The purpose of the Clause is to insure that the legislative function the Constitution allocates to Congress may be performed independently[,]" as well as to reinforce the constitutional structure of the separation of powers. See Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 502 (1975). Accordingly, "the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." United States v. Brewster, 408 U.S. 501, 525 (1972). To this end, the Clause, where applicable, protects members of Congress "against civil as well as criminal actions, and against actions brought by private individuals as well as those initiated by the Executive Branch." Eastland, 421 U.S. at 502–03; see also United States v. Swindall, 971 F.2d 1531, 1544 (11th Cir. 1992) ("The Speech or Debate Clause 'at the very least protects [a member of Congress] from criminal or civil liability and from questioning elsewhere than in Congress.'" (quoting Gravel v. United States, 408 U.S. 606, 615 (1972))).

4

The Speech or Debate Clause has been read "broadly to effectuate its purposes." Eastland, 421 U.S. at 501–02. Still, "the Clause has not been extended beyond the legislative sphere." Gravel, 408 U.S. at 624–25. As a result, the central issue in most cases is "whether the activity the legislator wishes to shield from scrutiny is truly a legislative activity or is instead 'casually or incidentally related to legislative affairs but not part of the process itself.'" Swindall, 971 F.2d at 1544 (quoting Brewster, 408 U.S. at 512). In determining which activities "beyond pure speech and debate in either House" constitute protected legislative activity under the Speech or Debate Clause, courts consider whether the activities at issue are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." Gravel, 408 U.S. at 625; see also Eastland, 421 U.S. at 504–05.

Here, Senator Graham argues that the subpoena must be quashed in its entirety under the Speech or Debate Clause because it seeks to compel testimony about his legislative acts. See Dkt. No. [2-1] at 4–17. In support of this position, Senator Graham argues that the District Attorney seeks to question him only about the substance and logistics of two phone calls he allegedly made to Georgia Secretary of State Brad Raffensperger in the weeks following the November 2020 election. See id. Senator Graham maintains that these two phone calls constitute protected legislative activity because they were investigatory, information-

gathering exercises that were "legislative" in three ways: (1) the conversations allegedly concerned topics "on which legislation could be had" such as national standards for mail-in-voting; (2) Senator Graham was the then-Chair of the Senate Judiciary Committee and his inquiries (through these calls) into voting integrity and election law were within the province of that committee and his position within it; and (3) as a Senator, he was also tasked with certifying the 2020 presidential election, and these calls were therefore part of his investigation process before certifying the election results. Id. at 10–16. Stated succinctly, Senator Graham's argument is that he is shielded from testifying before the grand jury because (1) he will be asked about these calls and (2) these calls were protected legislative factfinding inquiries related to issues that fall within his legislative province. Id.[3]

---

[3] As an initial matter, the parties disagree as to whether Senator Graham bears the burden of demonstrating that he is entitled to immunity under the Speech or Debate Clause. Binding Eleventh Circuit law suggests that the burden rests with Senator Graham. Bryant v. Jones, 575 F.3d 1281, 1304 (11th Cir. 2009) ("While the Court has given the [Speech or Debate] Clause broad application, its protections are carefully tailored to its purposes. Officials claiming protection must show that such immunity is justified for the governmental function at issue." (quotation marks and citation omitted)). This view of the burden appears to align with other, non-binding authority. See, e.g., United States v. Menendez, 831 F.3d 155, 165 (3d Cir. 2016) ("A Member seeking to invoke the Clause's protections bears the burden of establishing the applicability of legislative immunity by a preponderance of the evidence." (alterations adopted) (quotation marks omitted)); Lange v. Houston Cnty., 499 F. Supp. 3d 1258, 1278 (M.D. Ga. 2020) ("The burden to establish legislative immunity is on the party asserting it."). However, even if the burden is the District Attorney's, that burden has been met because, as discussed below, the District Attorney has showed, at minimum, that there are topics of inquiry on which Senator Graham could be questioned that would clearly fall outside of the Speech or Debate Clause's protections.

As a starting point, one of the essential premises of Senator Graham's arguments is that the District Attorney seeks to *only* question him about the two phone calls he made to Georgia election officials following the November 2020 election. See Dkt. No. [2-1] at 4–17. In this way, Senator Graham tethers his argument to a selective reading of the Certificate of Material Witness that was issued by the Fulton County Superior Court, and in doing so, he suggests that its references to the two calls he made to Georgia Secretary of State Raffensperger are the only areas on which he will (or could) be questioned. Id.

However, both the District Attorney's request to impanel the grand jury and the Superior Court's order granting that request make clear that the grand jury's purpose is broader. It has been impaneled to "investigat[e] the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia." Dkt. No. [1-2] at 10; id. at 7. Indeed, as the District Attorney argues in her Response, the grand jury "is entitled to hear [Senator Graham's] sworn testimony about, inter alia, . . . any coordination either before or after the calls with the Trump campaign's post-election efforts in Georgia." Dkt. No. [9] at 10–11. Further, as the District Attorney emphasized during the August 10 hearing, the Certificate does not represent an exhaustive list of the topics or areas of testimony that the grand jury may seek from Senator Graham. Instead, the District Attorney explained that, while the Certificate itself refers to the simplest and most publicly-known ways that Senator Graham's testimony is material to the grand jury's

investigation, there are other areas of relevant inquiry on which Senator Graham has knowledge and may be questioned, including his public statements after the election, as well as conversations or interactions he had with the Trump Campaign or other third parties that are relevant to the grand jury's investigation into attempts to disrupt the lawful administration of Georgia's 2020 elections.

Additionally, even if the Court were to look exclusively to the Certificate itself, it too states that Senator Graham possesses knowledge about matters that are material to the grand jury's investigation that are outside of the two phone calls. In pertinent part, the Certificate states that Senator Graham is a material and necessary witness to the grand jury's investigation and that he "possesses unique knowledge concerning . . . the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere" and that Senator Graham's testimony "is likely to reveal additional sources of information regarding the subject of [the Special Purpose Grand Jury] investigation." Dkt. No. [1-2] at 3–4. Thus, the Certificate itself indicates that Senator Graham's relevance to the grand jury's investigation—and thus the areas on which he could be asked to testify—extends beyond issues related to the two phone calls he made to Secretary Raffensperger.

The fact that Senator Graham may be questioned on topics outside the two phone calls—including (1) his potential communications and coordination with the Trump Campaign and its post-election efforts in Georgia; (2) his knowledge

8

of other groups or individuals involved with efforts to influence the results of Georgia's 2020 election; and (3) his public statements following the 2020 election—is of great significance to the issue presently before the Court.

The Speech or Debate Clause does not "prohibit inquiry into activities that are casually or incidentally related to legislative affairs[,]" see Brewster, 408 U.S. at 528, but instead offers protection only "against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." Id. at 525. The Supreme Court has expressly rejected a sweeping interpretation of the Speech or Debate Clause that would include conduct that is merely "related" to the legislative process:

> In no case has this Court ever treated the Clause as protecting all conduct relating to the legislative process. In every case thus for before this Court, the Speech or Debate Clause has been limited to an act which was clearly a part of the legislative process—the due functioning of that process. We would not think it sound or wise, simply out of an abundance of caution to doubly insure legislative independence, to extend the privilege beyond its intended scope, its literal language, and its history, to include all things in any way related to the legislative process. Given such a sweeping reading, we have no doubt that there are few activities in which a legislator engages that he would be unable somehow to 'relate' to the legislative process.

Brewster, 408 U.S. at 516. To this end, the Supreme Court has recognized that there are any number of activities a member of Congress might engage in that unquestionably fall outside the scope of protected legislative activity because they are, in fact, "political in nature rather than legislative":

> It is well known, of course, that Members of the Congress engage in many activities other than the purely legislative activities protected by the Speech or Debate Clause. These include a wide range of legitimate

9

‘errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called ‘news letters’ to constituents, news releases, and speeches delivered outside the Congress. The range of these related activities has grown over the years. They are performed in part because they have come to be expected by constituents, and because they are a means of developing continuing support for future elections. Although these are entirely legitimate activities, they are political in nature rather than legislative, in the sense that term has been used by the Court in prior cases. But it has never been seriously contended that these political matters, however appropriate, have the protection afforded by the Speech or Debate Clause.

Id. at 512; see also Gravel, 408 U.S. at 625 (“That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature. Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity.”).

Thus, as illustrated by the Supreme Court’s analysis, the Speech or Debate Clause will not shield actions that are “political in nature rather than legislative” (or otherwise not fundamentally “legislative in nature”). These actions may include, among other things, (1) statements and speeches given outside of Congress regarding the 2020 election, (2) efforts to “cajole” or “exhort” state election officials to change their election practices or alter election results, and (3) coordination with the Trump Campaign (or other third parties) regarding post-election efforts in Georgia. And so, even if the Court were to accept that Senator Graham’s two calls to Georgia election officials were comprised entirely

of legislative factfinding—and that any inquiry related to those two calls was therefore shielded by the Speech or Debate Clause—there would still be significant areas of potential testimony related to the grand jury's investigation on which Senator Graham could be questioned that would in no way fall within the Clause's protections. Stated another way, the mere possibility that some lines of inquiry could implicate Senator Graham's immunity under the Speech or Debate Clause does not justify quashing the subpoena in its entirety because there are considerable areas of inquiry which are clearly not legislative in nature. Senator Graham's Motion would therefore fail on this basis alone.

But even if the Court were to accept Senator Graham's preferred framing of the issues—that is, that his testimony before the grand jury will be limited to questions regarding his two calls to Georgia election officials—his request to quash the subpoena on this basis in its entirety would still fail. Here, Senator Graham's central argument is that his purpose in making the calls—indeed, the whole point of the calls—was to investigate issues related to voting and election law (including mail-in voting and reforms to the Electoral Count Act) and to gather information relevant to his duty to eventually certify the results of the 2020 presidential election. See Dkt. No. [2-1] at 10–16. To this end, Senator Graham dismisses as irrelevant the fact that individuals on the calls have publicly suggested that Senator Graham was not simply engaged in legislative factfinding but was instead suggesting or implying that Georgia election officials change their

processes or otherwise potentially alter the state's results.[4] See id. at 16–17; see also Dkt. No. [23] at 8.

Specifically, Senator Graham suggests that to credit others' characterizations or descriptions of his calls would be to improperly consider the motives for his legislative activities. See Dkt. Nos. [2-1] at 16–17; [23] at 8. But in making this argument, Senator Graham fundamentally misconstrues the nature of the Court's required inquiry. To begin, the specific activity at issue involves a Senator from South Carolina making personal phone calls to state-level election officials in Georgia concerning Georgia's election processes and the results of the state's 2020 election. On its face, such conduct is not a "manifestly legislative act." See Gov't of the Virgin Islands v. Lee, 775 F.2d 514, 522 (3d Cir. 1985) (collecting Supreme Court decisions involving decidedly "legislative" activities, including introducing proposed legislation, delivering a speech in Congress, and subpoenaing records for a congressional committee hearing). Moreover, and contrary to Senator Graham's assertions that there exists no "conflict of legally material fact" as to the purpose and substance of the calls, see Dkt. No. [23] at 7, there has been public disagreement and dispute among the calls' participants as to the nature and meaning of Senator Graham's statements and inquiries therein. In fact, it has been suggested that Senator Graham was seeking to influence

---

[4] Taking others' comments aside, the District Attorney notes in her Response that Senator Graham himself appears to have indicated in news interviews that he made suggestions as to how Georgia officials might change their signature-verification process. See Dkt. No. [9] at 3–4, 12–13.

12

Secretary Raffensperger's actions. Under these circumstances, and as the record presently exists, the Court cannot simply accept Senator Graham's conclusory characterizations of these calls and reject others'—indeed, such an approach has been expressly rejected by other courts facing the same issue. See Lee, 775 F.2d at 522 ("Although [the legislator] maintains that his meetings and conversations were official in nature, and did involve information gathering, such assertions cannot preclude a court of competent jurisdiction from determining whether [his] conversations were, in fact, legislative in nature so as to trigger the immunity."); see also Menendez, 831 F.3d at 166–68.

Instead, the record must be more developed so that the Court may determine in the first instance whether the entirety of Senator Graham's calls to Georgia election officials in fact constitute legitimate legislative activity. Menendez, 831 F.3d at 167 ("[W]e consider a legislator's purpose and motive to the extent they bear on whether 'certain legislative acts were in fact taken' or whether 'non-legislative acts [are being] misrepresented as legislative' in order to invoke the Speech or Debate privilege improperly."); see also id. at 168 ("Courts may dig down to discern if [the purported legislative activity] should be deemed legislative or non-legislative."). And so, it is only once the acts are determined to actually be legislative that all inquiry must cease and any motivations for such actions become irrelevant. Id. at 167 ("Only after we conclude that an act is in fact

legislative must we refrain from inquiring into a legislator's purpose or motive.").[5]

Furthermore, and even assuming for the sake of argument that these calls contained some protected legislative activity,[6] the grand jury would not necessarily be precluded from *all* inquiries about the calls unless every aspect of the calls was determined to fall within the sphere of legitimate legislative activity. Such inquiry can be made without infringing on the Speech or Debate Clause's complete prohibition on legislative questioning with carefully framed questions. For example, asking Senator Graham whether he directed the Georgia Secretary of State to take certain actions would be permissible and not violate the Speech or Debate Clause. That would be outside the information gathering that Senator Graham claims was legislative.

---

[5] In other words, courts are not precluded from probing into the facts and circumstances of alleged legislative acts to determine *what* these acts actually are—that is, legislative or non-legislative—but courts *are* precluded from probing into motivations for such acts once it has been determined that they are, in fact, legislative.

[6] The Court here assumes that Senator Graham's individual, investigative inquiries into topics that arguably fall within his legislative province—such as gathering information to inform himself before voting to certify the results of the 2020 presidential election—would constitute protected legislative activity for the purposes of the Speech or Debate Clause. But that is not a settled issue of law, and the Court takes no broader position on that issue at this time. Compare, e.g., Bastien v. Off. of Senator Ben Nighthorse Campbell, 390 F.3d 1301, 1315 (10th Cir. 2004), cert. denied, 546 U.S. 926 (2005) ("No Supreme Court opinion indicates that Speech or Debate Clause immunity extends to informal information gathering by individual members of Congress.") with Lee, 775 F.3d at 521 ("[F]act-finding occupies a position of sufficient importance in the legislative process to justify the protection afforded by legislative immunity.").

This approach is consistent with the Supreme Court's analysis in <u>United States v. Helstoski</u>, 442 U.S. 477, 488 n.7 (1979). In <u>Helstoski</u>, the majority addressed Justice Stevens's concern that legislators may be able to insert references to past legislative acts into evidence and thereby render broad swaths of that evidence inadmissible under the Speech or Debate Clause:

> Mr. Justice STEVENS suggests that our holding is broader than the Speech or Debate Clause requires. In his view, 'it is illogical to adopt rules of evidence that will allow a Member of Congress effectively to immunize himself from conviction [for bribery] simply by inserting references to past legislative acts in all communications, thus rendering all such evidence inadmissible.' *Post*, at 2444. Nothing in our opinion, by any conceivable reading, prohibits excising references to legislative acts, so that the remainder of the evidence would be admissible. This is a familiar process in the admission of documentary evidence. Of course, a Member can use the Speech or Debate Clause as a shield against prosecution by the Executive Branch, but only for utterances within the scope of legislative acts as defined in our holdings. That is the clear purpose of the Clause.

<u>Helstoski</u>, 442 U.S. at 488 n.7. Here, Senator Graham advances a position that appears to track closely to Justice Stevens's concern—that is, he attempts to label everything contained within the disputed phone calls as legislative activity and thereby completely shield them from further inquiry. The Court is unpersuaded by such an attempt. And so, to the extent some of Senator Graham's statements on the calls may clearly fall outside the Speech or Debate Clause's protections— for example, if Senator Graham in fact "cajoled" or "exhorted" Georgia election officials to take certain actions in administering Georgia's election and voting processes—such statements could presumably be inquired into even if other

statements or lines of inquiry on the calls are protected as legitimate legislative activity. See id.

Accordingly, and for the reasons discussed above, Senator Graham's request to quash the subpoena in its entirety under the Speech or Debate Clause must be denied at this time.

### b. Sovereign Immunity

Senator Graham also briefly argues that sovereign immunity applies to completely shield him from complying with the grand jury subpoena. Dkt. No. [2-1] at 21–22. In an argument spanning just over two paragraphs, Senator Graham suggests that the doctrine of sovereign immunity sweeps so broadly as to fully preclude enforcement of the subpoena simply because he is a United States Senator. Id. If the Court were to accept Senator Graham's sovereign immunity argument, it would mean that U.S. Senators would not be required to testify before state grand juries no matter the circumstances. The law would give them complete immunity based solely on their status as federal officials.

The Court finds no support in controlling law for Senator Graham's suggestion that the doctrine of sovereign immunity applies to him in this case. Senator Graham has not cited any authority—controlling or persuasive—that deals with an analogous situation, and the Court has found none. At most, this Court is bound by the former Fifth Circuit's holding in Keener v. Congress of

United States, 467 F.2d 952, 952 (5th Cir. 1972),[7] wherein the Fifth Circuit affirmed, *inter alia*, that sovereign immunity protected Congress *itself* from suit by a pro se litigant who was distressed by Congress's abandonment of the gold standard in 1934 and therefore sought a writ of mandamus to compel Congress "to return to some 'uniform method of valuation' for United States currency." Id. Keener does not suggest that sovereign immunity broadly applies to protect individual members of Congress from testifying before state grand jury investigations. The Court finds Senator Graham's argument on this issue unpersuasive and unavailing.

### c. High-Ranking Officials and Extraordinary Circumstances

Last, Senator Graham argues that the grand jury subpoena should be quashed because he is a high-ranking government official. Dkt. No. [2-1] at 22–26.

Under Eleventh Circuit law, a party seeking to depose a high-ranking government official or otherwise call that individual as a witness must show "extraordinary circumstances" or a "special need" for doing so. See In re United States (Kessler), 985 F.2d 510, 512 (11th Cir. 1993); In re United States (Jackson), 624 F.3d 1368, 1372 (11th Cir. 2010). The rationale for this rule is that high-

---

[7] Decisions of the former Fifth Circuit handed down on or before September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

ranking government officials "have greater duties and time constraints than other witnesses," and, if allowed to be freely called in as witnesses, their time would likely be monopolized by preparing for and testifying in lawsuits. In re United States (Kessler), 985 F.2d at 512. For this reason, courts applying this rule consider whether the official being called to testify has personal knowledge or experience relevant to material issues in the suit, as well as whether such information is available from other witnesses such as lower-level officials. See id. at 512–13 (noting that "testimony was available from alternate witnesses" and that because the high-ranking official in question was not employed at the FDA during the relevant time period, he "could not have been responsible for selectively prosecuting the defendants"); see also Fair Fight Action, Inc. v. Raffensperger, 333 F.R.D. 689, 693 (N.D. Ga. 2019) ("The exceptional circumstances requirement is considered met when high-ranking officials have direct personal factual information pertaining to material issues in an action and the information to be gained is not available from any other sources such as lower-level officials." (quotation marks omitted)). Though the Eleventh Circuit has so far only applied the rule to high-ranking officials in federal agencies, other courts have extended it to members of Congress. See In re United States (Kessler), 985 F.2d at 512–13 (Food and Drug Administration Commissioner); In re United States (Jackson), 624 F.3d at 1369, 1377 (Environmental Protection Agency Administrator); but see Moriah v. Bank of China Ltd., 72 F. Supp. 3d 437,

440–41 (S.D.N.Y. 2014) (quashing subpoena where record indicated that former congressman lacked knowledge of relevant issues).

Senator Graham argues that the District Attorney cannot satisfy the "extraordinary circumstances" standard in this case and therefore cannot justify calling Senator Graham to testify before the grand jury. Dkt. No. [2-1] at 22–26. To this end, Senator Graham argues that the information about the substance and logistics of his calls with Georgia election officials could easily be obtained from other individuals present on the call, including those who have already testified (or who will soon testify) before the grand jury. Id. at 23–24. As to materiality, Senator Graham argues that the District Attorney has failed to demonstrate that Senator Graham's testimony is essential to the grand jury's investigation. Id.[8] In response, the District Attorney argues that the high-ranking official doctrine does not apply in this case but that, even if it does, the "exceptional circumstances" standard has been met. Dkt. No. [9] at 25–27.

---

[8] Senator Graham attempts to import the standard from a Ninth Circuit case involving a request to quash a subpoena that was issued to former Secretary of Education DeVos. Dkt. No. [2-1] at 24 (quoting In re U.S. Dep't of Educ., 25 F.4th 692 (9th Cir. 2022)). In that case, the Ninth Circuit was tasked with deciding what a party would have to demonstrate in order to show that "extraordinary circumstances sufficient to justify the taking of a cabinet secretary's deposition exist . . . ." In re U.S. Dep't of Educ., 25 F.4th at 702. Among the requirements articulated by the Ninth Circuit and cited by Senator Graham is "a showing of agency bad faith[.]" Id.; see also Dkt. No. [2-1] at 24–25. Because the circumstances of this Ninth Circuit decision are significantly and materially distinguishable from the present case, the Court declines to adopt this standard and will instead rely, as it must, on Eleventh Circuit precedent, as well as decisions applying Eleventh Circuit law.

The Court agrees with the District Attorney that, even assuming the high-ranking official doctrine applies to Senator Graham under these circumstances, the District Attorney has nevertheless satisfied the "extraordinary circumstances" standard. First, Senator Graham has unique personal knowledge about the substance and circumstances of the phone calls with Georgia election officials, as well as the logistics of setting them up and his actions afterward. And though other Georgia election officials were allegedly present on these calls and have made public statements about the substance of those conversations, Senator Graham has largely (and indeed publicly) disputed their characterizations of the nature of the calls and what was said and implied. Accordingly, Senator Graham's potential testimony on these issues—in addition to his knowledge about topics outside of the calls such as his alleged coordination with the Trump Campaign before and after the calls are unique to Senator Graham, and Senator Graham has not suggested that anyone else from his office can speak to these issues or has unique personal knowledge of them.

The issues that Senator Graham has direct knowledge of are also highly material to those that are within the investigative purview of the grand jury. As noted above, the grand jury was convened for the purpose of "investigating the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia." Dkt. No. [1-2] at 10; see also id. at 7 ("The special purpose grand jury shall be authorized to investigate any and all facts and circumstances relating directly or

indirectly to alleged violations of the laws of the State of Georgia, as set forth in the request of the District Attorney referenced herein above."). And here, Senator Graham has direct personal knowledge of conversations with Georgia election officials which have been the subject of public dispute as to the nature of his inquiries and requests, including any implicit or overt suggestions to discard ballots or otherwise alter the election results. Moreover, in her Petition to secure a Certificate of Material Witness from the Fulton County Superior Court, the District Attorney described Senator Graham as a "necessary and material witness in [the Special Purpose Grand Jury] investigation[]" not only because of his personal knowledge of the phone calls with Georgia election officials, but also because he possesses "unique knowledge" concerning "the Trump Campaign[] and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere." Dkt. No. [1-3] at 3. Based on the record presently before the Court, and similar to the Superior Court of Fulton County, the Court finds that the District Attorney has demonstrated that Senator Graham possesses unique personal knowledge of issues that are highly material to the Special Purpose Grand Jury's investigation. Accordingly, the Court finds that the District Attorney has carried her burden as to the "high-ranking official" doctrine.

## III.   CONCLUSION

In accordance with the foregoing, Senator Lindsey Graham's Expedited Motion to Quash [2] is **DENIED without prejudice**. Because the record must

be more fully developed before the Court can address the applicability of the Speech or Debate Clause to specific questions or lines of inquiry, and because Senator Graham's only request in removing the subpoena to this Court was to quash the subpoena in its entirety, the Case is **REMANDED** to the Superior Court of Fulton County for further proceedings.[9]

 

     **IT IS SO ORDERED** this 15th day of August, 2022.

 

**Leigh Martin May**
**United States District Judge**

---

[9] During the hearing and in his supplemental brief, Senator Graham requested for the first time that, if the Court declines to quash the subpoena in its entirety, the Court should enter an order potentially modifying the subpoena or prescribing areas of inquiry that are barred. There are two problems with Senator Graham's late request. First, this is not the relief requested in Senator Graham's Motion. Instead, Senator Graham unequivocally moved to quash the subpoena in its entirety. Federal Rule of Civil Procedure 45(3)(A) speaks only of "quash[ing] or modify[ing] a subpoena "on timely motion[,]" and here Senator Graham's only request in his Motion is to completely quash the subpoena, not to modify it. See Dkt. Nos. [2, 2-1]. Second, the Court also declines Senator Graham's request because these topics have not been fully briefed by either party. Without a more thoroughly developed record, the Court would be ruling on hypothetical lines of questioning as well as hypothetical applications of various immunity doctrines to those potential questions that neither party has fully addressed. The Court will not engage in such a process.