IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: SUBPOENA TO NON-PARTY LINDSEY O. GRAHAM in his official capacity as United States Senator, | : : : | CIVIL ACTION NO. 1:22-cv-03027-LMM |
| In the matter of: | : : | |
| SPECIAL PURPOSE GRAND JURY, FULTON COUNTY SUPERIOR COURT CASE NO. 2022-EX-000024. | : : : : : | |

## ORDER

This case comes before the Court on Senator Lindsey Graham's Emergency Motion to Stay [29].[1] After due consideration, the Court enters the following Order.

### I.    BACKGROUND

In this matter, Senator Graham sought to quash a subpoena that was issued to him as part of the Fulton County Special Purpose Grand Jury's investigation into possible attempts to disrupt the lawful administration of Georgia's 2020 elections. On August 15, 2022, the Court entered an order denying Senator Graham's Expedited Motion to Quash. Dkt. No. [27]. Following

---

[1] Senator Graham also filed an Emergency Motion for Hearing [30]. Because the Court finds that it can resolve the issues presented in Senator Graham's Emergency Motion to Stay without a hearing, Senator Graham's Emergency Motion for Hearing [30] is **DENIED**.

entry of that order, Senator Graham filed an Emergency Motion to Stay wherein he requests (1) a stay of the Court's August 15, 2022, order and (2) an order enjoining the grand jury from acting on Senator Graham's subpoena before the conclusion of his appeal. Dkt. Nos. [29, 29-1].

## II.   DISCUSSION

Under the "traditional standard for a stay," the Court considers four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

League of Women Voters of Fla., Inc. v. Fla. Sec'y of State, 32 F.4th 1363, 1370 (11th Cir. 2022) (quotation marks omitted) (quoting Nken v. Holder, 556 U.S. 418, 425–26 (2009)). These factors overlap substantially with the factors relevant to obtaining a preliminary injunction. See, e.g., Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003) (listing preliminary injunction factors); see also Nken, 556 U.S at 434 ("There is substantial overlap between [the stay factors] and the factors governing preliminary injunctions, not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined." (internal citation omitted)). "The first two factors are the 'most critical.'" Hand v. Scott, 888 F.3d 1206, 1207 (11th Cir. 2018) (quoting Nken, 556 U.S. at 434). With

regard to the first factor, "in some circumstances—namely, 'when the balance of equities weighs heavily in favor of granting the stay'—[the Eleventh Circuit] relax[es] the likely-to-succeed-on-the-merits requirement[,]" and a stay "may be granted upon a lesser showing of a 'substantial case on the merits.'" League of Women Voters, 32 F.4th at 1370 (ellipsis omitted) (quoting Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986)).

As the Supreme Court has explained, "[a] stay is not a matter of right[] . . . ." Nken, 556 U.S. at 433. Instead, a stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." Id. Accordingly, "[t]he party requesting the stay bears the burden of showing that the circumstances justify an exercise of that discretion." Id. As discussed below, Senator Graham has failed to carry that burden.

### 1. Likelihood of Success on the Merits

The first factor is "whether the stay applicant has made a strong showing that he is likely to succeed on the merits." League of Women Voters, 32 F.4th at 1370. Senator Graham raises a number of arguments as to why he is likely to succeed on the merits, but they are all unpersuasive, not least because they largely misconstrue the Court's holdings.

First, Senator Graham argues that he is likely to succeed on the merits because probing into the motives of legislative acts is unequivocally forbidden under the Speech or Debate Clause. Dkt. No. [29-1] at 9–14. Senator Graham maintains that the calls themselves constitute legitimate legislative activity in

their entirety, and he argues that the Court erred by "injecting" considerations of motive into its Speech or Debate analysis about the calls. Id.

As an initial matter, the Court's holding regarding the calls themselves, as well as what inquiries may be proper as to those calls, was an alternative basis for denying Senator Graham's requested relief. As was clear from the order, and as is discussed more fully below, Senator Graham requested that the subpoena be quashed in its entirety, and the Court denied this request first and primarily because there are multiple topics upon which Senator Graham could face questioning that in no way implicate protected legislative activity under the Speech or Debate Clause.

As the Court already explained, Senator Graham can be questioned on all activities that fall within the parameters of the grand jury's investigation and which are "political in nature rather than legislative," including (1) Senator Graham's alleged coordination with the Trump Campaign or other third parties regarding post-election efforts in Georgia; (2) attempts to "cajole" or "exhort" Georgia election officials to change their election processes or results; and (3) public statements or speeches he made outside of Congress about the 2020 elections. And so, because there are topics upon which Senator Graham could be questioned that fall outside the protections of the Speech or Debate Clause, his request to quash the subpoena in its entirety under the Clause necessarily failed. Senator Graham presents no persuasive argument as to why this holding raises a "substantial case on the merits" given how clearly the Supreme Court has stated

that actions which are fundamentally political in nature—such as giving speeches outside of Congress or "cajoling" or "exhorting" officials from different branches of government to take certain actions—are *not* protected by the Speech or Debate Clause.

Furthermore, and contrary to Senator Graham's suggestions in his Motion to Stay, this Court never held or otherwise suggested that courts (or the grand jury) may probe into the motivation for legislative acts. That proposition is foreclosed by Supreme Court precedent. Instead, the Court found that, at this stage and based on the current record, it could not simply accept Senator Graham's conclusory characterizations of these phone calls as *only* containing legitimate legislative factfinding inquiries and thereby ignore (and indeed reject) the fact that the substance of these calls has been a source of public dispute and disagreement by some of the calls' other participants. To this end, the Court observed that Senator Graham may be asked targeted questions on topics that in no way implicate legitimate legislative activity (such as attempts to "cajole" or "exhort" Georgia election officials to take certain actions relative to the state's voting and election practices) so as to probe whether—as Senator Graham suggests—the calls were, in fact, comprised *entirely* of legislative activity or instead (and as some other individuals who were on the calls have suggested) included at least some lines of inquiry that clearly fall outside the scope of the Speech or Debate Clause's protections. Senator Graham's arguments ignore the idea that more than one subject may have been discussed on the calls. To the

extent some parts of the calls *do* fall outside the sphere of protected legislative activity, the Supreme Court's analysis in <u>United States v. Helstoski</u>, 442 U.S. 477, 488 n.7 (1979), suggests that the grand jury could properly probe into these issues specifically while avoiding or "excising" any legitimate legislative activities from its questioning. The Court finds no basis for concluding that its holdings as to these issues are likely to be reversed on the merits. Holding otherwise would allow any sitting senator to shield all manner of potential criminal conduct occurring during a phone call merely by asserting the purpose of the call was legislative fact-finding—no matter whether the call subsequently took a different turn.

Second, Senator Graham argues that the Court's central holding—which, as just discussed, is that even assuming Senator Graham is correct that any questioning about the phone calls is barred under the Speech or Debate Clause, his request to quash the subpoena in its entirety still failed because there are multiple other areas of potential questioning and testimony that do not implicate "legislative activity" as that term has been defined by numerous Supreme Court decisions—is likely to be reversed by the Eleventh Circuit. Dkt. No. [29-1] at 14–17.

Here again, and as discussed above, Senator Graham's arguments are entirely unpersuasive, and they do not even demonstrate a "substantial case on the merits." As an initial matter, Senator Graham takes issue with the Court's recognition that his sole request—to quash the subpoena in its entirety—was built

largely (if not entirely) on the premise that Senator Graham will only be questioned about the phone calls, which Senator Graham characterizes as legitimate legislative factfinding exercises and thus completely protected by the Speech or Debate Clause. Dkt. No. [29-1] at 15. Instead, Senator Graham maintains that he believes that the "other topics" will simply be used as a "backdoor" for questioning him about the phone calls. Id.

The problem for Senator Graham is that the record thoroughly contradicts his suggestion that the District Attorney and grand jury simply wish to use questions on other topics as a "backdoor" to asking him about the legislative fact-finding on the phone calls. Over and again, the District Attorney has demonstrated an intention to question Senator Graham on issues that are not related to the phone calls themselves and—even more importantly—are not related to legitimate legislative activity as defined by the Supreme Court. By way of example: (1) the Certificate of Material Witness itself states that Senator Graham "possesses unique knowledge concerning . . . the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 election in Georgia and elsewhere" and that Senator Graham's testimony "is likely to reveal additional sources of information regarding the subject of [the Special Purpose Grand Jury] investigation[,]" see Dkt. No. [1-2] at 3–4; (2) in relevant part, the District Attorney argued in her Response that the grand jury is "entitled to hear [Senator Graham's] sworn testimony about, inter alia, the circumstances leading to his

telephone calls to Raffensperger, what [Senator Graham] sought and obtained from the conversation, *and any coordination either before or after the calls with the Trump campaign's post-election efforts in Georgia*[,]" <u>see</u> Dkt. No. [9] at 10–11 (emphasis added); and (3) the District Attorney stated at the hearing that, while the Certificate of Material Witness discusses the calls in relevant part, there are several other topics on which Senator Graham has personal knowledge that fall squarely within the purview of the grand jury's investigation and upon which Senator Graham could therefore be questioned.

In short, the record belies Senator Graham's suggestion that these *separate* topics of inquiry will simply be used as a "backdoor" for questioning Senator Graham about the phone calls. Senator Graham's insistent repetition of this argument does not make it true. It therefore bears repeating that, even assuming Senator Graham is correct in all of his contentions as to the application of the Speech or Debate Clause to the calls themselves, his requested relief—quashing the subpoena in its entirety—would still have to be denied because the record shows that there are multiple areas of proper inquiry that in no way implicate protected legislative activity as that term has been defined and clarified by numerous Supreme Court decisions interpreting the Speech or Debate Clause.

Third, Senator Graham suggests that he is likely to succeed on the merits, and that the Eleventh Circuit is likely to reverse this Court, because the Court did not partially quash or modify the subpoena. Dkt. No. [29-1] at 17–20. On this point, Senator Graham appears to believe that the Court simply did not realize

that, under Federal Rule of Civil Procedure 45(d)(3), it could enter an order partially quashing the subpoena or otherwise modifying it. But that misinterprets the Court's order. The problem with Senator Graham's argument on this issue is that he requested this relief for the first time at the hearing and then again in his supplemental brief—a development that meant that the parties never fully briefed this issue nor presented the Court with any detailed indication of what such a request for partial relief or modification would entail.

In other words, Senator Graham merely stating at the hearing that he wished in the alternative for the Court to partially quash the subpoena as it saw fit is not the same as properly presenting that issue to the Court and providing detailed argument from which the Court could shape appropriate relief. It is of course axiomatic that courts will not—and indeed cannot—make arguments for either party. If Senator Graham wanted the Court to rule as to each and every question he might be asked, he had to brief that issue. This would require identifying the questions and then explaining specifically why each question would be off limits. It is not for the Court to try and think up all the different issues that might be raised and then rule on them without the parties having an opportunity to address them.

Fourth, Senator Graham argues that he is likely to succeed on the merits of his sovereign immunity argument. Dkt. No. [29-1] at 20–22. As evidenced by the Court's earlier order, the Court finds no support for Senator Graham's position in either persuasive or binding authority. This argument is bereft of any meaningful

support and, in this Court's estimation, presents neither an issue that is likely to succeed on the merits nor one that is a "substantial case on the merits."

As indicated above, the Court is not persuaded that Senator Graham is likely to succeed on the merits of his arguments or that he has shown a substantial case on the merits. Even if he had shown a substantial case on the merits, that exception comes with a significant caveat: in order to rely on a showing of a "substantial case on the merits," the balance of the equities must "weigh[] heavily in favor of granting the stay[.]" League of Women Voters, 32 F.4th at 1370. In determining the balance of the equities, the Court considers the second, third, and fourth factors. Garcia-Mir, 781 F.2d at 1453. As discussed below, the Court does not find that the equities weigh so heavily in Senator Graham's favor as to justify the granting of a stay based only on a showing of a "substantial case on the merits" even if such a showing had been made.

## 2. Irreparable Injury

The second factor is "whether the applicant will be irreparably injured absent a stay[.]" League of Women Voters, 32 F.4th at 1370. Senator Graham argues that he will suffer irreparable harm if the Court does not grant his request for a stay because two immunities—immunity under the Speech or Debate Clause from being "questioned in any other Place[,]" as well as sovereign immunity—will both be violated if he must appear for questioning before the grand jury. Dkt. No. [29-1] at 22–24.

The Court acknowledges that if Senator Graham is correct on the merits of his Speech or Debate Clause contentions as he has framed them—that is, that all subjects relating to his conduct regarding Georgia's 2020 elections, even press interviews, should presumably be categorized as legislative and therefore shielded—he would suffer irreparable harm because the Speech or Debate Clause entitles members of Congress to be free from being "questioned in any other Place[]" regarding their legitimate legislative acts. U.S. Const. art. I, § 6, cl. 1. Similarly, the Court acknowledges that if it is ultimately determined that Senator Graham is in fact entitled to the novel and sweeping formulation of sovereign immunity he has proposed in this case, he would likewise suffer irreparable harm by being subjected to questioning before the grand jury. Be that as it may, the Supreme Court has stated that "[a] stay is not a matter of right, even if irreparable injury might otherwise result." Nken, 556 U.S. at 433.

### 3.  Injury to the Other Party

The third factor is "whether issuance of the stay will substantially injure the other parties interested in the proceeding[.]" League of Women Voters, 32 F.4th at 1370. Senator Graham argues that the grand jury will not suffer any injury if the Court grants a stay pending appeal because (1) the subpoena at issue pertains only to him, so the grand jury's investigation can continue without his immediate testimony; and (2) he will seek to expedite his appeal and thus the grand jury will still have time for his testimony on any topics the Eleventh Circuit determines are permissible. Dkt. No. [29-1] at 25.

The District Attorney argues that a stay would result in substantial injury to the grand jury. Dkt. No. [36] at 6–7. In essence, the District Attorney argues that Senator Graham's testimony is sought not only because he possesses necessary and material information in his own right, but also because he is expected to testify as to other sources of information relevant to the grand jury's investigation. Id. To this end, the District Attorney notes that the grand jury has been attempting to secure Senator Graham's appearance since July 5, 2022, and that a stay will add to the significant delay that has already occurred, even assuming an expedited appeal. Id. The District Attorney argues that additional delays that would result from a stay will harm the grand jury's full investigation because such a delay not only affects Senator Graham but also delays revelation of new categories of information and witnesses, thereby compounding the total delay and hampering the grand jury as it attempts to carry out its investigation expeditiously. Id.

The Court agrees with the District Attorney on this issue. As reflected in both the Certificate of Material Witness and in the District Attorney's arguments before this Court, it is expected that Senator Graham possesses necessary and material knowledge of additional sources of information that are relevant to the grand jury's investigation. Under the circumstances, further delay of Senator Graham's testimony would greatly compound the overall delay in carrying out the grand jury's investigation. Further delay thus poses a significant risk of overall hindrance to the grand jury's investigation, and the Court therefore finds that

granting a stay would almost certainly result in material injury to the grand jury and its investigation. Accordingly, this factor weighs against Senator Graham and in favor of the grand jury.

### 4. The Public Interest

The final factor requires consideration of "where the public interest lies." League of Women Voters, 32 F.4th at 1370 (quotation mark omitted). Senator Graham argues that granting a stay and maintaining the status quo serves the public interest because he seeks to vindicate two constitutional immunity doctrines that are important to the separation of powers and federalism. Dkt. No. [29-1] at 25–26. He also suggests that the issues in his appeal will serve "the People[] more generally" because their elected officials will be able to carry out investigations relevant to legislation without fear of reprisal or interference. Id. In response, the District Attorney argues that the public interest is served by allowing Senator Graham's appearance to proceed, thereby ensuring that the grand jury's investigation may proceed efficiently. Dkt. No. [36] at 7–8.

The Court finds that, under the unique facts of this case, the public interest would not be served by granting a stay. As has been discussed at length, the grand jury has been impaneled to investigate potential attempts to disrupt the lawful administration of Georgia's 2020 elections. In this context, the public interest is well-served when a lawful investigation aimed at uncovering the facts and circumstances of alleged attempts to disrupt or influence Georgia's elections is allowed to proceed without unnecessary encumbrances. Indeed, it is important

that citizens maintain faith that there are mechanisms in place for investigating any such attempts to disrupt elections and, if necessary, to prosecute these crimes which, by their very nature, strike at the heart of a democratic system. Furthermore, given that this case, at minimum, involves areas of inquiry that clearly fall outside the scope of the Speech or Debate Clause, the Court finds that it also serves the public interest for the Supreme Court's understanding of the Clause's purpose and limitations to be vindicated: "Admittedly, the Speech or Debate Clause must be read broadly to effectuate its purpose of protecting the independence of the Legislative Branch, but no more than the statutes we apply, was its purpose to make Members of Congress super-citizens[] . . . ." United States v. Brewster, 408 U.S. 501, 516 (1972). Thus, under the circumstances of this case, the Court finds that granting a stay would not serve the public interest. This factor therefore weighs against Senator Graham.

### 5. Weighing of Factors

After reviewing the relevant factors, the Court finds that the only factor that arguably weighs in Senator Graham's favor is the second. Both the third and fourth factors weigh against the granting of a stay under the unique circumstances of this case. As for the first factor, the Court is not persuaded that Senator Graham has shown a likelihood of success on the merits. Therefore, because the balance of the equities reflected in the second, third, and fourth factors do not "weigh[] *heavily* in favor of granting the stay[,]" a stay is not justified even assuming for the sake of argument that Senator Graham has shown

14

"a substantial case on the merits." <u>Garcia-Mir</u>, 781 F.2d at 1453 (emphasis added). Accordingly, Senator Graham's request for an order staying the Court's August 15, 2022 order and enjoining the Special Purpose Grand Jury from acting on the subpoena is **DENIED**.

### III.   CONCLUSION

In accordance with the foregoing, Senator Lindsey Graham's Emergency Motion to Stay [29] is **DENIED**. Senator Graham's Emergency Motion for Hearing [30] is likewise **DENIED**.


**IT IS SO ORDERED** this 19th day of August, 2022.

**Leigh Martin May**
**United States District Judge**