## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

*In re* Subpoena to Non-Party Lindsey
O. Graham in his official capacity as
United States Senator,

in the matter of:

Special Purpose Grand Jury, Fulton
County Superior Court Case No.
2022-EX-000024.

Civil Action No.
1:22-cv-03027-LMM

## MEMORANDUM IN SUPPORT OF SUPPLEMENTAL MOTION FOR PARTIAL QUASHAL ORDERED BY THIS COURT (DOC. 38), BY SENATOR LINDSEY GRAHAM

## INTRODUCTION

The Constitution guarantees that a Senator "shall not be questioned" about his protected "Speech or Debate"—and yet the District Attorney insists that Senator Graham must submit to questioning to ascertain whether he can be questioned or is immune from questioning.  That makes no sense.  "Just as it is not reasonable to destroy a village in order to save it, neither is it reasonable" to require a Senator to lose his immunity in order to gain it.  *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1353–54 (11th Cir. 2009).  For the reasons explained earlier and below, this Court should quash the subpoena compelling this unconstitutional questioning: It is barred by, among other things, the Constitution's Speech or Debate Clause.

Senator Graham has served in the Senate since 2003; before that, he served in the House.  At all times relevant to this matter, he was the Chairman of the Senate Judiciary Committee, where—like his predecessors of both political parties—he held a hearing on elections and their administration, in fact, just two weeks after the 2020 Presidential election.[1]

---

[1] Breaking the News: Censorship, Suppression, and the 2020 Election, https://www.judiciary.senate.gov/meetings/breaking-the-news-censorship-suppres-sion-and-the-2020-election.  Indeed, Committee Chairs of both political parties going back years have held hearings on, and have otherwise investigated, voting rights, voting integrity, and election-law legislation.  Chairman Durbin, for example, held a hearing on The John R. Lewis Voting Rights Advancement Act and one entitled

With respect to presidential elections, the Constitution's Twelfth Amendment requires that Senator Graham, along with the entire legislature, watch the counting of the electoral votes.  The Electoral Count Act—the law since 1887—provides for detailed voting procedures.  Under the Constitution and laws, Senator Graham voted to certify the 2020 Presidential election in favor of Joe Biden.  Before doing so, and given his obligations under the Twelfth Amendment and the Electoral Count Act, Senator Graham sought to educate himself and investigate various allegations regarding the 2020 election, and in so doing, and per his duties as a Senator and Committee Chairman, spoke with numerous people, including election officials such as the Secretary of State of Georgia.  In fact, prior to his Electoral Count Act vote, he invoked this due diligence in a Senate floor statement, where he explained his vote.  His investigation into the various allegations surrounding the 2020 election also informed legislative activity, as evidenced by his co-sponsorship of the Electoral Count Reform and Presidential Transition Improvement Act of 2022.[2]

---

"Jim Crow 2021: The Latest Assault on the Right to Vote"; Chairman Grassley held a hearing entitled "Russian Interference in the 2016 United States Election."  As these examples illustrate, Senator Graham's inquiry into voting integrity and election law was well within the Judiciary Committee's province.

[2] https://www.congress.gov/bill/117th-congress/senate-bill/4573/cosponsors.

Now, the Fulton County District Attorney wishes to question Senator Graham about some of this investigation. Per her Petition (leading to the subpoena), she seeks to question Senator Graham regarding: "the substance of the telephone calls, the circumstances surrounding his decision to make the telephone calls, the logistics of setting up the telephone calls, and any communications between himself[] [and] others involved in the planning and execution of the telephone calls." Doc. 2-3 (Petition) ¶ 3.  Simply put, the Fulton County District Attorney wishes to question Senator Graham about the investigation that informed his vote per the Electoral Count Act, his duties as Committee Chair, and the subsequent introduction of legislation.  This is exactly what the Speech or Debate clause is supposed to prevent.

This Court has asked "exactly which questions and/or categories" the Speech or Debate Clause bars.  Doc. 38 at 1.  It should bar questioning on all the topics sought by the District Attorney and this subpoena (*see* Docs. 2-2, 2-3), and the other topics suggested by Amici so far (which are not found in the plain text of the Petition, Certificate, or subpoena), because all ultimately seek "inquiry into [the investigation] and into the motivation for those acts," *Eastland*, 421 U.S. at 508.

As for partial quashal, certainly there must be *something* within the reach of the subpoena that warrants "partial quashal or modification of the subpoena." *Fulton Cnty. Special Purpose Grand Jury v. Graham*, 2022 WL 3581876, at *1 (11th Cir.

Aug. 22, 2022).  A Senator's investigation into a State's absentee-ballot process and alleged voting irregularities in the State—about topics on which legislation could be had (and in fact was had), and with a vote on certifying the election under the Electoral Count Act certainly impending—is quintessentially protected legislative activity, regardless of how often the Fulton County District Attorney wishes to ignore the certification vote, introduction of legislation, and the like.  Investigations, whether characterized as formal and informal, have been an integral part of representative government from our Founding.  *See Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020).  "The power to investigate [thus] plainly falls within th[e] definition" of 'Speech or Debate.'"  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504 (1975).  And so, as much as she wants to, the District Attorney cannot "question[]" Senator Graham about his investigation.  U.S. Const. art. I, § 6, cl. 1.

To be clear:  Senator Graham moved (and continues to move) this Court to quash as much of the subpoena as it finds protected.  If this Court thinks that is less than all topics, it "must" at least "modify" the subpoena to prohibit all "protected matter."  Fed. R. Civ. P. 45(d)(3)(A).  The Court may allow questioning only and at most on "categories of information" within the scope of the Subpoena and special grand jury (Doc. 38 at 1) that the District Attorney proves neither implicate legislative activity nor involve motives for legislative activity, as explained below.

## ARGUMENT

The Eleventh Circuit ordered this Court to determine whether Senator Graham "is entitled to a partial quashal or modification of the subpoena . . . based on any protections afforded by the Speech or Debate Clause." *Graham*, 2022 WL 3581876, at *1. Senator Graham is entitled to that relief, at the very least.

## I. SENATOR GRAHAM'S INVESTIGATION IS "LEGISLATIVE ACTIVITY" AND THUS PROTECTED.

From her very first brief, the District Attorney has rightly agreed that if the subpoena "implicate[s] any *legislative act* promoted by the Senator," there may be no "questions" on that topic. Doc. 9 at 10. This Court should hold that all, or at least the core, of the questioning sought implicates a legislative act: Senator Graham's calls to "Secretary Raffensperger and his staff" to inquire about "absentee ballots cast in Georgia" and "allegations of widespread voter fraud in the November 2020 election in Georgia," Doc. 2-3 (Petition) ¶ 2. At least that much is "protected," and thus at least that much "must" be quashed. Fed. R. Civ. P. 45(d)(3)(A).

**A.** Precedent has settled that a Senator's investigation into a subject on which legislation may be had is facially legislative as "Speech or Debate." *See, e.g.*, *Eastland*, 421 U.S. 491, 503–04; *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951).

And every objective fact here—"stripped of all considerations of intent and motive," *Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998)—shows that Senator

Graham's phone calls were part of just such a facially legislative investigation. For one thing, Senator Graham had a certainly impending vote on certifying the election under the Electoral Count Act. At the time, there were "allegations of widespread voter fraud in the November 2020 election in Georgia" (Doc. 2-3 ¶ 2)—allegations that Senator Graham had a right and duty to run down before deciding whether to certify Joe Biden as "the legitimate President of the United States"—which he did, in a vote informed by his investigation. 167 Cong. Rec. S31 (daily ed. Jan. 6, 2021).

That alone is enough, but there is more. Senator Graham also co-sponsored legislation to amend the Electoral Count Act to correct flaws he discovered during his investigation.[3] He served as Judiciary Committee Chair reviewing election-related issues. And he was investigating possible "national standards" for mail-in voting.[4] *See* Art. I, § 4, cl. 1. This is thus the *definition* of a topic "on which legislation may be had," *Eastland*, 421 U.S. at 508—making it a protected investigation. In light of all this, there is no basis for deeming these calls "personal" (Doc. 27 at 12); rather, the facts show they are legislative activity immunized on a straightforward application of the Speech or Debate Clause's settled rules.

---

[3] https://www.lgraham.senate.gov/public/index.cfm/co-sponsored-bills.

[4] NBC News, https://www.nbcnews.com/politics/2020-election/georgia-secretary-state-raffensperger-says-sen-graham-asked-him-about-n1247968 (Senator Graham statement regarding these calls (cited by the District Attorney, Doc. 9 at 4)).

**B.**   This Court cited "public disagreement" on one part of the calls—namely, that "it has been suggested that Senator Graham was seeking to influence Secretary Raffensperger's actions," whereas Senator Graham denied that.  *Id.* at 12–13.

This public disagreement, though, is "of no moment" to the question the Eleventh Circuit ordered this Court to answer.  *Comm. on Ways & Means v. U.S. Dep't of Treasury*, __ F.4th __, 2022 WL 3205891, at *6 (D.C. Cir. 2022).  The reason is this:  The supposed "public dispute" concerns not the *objective facts* about what Senator Graham asked on the calls, but rather what Secretary Raffensperger inferred was being suggested—which is to say, Secretary Raffensperger's speculation about Senator Graham's *motives* for saying what he said.[5]  And, as binding precedent reiterates again and again, no matter the evidence offered for it, a *motive* for an action simply does not factor into whether an action is protected by the Speech or Debate Clause.  *See Bogan*, 523 U.S. at 54–55; *Tenney*, 341 U.S. at 378; *Scott v. Taylor*, 405 F.3d 1251, 1256 n.7 (11th Cir. 2005).  This is true for allegedly "political" and dual-motive investigations, too.  *Ways & Means*, 2022 WL 3205891, at *6.  So not even a deluge of evidence of political or other motivations (far less the slender reed Secretary Raffensperger has suggested) would make this non-legislative.

---

[5]       https://www.cbsnews.com/news/georgia-election-brad-raffensperger-lindsey-graham-throw-out-ballots (cited by the District Attorney in Opposing Senator Graham's Motion to Quash, Doc. 9 at 2)).

The District Attorney fails to grasp what her contrary position would mean—and not just for Republicans or for Democrats, but for everyone.  It would mean that if one state official offers suggestions or "speculation as to motives" (*Tenney*, 341 U.S. at 377) about an act that, viewed objectively, falls within the scope of protected "legislative activity," a sitting Senator must be made to submit to questioning in order to prove he should not have to submit to questioning.  The longstanding and venerable Speech or Debate immunity cannot be lost on such flimsy inferences and suggestions.  No:  The People who ratified the Constitution ensured that Senators would not "be subjected to the cost and inconvenience and distractions of [questioning] upon a conclusion of the pleader" or someone's "speculation as to motives."  *Tenney*, 341 U.S. at 377.  This case is not about a question-by-question application of a privilege or even common-law legislative immunity; the Speech or Debate Clause is enshrined in the text of the Constitution.

And so, in keeping with the Clause and the precedent applying it, the focus belongs on the objective facts, about which there is no dispute:  A sitting Senator, serving as the Chair of the Judiciary Committee and facing an impending, certain vote on whether to certify a presidential election, asked about the reexamination of absentee ballots and "made reference to allegations of widespread voter fraud in the November 2020 election in Georgia," (Doc. 2-3 ¶ 2), before, based on that

investigation, voting to certify that election and co-sponsoring legislation to amend the Electoral Count Act. *That* is textbook legislative activity, which should end the analysis, as the Clause "forbids inquiry into acts which are purportedly or apparently legislative, even to determine if they are legislative in fact." *United States v. Dowdy*, 479 F.2d 213, 226 (4th Cir. 1973); *accord Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009) (immunity applied once it was determined that act was legislative—without regard to "facts obviously suggest[ing] an improper motive").

**C.** The answer to "whether informal investigative inquiries by individual members of Congress into issues that arguably fall within the member's legislative province constitute protected 'legislative activity' under the Speech or Debate Clause," Doc. 38, is "yes"—as confirmed by text, history, precedent, and purpose. *See also* Doc. 18 at 5–8 (rebutting this argument).

*First*, the text of the Clause makes no mention at all of any formality requirement. It refers neither to resolutions, nor to subcommittees, nor to subpoenas—but instead states simply that "Senators . . . shall not be questioned in any other place" "for any Speech or Debate in either House." U.S. Const. art. I, § 6, cl. 1. It refers to "*Senators*," which means that an *individual* Senator's investigation is immunized so long as investigation qualifies as "Speech or Debate"—which, under binding precedent, it does. *See Eastland*, 421 U.S. at 504. This is also how

legislative immunity has been historically understood: "not so much the privilege of the house, as an organized body, [but] of each individual member composing it," and extending to "every thing said or done by him, as a representative, in the exercise of the functions of that office." *Coffin v. Coffin*, 4 Mass. 1, 27 (1808); *see Kilbourn v. Thompson*, 103 U.S. 168, 204, 26 L. Ed. 377 (1880) (calling *Coffin* "the most authoritative case in this country on the construction of the provision"); *see also Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 363–65 (6th Cir. 2022) (collecting other cases of the immunity's original meaning).

 *Second*, and understandably given this text and history, courts around the country have recognized that "the applicability of the Speech or Debate Clause's protections does not hinge on the formality of the investigation." *SEC v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 236 (S.D.N.Y. 2015) (collecting Second and D.C. Circuit cases); *see also, e.g., Gov't of Virgin Islands v. Lee*, 775 F.2d 514, 521 (3d Cir. 1985) ("[F]act-finding, information gathering, and investigative activities are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation" and "[a]s such" are protected "by legislative immunity."); *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983) (refusing to "permit[] a Congressman to be catechized about the manner in which he obtained information," even if informally). As the D.C.

District Court put it in holding that the Clause applied to Congressman Schiff's informal letters sent to social-media companies, "acquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the privilege." *AAPS v. Schiff*, 518 F. Supp. 3d 505, 517 (D.D.C. 2021) (quoting *McSurely v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976), and collecting cases)). And so "informal information gathering in connection with or in aid of a legitimate legislative act" (here, voting and proposing legislation) "is itself protected by the Speech or Debate Clause." *Jewish War Veterans of the U.S. of America, Inc. v. Gates*, 506 F. Supp. 2d 30, 57 (D.D.C. 2007); *see, e.g.*, *In re McLean*, 2019 WL 2353453, at *6 (D. Vt. June 4, 2019).

Out-of-context reliance on "dicta in *Bastien v. Office of Sen. Ben Nighthorse Campbell*, 390 F.3d 1301 (10th Cir. 2004)," does not change this conclusion. *Puente Arizona v. Arpaio*, 314 F.R.D. 664, 671 (D. Ariz. 2016). In *Bastien*, a Senator fired an aide, who later sued alleging discriminatory termination under a statute that permitted such suits (and waived sovereign immunity). The fired aide's "duties were not legislative" but were limited to constituent services. 390 F.3d at 1305–06. And, in any event, "[a] personnel decision is 'not a legislative act." *Id.* at 1318–19.[6] To

---

[6] Even still, the Court held open the possibility that "certain evidence may be inadmissible in this litigation because it concerns [legislative] conduct." *Id.* at 1304.

read *Bastien* more broadly would be to leverage dicta into a conflict with at least four other Circuits—and with the text, history, and purposes of the Clause; in actual fact, *Bastien* can be easily harmonized with other cases, and is easily distinguishable.

*Third*, it would make no sense to exclude an individual Senator's investigation from immunity under the Clause.  "In order *to propose legislation*, debate *and vote* intelligently, and inform the people about the workings of government, congressmen must first be able to inform themselves."  Reinstein & Silverglate, *Legislative Privilege and the Separation of Powers*, 86 Harv. L. Rev. 1113, 1153 (1973) (emphasis added).  A single Senator must be able to inform himself so that he can intelligently initiate formal action; otherwise, the Senator "would be shooting in the dark, unable to legislate 'wisely or effectively.'"  *Trump*, 140 S. Ct. at 2031; *see Jewish War Veterans*, 506 F. Supp. at 56–57 (calling this distinction "illusory").  Thus, investigation is "within the ambit of the [Clause] so that *congressmen* are able to discharge their constitutional duties properly."  Reinstein, 86 Harv. L. Rev. at 1154 (emphasis added); *see, e.g.*, *United States v. Biaggi*, 853 F.2d 89, 103 (2d Cir. 1988); *Miller*, 709 F.2d at 530 (The Clause immunizes "obtaining information pertinent to *potential* legislation or investigation (emphasis added)).

*In sum*, in recognizing that the Clause immunizes informal investigation, this Court would break no new ground.  This formal/informal distinction is found

nowhere in the Senate's Rules or in the Senate's or Speech or Debate Clause's vernacular. To hold that the Clause does *not* apply to informal investigation, though, *would* break new ground—undermining legislators' ability to go about their business and burying the courts in the difficulty of policing the ways in which legislators do their work. This Court should stay on the firm path of constitutional text, history, precedent, and policy, recognizing that the Clause protects informal investigation.[7]

Because all the District Attorney has in fact sought are materials central to this protected investigation and the motives behind it, complete quashal remains appropriate. But, as explained below (Section II.A), to the extent this Court disagrees, it should at least partially quash or modify the Subpoena to prohibit any questioning about the investigation and the motives behind it.

## II. THE COURT SHOULD ORDER QUASHAL TO THE FULL EXTENT OF THE SPEECH OR DEBATE CLAUSE IMMUNITY IT FINDS.

This Court said its primary holding was that there are "multiple topics upon which Senator Graham could face questioning that in no way implicate protected

---

[7] Nor was this some sort of *unauthorized* investigation, as this Court seemed to suggest, Doc. 38 at 2 n.1. That this was not formally authorized by some official committee resolution does not make it *unauthorized*. After all, the Senator was a committee chairman, with significant investigative authority. And "formal authorization by Congress is [not] required for the investigation to be protected." *McLean*, 2019 WL 2353453, at *6. Plus, legislative immunity covers even "irregular" acts that are "against [Congress's] rules." *Kilbourn*, 103 U.S. at 203; *see, e.g.*, *Budowich v. Pelosi*, 2022 WL 2274359, at *5 (D.D.C. June 23, 2022).

legislative activity." Doc. 37 at 4. Senator Graham respectfully disagrees, not only on the merits but also about this whole exercise: carving his investigation into pieces and considering various slices (and others outside the scope of the subpoena) in isolation. But the Court should nevertheless at least partially quash or modify the subpoena so that questioning is permitted *only* on topics covered by the subpoena and certificate for which the Court concludes the Speech or Debate Clause does *not* offer immunity. At the very least, therefore, and as explained below, the Court should recognize that the Clause immunizes questioning about the Senator's investigation and his motives for undertaking it. *See Eastland*, 421 U.S. at 508.

> **A.**    **This Court must at least partially quash the subpoena as to any topics protected by the Speech or Debate Clause, which includes at a minimum the investigation and motives for it.**

Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure, which governs quashal of subpoenas, "*require[s]*" at least partial quashal—the district court "must quash or modify [the] subpoena"—where, as here, the subpoena seeks "privileged or other protected matter." As the Rule's language makes clear, this is not a "discretionary" basis for quashal or modification, but a "mandatory [one]." *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1335 (11th Cir. 2020). The Court therefore should quash or modify the Subpoena so that no questioning can occur with respect to any covered subjects that the Court holds immunized by the

Speech or Debate Clause. That is, the Court should quash or modify to prevent questioning *precisely* to the extent of its views on the reach of the Clause—without stopping short of the Court's perception of the Clause's immunity.

The request for partial quashal is preserved and procedurally proper. The Eleventh Circuit's Order compels that conclusion: The Eleventh Circuit had before it this Court's order concluding otherwise (Doc. 27 at 22 n.9) but nevertheless remanded for this Court to revisit partial quashal. *See Graham*, 2022 WL 3581876, at *1. That is the correct result, too. (1) A request for complete quashal encompasses the "lesser included relief" of partial quashal in the alternative, Doc. 26 (Hearing Tr.) at 12—in this context and many others, *see, e.g.*, *ML Healthcare Servcs. v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1305 (11th Cir. 2018) (partial quashal when movant sought complete quashal).[8]  And (2) in any event, Senator Graham has expressly argued—before, during, and after the hearing—that "If the Court Thinks Some of the Subpoena's Topics Not Immune From Questioning, This Court Should

---

[8] *See, e.g.*, *Sky Harbor Atlanta Ne., LLC v. Affiliated FM Ins. Co.*, 2020 WL 759215, at *1 (N.D. Ga. Feb. 4, 2020) (partial quashal); *Alexsam, Inc. v. IDT Corp.*, 2013 WL 12070093, at *4 (N.D. Ga. Mar. 11, 2013) (same); *Patriot Gen. Ins. Co. v. Krebs*, 2013 WL 870444, at *5 (N.D. Ga. Mar. 8, 2013) (same); *Thompson v. Piedmont Mgmt. Assocs., LLC*, 2006 WL 8432910, at *2 (N.D. Ga. June 13, 2006) (same); *see also, e.g.*, *Lamonte v. City of Hampton, Georgia*, 576 F. Supp. 3d 1314, 1331 (N.D. Ga. 2021) (partial summary judgment when complete summary judgment was sought), *Winmark Corp. v. Brenoby Sports, Inc.*, 32 F. Supp. 3d 1206, 1210–11 (S.D. Fla. 2014) (narrow injunctions when litigants seek broad ones).

Order Partial Quashal."  Doc. 23 at 13; *see also, e.g.*, Doc. 26 (Hearing Tr.) at 72; Doc. 18 at 14 n.4.  His was a "timely" motion, requiring either full quashal or (at least) "modif[ication]."  Fed. R. Civ. P. 45(d)(3)(A)(iii).  The Court should order this now, at the very least with respect to Senator Graham's investigative phone calls and the motives behind them.

**B.      The other categories suggested are impermissible as well, but if any were permissible, this Court should allow only those to go forward.**

Senator Graham goes through the various "categories of information" offered first by the Amici, and then by the Court and the District Attorney.  The proper course is complete quashal because no "questions and/or categories of information" offered by anyone so far would be permissible. Doc. 38 at 1; *see* Docs. 2-1 at 5–20, 18 at 2–10, and 23 at 3–13.  But—and to be abundantly clear—this Court should quash whatever parts of the subpoena it finds "protected."  Fed. R. Civ. P. 45(d)(3)(A)(iii).

1.    ***Questions related to the 2020 election.***  The core of what the District Attorney is after—*the telephone calls* or, in her words (and note the emphasis), testimony about "the substance of *the telephone calls*, the circumstances surrounding his decision to make *the telephone calls*, the logistics of setting up *the telephone calls*, and any communications between himself[] [and] others involved in the planning and execution of *the telephone calls*," Doc. 2-3 (Petition) ¶ 3 (emphasis added)—is "privileged or other protected matter," and thus "must" be quashed, Fed.

16

R. Civ. P. 45(d)(3)(A).  All of this testimony would involve "inquiry into acts that occur in the regular course of the legislative process"—as explained above, an investigation before certifying a presidential election, *inter alia*—"and into the motivation for those acts."  *Eastland*, 421 U.S. at 508; *see Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 423 (D.C. Cir. 1995) (rejecting "a broad scale discovery of documents in a congressional file that comes from third parties" because it can reveal legislative activity); *In re Grand Jury Investigation*, 587 F.2d 589, 595 (3d Cir. 1978) (telephone records potentially reflecting calls regarding legislative acts protected, because such records could reveal nature of investigation).

This Court, however, thought other topics supposedly alluded to in the District Attorney's Petition (for a subpoena), yet never specifically referenced in the subpoena, fell "outside the phone calls."  Doc. 27 at 8.  The Court listed: "(1) [the Senator's] potential communications and coordination with the Trump Campaign and its post-election efforts in Georgia; (2) his knowledge of other groups or individuals involved with efforts to influence the results of Georgia's 2020 election; and (3) his public statements following the 2020 election."  *Id.* at 8–9.

The main problem with these topics, though, is that they are *admittedly* just backdoor ways to question a Senator about his "motivation, preparation, and/or aftermath of those calls."  Doc. 9 (DA's Opp. Br.) at 26.  Questioning Senator

Graham about his "motivation[s]" for "those calls," *id.*, is obviously prohibited if, as explained above, the calls themselves are "legislative"—it is "not consonant with our scheme of government for a court to inquire into the motives of legislators." *Bryant*, 575 F.3d at 1307; *see Eastland*, 421 U.S. at 508.  So, for example, asking whether Senator Graham "coordinat[ed] with the Trump Campaign" before making the calls and "regarding post-election efforts in Georgia"—as this Court said the District Attorney could ask, Doc. 27 at 10—is only a slightly slyer way of asking, "Why did you *really* make your Georgia post-election calls: (1) solely because of your upcoming Electoral Count Act vote or in investigating the need for potential legislation, or (2) also because President Trump asked you to?"  The Speech or Debate Clause exists to prevent that kind of questioning, backdoor or not.  Topics such as connections to the Trump campaign and third parties and arranging the calls should not be permitted on the same reasoning.  *See, e.g.*, *Texas v. Holder*, 2012 WL 13070060, at *2 (D.D.C. June 5, 2012) (three-judge district court) (Non-legislative activities cannot be used "to reveal [a representative's] subjective motivations.").

The same goes for public statements.  While they are not per se "legislative," they cannot be used "to reveal the[] motivations" for legislative activity.  *E.g.*, *Harding v. County of Dallas*, 2016 WL 7426127, at *5 (N.D. Tex. Dec. 23, 2016).  Here, Senator Graham was responding to inquiries about the public revelation of the

calls with the Georgia Secretary of State.  Certainly, responding publicly to reports on the investigative calls cannot somehow waive Speech or Debate protection, or somehow allow for a backdoor into questions about the calls.  *See United States v. Helstoski*, 442 U.S. 477, 491 (1979).  But, in any event,  the Subpoena does not include public statements within its ambit anyway.  *See* Doc. 1-2 at 3–4.

Finally is the topic of "efforts to 'cajole' or 'exhort' state election officials." Doc. 27 at 10.  As an initial matter, despite a line or two of recurring dicta, the Supreme Court has never held that the Speech or Debate Clause does not cover efforts to convince executive officials to generally enforce or act upon a particular understanding of the law; the Clause should cover such efforts because they can obviate or inform the need for legislative action.  And to not cover such efforts requires an unnecessary dive into the motivation behind certain statements.

But even if the Speech or Debate Clause does not protect encouraging elected officials to generally enforce the law in a particular way, this Court should prohibit questioning concerning supposed cajoling to "alter election results" (Doc. 27 at 10) because again, it is merely a backdoor way to get at the Senator's speculated motives for the calls.  The District Attorney's only evidence of "cajoling" is Secretary Raffensperger's subjective assessment that, in making his calls about electoral process, Senator Graham really wanted Secretary Raffensperger to throw out ballots.

19

As already explained, that speculative assessment of Senator Graham's motive has no place in analysis under the Speech or Debate Clause. *See supra* at 5–7.

At the very least, therefore, the Court should modify or quash the Subpoena to prevent questioning concerning Senator Graham's telephone calls to the extent they pertain to the 2020 election and Senator Graham's motive for making them, along with any associated topics covered by the Subpoena—e.g., the "circumstances surrounding" the decision to make them, the logistics of setting them up, communications with others "involved in [their] planning and execution," and any follow-on communications and public statements. Doc. 2-3 (Petition) ¶ 3. That is the minimum modification required by the Speech or Debate Clause.

**2.  *Unrelated to the 2020 election*.**  During this litigation, the Court has suggested potential lines of inquiry that are or could be unrelated to the 2020 election.  For example, the Court has mentioned (a) a potential request that Senator Raffensperger change the process with respect to the *2021* Senate run-off in Georgia (Doc. 27 at 12 n.4 (citing Doc. 9 at 3–4, 12–13)) and (b) other matters unrelated to the 2020 election.  These potential lines of inquiry suffer from different flaws.

**a.**  Consider first the supposed "cajoling" of changes to state election practices moving forward.  To start, Senator Graham did no such thing:  As the District Attorney's brief shows, this statement concerned potential legislation, asking if there

"[i]s anything we can do to make it better?"  Doc. 9 at 3; *see* U.S. Const. Art. I, § 4, cl. 1 ("Congress may at any time by Law make or alter such [voting] Regulations."). And even if he had, the quality of Senate elections is a matter falling within a Senator's legislative bailiwick under the Constitution.  U.S. Const. Art. I, § 5, cl. 1 (making the Senate "the Judge of the Elections, Returns and Qualifications of its own Members.").  Plus, and in any event, requests for changes in implementation of the laws is immunized by the Speech or Debate Clause, properly understood.  If, however, the Court disagreed with all of those propositions, the Court could omit that line of inquiry—cajoling related to the then-upcoming 2021 Senate run-off— from a quashal order *based solely on the Speech or Debate Clause*.

But, even still, questioning on that topic would be improper for other reasons: The scope of neither the Subpoena nor this special grand jury is broad enough to ask questions about cajoling state officials to change their election practices going forward.  As for the subpoena/certificate, it covers only what it says it covers— namely, "the telephone calls" as they relate to "the November 2020 election in Georgia and elsewhere."  Doc. 2-2 at 3–4.  And as for the special grand jury itself, it may investigate "only" "the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia."  Doc. 2-3 at 10–11 (emphasis added).  Under Georgia law, "a

special purpose grand jury has the power to compel testimony and other evidence *only insofar* as it relates 'directly or indirectly to the subject of the investigation' as set forth in the order authorizing its impaneling." *State v. Lampl*, 770 S.E.2d 629, 632–33 (Ga. 2015) (emphasis added). Any questions unrelated to the *2020* Georgia elections are thus beyond the purview of both the subpoena and special grand jury.

**b.**   This same analysis applies to any other topic this Court, the District Attorney, or Amici can invent, such as media appearances. Questioning regarding "statements and speeches given outside of Congress," for example, fail on Speech or Debate grounds (as backdoor questions about motives) if they are "regarding the 2020 election." Doc. 27 at 10; *see supra* Section II.B. Assuming *arguendo* they fall outside of the Clause's immunity if selectively taken in isolation, they would in that instance fall outside the scope of the subpoena and special grand jury if they are not about the *2020* Georgia election. *Lampl*, 770 S.E.2d at 632–33. They would not be a proper subject of questioning, therefore, even assuming this Court were to exclude them from a partial quashal order under the Speech or Debate Clause.

**C.    This Court's order inverts the burden.**

Following this Court's order, this brief addresses the "categories of information he is requesting the Court to address in an Order to partially quash the subpoena." Doc. 38 at 1. But this burden rightly falls on the District Attorney.

The District Attorney should bear the burden of identifying the questions she wants to ask or, at a minimum, the specific topics she wants to cover that are within the scope of the Subpoena (read in light of the Certificate, which copied the District Attorney's Petition) and the special grand jury, *Lampl*, 770 S.E.2d at 632–33—and then, if there is debate about whether those topics are permissible, she must offer evidence that those topics are *not* protected by the Clause. To hold otherwise is to allow the District Attorney to evade the Speech or Debate Clause by requesting amorphous testimony and then, like a moving target, springing new or elaborated questions or issues on the Senator; the District Attorney, after all, is in the best position to know what she wants to ask (assuming this is not a disorganized fishing expedition). For that reason, if anyone suggests a further line of inquiry, Senator Graham will address it in his Supplemental Reply Brief.

But this is really just byproduct of a more fundamental issue: The burden properly falls on the Government to show that a Senator's activities fall outside the Speech or Debate Clause. The Clause provides a *jurisdictional* immunity, and under settled law, the party seeking to *establish* jurisdiction bears the burden of proving it exists. *See Rangel v. Boehner*, 785 F.3d 19, 22 (D.C. Cir. 2015); *AAPS*, 518 F. Supp. 3d at 517; *see also, e.g.*, *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (party invoking jurisdiction has the burden of proving facts establishing it).

Nor does it make sense to require the legislator to "be questioned" to show that he is immune from "be[ing] questioned."  U.S. Const. art. I, § 6, cl. 1.

For this reason, if the Government wishes to inquire into broad topics—for example, conversations with "other known and unknown individuals"—it should (on pain of quashal) bear the burden of offering proof that those conversations were *not* investigatory (or otherwise legislative)—for example, *not* the sharing of allegations that must then be run to ground before a crucial Electoral Count Act vote. Were it otherwise, the Speech or Debate Clause would be effectively worthless:  A prosecutor would need only make an open-ended request for information, leaving it to the legislator to flail about describing his legislative activities.  The Constitution— and binding Supreme Court and Eleventh Circuit precedent—require more to pierce the immunity.  *See Tenney*, 341 U.S. at 378; *United States v. Swindall*, 971 F.2d 1531, 1546 (11th Cir. 1992) (holding evidentiary inference violated Clause because it "virtually compels [the legislator] to justify his legislative actions").[9]

Thus, with respect to any broad category of sought information, the Court should quash the subpoena unless the District Attorney makes an evidentiary

---

[9] *Bryant*, 575 F.3d 1281, holds nothing to the contrary.  It says nothing about *proof*, and nothing on being questioned to avoid being questioned; only that the official asserting immunity must show that it should cover the sort of action the objective facts reveal and into which the other party wishes to inquire (there, an administrative assistant's drafting of a potential budget).

showing that it includes *specific* conversations, actions, or information that are not legislative, that are covered by the subpoena and special-grand-jury charge, and about which the District Attorney (as opposed to some amicus) wants to ask.

## CONCLUSION

The subpoena should be quashed in its entirety. But, as explained here and in Senator Graham's other papers, the Court must at minimum quash the subpoena to the extent the Court determines that the Speech or Debate Clause (or any of the other protections asserted by Senator Graham) applies to the topics for which the District Attorney seeks questioning. Thus, this Court should at a minimum issue an order partially quashing the subpoena to protect Senator Graham's investigation and the motives behind it.

Date: August 24, 2022

Respectfully submitted,

/s/ Brian C. Lea
_____

DONALD F. MCGAHN II
  *Admitted pro hac vice*
ROBERT LUTHER III
  *Admitted pro hac vice*
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
dmcgahn@jonesday.com
rluther@jonesday.com

BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com

E. BART DANIEL
  *Admitted pro hac vice*
MARSHALL T. AUSTIN
  *Admission pro hac vice pending*
NELSON MULLINS RILEY &
  SCARBOROUGH LLP
151 Meeting Street,
Suite 600
Charleston, SC 29401
(843) 853-5200
bart.daniel@nelsonmullins.com
matt.austin@nelsonmullins.com

*Counsel for United States Senator Lindsey Graham*

## **CERTIFICATE OF COMPLIANCE WITH LR 5.1(B)**

I hereby certify that this brief has been prepared with one of the font, point, and style selections approved by the Court in LR 5.1(B)—namely, double-spaced in 14-point Times New Roman font.

Date: August 24, 2022                    */s/ Brian C. Lea*
                                         BRIAN C. LEA
                                         Georgia Bar No. 213529
                                         JONES DAY
                                         1221 Peachtree Street, N.E.,
                                         Suite 400
                                         Atlanta, Georgia 30361
                                         (404) 521-3939
                                         blea@jonesday.com

                                         *Counsel for United States Senator Lindsey*
                                         *Graham*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2022, I electronically filed the original of this brief with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

Date: August 24, 2022

*/s/ Brian C. Lea*
BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com

*Counsel for United States Senator Lindsey Graham*