# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

*In re* Subpoena to Non-Party Lindsey O. Graham in his official capacity as United States Senator,

in the matter of:

Special Purpose Grand Jury, Fulton County Superior Court Case No. 2022-EX-000024.

Civil Action No.
1:22-cv-03027-LMM

## REPLY IN SUPPORT OF SUPPLEMENTAL MOTION FOR PARTIAL QUASHAL ORDERED BY THIS COURT (DOC. 38), BY SENATOR LINDSEY GRAHAM

## INTRODUCTION

The District Attorney faults Senator Graham for refusing to waive his constitutional arguments at least in part—a surprising position given that she continues to argue that the subpoena should not be quashed even in part, despite the Eleventh Circuit's order remanding for this Court to consider partial quashal. *Fulton Cnty. Special Purpose Grand Jury v. Graham*, 2022 WL 3581876 (11th Cir. Aug. 22, 2022). In any event, the District Attorney's claim is both contrary to law and based on a remarkably selective reading of Senator Graham's filing.

The District Attorney's position is contrary to law because the Constitution forbids what she requests: that the court disregard settled precedent and the objective facts, in favor of an inquiry into motive and an approach that would require a legislator to submit to questioning in order to obtain immunity from questioning. That approach offends common sense and settled precedent establishing that the constitutional immunity may not be defeated by "speculation as to motives." *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951). The analysis turns on the objective facts, "stripped of all considerations of intent and motive," *Bogan v. Scott-Harris*, 523 U.S. 44, 54–55 (1998), and those facts show a Senator who (1) called "to ask about [Georgia's] signature match procedure" for absentee ballots, Doc. 42 at 7 (quoting Raffensperger); (2) needed that information for his upcoming vote under the

Electoral Count Act; (3) served as Judiciary Committee Chair reviewing election-related issues; and (4) relied on the information gained from the calls both to vote Joe Biden "the legitimate President of the United States," 167 Cong. Rec. S31 (daily ed. Jan. 6, 2021), and to co-sponsor legislation to amend the Electoral Count Act. Because Senator Graham was "investigating a problem within legislative concern," this Court's role ends, and the Speech or Debate Clause's protections kick in. *Tenney*, 341 U.S. at 378. If the District Attorney thinks this is Senator Graham "jumping into" "troublesome waters," her dispute is not with Senator Graham as much as it is with the United States Constitution. Doc. 42 at 14. The Constitution does not make Senators "above the power to be questioned" about *all things*, true enough. *Id.* But it does, by its plain text, make them above the power to be "questioned" about their "Speech or Debate." U.S. Const. art. I, § 6, cl. 1. The constitutional provision is unchanging, and thus so is Senator Graham's primary position that total quashal is required.

But, contrary to the District Attorney's selective reading of Senator Graham's brief, Senator Graham's backup position remains that this Court should partially quash the subpoena. The District Attorney does not dispute that partial quashal is mandatory when a subpoena covers subjects immunized by the Speech or Debate Clause. The Court therefore should quash the subpoena to the extent the Court

concludes it seeks questioning of protected topics. At a minimum, this prevents questioning that implicates Senator Graham's phone-call investigation regarding the 2020 election and his motives for undertaking that investigation.

## ARGUMENT

The District Attorney's response is heavy on speculation about motives and light on the law. Her problem is that the law makes her speculations irrelevant.

### I. SENATOR GRAHAM'S PHONE-CALL INVESTIGATION IS "LEGISLATIVE ACTIVITY" AND THUS PROTECTED.

This Court should at least modify the subpoena to prohibit questioning about Senator Graham's phone-call investigation into Georgia's "signature match procedure," Doc. 42 at 7 (quoting Secretary Raffensperger), including any questions about *why* Senator Graham made those phone calls (*i.e.*, his motives). The District Attorney does not dispute that, if this Court finds that any requested questioning is "protected" by the Speech or Debate Clause, the Court "must quash or modify [the] subpoena." Fed. R. Civ. P. 45(d)(3)(A)(iii); *see* Doc. 40-1 (Supp. Mot. To Quash) at 14–16; *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1335 (11th Cir. 2020) (partial quashal is mandatory). And as already explained at length and as explained further below, the Speech or Debate Clause immunizes questioning concerning Senator Graham's investigatory phone calls under application of settled law—both in general and particularly as they concerned the 2020 election.

3

**A.** When it comes to Senator Graham's investigatory phone calls to Secretary Raffensperger, the Court has before it the agreed-upon, objective facts, including that: (1) Senator Graham "called [Secretary Raffensperger] to ask about [Georgia's] signature match procedure" for absentee ballots, Doc. 42 at 7 (quoting Raffensperger); (2) Senator Graham had a certainly impending vote on certifying the election under the Electoral Count Act (for which he had to run down allegations of irregularities in Georgia); (3) Senator Graham served as Judiciary Committee Chair reviewing election-related issues (including possible national standards for mail-in voting); and (4) after the phone calls, Senator Graham relied on the information gained from the calls both to vote Joe Biden "the legitimate President of the United States," 167 Cong. Rec. S31 (daily ed. Jan. 6, 2021), and (5) to co-sponsor legislation to amend the Electoral Count Act.

Those facts—"stripped of all considerations of intent and motive," *Bogan*, 523 U.S. at 54–55—reflect protected, legislative activity. Even according to the District Attorney, the calls were *facially* about "absentee ballots cast in Georgia" and "allegations of widespread voter fraud in the November 2020 election in Georgia." Doc. 2-3 (Petition) ¶ 2. Those subjects are well within a Senator's "province" to investigate, *Tenney*, 341 U.S. at 378, and they are subjects "on which legislation may be had," *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 508 (1975). Facially,

therefore, and given the impending Electoral Count Act vote (among other things), Senator Graham was "investigating a problem within legislative concern," making his phone calls immune from questioning. *Tenney*, 341 U.S. at 378. Senator Graham is thus not asking this Court to "simply accept" his characterization of the calls as legislative, Doc. 42 at 4; he is asking the Court to follow binding precedent by looking only at the objective facts, rather than at "considerations of intent and motive." *Bogan*, 523 U.S. at 54–55. So viewed, the calls are legislative and thus protected by the Clause.

**B.** All the District Attorney offers in response are speculations of intent and motive. That is, her supposed evidence—really just press stories and the like—speaks *at most* to *why* Senator Graham "actually" made the phone calls. Doc. 42 at 5. But binding precedent could not be clearer: A pleader's evidence or "speculation as to motives" does not entitle her to questioning about facially legislative activity (here, a legislative investigation). *Tenney*, 341 U.S. at 377; *see* Doc. 40-1 at 7–9.

Start with the District Attorney's featured source, Secretary Raffensperger. According to him, Senator Graham called to investigate a *facially* legislative subject: the "signature match procedure" for absentee ballots. Doc. 42 at 7. But, the Secretary goes on, Senator Graham "seemed to imply" a *non-legislative purpose* for this investigation as well: for Secretary Raffensperger to "audit all signatures and

5

throw out [certain] ballots." *Id.* The problem for the District Attorney? Secretary Raffensperger's *seemed to imply* language gives away the game. The Secretary never says (and neither does the District Attorney) that Senator Graham *told him* to throw out ballots, or anything of the sort. His calls, even according to the District Attorney and her featured witness, were *facially* legislative. That, though, ends the Court's inquiry—"even to determine if the[] [calls] are legislative in fact." *United States v. Dowdy*, 479 F.2d 213, 226 (4th Cir. 1973); *see Tenney*, 341 U.S. at 377–78. There is no peeking below the surface to explore what one person thought Senator Graham "seemed to imply"—or why Senator Graham was supposedly *really* engaged in his investigation. Such questions about motives are "not consonant with our scheme of government." *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009).

Adding supposed "corroboration" to Secretary Raffensperger's speculation does nothing to help the District Attorney. Doc. 42 at 10 n.10. Not even heaps of supposed evidence of motive permits questioning into a facially legislative act. *See Eastland*, 421 U.S. at 508–09. Zero times ten is zero, just as zero times one is zero.

Even less does evidence of motive help when that "evidence" is as weak as the District Attorney's. First there is Gabriel Sterling, who supports *Senator Graham* by agreeing that the calls involved "questions about our process"; and who, even as to motives, "could see how Sen. Graham viewed it one way and Secretary

6

Raffensperger viewed it [another] way."[1]  Then there is the District Attorney's characterization of the Senator's investigation as "inherently inappropriate," backed up only by a letter sent to a Senate committee by someone with no first-hand knowledge of the facts or any particular expertise on Speech or Debate, which anyone can send and say anything in, Doc. 42 at 8–9, and which in any event cannot change the outcome of the controlling legal question, *Kilbourn v. Thompson*, 103 U.S. 168, 203 (1880) (Clause protects even acts "against [congressional] rules").

Finally there is the purest speculation of all: that the timing of a tweet by President Trump and a lawsuit by Lin Wood shows those events were somehow connected to Senator Graham's phone calls.  Doc. 42 at 6–8.  Stretching this much just shows how weak the District Attorney's case really is:  As the District Attorney herself put it (Doc. 2-3 (Petition) ¶ 2), there were "allegations of widespread voter fraud in the November 2020 election in Georgia," and the fact that people responded in different ways is unsurprising and certainly not indicative of coordination as the District Attorney insinuates (contrary to Lin Wood's publicly stated desire to "take

---

[1] Video Interview of Gabriel Sterling at 1:56, CNN Newsource (Nov. 18, 2020), https://bit.ly/3za979a; D. Gregorian, D. Clark, & The Associated Press, *Georgia officials spar with Sen. Lindsey Graham* (Nov. 17, 2020), https://nbcnews.to/3cmKJZb.

down" Senator Graham[2]). Lin Wood filed a lawsuit; President Trump tweeted. Senator Graham was duty bound to actually vote as to whether to certify the election, and so he had to run those allegations down—and he therefore called (after the filing of the lawsuit) the one person who would know best: Secretary Raffensperger. Others' lawsuits and tweets do not make Senator Graham's investigation unprotected—there is no guilt-by-common-concern exception to the Speech or Debate Clause.

Even accepting all this speculation about motives as true, there is nothing of legal substance to it. The District Attorney has proved no facts showing that the activity was not *facially* legitimate legislative activity—namely, an investigation before an impending vote and into subjects on which legislation could be had.

The District Attorney practically acknowledges as much, arguing instead that her "corroborative information" shows that the calls were not *only* "legitimate legislative investigation and absolutely nothing else," but were *also* motivated by another purpose: the Senator's supposed "public entanglement" with President Trump. Doc. 42 at 8. All of her so-called "corroborative information," according to the District Attorney, shows that the Senator was not "entirely," "absolutely," and

---

[2] Attorney Lin Wood: Blasting South Carolina's Top Republicans, AP News (April 6, 2021), https://bit.ly/3cDqExX.

"alone" motivated by legislative reasons. *Id.* at 6, 8, 9. It suggests, in short, a dual motive. But "[t]he mere fact that individual members of Congress may have political motivations as well as legislative ones is of no moment. Indeed, it is likely rare that an individual member of Congress would work for a legislative purpose without considering the political implications." *Comm. on Ways & Means v. U.S. Dep't of Treasury*, __ F.4th __, 2022 WL 3205891, at *6 (D.C. Cir. 2022). Because Senator Graham "has identified a legitimate legislative purpose that [he needed] information to accomplish"—his impending vote under the Electoral Count Act, among other things—"it is not [a court's] place to delve deeper than this." *Id.* The Speech or Debate Clause protects Senator Graham.

The District Attorney's litigation-versus-legislation distinction does not work either. Asking about possible court challenges is relevant under the Electoral Count Act: Senator Graham had to decide whether to certify the outcome of the election, and a State's security measures (including litigation) helped dictate his comfort about the integrity of the process. It is also relevant to how Georgia's system works and to whether nationwide standards should fix it. Also, the investigation would be protected even if Senator Graham could not directly tie it to specific legislation he later introduced, *contra* Doc. 42 at n.1, since "[t]he very nature of the investigative function—like any research—is that it takes the searchers up some 'blind alleys' and

9

into nonproductive enterprises. To be a valid legislative inquiry there need be no predictable end result." *Eastland*, 421 U.S. at 509.

**C.** This Court ordered the parties to brief "whether informal investigative inquiries by individual members of Congress into issues that arguably fall within the member's legislative province constitute protected 'legislative activity' under the Speech or Debate Clause." Doc. 38 at 1–2. In an argument from text, history, precedent, and purpose—spanning five pages—Senator Graham explained why the answer is "yes." Doc. 40-1 at 9–13.

All the District Attorney does in response is "observe[]" that the Supreme Court has not squarely settled the question, Doc. 42 at 4; and she does not offer any argument why informal investigations should not be covered. She cites *Jewish War Veterans of the U.S. of America, Inc. v. Gates*, 506 F. Supp. 2d 30 (D.D.C. 2007), but that case favors Senator Graham. *See id.* at 54 (holding that "informal information gathering in connection with or in aid of a legitimate legislative act"— here, voting and proposing legislation—"is itself protected by the Speech or Debate Clause"). Another citation is a "see also" of the case this Court already identified, *Bastien v. Off. of Senator Ben Nighthorse Campbell*, 390 F.3d 1301 (10th Cir. 2004). But she says not a word about that case, its facts, or Senator Graham's explanation of why its dicta is "easily distinguishable" and "can be easily harmonized with other

10

cases." Doc. 40-1 at 11–12; *see Puente Arizona v. Arpaio*, 314 F.R.D. 664, 671 (D. Ariz. 2016) (calling the formal/informal distinction from *Bastien* "dicta"). Nor are there any distinctions to be made about the *means* by which a congressman conducts an informal investigation. Just as Congressman Schiff's "acquisition of knowledge through informal sources" by sending letters "is a necessary concomitant of legislative conduct and thus . . . the ambit of the privilege," so too is Senator Graham's acquisition of knowledge through informal sources by making phone calls. *AAPS v. Schiff*, 518 F. Supp. 3d 505, 517 (D.D.C. 2021).

## II.     THE COURT SHOULD ORDER QUASHAL TO THE FULL EXTENT OF THE SPEECH OR DEBATE CLAUSE IMMUNITY IT FINDS.

**A.** Whatever else is true of the other categories of possible questions—first offered by Amici and barely defended by the District Attorney in any of her briefs, including this latest one—this Court should at least modify the subpoena to prohibit any questions about the above: Senator Graham's phone-call investigation into Georgia's elections process regarding the 2020 election and his motives for undertaking that investigation. Partial quashal, at least, is proper.

**B.** Quashal of the subpoena as it relates to the other categories of proposed or hypothetical questions is proper too, and this Court should quash as much as it holds is protected "Speech or Debate."

11

With one exception, the District Attorney does not address these topics other than to repeat what this Court already said—that the District Attorney can question Senator Graham about "issues that are not related to the phone calls themselves." Doc. 42 at 3.  The District Attorney asserts that Senator Graham "has no response" to these non-investigation topics, *id.*, but that ignores nearly half of the Senator's opening brief.  Senator Graham went through each and every one of the "various 'categories of information' offered first by the Amici, and then by the Court and the District Attorney." Doc. 40-1 at 16; *see id.* at 16–25.  For each, the Senator explained why they are either transparently backdoor ways of getting at the "motivation[s]" for "those calls," Doc. 9 (DA's Opp. Br.) at 26; outside the scope of the subpoena and special-grand-jury charge; or both.  *See* Doc. 40-1 at 16–22.  And the Senator explained why the whole exercise of putting the burden on *him* to rebut hypothetical lines of inquiry gets it exactly backward:  The burden should be on the District Attorney to offer *concrete evidence* that *specific lines of inquiry*, within the scope of the subpoena and grand-jury charge, do *not* implicate legislative activity or the motives for legislative activity. *Id.* at 22–25.  The District Attorney utters not so much as a peep about burden.

The one non-investigation topic the District Attorney actually addresses is subjective "cajoling," but even then she conflates the two types of theoretical

12

cajoling: forward-looking (change your election rules for future elections), and backward-looking (apply your election rules in a certain way for past elections).

The District Attorney cannot sidestep the Speech or Debate Clause with her claim of backward-looking cajoling for the reasons given before and above: Even if cajoling generally were non-legislative activity, the only "evidence" of cajoling the District Attorney offers consists of Secretary Raffensperger's musings about motive—the impermissible topic of Senator Graham's motives for undertaking his investigation. *See, e.g.*, *Texas v. Holder*, 2012 WL 13070060, at *2 (D.D.C. June 5, 2012) (three-judge district court). And the District Attorney admits she is really after Senator Graham's "motivation[s]" for "th[e] calls," Doc. 9 (DA's Opp. Br.) at 26, something made abundantly clear by her latest brief. When the District Attorney says she wants evidence on the Senator's "motivation[s]," *id.*, this Court should take her at her word. *See Bryant*, 575 F.3d at 1307.

As for *forward-looking* cajoling—alleged suggestions of adjustments to election laws moving forward—the record does not support that it happened, and it would be off limits anyway. *See* Doc. 40-1 at 20–21. A Senator's asking if there "[i]s anything we can do to make it better,"[3] Doc. 9 at 3, is a far cry from "press[ing] Raffensperger to alter Georgia's processes," Doc. 42 at 12. On its face, that is an

---

[3] Video, https://bit.ly/3R5mk9L.

entirely legitimate question by a United States Senator investigating possible "national standards" for mail-in voting,[4] among other things, Doc. 40-1 at 6–7. *See Eastland*, 421 U.S. at 508 (investigations of topics "on which legislation may be had" are protected); U.S. Const. Art. I, § 4, cl. 1 ("Congress may at any time by Law make or alter such [voting] Regulations."). It is also proper legislative inquiry given the Senate's broad role "about which ballots count, and who won," in Senate elections. *McIntyre v. Fallahay*, 766 F.2d 1078, 1081 & n.1 (7th Cir. 1985) (Easterbrook, J.) (citing *Roudebush v. Hartke*, 405 U.S. 15, 19 (1972); *Barry v. United States ex rel. Cunningham*, 279 U.S. 597, 613 (1929)); *see* Art. I, § 5, cl. 1. And even if the Speech or Debate Clause would not protect questioning about this unsupported-but-asserted form of cajoling, Georgia law would:  It is outside the scope of the subpoena and special-grand-jury charge. *See* Doc. 40-1 at 21–22.

## CONCLUSION

The District Attorney continues to insist—without any caveat or qualification—that the Speech or Debate Clause is a self-defeating immunity and that this Court should wholly deny quashal and force Senator Graham to endure questioning about his Speech or Debate in order to obtain immunity from

---

[4] NBC News, https://nbcnews.to/3CG1bid (Senator Graham statement regarding these calls (cited by the District Attorney, Doc. 9 at 4)).

questioning about his Speech or Debate. But the Framers were not so foolish as to make our Constitution self-defeating, even in part. The Court should honor the constitutional plan, recognizing that the Speech or Debate Clause protects Senators from harassment for doing their job. In short, the Court should quash the subpoena, in whole or at the very least in part.

Date: August 31, 2022

Respectfully submitted,

/s/ Brian C. Lea

DONALD F. MCGAHN II
 *Admitted pro hac vice*
ROBERT LUTHER III
 *Admitted pro hac vice*
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
(202) 879-3939
dmcgahn@jonesday.com
rluther@jonesday.com

BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com

E. BART DANIEL
 *Admitted pro hac vice*
MARSHALL T. AUSTIN
 *Admission pro hac vice pending*
NELSON MULLINS RILEY &
 SCARBOROUGH LLP
151 Meeting Street,
Suite 600
Charleston, SC 29401
(843) 853-5200
bart.daniel@nelsonmullins.com
matt.austin@nelsonmullins.com

*Counsel for United States Senator Lindsey Graham*

## **CERTIFICATE OF COMPLIANCE WITH LR 5.1(B)**

I hereby certify that this brief has been prepared with one of the font, point, and style selections approved by the Court in LR 5.1(B)—namely, double-spaced in 14-point Times New Roman font.

Date: August 31, 2022

*/s/ Brian C. Lea*
BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com

*Counsel for United States Senator Lindsey Graham*

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2022, I electronically filed the original of this brief with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

Date: August 31, 2022

/s/ Brian C. Lea
BRIAN C. LEA
Georgia Bar No. 213529
JONES DAY
1221 Peachtree Street, N.E.,
Suite 400
Atlanta, Georgia 30361
(404) 521-3939
blea@jonesday.com

*Counsel for United States Senator Lindsey Graham*