IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE: SUBPOENA TO NON-PARTY        :
LINDSEY O. GRAHAM in his official    :
capacity as United States Senator,      :        CIVIL ACTION NO.
                                                          :        1:22-cv-03027-LMM
In the matter of:                              :
                                                          :
SPECIAL PURPOSE GRAND JURY,  :
FULTON COUNTY SUPERIOR            :
COURT CASE NO. 2022-EX-              :
000024.                                          :
                                                          :

## ORDER

This case comes before the Court on Senator Lindsey Graham's

Supplemental Motion to Quash [40]. After due consideration, the Court again

declines to quash the subpoena in its entirety. As to the issue of partial quashal,

the Court quashes the subpoena only as to questions about Senator Graham's

investigatory fact-finding on the telephone calls to Georgia election officials,

including how such information related to his decision to certify the results of the

2020 presidential election. The Court finds that this area of inquiry falls under

the protection of the Speech or Debate Clause, which prohibits questions on

legislative activity. As to the other categories, the Court finds that they are not

legislative, and the Speech or Debate Clause does not apply to them. As such,

Senator Graham may be questioned about any alleged efforts to encourage

Secretary Raffensperger or others to throw out ballots or otherwise alter

Georgia's election practices and procedures. Likewise, the grand jury may inquire into Senator Graham's alleged communications and coordination with the Trump Campaign and its post-election efforts in Georgia, as well as into Senator Graham's public statements related to Georgia's 2020 elections.

## I.   BACKGROUND

In this matter, Senator Graham seeks to quash the subpoena issued to him as part of the Fulton County Special Purpose Grand Jury's investigation into attempts to disrupt the lawful administration of Georgia's 2020 elections. On August 15, 2022, the Court denied Senator Graham's Expedited Motion to Quash, see Dkt. No. [27], and the Court subsequently denied Senator Graham's request to stay that order. See Dkt. No. [37]. Senator Graham appealed, and the Eleventh Circuit Court of Appeals temporarily stayed this Court's earlier order and remanded the case to this Court to determine whether Senator Graham is entitled to a partial quashal or modification of the grand jury subpoena pursuant to the Constitution's Speech or Debate Clause. Fulton Cnty. Special Purpose Grand Jury v. Graham, No. 22-12696-DD, 2022 WL 3581876, at *1 (11th Cir. Aug. 22, 2022). The Eleventh Circuit ordered that the parties submit briefing on this issue, see id., and this Court therefore directed Senator Graham to file a motion articulating his arguments for partial quashal. Dkt. No. [38]. Senator Graham's Supplemental Motion to Quash, the District Attorney's Response in opposition, and Senator Graham's Reply are presently before the Court.

## II.    DISCUSSION

Under Federal Rule of Civil Procedure 45, and on timely motion, a district court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A)(iii); see also In re Hubbard, 803 F.3d 1298, 1307 (11th Cir. 2015). The parties dispute whether and to what extent the subpoena should be partially quashed or modified.

As an initial matter, however, Senator Graham begins by arguing that the subpoena should be quashed in its entirety. See generally Dkt. No. [40-1] at 6–14; id. at 14 ("[C]omplete quashal remains appropriate."). In doing so, Senator Graham merely rehashes the same arguments the Court has previously rejected. The Court will not revisit these same arguments for complete quashal because the Court has already considered and rejected Senator Graham's arguments in two prior orders. See Dkt. Nos. [27, 37]. Moreover, by continuing to raise arguments for complete quashal, Senator Graham goes against the directions of both the Eleventh Circuit and this Court. In its order remanding the case, the Eleventh Circuit stated unequivocally that the case was returning to this Court for the "limited purpose" of determining whether Senator Graham "is entitled to a partial quashal or modification of the subpoena." Graham, 2022 WL 3581876, at *1. To that end, the Eleventh Circuit ordered the parties to submit briefing on that issue only. Id. This Court then entered an order directing Senator Graham to "file a Motion as to exactly which questions and/or categories of information he is

requesting the Court to address in an Order to partially quash the subpoena."
Dkt. No. [38] at 1. Nevertheless, Senator Graham continues to raise arguments
for quashing the subpoena in its entirety. Because these arguments are both
unavailing, see Dkt. Nos. [27, 37], and improperly raised at this time, the Court
will only consider Senator Graham's arguments in favor of partially quashing or
modifying the subpoena. Because Senator Graham argues that certain categories
of information are protected from questioning under the Speech or Debate
Clause, the Court will address whether quashal of the subpoena as to these
categories is appropriate.

### A. Phone Calls to Georgia Election Officials

Senator Graham argues first that the Court should quash the subpoena
with respect to any potential questions regarding the phone calls he made to
Georgia election officials. Dkt. No. [40-1] at 17. Senator Graham characterizes the
phone calls as "investigatory phone calls" and argues that they cannot be the
subject of any questioning because they are comprised *entirely* of legitimate
legislative activity. See id. at 6–7, 17. In this way, Senator Graham suggests that
the phone calls are monolithic and comprised exclusively of investigative fact-
finding, and he urges the Court to accept his characterization of the calls and
thereby conclude that the Speech or Debate Clause completely prohibits all
inquiries related to them without regard to the information being sought. Id.

The Court is unpersuaded by the breadth of Senator Graham's argument
and does not find that the Speech or Debate Clause completely prevents all

questioning related to the calls. As a starting point, the Court must look objectively at the activity at issue—phone calls made by an individual U.S. Senator from South Carolina to Georgia state election officials—to determine whether such activity is "legislative" and thus categorically excluded from inquiry under the Speech or Debate Clause. Under this test, the Court must not consider the motives or intentions of the individual performing the act. See, e.g., Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998) ("Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.").

As the Court has previously indicated, the calls themselves—again, calls between a U.S. Senator from South Carolina and Georgia's state election officials—are not manifestly legislative on their face. Indeed, though Senator Graham frequently argues that the Court would easily conclude that the calls themselves are obviously legislative if the Court properly applied the test and ignored all suggestions of motive, it is, in fact, Senator Graham who asks the Court to accept his proposed motive (to carry out an individual investigation so as to inform his choice to certify the election) in assessing whether the calls constitute only legitimate legislative activity. But as the Supreme Court has indicated on numerous occasions, the Court may not consider *any* motive or intent in making this assessment, including the motivation that Senator Graham proposes and asks the Court to adopt. Bogan, 523 U.S. at 54–55. And so, whether there are areas of inquiry that are barred from questioning under the Speech or

Debate Clause requires a more granular analysis of the phone calls and the activities and inquiries that allegedly took place on the calls.[1] It is the nature of those activities and inquiries that determines if the Speech or Debate Clause forecloses questioning. The actual question being asked is also important. Narrow questions can, by their specific subject matter, completely foreclose any argument that they are related to legislative activity.

Turning, then, to the substance of the calls, there is not only dispute between the parties as to the nature and substance of Senator Graham's inquiries and statements on the calls, but, as the record illustrates, there is also significant public dispute on these issues among those who were present on the calls. For his part, Senator Graham argues that the phone calls were entirely investigative and are therefore protected from inquiry. Dkt. No. [40-1] at 6–7. In other words,

---

[1] Even if the Court were to take a wider view of the calls and consider additional facts in assessing whether they are legislative, the Court would reach the same conclusion. Here, the objective facts about the calls are disputed: Senator Graham maintains that his calls were exclusively concerned with legislative fact-finding relevant to his upcoming certification vote; by contrast, other participants on the calls, namely Secretary Raffensperger himself, have publicly stated that this was not the sole purpose of the calls and that Senator Graham instead suggested or implied that he (Secretary Raffensperger) should take certain actions such as throwing out ballots. As alluded to in the District Attorney's earlier briefing and referenced in this Court's earlier order, see Dkt. No. [27] at 12 n.4, Senator Graham himself also appears to have stated publicly that he was at least making suggestions as to how Georgia election officials should change the state's signature-verification process going forward; of course, "cajoling" officials from a different branch of government in that manner is not legislative activity. See Gravel v. United States, 408 U.S. 606, 624–25 (1972). Thus, even when taking a closer look at the circumstances of the calls, it is evident on their face that they are not comprised *exclusively* of legislative activity and thus are not shielded in their entirety under the Speech or Debate Clause.

Senator Graham maintains that his inquiries on the phone calls were all in furtherance of his attempt to personally investigate allegations of voter fraud in Georgia and to thereby inform his upcoming certification decision. Id. However, as alluded to in the District Attorney's briefing throughout this case, individuals who were on the calls have publicly indicated their understanding that Senator Graham was not simply gathering information about Georgia's election processes but was, instead, suggesting or implying that Georgia Secretary of State Raffensperger should throw out ballots or otherwise adopt procedures that would alter the results of the state's election.

To begin, and as a threshold matter, the Court must first decide whether the kind of individual investigation Senator Graham suggests he was carrying out would, in fact, constitute legislative activity for the purposes of the Speech or Debate Clause. Dkt. No. [40-1] at 6–7. Stated another way, the Court must first determine whether an individual, informal investigation carried out by a senator regarding an issue that arguably falls within his legislative province (such as the certification of a presidential election) could constitute legitimate legislative activity and therefore be protected under the Speech or Debate Clause.

The Court concludes that, under certain circumstances, such investigations may constitute legitimate legislative activity that falls within the protections of the Speech or Debate Clause. Though the Supreme Court has never directly addressed this specific issue, the Court finds that this conclusion aligns with the underlying reasoning of the Supreme Court's test for determining whether a

given activity is legislative. As discussed above, courts must objectively assess the activity at issue (without considerations of intent and motive) to determine whether it is legislative. <u>Bogan</u>, 523 U.S. at 54–55. Under this test, if a given activity or investigation is sanctioned by Congress in some formal way, then that official endorsement would presumably carry dispositive weight in determining that the given activity is legislative in nature. <u>See, e.g.</u>, <u>Eastland v. U.S. Servicemen's Fund</u>, 421 U.S. 491, 505 (1975) (finding that the issuance of a subpoena by a Senate subcommittee pursuant to an officially sanctioned and authorized investigation constituted protected legislative activity under the Speech or Debate Clause). But the test itself does not necessarily include a formality requirement and, as presently fashioned, it allows for flexibility of analysis depending on the circumstances of a given case. Thus, while actions taken pursuant to a formally authorized congressional investigation would presumably always fall within the sphere of legitimate legislative activity, the fact that a member's individual investigative efforts may not be tied to an official congressional inquiry does not necessarily mean that such an investigation is per se non-legislative. The Court is therefore persuaded that, in some instances, fact-finding inquiries carried out by individual members of Congress can fall within the sphere of legislative activity protected by the Speech or Debate Clause. <u>See, e.g.</u>, <u>Gov't of the Virgin Islands v. Lee</u>, 775 F.2d 514, 520–21 (3d Cir. 1985) (concluding that legislative immunity should apply to fact-finding and information-gathering).

Returning to the facts of this case, Senator Graham has suggested that he was, at minimum, carrying out a legitimate (albeit informal) investigation into allegations of voter fraud so as to eventually fulfill his congressional role in certifying the results of the 2020 presidential election. Dkt. No. [40-1] at 6–7. Given that the Electoral Count Act designates the responsibility of certification to the members of Congress, the Court finds that a member of Congress could, pursuant to this duty, engage in individual investigatory efforts to understand a state's voting procedures so as to inform his or her eventual decision to certify the results of a presidential election.[2] Thus, to the extent Senator Graham was merely asking questions about Georgia's then-existing election procedures and allegations of voter fraud in the leadup to his certification vote, such questions are shielded from inquiry under the Speech or Debate Clause. In other words, Senator Graham cannot be asked about the portions of the calls that were legislative fact-finding.

But this conclusion does not end the analysis on this issue. Though Senator Graham maintains that these calls were comprised *entirely* of legislative fact-

---

[2] Senator Graham has suggested that his inquiries were also "legislative" because he eventually co-sponsored legislation to amend the Electoral Count Act, because he was chair of the Judiciary Committee, and also because he was investigating possible "national standards" for mail-in voting. Dkt. No. [40-1] at 7. Because the Court concludes that an investigation into an individual state's election procedures can constitute legislative activity when done pursuant to a member of Congress's duty to certify the results of a presidential election, the Court need not—and does not—reach the issue of whether Senator Graham's purported investigation was "legislative" for any additional reasons.

finding relevant to his certification vote (and urges the Court to accept this conclusion on its face), the Court does not find that it can simply accept Senator Graham's sweeping and conclusory characterizations of the calls and ignore other objective facts in the record that call Senator Graham's characterizations into question. As noted above, and as discussed at length in the Court's earlier orders, the very nature and substance of these calls has been a source of public debate and dispute among the calls' participants. Indeed, as alluded to in both parties' briefing, Secretary Raffensperger has stated publicly that he understood Senator Graham to be implying or otherwise suggesting that he (Secretary Raffensperger) should throw out ballots. As the Court has previously stated, any such "cajoling," "exhorting," or pressuring of Secretary Raffensperger (or any other Georgia election officials) to throw out ballots or otherwise change Georgia's election processes, including changing processes so as to alter the state's results, is not protected legislative activity under the Speech or Debate Clause. See Gravel, 408 U.S. at 625. Regardless of whether such conduct is criminal, it is, at minimum, "in no wise related to the due functioning of the legislative process." United States v. Brewster, 408 U.S. 501, 525 (1972). Accordingly, Senator Graham may face targeted and specific questioning regarding this alleged activity, which is to say he may, at minimum, be asked whether he in fact implied, suggested, or otherwise indicated that Secretary Raffensperger (or other Georgia election officials) throw out ballots or otherwise alter their election procedures (including

in ways that would alter election results). This is not legislative fact-finding on its face.

Senator Graham argues that any such questions are impermissible and barred by the Speech or Debate Clause because they merely seek to delve into his subjective motivations for his investigative inquiries. See Dkt. No. [40-1] at 6–9, 20–21. However, Senator Graham's arguments on this point are unpersuasive. First, Senator Graham is simply incorrect when he states that "every objective fact . . . shows that [his] phone calls were part of . . . a facially legislative investigation." Id. at 6–7. To the contrary, the objective facts in this case (with regard to the phone calls) show that there has been significant public dispute as to the meaning and nature of the calls and Senator Graham's statements and inquiries therein. Senator Graham dismisses *these* facts as irrelevant, but in doing so, he either misunderstands or attempts to avoid the objective facts as they exist in the present record. For example, though Senator Graham argues that Secretary Raffensperger's comments merely speak to the Secretary's unfounded suppositions about Senator Graham's "motivations," that is not the import of Secretary Raffensperger's statements. Rather than hypothesizing about Senator Graham's secret motivations, Secretary Raffensperger's comments about the calls reflect his understanding of what Senator Graham's questions and statements *themselves* actually meant (i.e., an attempt to suggest or imply that Secretary Raffensperger should throw out ballots). In this way, and contrary to Senator Graham's framing of the "objective facts," the public dispute regarding these calls

is not reducible to a mere disagreement over Senator Graham's "real" motivations; instead, there is a fundamental factual dispute as to the very nature and substance of the phone calls and what Senator Graham *actually stated and suggested* on the calls. And so, to the extent he asked questions or made statements that went beyond mere inquiries into Georgia's then-existing procedures (that is, to the extent Senator Graham suggested that Georgia election officials take certain actions or alter their procedures), those statements and questions may be the subject of inquiry before the grand jury because they are not protected legislative activity.

Practically speaking, this is the difference between asking broad questions of intent that could implicate some legitimate legislative activity (such as asking Senator Graham why he made the calls to Georgia election officials) versus asking precise, targeted questions regarding decidedly non-legislative activity (such as asking Senator Graham whether he suggested or implied that Secretary Raffensperger or other officials should throw out ballots or otherwise alter Georgia's election procedures, or whether he made any such instructions at the behest of the Trump Campaign). Again, the Court finds that this manner of targeted and specific inquiry aligns with the approach endorsed by the Supreme Court in United States v. Helstoski, 442 U.S. 477, 488 n.7 (1979). In that case, the Supreme Court explained that non-legislative activity could be examined or used while carefully avoiding or "excising" any references to protected legislative activity. Id. ("Nothing in our opinion, by any conceivable reading, prohibits

excising references to legislative acts, so that the remainder of the evidence would be admissible. . . . [A] Member can use the Speech or Debate Clause as a shield against prosecution by the Executive Branch, but only for utterances within the scope of legislative acts as defined in our holdings. That is the clear purpose of the Clause."). So too may the grand jury carefully question Senator Graham on topics that do not involve legislative activity. Again, it is possible that the phone calls contained both legislative and non-legislative activity, and the Speech or Debate Clause protects *only* that which is legislative. Id.

The same approach is applicable to questions regarding the logistics of the phone calls and any potential coordination with the Trump Campaign in organizing the calls. Senator Graham suggests that any questions about his communications or coordination with the Trump Campaign would just be a veiled maneuver to ask him why he "really" made the calls and whether he did so at the behest of former President Trump. Dkt. No. [40-1] at 18–19. But here again, the Court is not persuaded that the grand jury should be broadly forbidden from asking any questions regarding the logistics of setting up the phone calls. Instead, Senator Graham may be asked specific, targeted, and factually oriented questions about the logistics of setting up the phone calls (as opposed to broad, intent-oriented questions as to why Senator Graham "really" made the phone

calls) without implicating any potential legislative activity. Helstoski, 442 U.S. at 488 n.7.[3]

### B. Topics and Activities Unrelated to the Phone Calls

In his Supplemental Brief, Senator Graham argues that three additional areas of inquiry are, in fact, improper and that the subpoena should be partially quashed or modified to exclude them. Dkt. No. [40-1] at 18–23. The Court addresses these topics and Senator Graham's arguments below.

#### 1. Communications and Coordination with the Trump Campaign Regarding Its Post-Election Efforts in Georgia

As noted above in Part II.A., Senator Graham argues that questions about his potential coordination or communications with the Trump Campaign and its post-election efforts in Georgia are impermissible because such questions would just be used as a "backdoor" for questioning him as to his real motivations for making the phone calls. Dkt. No. [40-1] at 18–19. Senator Graham maintains that any such inquiries are therefore impermissible under the Speech or Debate Clause. Id.

_____

[3] As this Court has maintained throughout these proceedings, even if this case is remanded to the Superior Court of Fulton County, Senator Graham may still remove (to this Court) discrete disputes regarding the application of legislative immunity to specific questions. In other words, if there are specific questions as to which Senator Graham wishes to assert a privilege or immunity claim, he may still do so and then remove those disputes to this Court, at which time the Court would be able to issue a ruling in the context of that specific (and therefore concrete) dispute. This is the approach successfully taken as to Congressman Jody Hice's subpoena to appear in front of this same grand jury.

Though Senator Graham attempts to conflate this category of potential questions into a single issue—that is, whether he will be asked why he "really" made the calls and whether they were made at the request of the Trump Campaign or President Trump himself—the issue is broader than what Senator Graham argues. Most importantly, as the Court explained in its previous order, there is no indication in the record that the grand jury's potential inquiry into Senator Graham's alleged coordination and communications with the Trump Campaign regarding the Campaign's post-election efforts in Georgia (or coordination with other third parties for the same or similar purposes) is somehow *exclusively* tied to the subject of Senator Graham's phone calls to Georgia election officials. See Dkt. No. [27] at 7–8 (quoting Dkt. Nos. [1-2, 9] and referring to the District Attorney's representations at the hearing as to the scope of Senator Graham's relevance to the investigation). In other words, to the extent Senator Graham would face questioning about his alleged coordination or communication with the Trump Campaign and its post-election efforts in Georgia on topics *other than* the phone calls, those questions are permitted because any such actions (i.e., potentially coordinating with a political campaign to participate in or advance that campaign's post-election efforts in Georgia) are fundamentally "political in nature rather than legislative" and therefore do not fall within the protections of the Speech or Debate Clause. Brewster, 408 U.S. at 512.

Accordingly, and as the Court previously held, the Court does not find that the subpoena should be quashed or modified to exclude all questions about

Senator Graham's potential communications or coordination with the Trump Campaign and its post-election efforts in Georgia. To the extent Senator Graham may be asked questions about his communications or coordination with the Trump Campaign outside of any reference to the phone calls themselves, the Court finds no basis for concluding that those actions are legislative and therefore shielded from inquiry under the Speech or Debate Clause. Id. ("[I]t has never been seriously contended that [political activities and errands], however appropriate, have the protection afforded by the Speech or Debate Clause."). As to the separate issue of whether Senator Graham could be questioned regarding his coordination with the Trump Campaign relative to the logistics of setting up the calls themselves, the Court addressed that issue above in Part II.A. and finds that tailored and targeted inquiries on this issue are permissible.

### 2. Public Statements Regarding the 2020 Election

Senator Graham also argues that he may not be asked about his public statements (outside of Congress) regarding Georgia's 2020 elections. Dkt. No. [40-1] at 19–20. Senator Graham suggests that any questions about such public statements would simply be another "backdoor" way to question him about the phone calls and his investigative inquiries. Id. Fundamentally, Senator Graham suggests that because at least some of the information related to his public statements may overlap with legislative activity, he simply cannot be questioned about such public statements.

Senator Graham's arguments on this issue are without merit. First, as Senator Graham concedes, public statements given outside of Congress are not considered protected legislative activity under the Speech or Debate Clause. Brewster, 408 U.S. at 512 (explaining that "news releases" and "speeches delivered outside the Congress" are among the activities that are "political in nature rather than legislative" and therefore not protected by the Speech or Debate Clause). Moreover, the reasoning behind Senator Graham's central argument—that is, that he may not be questioned about his public statements because those statements were referring to his "investigative calls"—has already been rejected by the Supreme Court. For example, in Hutchinson v. Proxmire, 443 U.S. 111, 127–30 (1979), the Supreme Court considered and rejected Senator Proxmire's attempt to avoid liability for libel after he republished a speech delivered in Congress[4] in newsletters and a press release. Indeed, in that case, "the text of [the Senator's] speech was incorporated into [the] press release, with only the addition of introductory and concluding sentences." Id. at 115–16. In rejecting the Senator's argument that the press release and newsletters (which themselves also "repeated the essence of the speech," see id. at 117) were protected under the Speech or Debate Clause, the Supreme Court expressly

---

[4] In Hutchinson, Senator Proxmire could not recall whether he actually delivered the speech in Congress or simply entered it into the Congressional Record. Hutchinson, 443 U.S. at 116 n.3. The Supreme Court assumed without deciding that a speech that had, at minimum, been printed in the Congressional Record would "carr[y] immunity under the Speech or Debate Clause as though delivered on the floor." Id.

rejected the argument that material that once fell squarely within the protected legislative sphere remains completely shielded when a member of Congress brings that material into an unprotected sphere:

> A speech by [Senator] Proxmire in the Senate would be wholly immune and would be available to other Members of Congress and the public in the Congressional Record. But neither the newsletters nor the press release was 'essential to the deliberations of the Senate' and neither was part of the deliberative process.

Id. at 130; see also id. at 127–28 ("[T]he precedents abundantly support the conclusion that a Member may be held liable for republishing defamatory statements originally made in either House. We perceive no basis for departing from that long-established rule.").

Senator Graham also argues that his public statements regarding Georgia's 2020 elections do not fall within the "ambit" of the subpoena. Dkt. No. [40-1] at 20. However, there is no support for this argument. The grand jury is authorized to "investigate the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia." Dkt. No. [1-2] at 7. Thus, to the extent Senator Graham made public comments regarding Georgia's 2020 elections, and to the extent these comments are relevant to the facts and circumstances related to potential attempts to disrupt the lawful administration of Georgia's 2020 elections, such public statements unquestionably fall within the investigative purview of the grand jury (and are not shielded from inquiry by the Speech or Debate Clause), and Senator Graham may therefore be questioned as to such statements.

### 3. Efforts to "Cajole" or "Exhort" Georgia Election Officials

Senator Graham also argues that any questions regarding his alleged attempts to encourage, "cajole," or "exhort" Georgia election officials to take certain actions, including throwing out ballots and changing their election procedures going forward, should also be excluded. Dkt. No. [40-1] at 20–23.

First, Senator Graham states, "[T]he Supreme Court has never held that the Speech or Debate Clause does not cover efforts to convince executive officials to generally enforce or act upon a particular understanding of the law[.]" Id. at 20. But in making this argument, Senator Graham plainly misrepresents the Supreme Court's analysis on this issue:

> Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity. *United States v. Johnson decided at least this much.*

Gravel, 408 U.S. at 605 (emphasis added).

Second, Senator Graham argues that any questions regarding his alleged efforts to cajole or encourage Secretary Raffensperger to throw out ballots or otherwise change Georgia's election procedures is simply an impermissible "backdoor" to questioning him about his motives for legitimate legislative activity. Dkt. No. [40-1] at 20. The Court addressed and rejected this argument above in Part II.A.

And finally, Senator Graham argues that any statements he may have made to encourage and cajole Georgia election officials to change their signature-verification processes going forward should also be excluded from inquiry. Dkt. No. [40-1] at 21–22. Senator Graham makes two general arguments in support of this position.

First, Senator Graham suggests that it was within his legislative province to affirmatively direct or encourage Georgia election officials to change their state's election laws and procedures because the "quality of Senate elections" falls within his legislative province and because "requests for changes in implementation of the laws is immunized by the Speech or Debate Clause, properly understood." Id. at 22. The Court finds no support for the suggestion that Senator Graham's position or responsibilities as a U.S. Senator entitled him to exhort or pressure Georgia state election officials as to how they should change or otherwise administer their state's election laws and procedures; again, Senator Graham's argument is squarely foreclosed by the Supreme Court's analysis in Gravel, as noted above. See Gravel, 408 U.S. at 625.

Second, Senator Graham argues that any questions about his attempts to encourage and cajole Georgia election officials to change their signature-verification process in the future was related to the then-upcoming runoffs for Georgia's two Senate seats. Because these runoff elections were technically held in early January 2021 (instead of within 2020), Senator Graham reasons that he may not be questioned about anything related to the Senate runoffs because the

grand jury's investigation (and therefore the scope of the subpoena) are limited to Georgia's 2020 elections. Dkt. No. [40-1] at 22–23. In other words, Senator Graham contends that he may not be asked about Georgia's Senate runoff races stemming from the November 2020 elections because those runoffs technically occurred in early January 2021 instead of 2020. This argument lacks factual and logical support, and its reliance on a technicality cannot carry it forward. The Senate runoffs held in early January 2021 were the culmination of Georgia's 2020 Senate elections. Because the grand jury has been impaneled to "investigate the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia[,]" see Dkt. No. [1-2] at 7, questions regarding the administration of Georgia's Senate runoffs (including attempts to disrupt the lawful administration of the runoffs) fall within the purview of the grand jury's investigation.[5]

---

[5] Senator Graham has also argued that the Court itself has "suggested potential lines of inquiry that are or could be unrelated to the 2020 election[]" and which are beyond the scope of the grand jury's investigation. Dkt. No. [40-1] at 21–22 (citing Dkt. No. [27] at 12 n.4). There is no support for this argument because neither the Court nor any other party has indicated that Senator Graham may (or should) be questioned on topics that fall outside the scope of the grand jury's investigation. The footnote from the Court's previous order that Senator Graham cites does not suggest that Senator Graham could be asked about topics outside the scope of the grand jury's investigation. Instead, the Court observed that— contrary to Senator Graham's assertions that he was only asking questions about Georgia's election processes so as to gather information for legislative purposes— Senator Graham himself stated publicly that he was making affirmative suggestions as to how Georgia election officials should change their signature-verification process going forward. Dkt. No. [27] at 12 n.4. Moreover, and as an overarching matter, the Court has relied on the grand jury's stated scope and purpose—as reflected in both the District Attorney's request to impanel the grand

## III.   CONCLUSION

In accordance with the foregoing, Senator Lindsey Graham's Supplemental Motion to Quash [40] is **GRANTED IN PART** and **DENIED IN PART**. Senator Graham may not be questioned about investigatory fact-finding that allegedly took place on the phone calls with Georgia election officials because such fact-finding constitutes protected legislative activity. Specifically, this means that Senator Graham cannot be questioned as to any information-gathering questions he posed (or why he posed them) about Georgia's then-existing election procedures or allegations of voter fraud. Senator Graham's Motion is otherwise denied as to all other topics addressed in his brief and discussed in the sections above. In sum, and as explained above, Senator Graham may be questioned about any alleged efforts to "cajole" or encourage Secretary Raffensperger or other Georgia election officials to throw out ballots or otherwise alter Georgia's election practices and procedures. Likewise, the grand jury may inquire into Senator Graham's alleged communications and coordination with the Trump Campaign and its post-election efforts in Georgia, as well as into Senator Graham's public statements related to Georgia's 2020 elections.[6]

---

jury as well as the Fulton County Superior Court's order impaneling the grand jury and adopting the purpose stated in the District Attorney's request—to assess whether Senator Graham may be questioned on topics raised in the parties' briefing and during the hearing. See id. at 7 (citing Dkt. No. [1-2] at 7, 10).

[6] Senator Graham concludes his brief by arguing that the Court has improperly inverted the burden by directing him to address the categories of information and topics which he believes are shielded by the Speech or Debate Clause (and

It is the Court's understanding that this concludes the scope of the remand to this Court. The Court further **DIRECTS** the Clerk to **TRANSMIT** a copy of this Order and the record on limited remand [38-43] to the Eleventh Circuit Court of Appeals.

**IT IS SO ORDERED** this 1st day of September, 2022.

**Leigh Martin May**
**United States District Judge**

---

thereby demonstrate why partial quashal or modification of the subpoena is justified based on his invocation of legislative immunity). Dkt. No. [40-1] at 23–26. Senator Graham argues that the burden should instead be on the District Attorney to show that certain topics, conversations, or actions are *not* legislative. Id. The Court disagrees. As the Court has previously stated, Eleventh Circuit caselaw indicates that the burden rests with Senator Graham to articulate why he is entitled to legislative immunity under the Speech or Debate Clause. See Bryant v. Jones, 575 F.3d 1281, 1304 (11th Cir. 2009) ("While the Court has given the [Speech or Debate] Clause broad application, its protections are carefully tailored to its purposes. Officials claiming protection must show that such immunity is justified for the governmental function at issue." (quotation marks and citation omitted)); see also In re Hubbard, 803 F.3d at 1307–09 (explaining that state legislators properly asserted their claims to legislative privilege in response to subpoenas because they (1) invoked their legislative privilege claims through counsel and (2) "made their privilege claims known through written motions to quash"). In addition, the Court does not issue advisory opinions. A movant asking for partial quashal or modification of a subpoena must ask the Court what he wants quashed.